THE HONORABLE RICARDO S. MARTINEZ

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SENIOR HOUSING ASSISTANCE GROUP,

Plaintiff,

v.

AMTAX HOLDINGS 260, LLC, et al.,

Defendants.

AMTAX HOLDINGS 260, LLC, an Ohio limited liability company; PROTECH HOLDINGS W, LLC, an Ohio limited liability company; AMTAX HOLDINGS 259, LLC, an Ohio limited liability company; AMTAX HOLDINGS 261, LLC, an Ohio limited liability company; AMTAX HOLDINGS 258, LLC, an Ohio limited liability company; AMTAX HOLDINGS 257, LLC, an Ohio limited liability company; AMTAX HOLDINGS 164, LLC, an Ohio limited liability company; PROTECH 2002-A, LLC, an Ohio limited liability company; AMTAX HOLDINGS 109, LLC, an Ohio limited liability company; and PROTECH 2001-B, LLC, an Ohio limited liability company;

Counter-Plaintiffs,

v.

No. 2:17-cv-01115-RSM

**DEFENDANTS' ANSWER TO COMPLAINT AND COUNTERCLAIMS**



**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

| |
|---|
| SENIOR HOUSING ASSISTANCE GROUP, a Washington nonprofit corporation; SENIOR HOUSING ASSISTANCE CORPORATION, a Washington corporation; STEEL LAKE ENTERPRISES, LLC, a Washington limited liability company; LAKEWOOD MEADOWS ENTERPRISES, LLC, a Washington limited liability company; LYNNWOOD RETIREMENT LIVING, LLC, a Washington limited liability company; and WOODLANDS ASSOCIATES, LLC, a Washington limited liability company;<br><br>Counter-Defendants. |

Pursuant to Rule 8(b) of the Federal Rules of Civil Procedure, Defendants AMTAX Holdings 260, LLC ("AH 260"), Protech Holdings W, LLC ("Protech W"), AMTAX Holdings 259, LLC ("AH 259"), AMTAX Holdings 261, LLC ("AH 261"), AMTAX Holdings 258, LLC ("AH 258"), AMTAX Holdings 257, LLC ("AH 257"), AMTAX Holdings 164, LLC ("AH 164"), Protech 2002-A, LLC ("Protech 2002-A"), AMTAX Holdings 109, LLC ("AH 109"), and Protech 2001-B, LLC ("Protech 2001-B") (collectively, "AMTAX/Protech") hereby answer Plaintiff's Complaint for Declaratory Judgment, filed July 21, 2017 (the "Complaint"), and assert counterclaims against Plaintiff Senior Housing Assistance Group ("SHAG"), as well as joined third parties Senior Housing Assistance Corporation ("SHAC"), Steel Lake Enterprises, LLC ("Steel Lake"), Lakewood Meadows Enterprises, LLC ("Lakewood Meadows"), Lynnwood Retirement Living, LLC ("Lynnwood"), and Woodlands Associates, LLC ("Woodlands").

**ANSWER TO COMPLAINT**

1. The first sentence of Paragraph 1 is a characterization of the Complaint to which no response is required. The second and third sentence of Paragraph 1 contain legal conclusions and argument as to which no response is required. To the extent that the second and/or third sentence of Paragraph 1 contain factual allegations to which a response is required, AMTAX/Protech admit that SHAG holds itself out as a tax-exempt 501(c)(3) nonprofit involved



**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

in the development and operation of affordable housing in Washington, although SHAG has taken actions that could jeopardize its tax-exempt status, as more fully alleged below. AMTAX/Protech admit the allegations in the fourth sentence of Paragraph 1. Except as expressly admitted herein, AMTAX/Protech deny each and every allegation contained in Paragraph 1.

2. AMTAX/Protech admit the allegations in the first, third, and fourth sentence of Paragraph 2. AMTAX/Protech deny the allegations in the second sentence of Paragraph 2.

3. Responding to Paragraph 3, AMTAX/Protech admit that AH 260, AH 259, AH 261, AH 258, AH 257, AH 164, and AH 109 are the Investor Limited Partners, respectively, of Meridian Court Apartments Limited Partnership, Auburn North Associates Limited Partnership, Capitol Way Associates Limited Partnership, Racine Street Associates Limited Partnership, Lakewood Meadows Associates Limited Partnership, Alderwood Court Associates Limited Partnership, and Woodlands Apartments (2001) Limited Partnership (collectively, the "Project Partnerships"). AMTAX/Protech further admit that Protech W is the Special Limited Partner of Meridian Court Apartments Limited Partnership, Auburn North Associates Limited Partnership, Capitol Way Associates Limited Partnership, Racine Street Associates Limited Partnership, and Lakewood Meadows Associates Limited Partnership, and that Protech 2002-A and Protech 2001-B are the Special Limited Partners, respectively, of Alderwood Court Associates Limited Partnership and Woodlands Apartments (2001) Limited Partnership. Except as expressly admitted herein, AMTAX/Protech deny each and every allegation contained in Paragraph 3.

4. AMTAX/Protech state that the limited partnership agreements referenced in paragraph 4 speak for themselves, and deny the allegations in Paragraph 4 because they mischaracterize the terms of those agreements.

5. The first and fourth sentences of Paragraph 5 contain legal conclusions and argument as to which no response is required. To the extent that the first and/or fourth sentence of Paragraph 5 contain factual allegations to which a response is required, AMTAX/Protech deny



**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

such allegations. AMTAX/Protech lack sufficient knowledge or information to form a belief concerning the truth of the factual allegations in the second and third sentence of Paragraph 5, and on that basis deny such allegations.

6. Responding to Paragraph 6, AMTAX/Protech admit that SHAG purported to invoke its Right of First Refusal as set forth in Section 7.4.L of the limited partnership agreements for Meridian Court Apartments Limited Partnership, Auburn North Associates Limited Partnership, Capitol Way Associates Limited Partnership, and Racine Street Associates Limited Partnership. AMTAX/Protech further admit they informed SHAG that, in addition to other defects, its attempt to invoke its Right of First Refusal to force AMTAX/Protech out of the Project Partnerships was ineffective in the absence of a desire to sell, and a legitimate offer to buy, the affordable housing projects. Except as expressly admitted herein, AMTAX/Protech deny each and every allegation contained in Paragraph 6.

7. AMTAX/Protech deny the allegations in Paragraph 7.

8. AMTAX/Protech deny the allegations in Paragraph 8.

9. AMTAX/Protech deny the allegations in Paragraph 9.

10. AMTAX/Protech admit the allegations in Paragraph 10.

11. Paragraph 11 is a characterization of the Complaint to which no response is required.

12. AMTAX/Protech admit the allegations in Paragraph 12.

13. Responding to Paragraph 13, AMTAX/Protech admit that AH 260 is a limited liability company organized and existing under the laws of the State of Ohio. Except as expressly admitted herein, AMTAX/Protech deny each and every allegation contained in Paragraph 13.

14. Responding to Paragraph 14, AMTAX/Protech admit that Protech W is a limited liability company organized and existing under the laws of the State of Ohio. Except as



**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

expressly admitted herein, AMTAX/Protech deny each and every allegation contained in Paragraph 14.

15. Responding to Paragraph 15, AMTAX/Protech admit that AH 259 is a limited liability company organized and existing under the laws of the State of Ohio. Except as expressly admitted herein, AMTAX/Protech deny each and every allegation contained in Paragraph 15.

16. Responding to Paragraph 16, AMTAX/Protech admit that AH 261 is a limited liability company organized and existing under the laws of the State of Ohio. Except as expressly admitted herein, AMTAX/Protech deny each and every allegation contained in Paragraph 16.

17. Responding to Paragraph 17, AMTAX/Protech admit that AH 258 is a limited liability company organized and existing under the laws of the State of Ohio. Except as expressly admitted herein, AMTAX/Protech deny each and every allegation contained in Paragraph 17.

18. Responding to Paragraph 18, AMTAX/Protech admit that AH 257 is a limited liability company organized and existing under the laws of the State of Ohio. Except as expressly admitted herein, AMTAX/Protech deny each and every allegation contained in Paragraph 18.

19. Responding to Paragraph 19, AMTAX/Protech admit that AH 164 is a limited liability company organized and existing under the laws of the State of Ohio. Except as expressly admitted herein, AMTAX/Protech deny each and every allegation contained in Paragraph 19.

20. Responding to Paragraph 20, AMTAX/Protech admit that Protech 2002-A is a limited liability company organized and existing under the laws of the State of Ohio. Except as expressly admitted herein, AMTAX/Protech deny each and every allegation contained in Paragraph 20.



**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

21. Responding to Paragraph 21, AMTAX/Protech admit that AH 109 is a limited liability company organized and existing under the laws of the State of Ohio. Except as expressly admitted herein, AMTAX/Protech deny each and every allegation contained in Paragraph 21.

22. Responding to Paragraph 22, AMTAX/Protech admit that Protech 2001-B is a limited liability company organized and existing under the laws of the State of Ohio. Except as expressly admitted herein, AMTAX/Protech deny each and every allegation contained in Paragraph 22.

23. Paragraph 23 contains legal conclusions and argument as to which no response is required. To the extent that Paragraph 23 contains factual allegations to which a response is required, AMTAX/Protech admit such allegations.

24. Paragraph 24 contains legal conclusions and argument as to which no response is required. To the extent that Paragraph 24 contains factual allegations to which a response is required, AMTAX/Protech admit such allegations.

25. Paragraph 25 contains legal conclusions and argument as to which no response is required. To the extent that Paragraph 25 contains factual allegations to which a response is required, AMTAX/Protech admit such allegations.

26. AMTAX/Protech admit the allegations in Paragraph 26.

27. AMTAX/Protech admit the allegations in Paragraph 27.

28. AMTAX/Protech admit the allegations in Paragraph 28.

29. AMTAX/Protech admit the allegations in Paragraph 29.

30. AMTAX/Protech admit the allegations in Paragraph 30.

31. AMTAX/Protech admit the allegations in the first and second sentence of Paragraph 31. AMTAX/Protech deny the allegations in the third sentence of Paragraph 31 because they mischaracterize the consideration investor partners receive in exchange for their capital contributions to qualified low-income housing partnerships, which is governed by the



**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

applicable partnership agreement, and typically involves a greater than 99% ownership of the project partnership and all of the attendant rights of that ownership interest, including tax credits generated by the affordable housing owned by the project partnership and tax deductions arising out of any depreciation of the investor partner's capital account, as well as rights to receive cash flow from the operation of the LIHTC projects and a share of the proceeds from their sale.

32. Responding to Paragraph 32, AMTAX/Protech admit that Section 42 of the Internal Revenue Code includes a right of first refusal safe harbor provision, which states: "No Federal income tax benefit shall fail to be allowable to the taxpayer with respect to any qualified low-income building merely by reason of a right of 1st refusal held by the tenants (in cooperative form or otherwise) or resident management corporation of such building or by a qualified nonprofit organization (as defined in subsection (h)(5)(c)) or government agency to purchase the property after the close of the compliance period for a price which is not less than the minimum purchase price determined under subparagraph (B)." Except as expressly admitted herein, AMTAX/Protech deny each and every allegation contained in Paragraph 32.

33. AMTAX/Protech admit the allegations in Paragraph 33.

34. AMTAX/Protech deny the allegations in Paragraph 34 because they misquote and selectively quote section 42(i)(7)(B) of the Internal Revenue Code, which states in its entirety: "**(B) Minimum purchase price.** For purposes of subparagraph (A), the minimum purchase price under this subparagraph is an amount equal to the sum of—

(i) the principal amount of outstanding indebtedness secured by the building (other than indebtedness incurred within the 5-year period ending on the date of the sale to the tenants), and

(ii) all Federal, State, and local taxes attributable to such sale.

Except in the case of Federal income taxes, there shall not be taken into account under clause (ii) any additional tax attributable to the application of clause (ii)."

35. AMTAX/Protech state that the limited partnership agreement referenced in Paragraph 35 speaks for itself, and deny any characterization inconsistent with its terms.



**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

36. AMTAX/Protech admit the allegations in Paragraph 36.

37. Responding to Paragraph 37, AMTAX/Protech admit that AH 260 and Protech W received correspondence bearing a date of December 30, 2014 in which SHAG improperly and defectively purported to exercise its Right of First Refusal under Section 7.4.L of the applicable partnership agreement to purchase the Meridian Court Apartments Project from current owner Meridian Court Apartments Limited Partnership. Except as expressly admitted herein, AMTAX/Protech deny each and every allegation contained in Paragraph 37.

38. AMTAX/Protech lack sufficient knowledge or information to form a belief concerning the truth of the factual allegations in the first or second sentence of Paragraph 38, and on that basis deny such allegations. AMTAX/Protech deny the allegations in the third sentence of Paragraph 38.

39. AMTAX/Protech deny the allegations in Paragraph 39.

40. Responding to Paragraph 40, AMTAX/Protech admit that AH 260 and Protech W received correspondence bearing a date of December 29, 2014 in which Steel Lake, as Managing General Partner, purported to exercise its Option under Section 7.4.J of the applicable partnership agreement to purchase the Meridian Court Apartments Project from current owner Meridian Court Apartments Limited Partnership, but expressly conditioned its action on the defective and improper attempt by SHAG to exercise its Right of First Refusal under Section 7.4.L. Except as expressly admitted herein, AMTAX/Protech deny each and every allegation contained in Paragraph 40.

41. Responding to the first sentence of Paragraph 41, AMTAX/Protech admit that SHAG purported to invoke its Right of First Refusal as set forth in Section 7.4.L of the limited partnership agreement for Meridian Court Apartments Limited Partnership, and that AH 260 and Protech W informed SHAG that, in addition to other defects, its attempt to invoke its Right of First Refusal to force AH 260 and Protech W out of Meridian Court Apartments Limited Partnership was ineffective in the absence of a desire to sell, and a legitimate offer to buy, the



**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

Meridian Court Apartments Project. The second sentence of Paragraph 41 contains legal conclusions and argument as to which no response is required. To the extent that the second sentence of Paragraph 41 contains factual allegations to which a response is required, AMTAX/Protech deny such allegations. AMTAX/Protech admit the allegations in the third sentence of Paragraph 41. Except as expressly admitted herein, AMTAX/Protech deny each and every allegation contained in Paragraph 41.

42. AMTAX/Protech admit the allegations in Paragraph 42.

43. AMTAX/Protech admit the allegations in Paragraph 43.

44. AMTAX/Protech admit the allegations in Paragraph 44.

45. AMTAX/Protech admit the allegations in Paragraph 45.

46. AMTAX/Protech admit the allegations in Paragraph 46.

47. AMTAX/Protech admit the allegations in the first and second sentence of Paragraph 47. AMTAX/Protech deny the allegations in the third sentence of Paragraph 47 because they mischaracterize the consideration investor partners receive in exchange for their capital contributions to qualified low-income housing partnerships, which is governed by the applicable partnership agreement, and typically involves a greater than 99% ownership of the project partnership and all of the attendant rights of that ownership interest, including tax credits generated by the affordable housing owned by the project partnership and tax deductions arising out of any depreciation of the investor partner's capital account, as well as rights to receive cash flow from the operation of the LIHTC projects and a share of the proceeds from their sale.

48. Responding to Paragraph 48, AMTAX/Protech admit that Section 42 of the Internal Revenue Code includes a right of first refusal safe harbor provision, which states: "No Federal income tax benefit shall fail to be allowable to the taxpayer with respect to any qualified low-income building merely by reason of a right of 1st refusal held by the tenants (in cooperative form or otherwise) or resident management corporation of such building or by a qualified nonprofit organization (as defined in subsection (h)(5)(c)) or government agency to purchase the



**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

property after the close of the compliance period for a price which is not less than the minimum purchase price determined under subparagraph (B)." Except as expressly admitted herein, AMTAX/Protech deny each and every allegation contained in Paragraph 48.

49. AMTAX/Protech admit the allegations in Paragraph 49.

50. AMTAX/Protech deny the allegations in Paragraph 50 because they misquote and selectively quote section 42(i)(7)(B) of the Internal Revenue Code, which states in its entirety: "(B) Minimum purchase price. For purposes of subparagraph (A), the minimum purchase price under this subparagraph is an amount equal to the sum of—

(i) the principal amount of outstanding indebtedness secured by the building (other than indebtedness incurred within the 5-year period ending on the date of the sale to the tenants), and

(ii) all Federal, State, and local taxes attributable to such sale.

Except in the case of Federal income taxes, there shall not be taken into account under clause (ii) any additional tax attributable to the application of clause (ii)."

51. AMTAX/Protech admit the allegations in Paragraph 51.

52. Responding to the first sentence of Paragraph 52, AMTAX/Protech admit that AH 259 and Protech W received correspondence bearing a date of December 30, 2015 in which SHAG improperly and defectively purported to exercise its Right of First Refusal under Section 7.4.L of the applicable partnership agreement to purchase the Auburn Court Apartments Project from current owner Auburn North Associates Limited Partnership. Responding to the second sentence of Paragraph 52, AMTAX/Protech deny that SHAG, in its capacity as Managing General Partner, had the authority to sell the Auburn Court Apartments Project without the consent of the limited partners, who collectively own more than 99% of the putative seller. AMTAX/Protech otherwise lack sufficient knowledge or information to form a belief concerning the truth of the factual allegations in the second sentence of Paragraph 52, and on that basis deny such allegations. Except as expressly admitted herein, AMTAX/Protech deny each and every allegation contained in Paragraph 52.



**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

53. AMTAX/Protech lack sufficient knowledge or information to form a belief concerning the truth of the factual allegations in the first or second sentence of Paragraph 53, and on that basis deny such allegations. AMTAX/Protech deny the allegations in the third sentence of Paragraph 53.

54. AMTAX/Protech deny the allegations in Paragraph 54.

55. Responding to the first sentence of Paragraph 55, AMTAX/Protech admit that SHAG purported to invoke its Right of First Refusal as set forth in Section 7.4.L of the limited partnership agreement for Auburn North Associates Limited Partnership, and that AH 259 and Protech W informed SHAG that, in addition to other defects, its attempt to invoke its Right of First Refusal to force AH 259 and Protech W out of Auburn North Associates Limited Partnership was ineffective in the absence of a desire to sell, and a legitimate offer to buy, the Auburn Court Apartments Project. The second sentence of Paragraph 55 contains legal conclusions and argument as to which no response is required. To the extent that the second sentence of Paragraph 55 contains factual allegations to which a response is required, AMTAX/Protech deny such allegations. AMTAX/Protech admit the allegations in the third sentence of Paragraph 55. Except as expressly admitted herein, AMTAX/Protech deny each and every allegation contained in Paragraph 55.

56. AMTAX/Protech admit the allegations in Paragraph 56.

57. AMTAX/Protech admit the allegations in Paragraph 57.

58. AMTAX/Protech admit the allegations in Paragraph 58.

59. AMTAX/Protech admit the allegations in Paragraph 59.

60. AMTAX/Protech admit the allegations in Paragraph 60.

61. AMTAX/Protech admit the allegations in the first and second sentence of Paragraph 61. AMTAX/Protech deny the allegations in the third sentence of Paragraph 61 because they mischaracterize the consideration investor partners receive in exchange for their capital contributions to qualified low-income housing partnerships, which is governed by the



**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

applicable partnership agreement, and typically involves a greater than 99% ownership of the project partnership and all of the attendant rights of that ownership interest, including tax credits generated by the affordable housing owned by the project partnership and tax deductions arising out of any depreciation of the investor partner's capital account, as well as rights to receive cash flow from the operation of the LIHTC projects and a share of the proceeds from their sale.

62. Responding to Paragraph 62, AMTAX/Protech admit that Section 42 of the Internal Revenue Code includes a right of first refusal safe harbor provision, which states: "No Federal income tax benefit shall fail to be allowable to the taxpayer with respect to any qualified low-income building merely by reason of a right of 1st refusal held by the tenants (in cooperative form or otherwise) or resident management corporation of such building or by a qualified nonprofit organization (as defined in subsection (h)(5)(c)) or government agency to purchase the property after the close of the compliance period for a price which is not less than the minimum purchase price determined under subparagraph (B)." Except as expressly admitted herein, AMTAX/Protech deny each and every allegation contained in Paragraph 62.

63. AMTAX/Protech admit the allegations in Paragraph 63.

64. AMTAX/Protech deny the allegations in Paragraph 64 because they misquote and selectively quote section 42(i)(7)(B) of the Internal Revenue Code, which states in its entirety: "**(B) Minimum purchase price.** For purposes of subparagraph (A), the minimum purchase price under this subparagraph is an amount equal to the sum of—

(i) the principal amount of outstanding indebtedness secured by the building (other than indebtedness incurred within the 5-year period ending on the date of the sale to the tenants), and

(ii) all Federal, State, and local taxes attributable to such sale.

Except in the case of Federal income taxes, there shall not be taken into account under clause (ii) any additional tax attributable to the application of clause (ii)."

65. AMTAX/Protech admit the allegations in Paragraph 65.



**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

66. Responding to Paragraph 66, AMTAX/Protech admit that AH 261 and Protech W received correspondence bearing a date of November 18, 2016 in which SHAG improperly and defectively purported to exercise its Right of First Refusal under Section 7.4.L of the applicable partnership agreement to purchase the Boardwalk Apartments Project from current owner Capitol Way Associates Limited Partnership. Except as expressly admitted herein, AMTAX/Protech deny each and every allegation contained in Paragraph 66.

67. AMTAX/Protech lack sufficient knowledge or information to form a belief concerning the truth of the factual allegations in the first or second sentence of Paragraph 67, and on that basis deny such allegations. AMTAX/Protech deny the allegations in the third sentence of Paragraph 67.

68. AMTAX/Protech deny the allegations in Paragraph 68.

69. Responding to the first sentence of Paragraph 69, AMTAX/Protech admit that SHAG purported to invoke its Right of First Refusal as set forth in Section 7.4.L of the limited partnership agreement for Capitol Way Associates Limited Partnership, and that AH 261 and Protech W informed SHAG that, in addition to other defects, its attempt to invoke its Right of First Refusal to force AH 261 and Protech W out of Capitol Way Associates Limited Partnership was ineffective in the absence of a desire to sell, and a legitimate offer to buy, the Boardwalk Apartments Project. The second sentence of Paragraph 69 contains legal conclusions and argument as to which no response is required. To the extent that the second sentence of Paragraph 69 contains factual allegations to which a response is required, AMTAX/Protech deny such allegations. AMTAX/Protech admit the allegations in the third sentence of Paragraph 69. Except as expressly admitted herein, AMTAX/Protech deny each and every allegation contained in Paragraph 69.

70. AMTAX/Protech admit the allegations in Paragraph 70.

71. AMTAX/Protech admit the allegations in Paragraph 71.

72. AMTAX/Protech admit the allegations in Paragraph 72.



**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

73. AMTAX/Protech admit the allegations in Paragraph 73.

74. AMTAX/Protech admit the allegations in Paragraph 74.

75. AMTAX/Protech admit the allegations in the first and second sentence of Paragraph 75. AMTAX/Protech deny the allegations in the third sentence of Paragraph 75 because they mischaracterize the consideration investor partners receive in exchange for their capital contributions to qualified low-income housing partnerships, which is governed by the applicable partnership agreement, and typically involves a greater than 99% ownership of the project partnership and all of the attendant rights of that ownership interest, including tax credits generated by the affordable housing owned by the project partnership and tax deductions arising out of any depreciation of the investor partner's capital account, as well as rights to receive cash flow from the operation of the LIHTC projects and a share of the proceeds from their sale.

76. Responding to Paragraph 76, AMTAX/Protech admit that Section 42 of the Internal Revenue Code includes a right of first refusal safe harbor provision, which states: "No Federal income tax benefit shall fail to be allowable to the taxpayer with respect to any qualified low-income building merely by reason of a right of 1st refusal held by the tenants (in cooperative form or otherwise) or resident management corporation of such building or by a qualified nonprofit organization (as defined in subsection (h)(5)(c)) or government agency to purchase the property after the close of the compliance period for a price which is not less than the minimum purchase price determined under subparagraph (B)." Except as expressly admitted herein, AMTAX/Protech deny each and every allegation contained in Paragraph 76.

77. AMTAX/Protech admit the allegations in Paragraph 77.

78. AMTAX/Protech deny the allegations in Paragraph 78 because they misquote and selectively quote section 42(i)(7)(B) of the Internal Revenue Code, which states in its entirety: "**(B) Minimum purchase price.** For purposes of subparagraph (A), the minimum purchase price under this subparagraph is an amount equal to the sum of—



**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

(i) the principal amount of outstanding indebtedness secured by the building (other than indebtedness incurred within the 5-year period ending on the date of the sale to the tenants), and

(ii) all Federal, State, and local taxes attributable to such sale.

Except in the case of Federal income taxes, there shall not be taken into account under clause (ii) any additional tax attributable to the application of clause (ii)."

79. AMTAX/Protech admit the allegations in Paragraph 79.

80. Responding to Paragraph 80, AMTAX/Protech admit that AH 258 and Protech W received correspondence bearing a date of November 18, 2016 in which SHAG improperly and defectively purported to exercise its Right of First Refusal under Section 7.4.L of the applicable partnership agreement to purchase the WoodRose Apartments Project from current owner Racine Street Associates Limited Partnership. Except as expressly admitted herein, AMTAX/Protech deny each and every allegation contained in Paragraph 80.

81. AMTAX/Protech lack sufficient knowledge or information to form a belief concerning the truth of the factual allegations in the first or second sentence of Paragraph 81, and on that basis deny such allegations. AMTAX/Protech deny the allegations in the third sentence of Paragraph 81.

82. AMTAX/Protech deny the allegations in Paragraph 82.

83. Responding to the first sentence of Paragraph 83, AMTAX/Protech admit that SHAG purported to invoke its Right of First Refusal as set forth in Section 7.4.L of the limited partnership agreement for Racine Street Associates Limited Partnership, and that AH 258 and Protech W informed SHAG that, in addition to other defects, its attempt to invoke its Right of First Refusal to force AH 258 and Protech W out of Racine Street Associates Limited Partnership was ineffective in the absence of a desire to sell, and a legitimate offer to buy, the WoodRose Apartments Project. The second sentence of Paragraph 83 contains legal conclusions and argument as to which no response is required. To the extent that the second sentence of Paragraph 83 contains factual allegations to which a response is required, AMTAX/Protech deny



**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

such allegations. AMTAX/Protech admit the allegations in the third sentence of Paragraph 83. Except as expressly admitted herein, AMTAX/Protech deny each and every allegation contained in Paragraph 83.

84. AMTAX/Protech admit the allegations in Paragraph 84.

85. AMTAX/Protech admit the allegations in Paragraph 85.

86. AMTAX/Protech admit the allegations in Paragraph 86.

87. AMTAX/Protech admit the allegations in Paragraph 87.

88. AMTAX/Protech admit the allegations in Paragraph 88.

89. AMTAX/Protech admit the allegations in the first and second sentence of Paragraph 89. AMTAX/Protech deny the allegations in the third sentence of Paragraph 89 because they mischaracterize the consideration investor partners receive in exchange for their capital contributions to qualified low-income housing partnerships, which is governed by the applicable partnership agreement, and typically involves a greater than 99% ownership of the project partnership and all of the attendant rights of that ownership interest, including tax credits generated by the affordable housing owned by the project partnership and tax deductions arising out of any depreciation of the investor partner's capital account, as well as rights to receive cash flow from the operation of the LIHTC projects and a share of the proceeds from their sale.

90. Responding to Paragraph 90, AMTAX/Protech admit that Section 42 of the Internal Revenue Code includes a right of first refusal safe harbor provision, which states: "No Federal income tax benefit shall fail to be allowable to the taxpayer with respect to any qualified low-income building merely by reason of a right of 1st refusal held by the tenants (in cooperative form or otherwise) or resident management corporation of such building or by a qualified nonprofit organization (as defined in subsection (h)(5)(c)) or government agency to purchase the property after the close of the compliance period for a price which is not less than the minimum purchase price determined under subparagraph (B)." Except as expressly admitted herein, AMTAX/Protech deny each and every allegation contained in Paragraph 90.



**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

91. AMTAX/Protech admit the allegations in Paragraph 91.

92. AMTAX/Protech deny the allegations in Paragraph 92 because they misquote and selectively quote section 42(i)(7)(B) of the Internal Revenue Code, which states in its entirety: "**(B) Minimum purchase price.** For purposes of subparagraph (A), the minimum purchase price under this subparagraph is an amount equal to the sum of—

(i) the principal amount of outstanding indebtedness secured by the building (other than indebtedness incurred within the 5-year period ending on the date of the sale to the tenants), and

(ii) all Federal, State, and local taxes attributable to such sale.

Except in the case of Federal income taxes, there shall not be taken into account under clause (ii) any additional tax attributable to the application of clause (ii)."

93. AMTAX/Protech admit the allegations in Paragraph 93.

94. Responding to the first, second, fourth, fifth, and sixth sentence of Paragraph 94, AMTAX/Protech admit that SHAG has not attempted to exercise its Right of First Refusal under Section 7.4.L of the applicable partnership agreement for the Lakewood Meadows Associates Limited Partnership, but otherwise lack sufficient knowledge or information to form a belief concerning the truth of any factual allegations contained therein, and on that basis deny such allegations. Responding to the third sentence of Paragraph 94, AMTAX/Protech state that the limited partnership agreements referenced in Paragraph 94 speak for themselves, and deny any characterization inconsistent with their terms.

95. AMTAX/Protech admit the allegations in Paragraph 95.

96. AMTAX/Protech admit the allegations in Paragraph 96.

97. AMTAX/Protech admit the allegations in Paragraph 97.

98. AMTAX/Protech admit the allegations in Paragraph 98.

99. AMTAX/Protech admit the allegations in Paragraph 99.

100. AMTAX/Protech admit the allegations in the first and second sentence of Paragraph 100. AMTAX/Protech deny the allegations in the third sentence of Paragraph 100



**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

because they mischaracterize the consideration investor partners receive in exchange for their capital contributions to qualified low-income housing partnerships, which is governed by the applicable partnership agreement, and typically involves a greater than 99% ownership of the project partnership and all of the attendant rights of that ownership interest, including tax credits generated by the affordable housing owned by the project partnership and tax deductions arising out of any depreciation of the investor partner's capital account, as well as rights to receive cash flow from the operation of the LIHTC projects and a share of the proceeds from their sale.

101. Responding to Paragraph 101, AMTAX/Protech admit that Section 42 of the Internal Revenue Code includes a right of first refusal safe harbor provision, which states: "No Federal income tax benefit shall fail to be allowable to the taxpayer with respect to any qualified low-income building merely by reason of a right of 1st refusal held by the tenants (in cooperative form or otherwise) or resident management corporation of such building or by a qualified nonprofit organization (as defined in subsection (h)(5)(c)) or government agency to purchase the property after the close of the compliance period for a price which is not less than the minimum purchase price determined under subparagraph (B)." Except as expressly admitted herein, AMTAX/Protech deny each and every allegation contained in Paragraph 101.

102. AMTAX/Protech admit the allegations in Paragraph 102.

103. AMTAX/Protech deny the allegations in Paragraph 103 because they misquote and selectively quote section 42(i)(7)(B) of the Internal Revenue Code, which states in its entirety: "**(B) Minimum purchase price.** For purposes of subparagraph (A), the minimum purchase price under this subparagraph is an amount equal to the sum of—

(i) the principal amount of outstanding indebtedness secured by the building (other than indebtedness incurred within the 5-year period ending on the date of the sale to the tenants), and

(ii) all Federal, State, and local taxes attributable to such sale.

Except in the case of Federal income taxes, there shall not be taken into account under clause (ii) any additional tax attributable to the application of clause (ii)."



**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

104. Paragraph 104 does not include factual allegations, but instead only conjecture concerning future events as to which AMTAX/Protech lack knowledge or information sufficient to form a belief. To the extent that Paragraph 104 contains factual allegations to which a response is required, AMTAX/Protech admit that the Section 42 compliance period for the Alderwood Court Apartments Project is set to expire on December 31, 2017. Except as expressly admitted herein, AMTAX/Protech deny each and every allegation contained in Paragraph 104.

105. Responding to the first, second, fourth, fifth, and sixth sentence of Paragraph 105, AMTAX/Protech admit that SHAG has not attempted to exercise its Right of First Refusal under Section 7.4.L of the applicable partnership agreement for the Lakewood Meadows Associates Limited Partnership, but otherwise lack sufficient knowledge or information to form a belief concerning the truth of any factual allegations contained therein, and on that basis deny such allegations. Responding to the third sentence of Paragraph 105, AMTAX/Protech state that the limited partnership agreements referenced in Paragraph 105 speak for themselves, and deny any characterization inconsistent with their terms.

106. AMTAX/Protech admit the allegations in Paragraph 106.

107. AMTAX/Protech admit the allegations in Paragraph 107.

108. AMTAX/Protech admit the allegations in Paragraph 108.

109. AMTAX/Protech admit the allegations in Paragraph 109.

110. AMTAX/Protech admit the allegations in Paragraph 110.

111. AMTAX/Protech admit the allegations in the first and second sentence of Paragraph 111. AMTAX/Protech deny the allegations in the third sentence of Paragraph 111 because they mischaracterize the consideration investor partners receive in exchange for their capital contributions to qualified low-income housing partnerships, which is governed by the applicable partnership agreement, and typically involves a greater than 99% ownership of the project partnership and all of the attendant rights of that ownership interest, including tax credits



**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

generated by the affordable housing owned by the project partnership and tax deductions arising out of any depreciation of the investor partner's capital account, as well as rights to receive cash flow from the operation of the LIHTC projects and a share of the proceeds from their sale.

112. Responding to Paragraph 112, AMTAX/Protech admit that Section 42 of the Internal Revenue Code includes a right of first refusal safe harbor provision, which states: "No Federal income tax benefit shall fail to be allowable to the taxpayer with respect to any qualified low-income building merely by reason of a right of 1st refusal held by the tenants (in cooperative form or otherwise) or resident management corporation of such building or by a qualified nonprofit organization (as defined in subsection (h)(5)(c)) or government agency to purchase the property after the close of the compliance period for a price which is not less than the minimum purchase price determined under subparagraph (B)." Except as expressly admitted herein, AMTAX/Protech deny each and every allegation contained in Paragraph 112.

113. AMTAX/Protech admit the allegations in Paragraph 113.

114. AMTAX/Protech deny the allegations in Paragraph 114 because they misquote and selectively quote section 42(i)(7)(B) of the Internal Revenue Code, which states in its entirety: "**(B) Minimum purchase price.** For purposes of subparagraph (A), the minimum purchase price under this subparagraph is an amount equal to the sum of—

(i) the principal amount of outstanding indebtedness secured by the building (other than indebtedness incurred within the 5-year period ending on the date of the sale to the tenants), and

(ii) all Federal, State, and local taxes attributable to such sale.

Except in the case of Federal income taxes, there shall not be taken into account under clause (ii) any additional tax attributable to the application of clause (ii)."

115. Paragraph 115 does not include factual allegations, but instead only conjecture concerning future events as to which AMTAX/Protech lack knowledge or information sufficient to form a belief. To the extent that Paragraph 115 contains factual allegations to which a response is required, AMTAX/Protech admit that the Section 42 compliance period for the



**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

Woodlands Apartments Project is set to expire on December 31, 2018. Except as expressly admitted herein, AMTAX/Protech deny each and every allegation contained in Paragraph 115.

116. Responding to the first, second, fourth, fifth, and sixth sentence of Paragraph 116, AMTAX/Protech admit that SHAG has not attempted to exercise its Right of First Refusal under Section 7.4.L of the applicable partnership agreement for the Lakewood Meadows Associates Limited Partnership, but otherwise lack sufficient knowledge or information to form a belief concerning the truth of any factual allegations contained therein, and on that basis deny such allegations. Responding to the third sentence of Paragraph 116, AMTAX/Protech state that the limited partnership agreements referenced in Paragraph 116 speak for themselves, and deny any characterization inconsistent with their terms.

117. AMTAX/Protech repeat and incorporate by reference each and every response set forth above.

118. To the extent that the undefined term "Plaintiffs" in Paragraph 118 is intended to refer to SHAG, AMTAX/Protech admit the allegations in the first sentence of Paragraph 118. The second sentence of Paragraph 118 is a characterization of the Complaint to which no response is required.

119. Paragraph 119 contains legal conclusions and argument as to which no response is required. To the extent that Paragraph 119 contain factual allegations to which a response is required, AMTAX/Protech deny such allegations.

120. No response is required to the remainder of the Complaint, which sets forth SHAG's prayer for relief. To the extent a response is required to the remainder of the Complaint, AMTAX/Protech deny each and every allegation therein.

**DEFENSES**

AMTAX/Protech plead the following separate and distinct defenses without conceding that they bear the burden of proof as to any of these issues. AMTAX/Protech reserve the right to assert additional defenses that discovery indicates are proper.



**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

**FIRST DEFENSE**

**(Failure to State a Claim)**

1. SHAG's Complaint, and each cause of action alleged therein, fails to state a claim upon which relief can be granted.

**SECOND DEFENSE**

**(Claim Barred by Contractual Terms)**

2. SHAG's Complaint, and each cause of action alleged therein, is barred, released, waived, or otherwise precluded by the terms of the limited partnership agreements alleged in the Complaint.

**THIRD DEFENSE**

**(Failure of Condition Precedent)**

3. SHAG's Complaint, and each cause of action alleged therein, is barred because conditions precedent to the exercise of SHAG's Right of First Refusal for the Project Partnerships have not been satisfied.

**FOURTH DEFENSE**

**(Contractual Terms Voidable or Void)**

4. SHAG's Complaint, and each cause of action alleged therein, is barred because SHAG's Right of First Refusal for the Project Partnerships are voidable or void based on SHAG's improper assignment of its rights to for-profit entities in derogation of Section 42(i)(7).

**FIFTH DEFENSE**

**(Estoppel)**

5. SHAG's Complaint, and each cause of action alleged therein, is barred in whole or in part by the doctrine of estoppel.

**SIXTH DEFENSE**

**(Unclean Hands)**



**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

6. SHAG's Complaint, and each cause of action alleged therein, is barred in whole or in part by the doctrine of unclean hands.

**SEVENTH DEFENSE**

**(Waiver)**

7. SHAG's Complaint, and each cause of action alleged therein, is barred in whole or in part by the doctrine of waiver.

**EIGHTH DEFENSE**

**(Parol Evidence Rule)**

8. SHAG's Complaint, and each cause of action alleged therein, is barred by the parol evidence rule.

**NINTH DEFENSE**

**(Prior Breach)**

9. SHAG's Complaint, and each cause of action alleged therein, is barred by reason of prior breaches of the limited partnership agreements upon which SHAG bases the Complaint.

**TENTH DEFENSE**

**(Ripeness)**

10. Claims brought by SHAG in connection with the Lakewood Meadows Apartments Project, the Alderwood Court Apartments Project, and the Woodlands Apartments Project fail on ripeness grounds because SHAG has not yet purported to exercise its Right of First Refusal in connection with any of these Partnership Projects, and the fifteen-year compliance period is not yet completed for the Alderwood Court Apartments Project or Woodlands Apartments Project.

WHEREFORE, having fully answered the allegations in SHAG's Complaint, AMTAX/Protech request that the Court enter an order dismissing the Complaint with prejudice and in its entirety, and awarding AMTAX/Protech all permissible costs and expenses, as well as such other relief the Court deems just and proper.



**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

## COUNTERCLAIMS

For its Counterclaims against Plaintiff Senior Housing Assistance Group ("SHAG") and joined third parties Senior Housing Assistance Corporation ("SHAC"), Steel Lake Enterprises, LLC ("Steel Lake"), Lakewood Meadows Enterprises, LLC ("Lakewood Meadows"), Lynnwood Retirement Living, LLC ("Lynnwood"), and Woodlands Associates, LLC ("Woodlands") (collectively, "Counter-Defendants"), AMTAX/Protech hereby state and allege as follows:

### I. INTRODUCTION

1. The Project Partnerships identified in SHAG's Complaint each own a "qualified low-income housing project" eligible for federal income tax credits and other tax benefits under the Low Income Housing Tax Credit ("LIHTC") provisions of the Internal Revenue Code, 26 U.S.C. § 42 ("Section 42"). Those tax credits are earned over a ten year period, which along with a five year recapture period, is commonly referred to as the "Compliance Period." SHAG holds certain rights of first refusal ("Rights of First Refusal" or "ROFRs") under the applicable partnership agreements for the Project Partnerships to purchase the LIHTC projects for a below-market price in the event that AMTAX/Protech elects to force a sale and/or to accept a third party offer to purchase the projects following the end of the Compliance Period. Pursuant to Section 42(i)(7), such Rights of First Refusal do not threaten the Project Partnerships' eligibility to receive the tax credits generated by the LIHTC projects, *provided* that the ROFR holders are "tenants," "resident management corporation[s]," or "qualified nonprofit organization[s]." 26 U.S.C. § 42(i)(7).

2. AMTAX/Protech hold a 99% or greater ownership interest in each of the Project Partnerships. AMTAX/Protech bring these counterclaims to put a stop to efforts by SHAG and its affiliates to freeze AMTAX/Protech out of the Project Partnerships by (1) attempting to invoke SHAG's contractual Rights of First Refusal in a manner that is contrary to Section 42 and the terms of the relevant partnership agreements; and (2) failing to provide financial information



**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

and otherwise meet contractual reporting obligations to AMTAX/Protech despite repeated demands.

3. Contrary to the suggestion in SHAG's Complaint, this dispute does not involve maintaining the LIHTC projects at issue as affordable housing in any respect. Restrictive covenants that run with the land ensure that each property will remain affordable housing for years to come regardless of who owns it. Nor are SHAG's improper efforts to exercise its contractual Rights of First Refusal intended to ensure that the LIHTC projects at issue remain in the hands of the original qualified nonprofit sponsor or co-sponsor. Instead, SHAG's motives for purporting to invoke its Rights of First Refusal are improper, and its lawsuit is aimed exclusively at divesting AMTAX/Protech of their ownership interests in the Project Partnerships by forcing them to sell the properties against their will and at a below-market price to SHAG and its for-profit affiliates. SHAG's efforts must be rejected for two independently sufficient reasons.

4. ***First***, SHAG cannot exercise its Rights of First Refusal in the absence of a desire to sell and legitimate offers to buy the properties in question, both of which are lacking here. The quintessential feature of a right of first refusal is that it is only triggered when there is an offer to buy and a willingness by the owner to accept that offer. *See Manufactured Hous. Cmtys. of Washington v. State*, 142 Wn.2d 347, 364-65, 13 P.3d 183, 191-92 (2000) ("Although a right of first refusal has no binding effect unless the offeror decides to sell, at such time it then legally constrains the owner. 'A right of first refusal to purchase is a valuable prerogative, limiting the owner's right to freely dispose of his property by compelling him to offer it first to the party who has the first right to buy.'") (quoting *Northwest Television Club, Inc. v. Gross Seattle, Inc.*, 26 Wn. App. 111, 116, 612 P.2d 422, 425 (1980), *rev'd in part on other ground by*, 96 Wn.2d 973, 634 P.2d 837 (1981)). Thus, unlike the separate Option rights that are also included in each of the applicable partnership agreements—which can be exercised to force a sale even over AMTAX/Protech's objections—SHAG's Rights of First Refusal can only be used defensively to prevent the Project Partnerships from selling the LIHTC projects to someone other than SHAG.



**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

5. The inherently defensive nature of a right of first refusal—as opposed to an option—is particularly important in the Section 42 context given the below-market purchase price set forth in SHAG's ROFRs. Indeed, at the time of Section 42(i)(7)'s enactment, "there was congressional concern that the grant of a below-market *option* (as proposed by the Low-Income Housing Tax Credit Act of 1989) was a substantial enough relinquishment of one of the benefits of ownership that true ownership was at issue" under tax principles that permit the allocation of Section 42 tax credits to investors. Tracy A. Kaye, *Sheltering Social Policy in the Tax Code: The Low-Income Housing Credit*, 38 VILLANOVA L.R. 871, 893 (1993) (emphasis added). Congress therefore enacted a version of Section 42(i)(7) that instead permitted the grant of a *right of first refusal*, which—unlike an option— "does not give the holder the power to compel an unwilling owner to sell." *Id.* at 897. By structuring Section 42(i)(7) in this way, Congress ensured that "non-profit groups [do not have] . . . the power to compel an unwilling owner to sell." *Id.*; *see also* 136 Cong. Rec. 30528 (Oct. 18, 1990 Senate Report) (describing Section 42(i)(7) ROFR as applying "should the owner decide to sell").

6. ***Second***, SHAG and SHAC entered into a "Global Indemnity Agreement" whereby for-profit developer Pacific Northern Construction Company ("PNCC") and several of its affiliates—many of whom are also affiliated with SHAG and SHAC—agreed to indemnify SHAG and SHAC from certain liabilities in exchange for an assignment of economic ownership interests arising out of SHAG or SHAC's exercise of Rights of First Refusal to purchase, *inter alia*, the LIHTC projects owned by the Project Partnerships. Specifically, SHAG and SHAC agreed that if they exercised their Rights of First Refusal to purchase any of the LIHTC projects owned by the Project Partnerships, then the for-profit companies would "maintain the same direct or indirect economic ownership percentage in each of the Facilities" that they held prior to the exercise, and that SHAG and/or SHAC would "succeed to the direct or indirect economic ownership percentage of the tax credit investor limited partners at the time of the exit of such tax



**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

credit investor limited partners from the Project Partnerships." (Answer and Counterclaims, Ex. A at 2 (Global Indemnity Agreement).)

7. SHAG, PNCC, and their affiliates strenuously resisted disclosure of the Global Indemnity Agreement to AMTAX/Protech. These efforts to hide this agreement confirm that SHAG is working in concert with the Managing General Partners of the Project Partnerships and other signatories to the Global Indemnity Agreement to force AMTAX/Protech out of the Project Partnerships while ensuring that PNCC and its for-profit affiliates continue to enjoy their direct and indirect ownership and economic interests.

8. The Global Indemnity Agreement improperly seeks to assign ownership interests arising out of the exercise of SHAG's Rights of First Refusal to for-profit entities, an illegal maneuver that eviscerates Congress' decision to limit rights of first refusal to purchase LIHTC projects under Section 42(i)(7) to "tenants," "resident management corporation[s]," or "qualified nonprofit organization[s]." 26 U.S.C. § 42(i)(7). The Global Indemnity Agreement thumbs its nose at this limitation, and because "the relevant limited partnership agreement provisions at issue in this matter must be interpreted in the context of Section 42" (SHAG Complaint ¶ 2), it also prevents SHAG from exercising its Rights of First Refusal under the applicable partnership agreements. Indeed, permitting SHAG to purchase the LIHTC projects notwithstanding the existence of the Global Indemnity Agreement cannot be reconciled with the requirements of Section 42(i)(7), and would jeopardize the tax credits that the partnership agreements are specifically drafted to protect.

9. The Managing General Partners—Counter-Defendants SHAG, SHAC, Steel Lake, Lakewood Meadows, Lynnwood, and Woodlands—have colluded with SHAG and other signatories to the Global Indemnity Agreement in trying to divest AMTAX/Protech of their ownership interests in the Project Partnerships and force the sale of the LIHTC projects in a manner that is not permitted under the applicable partnership agreements or Section 42, and on terms that benefit the Managing General Partners and their affiliates at the expense of



**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

AMTAX/Protech. This conduct violates the Managing General Partners' fiduciary duties to AMTAX/Protech, which provides grounds for AMTAX/Protech to remove the Managing General Partners pursuant to Section 4.5.A(iv)(2) of the applicable partnership agreements.

10. The Managing General Partners have also repeatedly failed to furnish financial reports as required in Section 12.1 of the applicable partnership agreements despite numerous requests from AMTAX/Protech, and have also failed to pay penalties required under Section 12.1.I of the partnership agreements ("Report Penalties") based on their failure to deliver the reports when due. These failures constitute further independent bases for removing the Managing General Partners pursuant to Section 4.5.A(iv)(6) and (7) of the applicable partnership agreements.

11. AMTAX/Protech accordingly seek a declaratory judgment that:

(a) SHAG's Section 42(i)(7) Rights of First Refusal under the applicable partnership agreements have not been triggered;

(b) SHAG cannot exercise its Section 42(i)(7) Rights of First Refusal because SHAG improperly assigned economic ownership interests arising out of those Rights of First Refusal to for-profit affiliates pursuant to the Global Indemnity Agreement in violation of Section 42(i)(7) and the applicable partnership agreements; and

(c) AMTAX/Protech may remove SHAG, SHAC, Steel Lake, Lynnwood, Lakewood Meadows, and Woodlands as Managing General Partners for the Project Partnerships pursuant to AMTAX/Protech's rights under Section 4.5.A(iv) of the applicable partnership agreements based on (i) their improper efforts to sell the affordable housing projects at issue to an affiliate (or, in one instance, to itself) at a below-market price without the consent of AMTAX/Protech or the Project Partnerships, (ii) their repeated failures to furnish reports as required in Section 12.1 of the applicable partnership agreements, and (iii) their failure to pay the Report Penalties within thirty days of being due.



**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

## II. PARTIES

12. Counter-Plaintiff AH 260 is a limited liability company organized and existing under the laws of the State of Ohio, with its principal place of business in Denver, Colorado. AH 260 is the Investor Limited Partner of Meridian Court Apartments Limited Partnership, which owns the Meridian Court Apartments Project located in Federal Way, Washington.

13. Counter-Plaintiff AH 259 is a limited liability company organized and existing under the laws of the State of Ohio, with its principal place of business in Denver, Colorado. AH 259 is the Investor Limited Partner of Auburn North Associates Limited Partnership, which owns the Auburn Court Apartments Project located in Auburn, Washington.

14. Counter-Plaintiff AH 261 is a limited liability company organized and existing under the laws of the State of Ohio, with its principal place of business in Denver, Colorado. AH 261 is the Investor Limited Partner of Capitol Way Associates Limited Partnership, which owns the Boardwalk Apartments Project located in Olympia, Washington.

15. Counter-Plaintiff AH 258 is a limited liability company organized and existing under the laws of the State of Ohio, with its principal place of business in Denver, Colorado. AH 258 is the Investor Limited Partner of Racine Street Associates Limited Partnership, which owns the WoodRose Apartments Project located in Bellingham, Washington.

16. Counter-Plaintiff AH 257 is a limited liability company organized and existing under the laws of the State of Ohio, with its principal place of business in Denver, Colorado. AH 257 is the Investor Limited Partner of Lakewood Meadows Associates Limited Partnership, which owns the Lakewood Meadows Apartments Project located in Lakewood, Washington.

17. Counter-Plaintiff AH 164 is a limited liability company organized and existing under the laws of the State of Ohio, with its principal place of business in Denver, Colorado. AH 164 is the Investor Limited Partner of Alderwood Court Associates Limited Partnership, which owns the Alderwood Court Apartments Project located in Lynnwood, Washington.



**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

18. Counter-Plaintiff AH 109 is a limited liability company organized and existing under the laws of the State of Ohio, with its principal place of business in Denver, Colorado. AH 109 is the Investor Limited Partner of Woodlands Apartments (2001) Limited Partnership, which owns the Woodlands Apartments Project located in Kirkland, Washington.

19. Counter-Plaintiff Protech W is a limited liability company organized and existing under the laws of the State of Ohio, with its principal place of business in Denver, Colorado. Protech W is the Special Limited Partner of Meridian Court Apartments Limited Partnership, Auburn North Associates Limited Partnership, Capitol Way Associates Limited Partnership, Racine Street Associates Limited Partnership, and Lakewood Meadows Associates Limited Partnership.

20. Counter-Plaintiff Protech 2002-A is a limited liability company organized and existing under the laws of the State of Ohio, with its principal place of business in Denver, Colorado. Protech 2002-A is the Special Limited Partner of Alderwood Court Associates Limited Partnership.

21. Counter-Plaintiff Protech 2001-B is a limited liability company organized and existing under the laws of the State of Ohio, with its principal place of business in Denver, Colorado. Protech 2001-B is the Special Limited Partner of Woodlands Apartments (2001) Limited Partnership.

22. Plaintiff and Counter-Defendant SHAG is a nonprofit corporation organized and existing under the laws of the State of Washington, with its principal place of business in the State of Washington. SHAG is the Managing General Partner of Auburn North Associates Limited Partnership, and purports to be the lessee of all of the affordable housing projects at issue in this litigation.

23. Counter-Defendant SHAC is a corporation organized and existing under the laws of the State of Washington, with its principal place of business in the State of Washington.



**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

SHAC is a wholly-owned subsidiary of SHAG, and is the Managing General Partner of Capitol Way Associates Limited Partnership and Racine Street Associates Limited Partnership.

24. Counter-Defendant Steel Lake is a limited liability company organized and existing under the laws of the State of Washington, with its principal place of business in the State of Washington. Steel Lake is the Managing General Partner of Meridian Court Apartments Limited Partnership, an affiliate of developer PNCC, and a signatory to the Global Indemnity Agreement.

25. Counter-Defendant Lakewood Meadows is a limited liability company organized and existing under the laws of the State of Washington, with its principal place of business in the State of Washington. Lakewood Meadows is the Managing General Partner of Lakewood Meadows Associates Limited Partnership. SHAC is the Manager of Lakewood Meadows, and PNCC is a Member.

26. Counter-Defendant Lynnwood is a limited liability company organized and existing under the laws of the State of Washington, with its principal place of business in the State of Washington. Lynnwood is the Managing General Partner of Alderwood Court Associates Limited Partnership. SHAC is the Manager of Lynnwood, and PNCC is a Member.

27. Counter-Defendant Woodlands is a limited liability company organized and existing under the laws of the State of Washington, with its principal place of business in the State of Washington. Woodlands is the Managing General Partner of Woodlands Apartments (2001) Limited Partnership, and SHAC is Woodlands' Manager.

## III. JURISDICTION AND VENUE

28. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds the sum of $75,000, exclusive of interest, attorneys' fees and costs, and is between citizens of different States.



**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

29. These counterclaims seek declaratory relief pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201 and 2202, which grants this Court authority to declare the rights and other legal relations surrounding questions of actual controversy that exist between the Counter-Plaintiffs and Counter-Defendants.

30. Venue is proper in the United States District Court for the Western District of Washington under 28 U.S.C. § 1391 because the LIHTC projects at issue are properties located in this District, and because the parties have agreed to venue and personal jurisdiction in this District.

31. Counter-Defendants SHAC, Steel Lake, Lakewood Meadows, Lynnwood, and Woodlands may be joined as parties pursuant to Rule 19 and/or Rule 20 of the Federal Rules of Civil Procedure.

## IV. FACTS

**The LIHTC Program**

32. Congress passed the LIHTC provisions in Section 42 of the Internal Revenue Code in order to promote private investment in the development of affordable housing. Section 42 permits investors who commit capital to developing and operating affordable housing projects to earn tax credits generated by those projects, as well as tax deductions arising out of any depreciation of the investor's capital account and other benefits attendant to their ownership interests.

33. LIHTC investments are typically structured as a limited partnership between an investor limited partner, who provides the necessary capital, and a general partner, who is responsible for developing and operating the project. As is the case here, the investor partner typically acts in concert with a special limited partner, and the general partner is often either a qualified nonprofit organization focused on affordable housing, or works with such an organization, which receive certain favorable treatment under Section 42.



**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

34. For a LIHTC investment to be treated as a partnership for tax purposes, the tax credits generated by the LIHTC project must be allocated proportionately in accordance with the partners' respective ownership interests in the partnership that owns the project—i.e., the partnership must have "economic substance." As a result, investor limited partners and special limited partners such as AMTAX/Protech typically hold a 99% or greater ownership interest in the project partnerships in which they invest. While the tax credits and other tax advantages are a primary benefit of the investment, LIHTC partnerships must have a tax-independent expectation of profit, and the rights of investor limited partners and special limited partners such as AMTAX/Protech to share in any such profit are determined by the express terms of the applicable partnership agreements.

35. Partnership agreements such as those for the Project Partnerships often contain provisions giving the various partners certain rights to effect a disposition of the partnership following the end of the fifteen-year Compliance Period in which the tax credits are fully earned and retained. These provisions can include options, forced sale rights, and rights of first refusal.

36. As noted above, qualified nonprofit organizations that focus on affordable housing receive certain favorable treatment under Section 42. One example of this favorable treatment is Section 42(i)(7)(A), which states: "No Federal income tax benefit shall fail to be allowable to the taxpayer with respect to any qualified low-income building merely by reason of a right of 1st refusal held by the tenants (in cooperative form or otherwise) or resident management corporation of such building or by a qualified nonprofit organization (as defined in subsection (h)(5)(c)) or government agency to purchase the property after the close of the compliance period for a price which is not less than the minimum purchase price determined under subparagraph (B)."

37. The minimum purchase set by Section 42(i)(7)(B) may be, though is not always, less than fair market value. As a result, at the time of Section 42(i)(7)'s enactment, "there was congressional concern that the grant of a below-market *option* (as proposed by the Low-Income



**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

Housing Tax Credit Act of 1989) was a substantial enough relinquishment of one of the benefits of ownership that true ownership was at issue" under tax principles that permit the allocation of Section 42 tax credits to investors. Tracy A. Kaye, Sheltering Social Policy in the Tax Code: The Low-Income Housing Credit, 38 VILLANOVA L.R. 871, 893 (1993) (emphasis added). Congress therefore enacted a version of Section 42(i)(7) that permitted the grant of a *right of first refusal*, which—unlike an option— "does not give the holder the power to compel an unwilling owner to sell." *Id.* at 897. By structuring Section 42(i)(7) in this way, Congress ensured that "non-profit groups [do not have] . . . the power to compel an unwilling owner to sell." *Id.*; *see also* 136 Cong. Rec. 30528 (Oct. 18, 1990 Senate Report) (describing Section 42(i)(7) ROFR as applying "should the owner decide to sell").

38. The distinction Congress drew between options and rights of first refusal when crafting Section 42(i)(7) is not simply a legislative creation, but instead has a long history in common law. *See, e.g,. Robroy Land Co. v. Prather*, 95 Wn.2d 66, 70, 622 P.2d 367, 369 (1980) ("An option creates in the optionee a power to compel the owner of property to sell it at a stipulated price whether or not he be willing to part with ownership. A [ROFR] does not give to the [ROFR-holder] the power to compel an unwilling owner to sell; it merely requires the owner, when and if he decides to sell, to offer the property first to the person entitled to the [ROFR], at the stipulated price.") (quoting 6 American Law of Property, s. 26.64, p. 507 (1952)).

**The Partnership Agreements**

39. The partnership agreements for the Project Partnerships (the "Partnership Agreements"), while not identical, are all substantially similar, and share several key provisions.

***Purchase and Sale Provisions***

40. Section 7.1.B(viii) of the Partnership Agreements prevent the Managing General Partner from selling the affordable housing projects without the consent of AMTAX/Protech.

41. Section 7.4.J gives the Managing General Partner the option during a twenty-four month period beginning at the end of the Compliance Period to purchase the property at a price



**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

that is the greater of fair market value (as determined through an appraisal process) and an amount determined by Partnership accountants that is sufficient to pay all outstanding debt and taxes. Because this purchase right is an option, the consent of AMTAX/Protech is not required for the Managing General Partners to purchase the LIHTC projects pursuant to Section 7.4.J.

42. Section 7.4.K gives AMTAX/Protech the right to force a sale of the LIHTC projects ("Forced Sale Right"), *subject to* the Managing General Partner's exercise of its Option in Section 7.4.J. Section 7.4.K further provides that if AMTAX/Protech exercises its Forced Sale Right—i.e., if they demonstrate a desire to sell—then SHAG may exercise its Right of First Refusal in Section 7.4.L, discussed immediately below.

43. Section 7.4.L provides that, "[n]otwithstanding Paragraphs 7.4J and 7.4K above, for a period of twenty-four (24) months following the close of the Compliance Period as determined by the Code, if (i) the Senior Housing Assistance Group (the 'Purchaser') is then the Lessee and Operator of the Apartment Complex pursuant to the Operating Use Lease, and (ii) the Purchaser is then a qualified nonprofit organization as defined under Section 42(h)(5)(C) of the Code, the Purchaser shall have a 'Right of First Refusal' (the 'Special ROFR') to purchase the Project at a purchase price (the 'Purchase Price') equal to the sum of (1) the minimum purchase price as determined under Section 42(i)(7)(B) of the Code (the 'Statutory Minimum Purchase Price') and (2) the amount of each of the items set forth in Section 6.2B(ii), Paragraphs First through Seventh thereof, to the extent that the amount of such items are not already reflected in the Statutory Minimum Purchase Price in order to avoid any duplication."

44. As explained above, unlike the Managing General Partners' Option in Section 7.4.J and AMTAX/Protech's Forced Sale Right in Section 7.4.K, SHAG's Right of First Refusal in Section 7.4.L, by definition, cannot be self-triggered. Indeed, if it could, then the Option—which requires payment of a purchase price reflecting fair market value—would be superfluous, as SHAG and its affiliates would prefer to self-trigger SHAG's Right of First Refusal and pay a lower price to force AMTAX/Protech out of the Project Partnerships against their will whenever



**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

the ROFR price was less than fair market value. Instead, the Right of First Refusal under 7.4.L serves a different purpose: to protect SHAG from having the LIHTC projects sold out from under it in situations where there has been a significant appreciation in fair market value, because an effort to sell in that situation triggers SHAG's right to purchase the projects at below market prices as provided in Section 7.4.L of the Partnership Agreements and permitted under Section 42. Accordingly, where, as here, there was never an intention to sell, SHAG's Rights of First Refusal were never triggered, and thus cannot be exercised.

45. The fact that SHAG's Rights of First Refusal under Section 7.4.L of the Partnership Agreements have never been triggered does not mean that they do not have value, or that SHAG did not get a "major benefit of its bargain." (Complaint ¶ 9.) To the contrary, the benefit that SHAG's Rights of First Refusal provided was to discourage AMTAX/Protech from selling the LIHTC projects out from under SHAG in order to capture their appreciated value. Thus, the fact that the Rights of First Refusal have not been triggered means that they are working exactly as intended.

***Obligations of Managing General Partners***

46. The Partnership Agreements provide in Section 7.4.G that "[n]o General Partner shall contract away the fiduciary duty owed at common law to the Limited Partners."

47. Section 12.1 of the Partnership Agreements requires the Managing General Partners to furnish certain financial and tax information to AMTAX/Protech. Section 12.1.I provides that "[f]ailure to provide the reports under Section 12.1 within the time requirements set forth therein will result in the assessment of a $100 per day penalty due and payable to the Investor Limited Partner, until the tax information and/or reports are received," which Section 12.1.I labels "Report Penalties." These penalties reflect the importance AMTAX/Protech placed on the timely delivery of tax and financial information, which is critically important given, among other reasons, the deadlines to comply with AMTAX/Protech's obligations to the tax credit funds and investors in the tax credit funds.



**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

48. Finally, Section 4.5.A(iv) of the Partnership Agreements provides that AMTAX/Protech may remove the Managing General Partners from the Project Partnerships based on breaches of fiduciary duty, repeated failures to furnish required and requested reports, and failure to pay Report Penalties.

**The Global Indemnity Agreement**

49. PNCC and its affiliates, including Counter-Defendant Steel Lake (developer for the Meridian Court Apartments Project and Managing General Partner of Meridian Court Apartments Limited Partnership), developed all seven of the LIHTC projects owned by the Project Partnerships.

50. On information and belief, PNCC often partners with SHAG to develop, build, and/or manage affordable housing projects in the State of Washington. Although PNCC is a for-profit developer, its President, Bryan Park, has been identified as a representative of SHAG, which holds itself out as a tax-exempt nonprofit organization. For example, Park was listed on Senate Bill Report HB 1605 as "Bryan Park, Senior Housing Assistance Group" in connection with testimony he provided to a Washington State Senate Committee Hearing on Government Operations & Security on April 13, 2015. In addition, it appears based on filings with the Washington Secretary of State that PNCC's offices and SHAG's offices are both located in the same building at 201 27th Avenue SE in Puyallup, WA 98374.

51. Park's relationships with both for-profit PNCC and nonprofit SHAG jeopardizes SHAG's status as a "qualified nonprofit organization" under Section 42, which does not allow nonprofit organizations to be affiliated with or controlled by for-profit entities. *See* 26 U.S.C. § 42(h)(5)(C)(ii).

52. SHAG and SHAC entered into a "Global Indemnity Agreement" dated July 12, 2001 with PNCC and its affiliates, including Steel Lake. A true and correct copy of the Global Indemnity Agreement is attached hereto as Exhibit A. Paragraph 3 of the Global Indemnity Agreement states: "In exchange for executing and delivering this Agreement and continuing to



**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

provide financing support, guarantees and indemnifications to or for the benefit of the Project Partnerships and the General Partners with respect to the Facilities pursuant to the Development Contracts, the Project Financing, the Equity Financing, and/or the Project Partnership Agreements, and for agreeing to pay any tax liability of the tax credit investor limited partners and all transaction costs associated with the exercise of a ROFR, it is understood and agreed by the parties that the ownership of the Facilities after the exercise of the ROFR will be arranged such that the Developers and/or Co-General Partners affiliated with PNCC will maintain the same direct or indirect economic ownership percentage in each of the Facilities as they enjoyed immediately before the expiration of the 15-year tax credit compliance period and the exercise of the ROFR and SHAG and/or SHAC would succeed to the direct or indirect economic ownership percentage of the tax credit investor limited partners at the time of the exit of such tax credit investor limited partners from the Project Partnerships."

53. By cutting this secret side deal, SHAG committed to its for-profit partners ownership interests obtained through the exercise of a Section 42(i)(7) ROFR that SHAG could only hold by virtue of its status as a qualified nonprofit organization. This attempted end-run around the nonprofit status requirement in Section 42(i)(7) is inconsistent not only with the LIHTC statute itself, but also with the purpose of the Partnership Agreements, which are intended to comply with, and must be read in conjunction with, Section 42.

54. The "Global Indemnity Agreement" incorporated an "Exhibit A" that identifies all of the individual Project Partnerships covered by its terms. Each of the seven Project Partnerships at issue in this litigation are included on Exhibit A.

**Meridian Court**

55. The Meridian Court Apartments Project is a "Qualified Low-Income Housing Project" eligible for an allocation of tax credits under Section 42 of the Code.

56. The owner of the Meridian Court Apartments Project is Meridian Court Apartments Limited Partnership, a Washington limited partnership.



**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

57. The purpose of Meridian Court Apartments Limited Partnership is to develop and operate affordable housing under the LIHTC program, and thus the partnership agreement governing Meridian Court Apartments Limited Partnership (the "Meridian Court Partnership Agreement") must be interpreted in the context of the LIHTC requirements set forth in Section 42 of the Code.

58. Defendant and Counter-Plaintiff AH 260 is the Investor Limited Partner of Meridian Court Apartments Limited Partnership.

59. Defendant and Counter-Plaintiff Protech W is the Special Limited Partner of Meridian Court Apartments Limited Partnership.

60. Counter-Defendant Steel Lake was the developer of the Meridian Court Apartments Project, and is the Managing General Partner of Meridian Court Apartments Limited Partnership. Steel Lake also signed the Global Indemnity Agreement as an affiliate of PNCC.

61. Section 7.1.B(viii) of the Meridian Court Partnership Agreement prohibits Steel Lake from selling the Meridian Court Apartments Project without the consent of AH 260.

62. Section 7.4.J gives Steel Lake an Option during a twenty-four month period beginning at the end of the Compliance Period to purchase the property at a price that is the greater of fair market value (as determined through an appraisal process) and an amount determined by Partnership accountants that is sufficient to pay all outstanding debt and taxes. Because it holds an Option, Steel Lake does not need the consent of AH 260 and/or Protech W in order to purchase the Meridian Court Apartments Project pursuant to Section 7.4.J.

63. Section 7.4.K gives AH 260 the right to force a sale of the Meridian Court Apartments Project ("Forced Sale Right"), *subject to* Steel Lake's exercise of its Option in Section 7.4.J. Section 7.4.K further provides that if AH 260 exercises its Forced Sale Right—i.e., if it demonstrates a desire to sell—then SHAG may exercise its Right of First Refusal in Section 7.4.L, discussed immediately below.



**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

64. Section 7.4.L provides that, "[n]otwithstanding Paragraphs 7.4J and 7.4K above, for a period of twenty-four (24) months following the close of the Compliance Period as determined by the Code, if (i) the Senior Housing Assistance Group (the 'Purchaser') is then the Lessee and Operator of the Apartment Complex pursuant to the Operating Use Lease, and (ii) the Purchaser is then a qualified nonprofit organization as defined under Section 42(h)(5)(C) of the Code, then the Purchaser shall have a 'Right of First Refusal' (the 'Special ROFR') to purchase the Project at a purchase price (the 'Purchase Price') equal to the sum of (1) the minimum purchase price as determined under Section 42(i)(7)(B) of the Code (the 'Statutory Minimum Purchase Price') and (2) the amount of each of the items set forth in Section 6.2B(ii), Paragraphs First through Seventh thereof, to the extent that the amount of such items are not already reflected in the Statutory Minimum Purchase Price in order to avoid any duplication."

65. To ensure that Meridian Court Apartments Limited Partnership achieves its purpose of generating tax credits for its investors, the Right of First Refusal in Section 7.4.L must be interpreted consistently with the statutory language in Section 42(i)(7), which specifically limits the scope of acceptable below-market purchase rights. Section 42(i)(7) provides that "[n]o Federal income tax benefit shall fail to be allowable to the taxpayer with respect to any qualified low-income building merely by reason of a right of 1st refusal held by the tenants (in cooperative form or otherwise) or resident management corporation of such building or by a qualified nonprofit organization (as defined in subsection (h)(5)(c)) or government agency to purchase the property after the close of the compliance period for a price which is not less than the minimum purchase price determined under subparagraph (B)."

66. The Global Indemnity Agreement dated July 12, 2001 that SHAG and SHAC entered into with PNCC and its affiliates, including Steel Lake, incorporated an "Exhibit A" that identifies the Meridian Court Apartments Limited Partnership as being covered by its terms.

67. The Compliance Period for the Meridian Court Apartments Limited Partnership expired on December 31, 2012, which triggered the twenty-four month period applicable to the



**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

option, forced sale, and first refusal rights set forth in Section 7.4.J, 7.4.K, and 7.4.L of the Meridian Court Partnership Agreement.

68. SHAG purported to exercise its Right of First Refusal under Section 7.4.L of the Meridian Court Partnership Agreement by a letter bearing the date of December 30, 2014—i.e., the last day before expiration of the twenty-four month period.

69. At the time that SHAG purported to exercise its Right of First Refusal, AH 260 had not exercised its Forced Sale Right under Section 7.4.K, nor had AH 260 or Protech W given any other indication of a desire to sell the Meridian Court Apartments Project. Because SHAG's Right of First Refusal was never triggered, SHAG's attempted exercise of that right is ineffective and invalid.

70. While SHAG claims to have provided notice to AH 260 and Protech W of a purportedly bona fide third party offer to purchase the Meridian Court Apartments Project, the only "offer" received was an eleventh-hour notice from Steel Lake indicating that it was exercising its Option under Section 7.4.J of the Meridian Court Partnership Agreement.

71. Steel Lake's exercise of its Option does not trigger SHAG's Right of First Refusal under Section 7.4.L. Indeed, in contrast to Section 7.4.K, which provides that "[i]n the event that the Investor Limited Partner exercises [its Forced Sale Right], [SHAG] shall have a Right of First Refusal to Purchase the Project in accordance with the provisions of Paragraph 7.4.L hereof," Section 7.4.J contains no such language. This was a specifically bargained for protection, which was particularly important given that the Global Indemnity Agreement between SHAG and Steel Lake created a material risk of self-dealing at the expense of AH 260 and Protech W as limited partners.

72. Even if the Meridian Court Apartments Limited Partnership had received a bona fide purchase offer for the Meridian Court Apartments Project, SHAG's Right of First Refusal would only be triggered if the Partnership was actually interested in accepting the offer. Because a sale of the Partnership's property requires the consent of AH 260 under Section 7.1.B(viii), and



**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

because AH 260's consent was neither sought nor provided in connection with any offer, SHAG's Right of First Refusal was never triggered, and has now expired.

73. Moreover, even if it had been triggered, SHAG could not exercise its Right of First Refusal under Section 7.4.L of the Meridian Court Partnership Agreement in light of the Global Indemnity Agreement that SHAG and SHAC entered into with PNCC and its for-profit affiliates. As explained above, the Global Indemnity Agreement improperly seeks to assign ownership interests arising out of the exercise of SHAG's Rights of First Refusal under Section 7.4.L to for-profit entities, an effort that is not permitted by Section 42(i)(7), which limits rights of first refusal to purchase LIHTC projects to "tenants," "resident management corporation[s]," or "qualified nonprofit organization[s]." 26 U.S.C. § 42(i)(7). Because "the relevant limited partnership agreement provisions at issue in this matter must be interpreted in the context of Section 42" (SHAG Complaint ¶ 2), the Global Indemnity Agreement conflicts with Section 42, and thus prevents SHAG from exercising its Rights of First Refusal under the Meridian Court Partnership Agreement.

74. By seeking to force a sale of the Meridian Court Apartments Project to SHAG at a below-market price in violation of the Meridian Court Partnership Agreement and in contravention of Section 42, Steel Lake is seeking to place its own interests ahead of the interests of its partners in breach of its fiduciary duties as Managing General Partner of the Meridian Court Apartments Limited Partnership. Steel Lake's self-dealing is particularly stark here in light of the Global Indemnity Agreement, which ensures that Steel Lake will continue to hold its ownership interest in the LIHTC project even after it forces AH 260 and Protech W out.

75. AH 260 and Protech W are entitled under Section 4.5.A(iv)(2) of the Meridian Court Partnership Agreement to remove Steel Lake as Managing General Partner based on its breaches of its fiduciary duties.

76. Steel Lake has also repeatedly failed to furnish financial reports as required in Section 12.1 of the Meridian Court Partnership Agreement despite numerous requests from AH



**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

260 and Protech W. These requests included written correspondence dated April 27, 2017 and May 25, 2017. Both of these notices demanded that Steel Lake provide overdue tax information as well as an audited financial statement for 2016, and specifically referenced the contractual "Report Penalties" in Section 12.1.I of the Meridian Court Partnership Agreement. Steel Lake, however, did not respond to either of these letters, and instead SHAG elected to file this action.

77. Steel Lake's repeated and continuing failure to furnish reports to the Investor Limited Partner and Special Limited Partner and to pay resulting Report Penalties each constitutes an independent basis for removing Steel Lake pursuant to Section 4.5.A(iv)(6) and (7) of the Meridian Court Partnership Agreement.

**Auburn Court**

78. The Auburn Court Apartments Project is a "Qualified Low-Income Housing Project" eligible for an allocation of tax credits under Section 42 of the Code.

79. The owner of the Auburn Court Apartments Project is Auburn North Associates Limited Partnership, a Washington limited partnership.

80. The purpose of Auburn North Associates Limited Partnership is to develop and operate affordable housing under the LIHTC program, and thus the partnership agreement governing Auburn North Associates Limited Partnership (the "Auburn Court Partnership Agreement") must be interpreted in the context of the LIHTC requirements set forth in Section 42 of the Code.

81. Defendant and Counter-Plaintiff AH 259 is the Investor Limited Partner of Auburn North Associates Limited Partnership.

82. Defendant and Counter-Plaintiff Protech W is the Special Limited Partner of Auburn North Associates Limited Partnership.

83. Fox Housing Enterprises, Inc. ("Fox") was the developer of the Auburn Court Apartments Project, and also signed the Global Indemnity Agreement as an affiliate of PNCC. SHAG is the Managing General Partner of Auburn North Associates Limited Partnership.



**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

84. Section 7.1.B(viii) of the Auburn Court Partnership Agreement prohibits SHAG from selling the Auburn Court Apartments Project without the consent of AH 259.

85. Section 7.4.J gives SHAG an Option during a twenty-four month period beginning at the end of the Compliance Period to purchase the property at a price that is the greater of fair market value (as determined through an appraisal process) and an amount determined by Partnership accountants that is sufficient to pay all outstanding debt and taxes. Because it holds an Option, SHAG does not need the consent of AH 259 and/or Protech W in order to purchase the Auburn Court Apartments Project pursuant to Section 7.4.J.

86. Section 7.4.K gives AH 259 the right to force a sale of the Auburn Court Apartments Project ("Forced Sale Right"), *subject to* SHAG's exercise of its Option in Section 7.4.J. Section 7.4.K further provides that if AH 259 exercises its Forced Sale Right—i.e., if it demonstrates a desire to sell—then SHAG may exercise its Right of First Refusal in Section 7.4.L, discussed immediately below.

87. Section 7.4.L provides that, "[n]otwithstanding Paragraphs 7.4J and 7.4K above, for a period of twenty-four (24) months following the close of the Compliance Period as determined by the Code, if (i) the Senior Housing Assistance Group (the 'Purchaser') is then the Lessee and Operator of the Apartment Complex pursuant to the Operating Use Lease, and (ii) the Purchaser is then a qualified nonprofit organization as defined under Section 42(h)(5)(C) of the Code, then the Purchaser shall have a 'Right of First Refusal' (the 'Special ROFR') to purchase the Project at a purchase price (the 'Purchase Price') equal to the sum of (1) the minimum purchase price as determined under Section 42(i)(7)(B) of the Code (the 'Statutory Minimum Purchase Price') and (2) the amount of each of the items set forth in Section 6.2B(ii), Paragraphs First through Seventh thereof, to the extent that the amount of such items are not already reflected in the Statutory Minimum Purchase Price in order to avoid any duplication."

88. To ensure that Auburn North Associates Limited Partnership achieves its purpose of generating tax credits for its investors, the Right of First Refusal in Section 7.4.L must be



**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

interpreted consistently with the statutory language in Section 42(i)(7), which specifically limits the scope of acceptable below-market purchase rights. Section 42(i)(7) provides that "[n]o Federal income tax benefit shall fail to be allowable to the taxpayer with respect to any qualified low-income building merely by reason of a right of 1st refusal held by the tenants (in cooperative form or otherwise) or resident management corporation of such building or by a qualified nonprofit organization (as defined in subsection (h)(5)(c)) or government agency to purchase the property after the close of the compliance period for a price which is not less than the minimum purchase price determined under subparagraph (B)."

89. The Global Indemnity Agreement dated July 12, 2001 that SHAG and SHAC entered into with PNCC and its affiliates, including Fox, incorporated an "Exhibit A" that identifies Auburn Court Apartments Limited Partnership as being covered by its terms.

90. The Compliance Period for the Auburn North Associates Limited Partnership expired on December 31, 2013, which triggered the twenty-four month period applicable to the option, forced sale, and first refusal rights set forth in Section 7.4.J, 7.4.K, and 7.4.L of the Auburn Court Partnership Agreement.

91. SHAG purported to exercise its Right of First Refusal under Section 7.4.L of the Auburn Court Partnership Agreement by a letter bearing the date of December 30, 2015—again, the last day before expiration of the twenty-four month period.

92. At the time that SHAG purported to exercise its Right of First Refusal, AH 259 had not exercised its Forced Sale Right under Section 7.4.K, nor had AH 259 or Protech W given any other indication of a desire to sell the Auburn Court Apartments Project. Because SHAG's Right of First Refusal was never triggered, SHAG's attempted exercise of that right is ineffective and invalid.

93. While SHAG purported to provide notice to AH 259 and Protech W in letters dated December 29, 2015 and December 30, 2015 of purportedly bona fide third party offers to purchase the Auburn Court Apartments Project, SHAG rejected both of these offers in its



**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

capacity as Managing General Partner—one outright, and the other through a counteroffer rejected both of these offers.

94. Even if Auburn North Associates Limited Partnership had received a bona fide purchase offer for the Auburn Court Apartments Project, SHAG's Right of First Refusal would only be triggered if the Partnership was actually interested in accepting the offer. Because a sale of the Partnership's property requires the consent of AH 259 under Section 7.1.B(viii), and because AH 259's consent was neither sought nor provided in connection with any offer, SHAG's Right of First Refusal was never triggered, and has now expired.

95. Moreover, even if it had been triggered, SHAG could not exercise its Right of First Refusal under Section 7.4.L of the Auburn Court Partnership Agreement in light of the Global Indemnity Agreement that SHAG and SHAC entered into with PNCC and its for-profit affiliates. As explained above, the Global Indemnity Agreement improperly seeks to assign ownership interests arising out of the exercise of SHAG's Rights of First Refusal under Section 7.4.L to for-profit entities, an effort that is not permitted by Section 42(i)(7), which limits rights of first refusal to purchase LIHTC projects to "tenants," "resident management corporation[s]," or "qualified nonprofit organization[s]." 26 U.S.C. § 42(i)(7). Because "the relevant limited partnership agreement provisions at issue in this matter must be interpreted in the context of Section 42" (SHAG Complaint ¶ 2), the Global Indemnity Agreement conflicts with Section 42, and thus prevents SHAG from exercising its Rights of First Refusal under the Auburn Court Partnership Agreement.

96. By seeking to force a sale of the Auburn Court Apartments Project to SHAG at a below-market price in violation of the Auburn Court Partnership Agreement and in contravention of Section 42, SHAG is seeking to place its own interests ahead of the interests of its partners in breach of its fiduciary duties as Managing General Partner of the Auburn North Associates Limited Partnership. SHAG's self-dealing is particularly stark here in light of the Global



**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

Indemnity Agreement, which ensures that SHAG will continue to hold its ownership interest in the LIHTC project even after it forces AH 259 and Protech W out.

97. AH 259 and Protech W are entitled under Section 4.5.A(iv)(2) of the Auburn Court Partnership Agreement to remove SHAG as Managing General Partner based on its breaches of its fiduciary duties.

98. SHAG has also repeatedly failed to furnish financial reports as required in Section 12.1 of the Auburn Court Partnership Agreement despite numerous requests from AH 259 and Protech W. These requests included written correspondence dated April 27, 2017 and May 25, 2017. Both of these notices demanded that SHAG provide overdue tax information as well as an audited financial statement for 2016, and specifically referenced the contractual "Report Penalties" in Section 12.1.I of the Auburn Court Partnership Agreement. SHAG, however, did not respond to either of these letters, and instead elected to file this action.

99. SHAG's repeated and continuing failure to furnish reports to the Investor Limited Partner and Special Limited Partner and to pay resulting Report Penalties each constitutes an independent basis for removing SHAG pursuant to Section 4.5.A(iv)(6) and (7) of the Auburn Court Partnership Agreement.

**Boardwalk**

100. The Boardwalk Apartments Project is a "Qualified Low-Income Housing Project" eligible for an allocation of tax credits under Section 42 of the Code.

101. The owner of the Boardwalk Apartments Project is Capitol Way Associates Limited Partnership, a Washington limited partnership.

102. The purpose of Capitol Way Associates Limited Partnership is to develop and operate affordable housing under the LIHTC program, and thus the partnership agreement governing Capitol Way Associates Limited Partnership (the "Boardwalk Partnership Agreement") must be interpreted in the context of the LIHTC requirements set forth in Section 42 of the Code.



**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

103. Defendant and Counter-Plaintiff AH 261 is the Investor Limited Partner of Capitol Way Associates Limited Partnership.

104. Defendant and Counter-Plaintiff Protech W is the Special Limited Partner of Capitol Way Associates Limited Partnership.

105. Fox was the developer of the Boardwalk Apartments Project, and also signed the Global Indemnity Agreement as an affiliate of PNCC. SHAC is the Managing General Partner of Capitol Way Associates Limited Partnership.

106. Section 7.1.B(viii) of the Boardwalk Partnership Agreement prohibits SHAC from selling the Boardwalk Apartments Project without the consent of AH 261.

107. Section 7.4.J gives SHAC an Option during a twenty-four month period beginning at the end of the Compliance Period to purchase the property at a price that is the greater of fair market value (as determined through an appraisal process) and an amount determined by Partnership accountants that is sufficient to pay all outstanding debt and taxes. Because it holds an Option, SHAC does not need the consent of AH 261 and/or Protech W in order to purchase the Boardwalk Apartments Project pursuant to Section 7.4.J.

108. Section 7.4.K gives AH 261 the right to force a sale of the Boardwalk Apartments Project ("Forced Sale Right"), *subject to* SHAC's exercise of its Option in Section 7.4.J. Section 7.4.K further provides that if AH 261 exercises its Forced Sale Right—i.e., if it demonstrates a desire to sell—then SHAG may exercise its Right of First Refusal in Section 7.4.L, discussed immediately below.

109. Section 7.4.L provides that, "[n]otwithstanding Paragraphs 7.4J and 7.4K above, for a period of twenty-four (24) months following the close of the Compliance Period as determined by the Code, if (i) the Senior Housing Assistance Group (the 'Purchaser') is then the Lessee and Operator of the Apartment Complex pursuant to the Operating Use Lease, and (ii) the Purchaser is then a qualified nonprofit organization as defined under Section 42(h)(5)(C) of the Code, then the Purchaser shall have a 'Right of First Refusal' (the 'Special ROFR') to purchase



**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

the Project at a purchase price (the 'Purchase Price') equal to the sum of (1) the minimum purchase price as determined under Section 42(i)(7)(B) of the Code (the 'Statutory Minimum Purchase Price') and (2) the amount of each of the items set forth in Section 6.2B(ii), Paragraphs First through Seventh thereof, to the extent that the amount of such items are not already reflected in the Statutory Minimum Purchase Price in order to avoid any duplication."

110. To ensure that Capitol Way Associates Limited Partnership achieves its purpose of generating tax credits for its investors, the Right of First Refusal in Section 7.4.L must be interpreted consistently with the statutory language in Section 42(i)(7), which specifically limits the scope of acceptable below-market purchase rights. Section 42(i)(7) provides that "[n]o Federal income tax benefit shall fail to be allowable to the taxpayer with respect to any qualified low-income building merely by reason of a right of 1st refusal held by the tenants (in cooperative form or otherwise) or resident management corporation of such building or by a qualified nonprofit organization (as defined in subsection (h)(5)(c)) or government agency to purchase the property after the close of the compliance period for a price which is not less than the minimum purchase price determined under subparagraph (B)."

111. The Global Indemnity Agreement dated July 12, 2001 that SHAG and SHAC entered into with PNCC and its affiliates, including Fox, incorporated an "Exhibit A" that identifies the Capitol Way Associates Limited Partnership as being covered by its terms.

112. The Compliance Period for the Capitol Way Associates Limited Partnership expired on December 31, 2014, which triggered the twenty-four month period applicable to the option, forced sale, and first refusal rights set forth in Section 7.4.J, 7.4.K, and 7.4.L of the Boardwalk Partnership Agreement.

113. SHAG purported in written correspondence bearing the date of November 18, 2016 to exercise its Right of First Refusal under Section 7.4.L of the Boardwalk Partnership Agreement.



**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

114. At the time that SHAG purported to exercise its Right of First Refusal, AH 261 had not exercised its Forced Sale Right under Section 7.4.K, nor had AH 261 or Protech W given any other indication of a desire to sell the Boardwalk Apartments Project. Because SHAG's Right of First Refusal was never triggered, SHAG's attempted exercise of that right is ineffective and invalid.

115. While SHAG provided notice to AH 261 and Protech W in a letter bearing the date of November 17, 2016 of a purportedly bona fide third party offer to purchase the Boardwalk Apartments Project, AMTAX/Protech allege on information and belief that any offer that may have existed at that time was not genuine, but instead was tendered in an improper effort to self-trigger SHAG's Right of First Refusal. AMTAX/Protech further allege that even if Capitol Way Associates Limited Partnership had received a bona fide purchase offer for the Boardwalk Apartments Project, SHAG's Right of First Refusal would only be triggered if the Partnership was actually interested in accepting the offer. Because a sale of the Partnership's property requires the consent of AH 261 under Section 7.1.B(viii), and because AH 261's consent was neither sought nor provided in connection with any offer, SHAG's Right of First Refusal was never triggered, and has now expired.

116. Moreover, even if it had been triggered, SHAG could not exercise its Right of First Refusal under Section 7.4.L of the Boardwalk Partnership Agreement in light of the Global Indemnity Agreement that SHAG and SHAC entered into with PNCC and its for-profit affiliates. As explained above, the Global Indemnity Agreement improperly seeks to assign ownership interests arising out of the exercise of SHAG's Rights of First Refusal under Section 7.4.L to for-profit entities, an effort that is not permitted by Section 42(i)(7), which limits rights of first refusal to purchase LIHTC projects to "tenants," "resident management corporation[s]," or "qualified nonprofit organization[s]." 26 U.S.C. § 42(i)(7). Because "the relevant limited partnership agreement provisions at issue in this matter must be interpreted in the context of Section 42" (SHAG Complaint ¶ 2), the Global Indemnity Agreement does conflicts with



**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

Section 42, and thus prevents SHAG from exercising its Rights of First Refusal under the Boardwalk Partnership Agreement.

117. By seeking to force a sale of the Boardwalk Apartments Project to SHAG at a below-market price in violation of the Boardwalk Partnership Agreement and in contravention of Section 42, SHAC is seeking to place its own interests ahead of the interests of its partners in breach of its fiduciary duties as Managing General Partner of Capitol Way Associates Limited Partnership. SHAC's self-dealing is particularly stark here in light of the Global Indemnity Agreement, which ensures that SHAC will continue to hold its ownership interest in the LIHTC project even after it forces AH 261 and Protech W out.

118. AH 261 and Protech W are entitled under Section 4.5.A(iv)(2) of the Boardwalk Partnership Agreement to remove SHAC as Managing General Partner based on its breaches of its fiduciary duties.

119. SHAC has also repeatedly failed to furnish financial reports as required in Section 12.1 of the Boardwalk Partnership Agreement despite numerous requests from AH 261 and Protech W. These requests included written correspondence dated April 27, 2017 and May 25, 2017. Both of these notices demanded that SHAC provide overdue tax information as well as an audited financial statement for 2016, and specifically referenced the contractual "Report Penalties" in Section 12.1.I of the Boardwalk Partnership Agreement. SHAC, however, did not respond to either of these letters, and instead SHAG elected to file this action.

120. SHAC's repeated and continuing failure to furnish reports to the Investor Limited Partner and Special Limited Partner and to pay resulting Report Penalties each constitutes an independent basis for removing SHAC pursuant to Section 4.5.A(iv)(6) and (7) of the Boardwalk Partnership Agreement.

**WoodRose**

121. The WoodRose Apartments Project is a "Qualified Low-Income Housing Project" eligible for an allocation of tax credits under Section 42 of the Code.



**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

122. The owner of the WoodRose Apartments Project is Racine Street Associates Limited Partnership, a Washington limited partnership.

123. The purpose of Racine Court Associates Limited Partnership is to develop and operate affordable housing under the LIHTC program, and thus the partnership agreement governing Racine Street Associates Limited Partnership (the "WoodRose Partnership Agreement") must be interpreted in the context of the LIHTC requirements set forth in Section 42 of the Code.

124. Defendant and Counter-Plaintiff AH 258 is the Investor Limited Partner of Racine Street Associates Limited Partnership.

125. Defendant and Counter-Plaintiff Protech W is the Special Limited Partner of Racine Street Associates Limited Partnership.

126. Pacific Northern Development Associates, LLC ("PNDA") was the developer of the WoodRose Apartments Project, and also signed the Global Indemnity Agreement as an affiliate of PNCC. SHAC is the Managing General Partner of Racine Street Associates Limited Partnership.

127. Section 7.1.B(viii) of the WoodRose Partnership Agreement prohibits SHAC from selling the WoodRose Apartments Project without the consent of AH 258.

128. Section 7.4.J gives SHAC an Option during a twenty-four month period beginning at the end of the Compliance Period to purchase the property at a price that is the greater of fair market value (as determined through an appraisal process) and an amount determined by Partnership accountants that is sufficient to pay all outstanding debt and taxes. Because it holds an Option, SHAC does not need the consent of AH 258 and/or Protech W in order to purchase the WoodRose Apartments Project pursuant to Section 7.4.J.

129. Section 7.4.K gives AH 258 the right to force a sale of the WoodRose Apartments Project ("Forced Sale Right"), *subject to* SHAC's exercise of its Option in Section 7.4.J. Section 7.4.K further provides that if AH 258 exercises its Forced Sale Right—i.e., if it demonstrates a



**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

desire to sell—then SHAG may exercise its Right of First Refusal in Section 7.4.L, discussed immediately below.

130. Section 7.4.L provides that, "[n]otwithstanding Paragraphs 7.4J and 7.4K above, for a period of twenty-four (24) months following the close of the Compliance Period as determined by the Code, if (i) the Senior Housing Assistance Group (the 'Purchaser') is then the Lessee and Operator of the Apartment Complex pursuant to the Operating Use Lease, (ii) the Senior Housing Assistance Corporation is then a qualified corporation with respect to the Purchaser (as defined under Section 42(h)(5)(D)(ii) of the Code) and is a General Partner, and (iii) the Purchaser is then a qualified nonprofit organization as defined under Section 42(h)(5)(C) of the Code, then the Purchaser shall have a 'Right of First Refusal' (the 'Special ROFR') to purchase the Project at a purchase price (the 'Purchase Price') equal to the sum of (1) the minimum purchase price as determined under Section 42(i)(7)(B) of the Code (the 'Statutory Minimum Purchase Price') and (2) the amount of each of the items set forth in Section 6.2B(ii), Paragraphs First through Seventh thereof, to the extent that the amount of such items are not already reflected in the Statutory Minimum Purchase Price in order to avoid any duplication."

131. To ensure that the Racine Street Associates Limited Partnership achieves its purpose of generating tax credits for its investors, the Right of First Refusal in Section 7.4.L must be interpreted consistently with the statutory language in Section 42(i)(7), which specifically limits the scope of acceptable below-market purchase rights. Section 42(i)(7) provides that "[n]o Federal income tax benefit shall fail to be allowable to the taxpayer with respect to any qualified low-income building merely by reason of a right of 1st refusal held by the tenants (in cooperative form or otherwise) or resident management corporation of such building or by a qualified nonprofit organization (as defined in subsection (h)(5)(c)) or government agency to purchase the property after the close of the compliance period for a price which is not less than the minimum purchase price determined under subparagraph (B)."



**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

132. The Global Indemnity Agreement dated July 12, 2001 that SHAG and SHAC entered into with PNCC and its affiliates, including PNDA, incorporated an "Exhibit A" that identifies the Racine Street Associates Limited Partnership as being covered by its terms.

133. The Compliance Period for the Racine Street Associates Limited Partnership expired on December 31, 2015, which triggered the twenty-four month period applicable to the option, forced sale, and first refusal rights set forth in Section 7.4.J, 7.4.K, and 7.4.L of the WoodRose Partnership Agreement.

134. SHAG purported in written correspondence bearing the date of November 18, 2016 to exercise its Right of First Refusal under Section 7.4.L of the WoodRose Partnership Agreement.

135. At the time that SHAG purported to exercise its Right of First Refusal, AH 258 had not exercised its Forced Sale Right under Section 7.4.K, nor had AH 258 or Protech W given any other indication of a desire to sell the WoodRose Apartments Project. Because SHAG's Right of First Refusal was never triggered, SHAG's attempted exercise of that right is ineffective and invalid.

136. While SHAG provided notice to AH 258 and Protech W in a letter bearing the date of November 17, 2016 of a purportedly bona fide third party offer to purchase the WoodRose Apartments Project, AMTAX/Protech allege on information and belief that any offer that may have existed at that time was not genuine, but instead was tendered in an improper effort to self-trigger SHAG's Right of First Refusal. AMTAX/Protech further allege that even if the Racine Street Associates Limited Partnership had received a bona fide purchase offer for the WoodRose Apartments Project, SHAG's Right of First Refusal would only be triggered if the Partnership was actually interested in accepting the offer. Because a sale of the Partnership's property requires the consent of AH 258 under Section 7.1.B(viii), and because AH 258's consent was neither sought nor provided in connection with any offer, SHAG's Right of First Refusal was never triggered.



**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

137. Moreover, even if it had been triggered, SHAG could not exercise its Right of First Refusal under Section 7.4.L of the WoodRose Partnership Agreement in light of the Global Indemnity Agreement that SHAG and SHAC entered into with PNCC and its for-profit affiliates. As explained above, the Global Indemnity Agreement improperly seeks to assign ownership interests arising out of the exercise of SHAG's Rights of First Refusal under Section 7.4.L to for-profit entities, an effort that is not permitted by Section 42(i)(7), which limits rights of first refusal to purchase LIHTC projects to "tenants," "resident management corporation[s]," or "qualified nonprofit organization[s]." 26 U.S.C. § 42(i)(7). Because "the relevant limited partnership agreement provisions at issue in this matter must be interpreted in the context of Section 42" (SHAG Complaint ¶ 2), the Global Indemnity Agreement conflicts with Section 42, and thus prevents SHAG from exercising its Rights of First Refusal under the WoodRose Partnership Agreement.

138. By seeking to force a sale of the WoodRose Apartments Project to SHAG at a below-market price in violation of the WoodRose Partnership Agreement and in contravention of Section 42, SHAC is seeking to place its own interests ahead of the interests of its partners in breach of its fiduciary duties as Managing General Partner of Racine Street Associates Limited Partnership. SHAC's self-dealing is particularly stark here in light of the Global Indemnity Agreement, which ensures that SHAC will continue to hold its ownership interest in the LIHTC project even after it forces AH 258 and Protech W out.

139. AH 258 and Protech W are entitled under Section 4.5.A(iv)(2) of the WoodRose Partnership Agreement to remove SHAC as Managing General Partner based on its breaches of its fiduciary duties.

140. SHAC has also repeatedly failed to furnish financial reports as required in Section 12.1 of the WoodRose Partnership Agreement despite numerous requests from AH 258 and Protech W. These requests included written correspondence dated April 27, 2017 and May 25, 2017. Both of these notices demanded that SHAC provide overdue tax information as well as an



**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

audited financial statement for 2016, and specifically referenced the contractual "Report Penalties" in Section 12.1.I of the WoodRose Partnership Agreement. SHAC, however, did not respond to either of these letters, and instead SHAG elected to file this action.

141. SHAC's repeated and continuing failure to furnish reports to the Investor Limited Partner and Special Limited Partner and to pay resulting Report Penalties each constitutes an independent basis for removing SHAC pursuant to Section 4.5.A(iv)(6) and (7) of the WoodRose Partnership Agreement.

**Lakewood Meadows**

142. The Lakewood Meadows Apartments Project is a "Qualified Low-Income Housing Project" eligible for an allocation of tax credits under Section 42 of the Code.

143. The owner of the Lakewood Meadows Apartments Project is Lakewood Meadows Associates Limited Partnership, a Washington limited partnership.

144. The purpose of Lakewood Meadows Associates Limited Partnership is to develop and operate affordable housing under the LIHTC program, and thus the partnership agreement governing Lakewood Meadows Associates Limited Partnership (the "Lakewood Meadows Partnership Agreement") must be interpreted in the context of the LIHTC requirements set forth in Section 42 of the Code.

145. Defendant and Counter-Plaintiff AH 257 is the Investor Limited Partner of Lakewood Meadows Associates Limited Partnership.

146. Defendant and Counter-Plaintiff Protech W is the Special Limited Partner of Lakewood Meadows Associates Limited Partnership.

147. Counter-Defendant Lakewood Meadows was the developer of the Lakewood Meadows Apartments Project, and is the Managing General Partner of Lakewood Meadows Associates Limited Partnership. SHAC is Lakewood Meadows' manager, and PNCC holds a membership interest in Lakewood Meadows.



**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

148. Section 7.1.B(viii) of the Lakewood Meadows Partnership Agreement prohibits Lakewood Meadows from selling the Lakewood Meadows Apartments Project without the consent of AH 257.

149. Section 7.4.J gives Lakewood Meadows an Option during a twenty-four month period beginning at the end of the Compliance Period to purchase the property at a price that is the greater of fair market value (as determined through an appraisal process) and an amount determined by Partnership accountants that is sufficient to pay all outstanding debt and taxes. Because it holds an Option, Lakewood Meadows does not need the consent of AH 257 and/or Protech W in order to purchase the Lakewood Meadows Apartments Project pursuant to Section 7.4.J.

150. Section 7.4.K gives AH 257 the right to force a sale of the Lakewood Meadows Apartments Project ("Forced Sale Right"), *subject to* Lakewood Meadows' exercise of its Option in Section 7.4.J. Section 7.4.K further provides that if AH 257 exercises its Forced Sale Right—i.e., if it demonstrates a desire to sell—then SHAG may exercise its Right of First Refusal in Section 7.4.L, discussed immediately below.

151. Section 7.4.L provides that, "[n]otwithstanding Paragraphs 7.4J and 7.4K above, for a period of twenty-four (24) months following the close of the Compliance Period as determined by the Code, if (i) the Senior Housing Assistance Group (the 'Purchaser') is then the Lessee and Operator of the Apartment Complex pursuant to the Operating Use Lease, (ii) the Senior Housing Assistance Corporation is then a qualified corporation with respect to the Purchaser (as defined under Section 42(h)(5)(D)(ii) of the Code) and is a General Partner, and (iii) the Purchaser is then a qualified nonprofit organization as defined under Section 42(h)(5)(C) of the Code, then the Purchaser shall have a 'Right of First Refusal' (the 'Special ROFR') to purchase the Project at a purchase price (the 'Purchase Price') equal to the sum of (1) the minimum purchase price as determined under Section 42(i)(7)(B) of the Code (the 'Statutory Minimum Purchase Price') and (2) the amount of each of the items set forth in Section 6.2B(ii),



**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

Paragraphs First through Seventh thereof, to the extent that the amount of such items are not already reflected in the Statutory Minimum Purchase Price in order to avoid any duplication."

152. To ensure that the Lakewood Meadows Associates Limited Partnership achieves its purpose of generating tax credits for its investors, the Right of First Refusal in Section 7.4.L must be interpreted consistently with the statutory language in Section 42(i)(7), which specifically limits the scope of acceptable below-market purchase rights. Section 42(i)(7) provides that "[n]o Federal income tax benefit shall fail to be allowable to the taxpayer with respect to any qualified low-income building merely by reason of a right of 1st refusal held by the tenants (in cooperative form or otherwise) or resident management corporation of such building or by a qualified nonprofit organization (as defined in subsection (h)(5)(c)) or government agency to purchase the property after the close of the compliance period for a price which is not less than the minimum purchase price determined under subparagraph (B)."

153. The Global Indemnity Agreement dated July 12, 2001 that SHAG and SHAC entered into with PNCC and its affiliates incorporated an "Exhibit A" that identifies Lakewood Meadows Associates Limited Partnership as being covered by its terms.

154. The Compliance Period for the Lakewood Meadows Associates Limited Partnership expired on December 31, 2016, which triggered the twenty-four month period applicable to the option, forced sale, and first refusal rights set forth in Section 7.4.J, 7.4.K, and 7.4.L of the Lakewood Meadows Partnership Agreement.

155. SHAG has never attempted to exercise its Right of First Refusal under Section 7.4.L of the Lakewood Meadows Partnership Agreement. Instead it initiated this litigation, and seeks a judicial determination that it is entitled to exercise its Right of First Refusal even though AH 257 has not exercised its Forced Sale Right under Section 7.4.K or otherwise agreed to a sale of the Lakewood Meadows Apartments Project. Because SHAG's Right of First Refusal has not yet been triggered, SHAG is unable to exercise its right to purchase the property.



**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

156. Moreover, even if it had been triggered, SHAG could not exercise its Right of First Refusal under Section 7.4.L of the Lakewood Meadows Partnership Agreement in light of the Global Indemnity Agreement that SHAG and SHAC entered into with PNCC and its for-profit affiliates. As explained above, the Global Indemnity Agreement improperly seeks to assign ownership interests arising out of the exercise of SHAG's Rights of First Refusal under Section 7.4.L to for-profit entities, an effort that is not permitted by Section 42(i)(7), which limits rights of first refusal to purchase LIHTC projects to "tenants," "resident management corporation[s]," or "qualified nonprofit organization[s]." 26 U.S.C. § 42(i)(7). Because "the relevant limited partnership agreement provisions at issue in this matter must be interpreted in the context of Section 42" (SHAG Complaint ¶ 2), the Global Indemnity Agreement conflicts with Section 42, and thus prevents SHAG from exercising its Rights of First Refusal under the Lakewood Meadows Partnership Agreement.

157. By seeking to force a sale of the Lakewood Meadows Apartments Project to SHAG at a below-market price in violation of the Lakewood Meadows Partnership Agreement and in contravention of Section 42, Lakewood Meadows is seeking to place its own interests ahead of the interests of its partners in breach of its fiduciary duties as Managing General Partner of Lakewood Meadows Associates Limited Partnership. Lakewood Meadows' self-dealing is particularly stark here in light of the Global Indemnity Agreement, which ensures that Lakewood Meadows will continue to hold its ownership interest in the LIHTC project even after it forces AH 257 and Protech W out.

158. AH 257 and Protech W are entitled under Section 4.5.A(iv)(2) of the Lakewood Meadows Partnership Agreement to remove Lakewood Meadows as Managing General Partner based on its breaches of its fiduciary duties.

159. Lakewood Meadows has also repeatedly failed to furnish financial reports as required in Section 12.1 of the Lakewood Meadows Partnership Agreement despite numerous requests from AH 257 and Protech W. These requests included written correspondence dated



**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

April 27, 2017 and May 25, 2017. Both of these notices demanded that Lakewood Meadows provide overdue tax information as well as an audited financial statement for 2016, and specifically referenced the contractual "Report Penalties" in Section 12.1.I of the Lakewood Meadows Partnership Agreement. Lakewood Meadows, however, did not respond to either of these letters, and instead SHAG elected to file this action.

160. Lakewood Meadows' repeated and continuing failure to furnish reports to the Investor Limited Partner and Special Limited Partner and to pay resulting Report Penalties each constitutes an independent basis for removing Lakewood Meadows pursuant to Section 4.5.A(iv)(6) and (7) of the Lakewood Meadows Partnership Agreement.

**Alderwood Court**

161. The Alderwood Court Apartments Project is a "Qualified Low-Income Housing Project" eligible for an allocation of tax credits under Section 42 of the Code.

162. The owner of the Alderwood Court Apartments Project is Alderwood Court Associates Limited Partnership, a Washington limited partnership.

163. The purpose of Alderwood Court Associates Limited Partnership is to develop and operate affordable housing under the LIHTC program, and thus the partnership agreement governing the Alderwood Court Associates Limited Partnership (the "Alderwood Court Partnership Agreement") must be interpreted in the context of the LIHTC requirements set forth in Section 42 of the Code.

164. Defendant and Counter-Plaintiff AH 164 is the Investor Limited Partner of Alderwood Court Associates Limited Partnership.

165. Defendant and Counter-Plaintiff Protech 2002-A is the Special Limited Partner of Alderwood Court Associates Limited Partnership.

166. Counter-Defendant Lynnwood was the developer of the Alderwood Court Apartments Project, and is the Managing General Partner of the Alderwood Court Associates



**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

Limited Partnership. SHAC is Lynnwood's manager, and PNCC holds a membership interest in Lynnwood

167. Section 7.1.B(viii) of the Alderwood Court Partnership Agreement prohibits Lynnwood from selling the Alderwood Court Apartments Project without the consent of AH 164.

168. Section 7.4.J gives Lynnwood an Option during a twenty-four month period beginning at the end of the Compliance Period to purchase the property at a price that is the greater of fair market value (as determined through an appraisal process) and an amount determined by Partnership accountants that is sufficient to pay all outstanding debt and taxes. Because it holds an Option, Lynnwood does not need the consent of AH 164 and/or Protech 2002-A in order to purchase the Alderwood Court Apartments Project pursuant to Section 7.4.J.

169. Section 7.4.K gives AH 164 the right to force a sale of the Alderwood Court Apartments Project ("Forced Sale Right"), *subject to* Lynnwood's exercise of its Option in Section 7.4.J. Section 7.4.K further provides that if AH 164 exercises its Forced Sale Right—i.e., if it demonstrates a desire to sell—then SHAG may exercise its Right of First Refusal in Section 7.4.L, discussed immediately below.

170. Section 7.4.L provides that, "[n]otwithstanding Paragraphs 7.4J and 7.4K above, for a period of twenty-four (24) months following the close of the Compliance Period as determined by the Code, if (i) the Senior Housing Assistance Group (the 'Purchaser') is then the Lessee and Operator of the Apartment Complex pursuant to the Operating Use Lease, (ii) the Senior Housing Assistance Corporation is then a qualified corporation with respect to the Purchaser (as defined under Section 42(h)(5)(D)(ii) of the Code) and is a General Partner, and (iii) the Purchaser is then a qualified nonprofit organization as defined under Section 42(h)(5)(C) of the Code, then the Purchaser shall have a 'Right of First Refusal' (the 'Special ROFR') to purchase the Project at a purchase price (the 'Purchase Price') equal to the sum of (1) the minimum purchase price as determined under Section 42(i)(7)(B) of the Code (the 'Statutory



**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

Minimum Purchase Price') and (2) the amount of each of the items set forth in Section 6.2B(ii), Paragraphs First through Seventh thereof, to the extent that the amount of such items are not already reflected in the Statutory Minimum Purchase Price."

171. To ensure that Alderwood Court Associates Limited Partnership achieves its purpose of generating tax credits for its investors, the Right of First Refusal in Section 7.4.L must be interpreted consistently with the statutory language in Section 42(i)(7), which specifically limits the scope of acceptable below-market purchase rights. Section 42(i)(7) provides that "[n]o Federal income tax benefit shall fail to be allowable to the taxpayer with respect to any qualified low-income building merely by reason of a right of 1st refusal held by the tenants (in cooperative form or otherwise) or resident management corporation of such building or by a qualified nonprofit organization (as defined in subsection (h)(5)(c)) or government agency to purchase the property after the close of the compliance period for a price which is not less than the minimum purchase price determined under subparagraph (B)."

172. The Global Indemnity Agreement dated July 12, 2001 that SHAG and SHAC entered into with PNCC and its affiliates incorporated an "Exhibit A" that identifies the Alderwood Court Associates Limited Partnership as being covered by its terms.

173. The Compliance Period for the Alderwood Court Associates Limited Partnership has not yet expired, and the twenty-four month period applicable to the option, forced sale, and first refusal rights in Section 7.4.J, 7.4.K, and 7.4.L of the Alderwood Court Partnership Agreement accordingly has not yet begun. SHAG nonetheless seeks a judicial determination that it is entitled to self-trigger its Right of First Refusal to force AH 164 and Protech 2002-A out of the Alderwood Court Associated Limited Partnership against their will. SHAG's position has no merit and should be rejected for the reasons discussed above.

174. Moreover, even if SHAG could self-trigger its Right of First Refusal—which it cannot—SHAG is independently prevented from exercising its Right of First Refusal under Section 7.4.L in light of the Global Indemnity Agreement that SHAG and SHAC entered into



**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

with PNCC and its for-profit affiliates. As explained above, the Global Indemnity Agreement improperly seeks to assign ownership interests arising out of the exercise of SHAG's Rights of First Refusal under Section 7.4.L to for-profit entities, an effort that is not permitted by Section 42(i)(7), which limits rights of first refusal to purchase LIHTC projects to "tenants," "resident management corporation[s]," or "qualified nonprofit organization[s]." 26 U.S.C. § 42(i)(7). Because "the relevant limited partnership agreement provisions at issue in this matter must be interpreted in the context of Section 42" (SHAG Complaint ¶ 2), the Global Indemnity Agreement conflicts with Section 42, and thus prevents SHAG from exercising its Rights of First Refusal under the Alderwood Court Partnership Agreement.

175. By seeking to force a sale of the Alderwood Court Apartments Project to SHAG at a below-market price in violation of the Alderwood Court Partnership Agreement and in contravention of Section 42, Lynnwood is seeking to place its own interests ahead of the interests of its partners in breach of its fiduciary duties as Managing General Partner of Alderwood Court Associates Limited Partnership. Lynnwood's self-dealing is particularly stark here in light of the Global Indemnity Agreement, which ensures that Lynnwood will continue to hold its ownership interest in the LIHTC project even after it forces AH 164 and Protech 2002-A out.

176. AH 164 and Protech 2002-A are entitled under Section 4.5.A(iv)(2) of the Alderwood Court Partnership Agreement to remove Lynnwood as Managing General Partner based on its breaches of its fiduciary duties.

177. Lynnwood has also repeatedly failed to furnish financial reports as required in Section 12.1 of the Lynnwood Partnership Agreement despite numerous requests from AH 164 and Protech 2002-A. These requests included written correspondence dated April 27, 2017 and May 25, 2017. Both of these notices demanded that Lynnwood provide overdue tax information as well as an audited financial statement for 2016, and specifically referenced the contractual "Report Penalties" in Section 12.1.I of the Alderwood Court Partnership Agreement. Lynnwood, however, did not respond to either of these letters, and instead SHAG elected to file this action.



**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

178. Lynnwood's repeated and continuing failure to furnish reports to the Investor Limited Partner and Special Limited Partner and to pay resulting Report Penalties each constitutes an independent basis for removing Lynnwood pursuant to Section 4.5.A(iv)(6) and (7) of the Alderwood Court Partnership Agreement.

**Woodlands**

179. The Woodlands Apartments Project is a "Qualified Low-Income Housing Project" eligible for an allocation of tax credits under Section 42 of the Code.

180. The owner of the Woodlands Apartments Project is Woodlands Apartments (2001) Limited Partnership, a Washington limited partnership.

181. The purpose of Woodlands Apartments (2001) Limited Partnership is to develop and operate affordable housing under the LIHTC program, and thus the partnership agreement governing Woodlands Apartments (2001) Limited Partnership (the "Woodlands Partnership Agreement") must be interpreted in the context of the LIHTC requirements set forth in Section 42 of the Code.

182. Defendant and Counter-Plaintiff AH 109 is the Investor Limited Partner of Woodlands Apartments (2001) Limited Partnership.

183. Defendant and Counter-Plaintiff Protech 2001-B is the Special Limited Partner of Woodlands Apartments (2001) Limited Partnership.

184. Counter-Defendant Woodlands was the developer of the Woodlands Apartments Project, and is the Managing General Partner of the Woodlands Apartments (2001) Limited Partnership. SHAC is Woodlands' manager.

185. Section 7.1.B(viii) of the Woodlands Partnership Agreement prohibits Woodlands from selling the Woodlands Apartments Project without the consent of AH 109.

186. Section 7.4.J gives Woodlands an Option during a twenty-four month period beginning at the end of the Compliance Period to purchase the property at a price that is the greater of fair market value (as determined through an appraisal process) and an amount



**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

determined by Partnership accountants that is sufficient to pay all outstanding debt and taxes. Because it holds an Option, Woodlands does not need the consent of AH 109 and/or Protech 2001-B in order to purchase the Woodlands Apartments Project pursuant to Section 7.4.J.

187. Section 7.4.K gives AH 109 the right to force a sale of the Woodlands Apartments Project ("Forced Sale Right"), *subject to* Woodlands' exercise of its Option in Section 7.4.J. Section 7.4.K further provides that if AH 109 exercises its Forced Sale Right—i.e., if it demonstrates a desire to sell—then SHAG may exercise its Right of First Refusal in Section 7.4.L, discussed immediately below.

188. Section 7.4.L provides that, "[n]otwithstanding Paragraphs 7.4J and 7.4K above, for a period of twenty-four (24) months following the close of the Compliance Period as determined by the Code, if (i) the Senior Housing Assistance Group (the 'Purchaser') is then the Lessee and Operator of the Apartment Complex pursuant to the Operating Use Lease, (ii) the Senior Housing Assistance Corporation is then a qualified corporation with respect to the Purchaser (as defined under Section 42(h)(5)(D)(ii) of the Code) and is a General Partner, and (iii) the Purchaser is then a qualified nonprofit organization as defined under Section 42(h)(5)(C) of the Code, then the Purchaser shall have a 'Right of First Refusal' (the 'Special ROFR') to purchase the Project at a purchase price (the 'Purchase Price') equal to the sum of (1) the minimum purchase price as determined under Section 42(i)(7)(B) of the Code (the 'Statutory Minimum Purchase Price') and (2) the amount of each of the items set forth in Section 6.2B(ii), Paragraphs First through Seventh thereof, to the extent that the amount of such items are not already reflected in the Statutory Minimum Purchase Price."

189. To ensure that the Woodlands Apartments (2001) Limited Partnership achieves its purpose of generating tax credits for its investors, the Right of First Refusal in Section 7.4.L must be interpreted consistently with the statutory language in Section 42(i)(7), which specifically limits the scope of acceptable below-market purchase rights. Section 42(i)(7) provides that "[n]o Federal income tax benefit shall fail to be allowable to the taxpayer with



136582793.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

respect to any qualified low-income building merely by reason of a right of 1st refusal held by the tenants (in cooperative form or otherwise) or resident management corporation of such building or by a qualified nonprofit organization (as defined in subsection (h)(5)(c)) or government agency to purchase the property after the close of the compliance period for a price which is not less than the minimum purchase price determined under subparagraph (B)."

190. The Global Indemnity Agreement dated July 12, 2001 that SHAG and SHAC entered into with PNCC and its affiliates incorporated an "Exhibit A" that identifies the Woodlands Apartments (2001) Limited Partnership as being covered by its terms.

191. The Compliance Period for the Woodlands Apartments (2001) Limited Partnership has not yet expired, and the twenty-four month period applicable to the option, forced sale, and first refusal rights in Section 7.4.J, 7.4.K, and 7.4.L of the Woodlands Apartments (2001) Partnership Agreement accordingly has not yet begun. SHAG nonetheless seeks a judicial determination that it is entitled to self-trigger its Right of First Refusal to force AH 109 and Protech 2001-B out of the Woodlands Apartments (2001) Limited Partnership against their will. SHAG's position has no merit and should be rejected for the reasons discussed above.

192. Moreover, even if SHAG could self-trigger its Right of First Refusal—which it cannot—SHAG is independently prevented from exercising its Right of First Refusal under Section 7.4.L in light of the Global Indemnity Agreement that SHAG and SHAC entered into with PNCC and its for-profit affiliates. As explained above, the Global Indemnity Agreement improperly seeks to assign ownership interests arising out of the exercise of SHAG's Rights of First Refusal under Section 7.4.L to for-profit entities, an effort that is not permitted by Section 42(i)(7), which limits rights of first refusal to purchase LIHTC projects to "tenants," "resident management corporation[s]," or "qualified nonprofit organization[s]." 26 U.S.C. § 42(i)(7). Because "the relevant limited partnership agreement provisions at issue in this matter must be interpreted in the context of Section 42" (SHAG Complaint ¶ 2), the Global Indemnity



**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

Agreement conflicts with Section 42, and thus prevents SHAG from exercising its Rights of First Refusal under the Woodlands Partnership Agreement.

193. By seeking to force a sale of the Woodlands Apartments Project to SHAG at a below-market price in violation of the Woodlands Partnership Agreement and in contravention of Section 42, Woodlands is seeking to place its own interests ahead of the interests of its partners in breach of its fiduciary duties as Managing General Partner of Woodlands Apartments (2001) Limited Partnership. Woodlands' self-dealing is particularly stark here in light of the Global Indemnity Agreement, which ensures that Woodlands will continue to hold its ownership interest in the LIHTC project even after it forces AH 109 and Protech 2001-B out.

194. AH 109 and Protech 2001-B are entitled under Section 4.5.A(iv)(2) of the Woodlands Partnership Agreement to remove Woodlands as Managing General Partner based on its breaches of its fiduciary duties.

195. Woodlands has also repeatedly failed to furnish financial reports as required in Section 12.1 of the Woodlands Partnership Agreement despite numerous requests from AH 109 and Protech 2001-B. These requests included written correspondence dated April 27, 2017 and May 25, 2017. Both of these notices demanded that Woodlands provide overdue tax information as well as an audited financial statement for 2016, and specifically referenced the contractual "Report Penalties" in Section 12.1.I of the Woodlands Partnership Agreement. Woodlands, however, did not respond to either of these letters, and instead SHAG elected to file this action.

196. Woodlands' repeated and continuing failure to furnish reports to the Investor Limited Partner and Special Limited Partner and to pay resulting Report Penalties each constitutes an independent basis for removing Woodlands pursuant to Section 4.5.A(iv)(6) and (7) of the Woodlands Partnership Agreement.



**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

## V. CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### Declaratory Judgment (Rights of First Refusal)

### (By AMTAX/Protech against SHAG)

197. AMTAX/Protech realleges and incorporates by reference each and every allegation set forth above.

198. There is an actual controversy between AMTAX/Protech and SHAG regarding SHAG's Rights of First Refusal in the Partnership Agreements for the Project Partnerships.

199. This Court should interpret the Partnership Agreements for the Project Partnerships and declare as follows:

(a) SHAG's Section 42(i)(7) Rights of First Refusal under Section 7.4.L of the Partnership Agreements for the Project Partnerships have not been triggered; and

(b) SHAG cannot exercise its Section 42(i)(7) Rights of First Refusal because SHAG improperly assigned economic ownership interests arising out of those Rights of First Refusal to for-profit affiliates pursuant to the Global Indemnity Agreement in violation of Section 42(i)(7) and the Partnership Agreements.

### SECOND CAUSE OF ACTION

### Declaratory Judgment (Removal – Meridian Court)

### (AH 260 Against Steel Lake)

200. AMTAX/Protech realleges and incorporates by reference each and every allegation set forth above.

201. Steel Lake is the Managing General Partner of Meridian Court Apartments Limited Partnership.

202. AH 260 is the Investor Limited Partner of Meridian Court Apartments Limited Partnership.

203. There is an actual controversy as to whether AH 260 may remove Steel Lake as



**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

Managing General Partner of Meridian Court Apartments Limited Partnership pursuant to its removal rights under Section 4.5.A(iv) of the Meridian Court Partnership Agreement.

204. This Court should interpret the Meridian Court Partnership Agreement and declare that AH 260 may remove Steel Lake as Managing General Partner of Meridian Court Apartments Limited Partnership based on (i) Steel Lake's improper efforts to sell the affordable housing projects at issue to SHAG at a below-market price without the consent of AH 260, Protech W, or Meridian Court Apartments Limited Partnership; (ii) Steel Lake's repeated failure to furnish reports as required in Section 12.1 of the Meridian Court Partnership Agreement; and (iii) Steel Lake's failure to pay Report Penalties pursuant to Section 12.1.I of the Meridian Court Partnership Agreement.

## THIRD CAUSE OF ACTION

## Declaratory Judgment (Removal – Auburn Court)

## (AH 259 Against SHAG)

205. AMTAX/Protech realleges and incorporates by reference each and every allegation set forth above.

206. SHAG is the Managing General Partner of Auburn North Associates Limited Partnership.

207. AH 259 is the Investor Limited Partner of Auburn North Associates Limited Partnership.

208. There is an actual controversy as to whether AH 259 may remove SHAG as Managing General Partner of Auburn North Associates Limited Partnership pursuant to its removal rights under Section 4.5.A(iv) of the Auburn Court Partnership Agreement.

209. This Court should interpret the Auburn Court Partnership Agreement and declare that AH 259 may remove SHAG as Managing General Partner of Auburn North Associates Limited Partnership based on (i) SHAG's improper efforts to sell the affordable housing projects at issue to itself at a below-market price without the consent of AH 259, Protech W, or Auburn



Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

North Associates Limited Partnership; (ii) SHAG's repeated failure to furnish reports as required in Section 12.1 of the Auburn Court Partnership Agreement; and (iii) SHAG's failure to pay Report Penalties pursuant to Section 12.1.I of the Auburn Court Partnership Agreement.

**FOURTH CAUSE OF ACTION**

**Declaratory Judgment (Removal - Boardwalk)**

**(AH 261 Against SHAC)**

210. AMTAX/Protech realleges and incorporates by reference each and every allegation set forth above.

211. SHAC is the Managing General Partner of Capitol Way Associates Limited Partnership.

212. AH 261 is the Investor Limited Partner of Capitol Way Associates Limited Partnership.

213. There is an actual controversy as to whether AH 261 may remove SHAC as Managing General Partner of Capitol Way Associates Limited Partnership pursuant to its removal rights under Section 4.5.A(iv) of the Boardwalk Partnership Agreement.

214. This Court should interpret the Boardwalk Partnership Agreement and declare that AH 261 may remove SHAC as Managing General Partner of Capitol Way Associates Limited Partnership based on (i) SHAC's improper efforts to sell the affordable housing projects at issue to SHAG at a below-market price without the consent of AH 261, Protech W, or Capitol Way Associates Limited Partnership; (ii) SHAC's repeated failure to furnish reports as required in Section 12.1 of the Boardwalk Partnership Agreement; and (iii) SHAC's failure to pay Report Penalties pursuant to Section 12.1.I of the Boardwalk Partnership Agreement.

**FIFTH CAUSE OF ACTION**

**Declaratory Judgment (Removal - WoodRose)**

**(AH 258 Against SHAC)**

215. AMTAX/Protech realleges and incorporates by reference each and every



**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

allegation set forth above.

216. SHAC is the Managing General Partner of Racine Street Associates Limited Partnership.

217. AH 258 is the Investor Limited Partner of Racine Street Associates Limited Partnership.

218. There is an actual controversy as to whether AH 258 may remove SHAC as Managing General Partner of Racine Street Associates Limited Partnership pursuant to its removal rights under Section 4.5.A(iv) of the WoodRose Partnership Agreement.

219. This Court should interpret the WoodRose Partnership Agreement and declare that AH 258 may remove SHAC as Managing General Partner of Racine Street Associates Limited Partnership based on (i) SHAC's improper efforts to sell the affordable housing projects at issue to SHAG at a below-market price without the consent of AH 258, Protech W, or Racine Street Associates Limited Partnership; (ii) SHAC's repeated failure to furnish reports as required in Section 12.1 of the WoodRose Partnership Agreement; and (iii) SHAC's failure to pay Report Penalties pursuant to Section 12.1.I of the WoodRose Partnership Agreement.

**SIXTH CAUSE OF ACTION**

**Declaratory Judgment (Removal – Lakewood Meadows)**

**(AH 257 Against Lakewood Meadows)**

220. AMTAX/Protech realleges and incorporates by reference each and every allegation set forth above.

221. Lakewood Meadows is the Managing General Partner of Lakewood Meadows Associates Limited Partnership.

222. AH 257 is the Investor Limited Partner of Lakewood Meadows Associates Limited Partnership.

223. There is an actual controversy as to whether AH 257 may remove Lakewood Meadows as Managing General Partner of Lakewood Meadows Associates Limited Partnership



**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

pursuant to its removal rights under Section 4.5.A(iv) of the Lakewood Meadows Partnership Agreement.

224. This Court should interpret the Lakewood Meadows Partnership Agreement and declare that AH 257 may remove Lakewood Meadows as Managing General Partner of Lakewood Meadows Associates Limited Partnership based on (i) Lakewood Meadows' improper efforts to sell the affordable housing projects at issue to SHAG at a below-market price without the consent of AH 257, Protech W, or Lakewood Meadows Associates Limited Partnership; (ii) Lakewood Meadows' repeated failure to furnish reports as required in Section 12.1 of the Lakewood Meadows Partnership Agreement; and (iii) Lakewood Meadows' failure to pay Report Penalties pursuant to Section 12.1.I of the Lakewood Meadows Partnership Agreement.

## SEVENTH CAUSE OF ACTION

## Declaratory Judgment (Removal – Alderwood Court)

## (AH 164 Against Lynnwood)

225. AMTAX/Protech realleges and incorporates by reference each and every allegation set forth above.

226. Lynnwood is the Managing General Partner of Alderwood Court Associates Limited Partnership.

227. AH 164 is the Investor Limited Partner of Alderwood Court Associates Limited Partnership.

228. There is an actual controversy as to whether AH 164 may remove Lynnwood as Managing General Partner of Alderwood Court Associates Limited Partnership pursuant to its removal rights under Section 4.5.A(iv) of the Alderwood Court Partnership Agreement.

229. This Court should interpret the Alderwood Court Partnership Agreement and declare that AH 164 may remove Lynnwood as Managing General Partner of Alderwood Court Associates Limited Partnership based on (i) Alderwood Court's improper efforts to sell the affordable housing projects at issue to SHAG at a below-market price without the consent of AH



**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

164, Protech 2002-A, or Alderwood Court Associates Limited Partnership; (ii) Lynnwood's repeated failure to furnish reports as required in Section 12.1 of the Alderwood Court Partnership Agreement; and (iii) Lynnwood's failure to pay Report Penalties pursuant to Section 12.1.I of the Alderwood Court Partnership Agreement.

**EIGHTH CAUSE OF ACTION**

**Declaratory Judgment (Removal – Woodlands)**

**(AH 164 Against Woodlands)**

230. AMTAX/Protech realleges and incorporates by reference each and every allegation set forth above.

231. Woodlands is the Managing General Partner of Woodlands Apartments (2001) Limited Partnership.

232. AH 109 is the Investor Limited Partner of Woodlands Apartments (2001) Limited Partnership.

233. There is an actual controversy as to whether AH 109 may remove Woodlands as Managing General Partner of Woodlands Apartments (2001) Limited Partnership pursuant to its removal rights under Section 4.5.A(iv) of the Woodlands Partnership Agreement.

234. This Court should interpret the Woodlands Partnership Agreement and declare that AH 109 may remove Woodlands as Managing General Partner of Woodlands Apartments (2001) Limited Partnership based on (i) Woodlands' improper efforts to sell the affordable housing projects at issue to SHAG at a below-market price without the consent of AH 109, Protech 2001-B, or Woodlands Apartments (2001) Limited Partnership; (ii) Woodlands' repeated failure to furnish reports as required in Section 12.1 of the Woodlands Partnership Agreement; and (iii) Woodlands' failure to pay Report Penalties pursuant to Section 12.1.I of the Woodlands Partnership Agreement.



**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

## PRAYER FOR RELIEF

WHEREFORE, AMTAX/Protech respectfully request a declaratory judgment that:

(a) SHAG's Section 42(i)(7) Rights of First Refusal under Section 7.4.L of the Partnership Agreements for the Project Partnerships have not been triggered;

(b) SHAG cannot exercise its Section 42(i)(7) Rights of First Refusal because SHAG improperly assigned economic ownership interests arising out of those Rights of First Refusal to for-profit affiliates pursuant to the Global Indemnity Agreement in violation of Section 42(i)(7) and the applicable partnership agreements; and

(c) AMTAX/Protech may remove SHAG, SHAC, Steel Lake, Lakewood Meadows, Lynnwood, and Woodlands as Managing General Partners for the Project Partnerships pursuant to AMTAX/Protech's rights under Section 4.5.A(iv) of the applicable partnership agreements based on (i) their improper efforts to sell the affordable housing projects at issue to an affiliate (or, in one instance, to itself) at a below-market price without the consent of AMTAX/Protech or the Project Partnerships, (ii) their repeated failures to furnish reports as required in Section 12.1 of the applicable partnership agreements, and (iii) their failure to pay the Report Penalties within thirty days of being due.

RESPECTFULLY SUBMITTED this 15th day of September, 2017.

**Perkins Coie LLP**

By: s/Steven D. Merriman
David J. Burman, WSBA #10611
Steven D. Merriman, WSBA #44035
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone: 206.359.8000
Facsimile: 206.359.9000
Email: DBurman@perkinscoie.com
SMerriman@perkinscoie.com

**Boies Schiller Flexner LLP**

Christopher Caldwell, admitted *pro hac vice*
Eric Pettit, admitted *pro hac vice*
725 S Figueroa Street, 31st Floor
Los Angeles, CA 90017
Telephone: 213 629 9040
Facsimile: 213 629 9022
Email: ccaldwell@bsfllp.com
epettit@bsfllp.com

Counsel for AMTAX/Protech AMTAX Holdings 260, LLC, Protech Holdings W, LLC, AMTAX Holdings 259, LLC, AMTAX Holdings 261, LLC, AMTAX Holdings 258, LLC, AMTAX Holdings 257, LLC, AMTAX Holdings 164, LLC, Protech 2002-A, LLC, AMTAX Holdings 109, LLC, and Protech 2001-B, LLC



**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

**CERTIFICATE OF SERVICE**

On September 15, 2017, I caused a copy of the DEFENDANTS' ANSWER TO COMPLAINT AND COUNTERCLAIMS to be electronically filed via the Court's Electronic Case Filing System, which will notify all attorneys of record of the filing.

I certify under penalty of perjury that the foregoing is true and correct.

DATED this 15th day of September, 2017.

By: /s/ Steven D. Merriman
Steven D. Merriman



**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000