THE HONORABLE RICARDO S. MARTINEZ

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SENIOR HOUSING ASSISTANCE
GROUP,

               Plaintiff,

     v.

AMTAX HOLDINGS 260, LLC, et al.,

               Defendants.

AMTAX HOLDINGS 260, LLC, et al.,

               Counter-Plaintiffs,

     v.

SENIOR HOUSING ASSISTANCE
GROUP, et al.,

               Counter-Defendants.

No. 2:17-cv-01115-RSM

**DEFENDANTS AND COUNTER-PLAINTIFFS' OPPOSITION TO LLC GENERAL PARTNERS' MOTION FOR SUMMARY JUDGMENT**

**NOTE ON MOTION CALENDAR:**
December 21, 2018

ORAL ARGUMENT REQUESTED

**Boies Schiller Flexner LLP**
725 South Figueroa Street, 31st Floor
Los Angeles, CA  90017-5524
Phone:  (213) 629-9040
Fax:  (213) 629-9022

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ................................................................................................. 1

II.   THE LIMITED PARTNERS MAY REMOVE THE LLC GENERAL PARTNERS FROM THEIR POSITIONS OF CONTROL OVER THE PARTNERSHIPS................................... 3

  A.  The LLC General Partners May Be Removed Because They Breached Their Fiduciary Duties to the Limited Partners ................................................................ 4

     1.  The LLC General Partners Owe Fiduciary Duties ......................................... 4

     2.  Breaches of Fiduciary Duties Constitute Grounds for Removal..................... 4

     3.  The LLC General Partners Breached Their Fiduciary Duties......................... 5

     4.  The Evidence Refutes the LLC General Partners' Claim that They "Have Not Taken Action" to Implement SHAG's Section 42 ROFR ........................ 7

  B.  The General Partners May be Removed Because They Failed to Satisfy Their Reporting and Late Fee Obligations ............................................................. 9

     1.  The General Partners' Reporting and Late Fee Obligations........................... 9

     2.  The LLC General Partners Repeatedly Failed to Timely Furnish the Required Reports and Failed to Pay the Required Late Fees ......................... 9

       a.  Failure to Timely Furnish Required Financial Reports............................9

       b.  Failure to Pay Late Fees..........................................................................11

     3.  The Partnership Agreements Expressly Permit Removal When a General Partner Fails to Satisfy its Reporting or Late Fee Obligations ......................... 11

     4.  The Parties' Course of Dealing Does Not Excuse the LLC General Partners' Failures to Comply with the Partnership Agreements ..................... 14

     5.  The Removal Provision Is Not an Unenforceable Penalty ........................... 15

     6.  The Late Fees Do Not Negate the Limited Partners' Removal Rights........................ 17

  C.  Removal Will Not Result in a "Windfall" to the Limited Partners ................................. 18

III.   CONCLUSION.................................................................................................... 19

**Boies Schiller Flexner LLP**
725 South Figueroa Street, 31st Floor
Los Angeles, CA  90017-5524
Phone:  (213) 629-9040
Fax:  (213) 629-9022

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Badgett v. Sec. State Bank*,
  116 Wn.2d 563, 807 P.2d 356 (1991) ............................................................14

*Bishop of Victoria Corp. Sole v. Corp. Bus. Park, LLC*,
  138 Wn. App. 443, 158 P.3d 1183 (2007) ....................................................4, 6

*Black Mountain Ranch v. Black Mountain Dev. Co.*,
  29 Wn. App. 212, 627 P.2d 1006 (1981) .......................................................14

*Bogomolov v. Lake Villas Condo. Ass'n of Apt. Owners*,
  131 Wn. App. 353, 127 P.3d 762 (2006) .......................................................12

*Bovy v. Graham, Cohen & Wampold*,
  17 Wn. App. 567, 564 P.2d 1175 (1977) .........................................................4

*Buchanan v. Kettner*,
  97 Wn. App. 370, 984 P.2d 1047 (1999) .......................................................16

*Cartmell v. Verisign, Inc.*,
  02-CV-2411-C, 2005 WL 3320850 (W.D. Wash. Dec. 7, 2005) .............................8

*Management, Inc. v. Schassberger*,
  39 Wn.2d 321, 235 P.2d 293 (1951) .............................................................16

*Mayer v. Pierce County Med. Bureau*,
  80 Wn. App. 416, 909 P.2d 1323 (1995) .......................................................14

*Minnick v. Clearwire U.S. LLC*,
  174 Wn.2d 443, 275 P.3d 1127 (2012) ..........................................................15

*Red Lion Hotels Franchising, Inc. v. First Capital Real Estate Investments, LLC*,
  2:17-CV-145-RMP, 2018 WL 4259241 (E.D. Wash. Sept. 6, 2018) ..................16, 17

*Seattle-First Nat. Bank v. Westwood Lumber, Inc.*,
  65 Wn. App. 811, 829 P.2d 1152 (1992) .......................................................14

*Smith v. Skone & Connors Produce, Inc.*,
  107 Wn. App. 199, 26 P.3d 981 (2001) .........................................................14

*St. John Med. Ctr. v. DSHS*,
  110 Wn. App. 51, 38 P.3d 383 (2002) ...........................................................13

DEFENDANTS AND COUNTER-PLAINTIFFS'
OPPOSITION TO LLC GENERAL PARTNERS' MSJ
(No. 2:17-cv-01115-RSM) – iii

**Boies Schiller Flexner LLP**
725 South Figueroa Street, 31st Floor
Los Angeles, CA  90017-5524
Phone:  (213) 629-9040
Fax:  (213) 629-9022

*Taylor-Edwards Warehouse & Transfer Co., of Spokane, Inc. v. Burlington N., Inc.*,
  715 F.2d 1330 (9th Cir. 1983) ................................................................14

*Timeline, Inc. v. Proclarity Corp.*,
  No. 05-CV-1013-JLR, 2007 WL 1574069 (W.D. Wash. May 29, 2007) ........................12, 17

*Van Noy v. State Farm Mut. Auto. Ins. Co.*,
  142 Wn.2d 784, 16 P.3d 574 (2001) ........................................................6, 13

*Wagner v. Wagner*,
  95 Wn.2d 94, 621 P.2d 1279 (Wash. 1980)................................................12

*Wallace Real Estate Inv., Inc. v. Groves*,
  124 Wn.2d 881, 881 P.2d 1010 (1994)................................................15, 16, 17

*Wallace Real Estate Inv., Inc. v. Groves*,
  72 Wn. App. 759, 868 P.2d 149 (1994), *aff'd*, 124 Wn.2d 881, 881 P.2d 1010
  (1994) ....................................................................................16

*Williams v. Queen Fisheries, Inc.*,
  2 Wn. App. 691, 469 P.2d 583 (1970) ......................................................8

**Other Authorities**

Restatement (Second) of Agency § 409 1958................................................8

13 Williston on Contracts § 39:35 (4th ed.)................................................15

**Boies Schiller Flexner LLP**
725 South Figueroa Street, 31st Floor
Los Angeles, CA  90017-5524
Phone:  (213) 629-9040
Fax:  (213) 629-9022

# I.      INTRODUCTION

Defendants and Counter-Plaintiffs (collectively, the "Limited Partners") invested millions of dollars in seven partnerships (the "Partnerships") formed to develop and operate affordable housing properties (the "Projects").  Counter-Defendants are the General Partners of the Partnerships.  In their capacity as General Partners, Counter-Defendants exercise almost exclusive control and authority over the operations of the Projects, and owe both contractual and fiduciary duties to the Limited Partners.  To ensure that Counter-Defendants honor their obligations to the Limited Partners and responsibly exercise their authority, the agreements governing the Partnerships (the "Partnership Agreements") permit the Limited Partners to remove Counter-Defendants as the General Partners of the Partnerships upon the occurrence of certain specified events, including: (1) Counter-Defendants' violation of material duties—including fiduciary duties; (2) Counter-Defendants' repeated failure to furnish certain required financial reports; and (3) Counter-Defendants' failure to timely pay fees assessed as a result of their reporting delays.

By this action, the Limited Partners seek, *inter alia*, a judicial declaration that they are entitled to remove Counter-Defendants as the General Partners of the Partnerships based on all three of these independently sufficient grounds.  In response, four Counter-Defendants—all of which are special purpose, for-profit entities controlled by an attorney and certified public accountant named Bryan Park (collectively, the "LLC General Partners")—have asked the Court to enter summary judgment dismissing the Limited Partners' removal claims.[1]  As explained herein, the Court should reject the LLC General Partners' motion for the following reasons:

***The LLC General Partners engaged in a secret and improper scheme to enrich themselves at the expense of the Limited Partners.***  First, as described in the brief supporting the Limited Partners' motion for summary judgment, the LLC General Partners entered into a secret

---

[1] The other two Counter-Defendants—Senior Housing Assistance Group ("SHAG") and its subsidiary Senior Housing Assistance Corporation ("SHAC")—have joined the summary judgment motion brought by the LLC General Partners.

DEFENDANTS AND COUNTER-PLAINTIFFS'
OPPOSITION TO LLC GENERAL PARTNERS' MSJ
(No. 2:17-cv-01115-RSM) – 1

**Boies Schiller Flexner LLP**
725 South Figueroa Street, 31st Floor
Los Angeles, CA  90017-5524
Phone:  (213) 629-9040
Fax:  (213) 629-9022

agreement with their nonprofit partner, SHAG, whereby SHAG agreed to share with the LLC General Partners the economic benefits that SHAG would enjoy upon the exercise of its "Right of First Refusal" to purchase the Projects at a minimum price set by Section 42 of the Internal Revenue Code (the "Section 42 ROFR").  The LLC General Partners then actively conspired to force the Limited Partners out of the Partnerships against their will and at severely below-market prices so that the LLC General Partners could receive the vast majority of the resulting economic windfall, all while continuing to hide from the Limited Partners the existence of their secret and improper arrangement with SHAG.  These actions violated not only the plain language of the Section 42 ROFR, but also the fiduciary duties that all Counter-Defendants—including the LLC General Partners—owe to the Limited Partners, entitling the Limited Partners to remove the LLC General Partners from their positions as General Partners of the Partnerships.

*The LLC General Partners' repeatedly failed to furnish required reports and pay resulting late fees to the Limited Partners.*  Second, the LLC General Partners *admit* that they repeatedly failed to provide required reports to the Limited Partners by the deadlines established in the Partnership Agreements, and then failed to pay the resulting late fees.  While the LLC General Partners attempt to minimize the significance of their inaction, the Partnership Agreements unambiguously provide that the Limited Partners may remove Counter-Defendants as the General Partners of the Partnerships based on *either* of these failures, *independent* of any showing of materiality.  This removal right, moreover, is not an impermissible penalty, and will not result in a "massive windfall" to the Limited Partners, but rather ensures only that the Partnerships are managed responsibly by parties who, unlike Counter-Defendants, can be trusted to honor all of their obligations.

For these reasons, explained at greater length below, the Limited Partners respectfully request that the Court recognize their removal rights and deny the LLC General Partners' motion for summary judgment.

DEFENDANTS AND COUNTER-PLAINTIFFS'
OPPOSITION TO LLC GENERAL PARTNERS' MSJ
(No. 2:17-cv-01115-RSM) – 2

**Boies Schiller Flexner LLP**
725 South Figueroa Street, 31st Floor
Los Angeles, CA  90017-5524
Phone:  (213) 629-9040
Fax:  (213) 629-9022

## II.     THE LIMITED PARTNERS MAY REMOVE THE LLC GENERAL PARTNERS FROM THEIR POSITIONS OF CONTROL OVER THE PARTNERSHIPS[2]

Despite the fact that they invested virtually no capital, the LLC General Partners enjoy exclusive control over nearly all Partnership operations, activities, records, and reporting.  *See* Dkt. 90-1, Exs. Y–Z; Dkt. 90-2, Exs. AA–DD; Dkt. 91-1, Ex. EE (collectively, the "Partnership Agreements") § 7.3A ("The General Partners shall have the exclusive right to manage the business of the Partnership").[3]  The Limited Partners—who, by contrast, invested millions of dollars in the Partnerships—are not authorized to control or act on behalf of the Partnerships, *see id.*, and accordingly rely on the contractual removal provisions in the Partnership Agreements as the only meaningful mechanism to ensure that the General Partners fulfill their responsibilities to the Limited Partners and do not abuse their positions of authority over the Partnerships.

Sections 4.5A(iv)(1) and (2) of the Partnership Agreements permit the Investor Limited Partners to remove Counter-Defendants as General Partners of the Partnerships if they violate any material provision of the Partnership Agreements or if they violate any duties—including fiduciary duties—described in Article VII of the Partnership Agreements.  *See* Partnership Agreements §§ 4.5A(iv)(1), (2).[4]  In addition, the Partnership Agreements expressly permit removal based upon a "repeated failure to furnish reports as required in Section 12.1[,]" *id.* § 4.5A(iv)(6), or as a result of "any penalty assessed against . . .  a General Partner for the benefit of the Limited Partners . . . [that] is not paid within thirty (30) days . . . of when due[,]" *id.* § 4.5A(iv)(7).  As explained below, undisputed evidence establishes that the Limited Partners are

---

[2] The Limited Partners incorporate by reference the statement of facts set forth in its motion for summary judgment, Dkt. 89, and will not recite such facts again here.

[3] One key limitation on the General Partners' exclusive authority is that a General Partner may not accept an offer to purchase a Project on behalf of the Partnership without the consent of the Investor Limited Partner.  *See* Partnership Agreements § 7.1B(vii).

[4] Section 4.5A(iv)(2) of six of the Partnership Agreements permit removal upon the violation of *any* duty set forth on Article VII, whereas the Auburn Court agreement permits removal upon the violation of a "material" duty.  *Compare* Partnership Agreements § 4.5A(iv)(2).

entitled to remove Counter-Defendants—including the LLC General Partners—as the General

Partners of the Partnerships based on each of these independently sufficient grounds.

### A.    The LLC General Partners May Be Removed Because They Breached Their Fiduciary Duties to the Limited Partners

The evidence establishes that the LLC General Partners have betrayed the trust the

Limited Partners placed in them, and that the Limited Partners accordingly may remove the LLC

General Partners from their positions of authority as General Partners of the Partnerships.

### 1.    The LLC General Partners Owe Fiduciary Duties

The LLC General Partners do not dispute that they owe the Limited Partners fiduciary

duties in their capacities as General Partners of the Partnerships.  Indeed, Section 7.4G of the

Partnership Agreements expressly provides that "[n]o General Partner shall contract away the

fiduciary duty owed at common law to the Limited Partners."  *See id.* § 7.4G.  Under

Washington law:

> Partners owe each other fiduciary duties and are obligated to deal with each other
> with candor and the utmost good faith.  A partner owes a fiduciary duty of loyalty
> and care to both the partnership and to other partners.  A partner owes a duty of
> loyalty to avoid secret profits, self-dealing, and conflicts of interest.  A partner
> must avoid self-dealing by refraining from dealing with the partnership on behalf
> of a party having an interest adverse to the partnership.  And a partner must avoid
> conflicts of interest in refraining from competing with the partnership.  A partner
> owes a duty of care to refrain from engaging in grossly negligent conduct,
> intentional misconduct, and knowing violations of law.

*Bishop of Victoria Corp. Sole v. Corp. Bus. Park, LLC*, 138 Wn. App. 443, 456–57, 158 P.3d

1183 (2007) (citations omitted); *see also Bovy v. Graham, Cohen & Wampold*, 17 Wn. App. 567,

570, 564 P.2d 1175 (1977) ("It is well settled in Washington law that the relationship among

partners is fiduciary in character and imposes upon the partners the obligation of candor and

utmost good faith in their dealings with each other.").

### 2.    Breaches of Fiduciary Duties Constitute Grounds for Removal

Section 4.5A(iv)(2) of the Partnership Agreements permit the Limited Partners to remove

Counter-Defendants as General Partners of the Partnerships if they violate any "rights, powers,

DEFENDANTS AND COUNTER-PLAINTIFFS'
OPPOSITION TO LLC GENERAL PARTNERS' MSJ
(No. 2:17-cv-01115-RSM) – 4

**Boies Schiller Flexner LLP**
725 South Figueroa Street, 31st Floor
Los Angeles, CA  90017-5524
Phone:  (213) 629-9040
Fax:  (213) 629-9022

1  duties, representations or warranties set forth in Article VII" of the Partnership Agreements.

2  Because Section 7.4G of the Partnership Agreements is contained within Article VII of the

3  Partnership Agreements and affirms the General Partners' common law fiduciary duties, there

4  can be no genuine dispute that breaches of those duties constitute sufficient grounds for the

5  General Partners' removal.

6  ### 3.    The LLC General Partners Breached Their Fiduciary Duties

7  The LLC General Partners breached their duties of good faith, loyalty, and candor by

8  secretly and improperly attempting to enrich themselves at the expense of the Limited Partners.

9  First, the LLC General Partners—through their principal, Bryan Park—entered into a

10  secret "Global Indemnity Agreement" (the "GIA") with SHAG whereby the LLC General

11  Partners stand to receive a substantial portion of any economic windfall generated by SHAG's

12  purchase of the Projects through its Section 42 ROFR.  *See* Dkt. 90-1, Ex. U.[5]  Indeed, under the

13  GIA, Projects for which SHAG exercised its Section 42 ROFR would be owned jointly by SHAG

14  and a for-profit entity affiliated with Bryan Park, with the for-profit entity receiving around *ninety*

15  *percent* of the economic benefit of such ownership.[6]  *Id.*, Ex. J; *id.*, Ex. B ("Park Dep. I Tr."), at

16  200:10–21.  SHAG and Mr. Park hid the GIA from the Limited Partners, who only learned of its

17  existence at the end of 2014, when they accidently received a letter that made reference to it.  *See*

18  Dkt. 91-1, Ex. V.  Even then, however, despite repeated requests from the Limited Partners,

19  SHAG and Mr. Park feigned ignorance of the existence of the GIA, and refused to provide the

20  Limited Partners with a copy until nearly a year and a half later.  (*See* Declaration of Eric S.

21  Pettit ("Pettit Decl."), Ex. DDD); *see also* Dkt. 90-1, Ex. W.

22

23

24  [5] Of the four LLC General Partners, only Steel Lake Enterprises, LLC is a signatory to the GIA, but the GIA applies by its terms to all seven of the Projects at issue in this litigation.  Dkt. 90-1, Ex. U.

25

26  [6] The characterizations of the GIA in Mr. Park's declaration are inadmissible under the Federal Rules of Evidence.  AMTAX hereby objects to Paragraphs 46 and 47 of the declaration on the ground that they contain improper legal conclusions, and the underlying documents speak for themselves. *See* Fed. R. Evid. 1004.

DEFENDANTS AND COUNTER-PLAINTIFFS'
OPPOSITION TO LLC GENERAL PARTNERS' MSJ
(No. 2:17-cv-01115-RSM) – 5

**Boies Schiller Flexner LLP**
725 South Figueroa Street, 31st Floor
Los Angeles, CA  90017-5524
Phone:  (213) 629-9040
Fax:  (213) 629-9022

1     This conduct, standing alone, violated the LLC General Partners' "duty of loyalty to

2 avoid secret profits, self-dealing, and conflicts of interest." *Bishop of Victoria*, 138 Wn. App. at

3 456–57. But the LLC General Partners did not stop there. Instead, they conspired with SHAG

4 and SHAC to cash in on the GIA by forcing the Limited Partners out of the Partnerships against

5 their will and at below-market prices, in contravention of the Partnership Agreements and

6 Section 42. As described in detail in the Limited Partners' Motion for Summary Judgment, Dkt.

7 89, and the Limited Partners' Opposition to SHAG and SHAC's Motion for Summary Judgment,

8 Section 42 permits LIHTC partnerships to grant rights to purchase LIHTC properties at a below-

9 market price defined by Section 42, provided that (a) the right is limited to a right of first refusal

10 (which is triggered only if the owner is willing to accept a bona fide third-party offer) as opposed

11 to an option (which can be exercised unilaterally by the option holder); and (b) the right is

12 conveyed only to certain eligible recipients, including a "qualified nonprofit organization"

13 focused on affordable housing.

14     The LLC General Partners, however, are encouraging and assisting SHAG in its efforts to

15 exercise its Section 42 ROFR in the absence of bona fide third-party offers that the Limited

16 Partners are willing to accept, and without regard to the improper transfer of economic benefits

17 to ineligible for-profit entities as contemplated by the GIA. These efforts to divest the Limited

18 Partners of the residual value of their investments and earn secret profits based on an erroneous

19 and self-serving interpretation of the Partnership Agreements are irreconcilable with the

20 "relationship of trust" between the LLC General Partners and their Limited Partners, and thus

21 constitute a breach of fiduciary duty. *See Van Noy v. State Farm Mut. Auto. Ins. Co.*, 142 Wn.2d

22 784, 798, 16 P.3d 574 (2001) ("A fiduciary relationship is a relationship of trust, which

23 necessarily involves vulnerability for the party reposing trust in another. One's guard is down.

24 One is trusting another to take actions on one's behalf. Under such circumstances, to violate a

25 trust is to violate grossly the expectations of the person reposing the trust.") (citation omitted).

26

DEFENDANTS AND COUNTER-PLAINTIFFS'
OPPOSITION TO LLC GENERAL PARTNERS' MSJ
(No. 2:17-cv-01115-RSM) – 6

**Boies Schiller Flexner LLP**
725 South Figueroa Street, 31st Floor
Los Angeles, CA  90017-5524
Phone:  (213) 629-9040
Fax:  (213) 629-9022

1

2

### 4.    The Evidence Refutes the LLC General Partners' Claim that They "Have Not Taken Action" to Implement SHAG's Section 42 ROFR

3

The LLC General Partners seek in their summary judgment motion to deflect blame for

4   their breaches of fiduciary duty by claiming, incredibly, that "the [LLC] General Partners have

5   not taken action either to implement, or to prevent, SHAG's exercise of its Special ROFRs," and

6   that they have sought simply to preserve "the status quo" with respect to the competing

7   interpretations of SHAG's Section 42 ROFR.  *See* Dkt. 92 ("LLC MSJ") at 4, 8.  Nothing could

8   be further from the truth.

9   Contrary to their contention, the LLC General Partners *have* taken action to implement

10  SHAG's exercise of the Section 42 ROFR, and *have* sought to force a below-market sale of the

11  Projects to SHAG without the consent of the Limited Partners.  As described in detail by the

12  Limited Partners' Motion for Summary Judgment, Mr. Park (who controls each of the LLC

13  General Partners, *see* Dkt. 90-1, Exs. M, Q–S) coordinated SHAG's attempts to exercise its

14  Section 42 ROFR at every step along the way.  Mr. Park confirmed that he—not SHAG—was

15  responsible for including the Section 42 ROFR in the Partnership Agreements in the first place.

16  *See* Dkt. 93 ("Park Decl."), ¶ 18.  Notably, Mr. Park negotiated for SHAG's Section 42 ROFR

17  just three months after he secured for himself, through the GIA, the vast majority of any

18  economic windfall arising from its exercise.  *See id.*; Dkt. 90-1, Ex. U.

19  Years later, it was Mr. Park who first "presented the opportunity for SHAG to exercise

20  the right of first refusal (ROFR) at Meridian Court" at a SHAG Board meeting, *see* Dkt. 90-3,

21  Ex. GG,[7] and it was Mr. Park who actively solicited a sham third-party offer from his friend

22  Steve Smith at SSRE Development, LLC in connection with SHAG's efforts to exercise its

23  Section 42 ROFR.  Park Dep. I Tr. at 272:24–273:20.  Moreover, it was Counter-Defendant Steel

24  Lake Enterprises, LLC—not SHAG—who sent a letter notifying the Limited Partners that

25

26
_____

[7] Mr. Park, moreover, did not provide materials he had prepared about SHAG's ROFR to SHAG Executive Director John "Jay" Woolford until less than two hours before that Board meeting.  Dkt. 90-3, Ex. HH.

DEFENDANTS AND COUNTER-PLAINTIFFS'
OPPOSITION TO LLC GENERAL PARTNERS' MSJ
(No. 2:17-cv-01115-RSM) – 7

**Boies Schiller Flexner LLP**
725 South Figueroa Street, 31st Floor
Los Angeles, CA  90017-5524
Phone:  (213) 629-9040
Fax:  (213) 629-9022

SHAG was exercising its ROFR to purchase the Meridian Court Project, and *threatening to sue the Limited Partners* if they contested the validity of the purported exercise.  Dkt. 91-1, Ex. OO.

Mr. Park also guided every step SHAG took in purporting to exercise its ROFR to purchase the Auburn Court Project—from drafting the correspondence SHAG sent on its own letterhead, to instructing SHAG's Executive Director as to the color of ink to use when signing a counteroffer.  Dkt. 90-4, Ex. TT; Dkt. 90-1, Ex. F (Transcript of Deposition of Jay Woolford) at 293:13–22.  Indeed, the evidence establishes that SHAG did not even understand its own rights under the Section 42 ROFR, and relied on Mr. Park to explain what would happen upon SHAG's exercise of those rights.  Dkt. 90-1, Ex. J.

The LLC General Partners, through Mr. Park, have sought to enrich themselves at the expense of the Limited Partners by intentionally orchestrating SHAG's efforts to force the Limited Partners out of the Partnerships against their will, at below-market prices, and in violation of the Partnership Agreements and Section 42.  Mr. Park also solicited sham third-party offers for the Projects, and attempted to hide the existence of a secret agreement by which the LLC General Partners improperly stand to receive the vast majority of the economic benefits arising from SHAG's exercise of its Section 42 ROFR.  These actions violate the fiduciary duties of good faith, loyalty, and candor that the LLC General Partners owe to the Limited Partners under common law and Article VII of the Partnership Agreement, and entitle the Limited Partners to remove the LLC General Partners from their positions as General Partners of the Partnerships.  *See* Partnership Agreements §§ 4.5A(iv)(1) & (2); *see also, e.g.*, *Williams v. Queen Fisheries, Inc.*, 2 Wn. App. 691, 694, 469 P.2d 583 (1970) ("A serious violation of the duty of loyalty constitutes an entire breach of contract, justifying discharge of the agent.  A willful violation of the duty of loyalty may constitute a material breach of the contract," even if "the harm likely to arise from such breach is very small.") (citing Restatement (Second) of Agency § 409 (1958)); *Cartmell v. Verisign, Inc.*, 02-CV-2411-C, 2005 WL 3320850, at *5 (W.D. Wash. Dec. 7, 2005) (same).

**B.**     **The General Partners May be Removed Because They Failed to Satisfy Their Reporting and Late Fee Obligations**

Even in the absence of the gross abuses of fiduciary duty described above, the Limited Partners would still be permitted to exercise their right to remove the LLC General Partners from their positions of control over the Partnerships based on their repeated failures to provide timely financial reporting and to pay resulting late fees. *See* Partnership Agreements §§ 4.5A(iv)(6), (7). As explained below, the LLC General Partners concede that they failed to meet these obligations, and the plain language of the Partnership Agreements conclusively establishes that those failures constitute grounds for their removal as General Partners of the Partnerships. The evidence, moreover, belies the LLC General Partners' claim that the Limited Partners tacitly consented to the tardy reporting, and, in any event, the parties' course of conduct cannot be used to modify unambiguous contract language. Removal is not an unenforceable penalty, and will not result in a windfall to the Limited Partners, but instead will simply ensure that the Partnerships are managed responsibly, transparently, and with appropriate regard for the Limited Partners.

**1.**     **The General Partners' Reporting and Late Fee Obligations**

Section 12.1 of the Partnership Agreements requires the General Partners to provide certain financial reports to all Partners on or before specified days of each year. *See* Partnership Agreements §§ 12.1B(i)–(v), (C), (E), (F). Section 12.1I provides that a General Partner's failure to provide the reports required under Section 12.1 by the specified dates will result in the assessment of a $100 per day late fee payable to the Investor Limited Partner. *Id.* § 12.1I.

**2.**     **The LLC General Partners Repeatedly Failed to Timely Furnish the Required Reports and Failed to Pay the Required Late Fees**

*a.*     *Failure to Timely Furnish Required Financial Reports*

There is no dispute that the General Partners repeatedly failed to timely furnish the financial reports required by Sections 12.1B(i)–(v). Indeed, the LLC General Partners concede

DEFENDANTS AND COUNTER-PLAINTIFFS'
OPPOSITION TO LLC GENERAL PARTNERS' MSJ
(No. 2:17-cv-01115-RSM) – 9

**Boies Schiller Flexner LLP**
725 South Figueroa Street, 31st Floor
Los Angeles, CA 90017-5524
Phone: (213) 629-9040
Fax: (213) 629-9022

1   as much.  *See* LLC MSJ at 9.  The LLC General Partners mistakenly assert, however, that the

2   Limited Partners did not complain about this late reporting until 2016, when Alden Torch

3   Financial LLC took over as the manager and representative of the Limited Partners, and that the

4   Limited Partners did not treat the "technically late reports as being late at all[.]"  *Id.* at 12–13.

5   Again, nothing could be further from the truth.

6         The evidence establishes that the Limited Partners repeatedly sought past-due financial

7   reports from the LLC General Partners in the years prior to 2016, and treated such reports as late.

8   In April 2011, for example, when Capmark Affordable Equity, Inc. ("Capmark") managed the

9   Limited Partners' investments in the Projects, Amy Hoffman, a Capmark representative, emailed

10   Mr. Park to state that the Limited Partners "absolutely needed the tax return" for Alderwood

11   Court and that the reporting requirement was "not conditional and . . . not optional."  (Pettit

12   Decl., Ex. EEE.)  One week later, Ms. Hoffman emailed Mr. Park to request the final audits and

13   tax returns for three properties, including Woodlands and Alderwood Court, and explained that

14   Mr. Park's delay was "holding up [the Limited Partners'] fund audits."  (*Id.*, Ex. FFF.)

15         Similarly, in April 2012, when the Hunt Companies ("Hunt") managed the Limited

16   Partners' investments in the Projects, Ms. Hoffman asked Mr. Park for final audits, which were

17   due weeks earlier.  (*Id.*, Ex. GGG.)  And in 2013, Ms. Hoffman repeatedly asked Mr. Park to

18   deliver past-due final reports, and explained that she had requested that the Hunt accounting

19   department not send demand letters to Mr. Park so that she could request the reports from Mr.

20   Park personally.  (*Id.*, Ex. HHH.)  Later in 2013, Hunt sent Mr. Park urgent second requests for

21   past due reports related to six of the seven Projects.  (*Id.*, Ex. III.)  Requests for late reports from

22   the Limited Partners' representatives to Mr. Park continued in 2014 and 2015.  (*Id.*, Ex. JJJ.)

23         While the LLC General Partners now attempt to blame the Projects' accountants and

24   auditors for the years of late reporting, *see* LLC MSJ at 9, contemporaneous evidence establishes

25   that Mr. Park told his auditors to "ignore" the audit deadline notifications provided by the

26

---

DEFENDANTS AND COUNTER-PLAINTIFFS'
OPPOSITION TO LLC GENERAL PARTNERS' MSJ
(No. 2:17-cv-01115-RSM) – 10

**Boies Schiller Flexner LLP**
725 South Figueroa Street, 31st Floor
Los Angeles, CA  90017-5524
Phone:  (213) 629-9040
Fax:  (213) 629-9022

Limited Partners, even as he acknowledged that the reporting due date was correct (Pettit Decl., Ex. LLL).

### b.   Failure to Pay Late Fees

There is also no dispute that the General Partners have failed to pay the late fees owed to the Limited Partners pursuant to Section 12.1I.  Notably, the LLC General Partners do not contend that they have paid the late fees, nor do they argue that the fees are not owed, or that they should not be removed for their failure to pay them.  The Limited Partners, moreover, have repeatedly asserted their rights to such fees, and have demanded their payment.  (*Id.*, Exs. MMM–PPP.)  To date, however, the General Partners have not paid the late fees owed to the Limited Partners.  (*See* Declaration of Ryan Trane ("Trane Decl."), ¶ 6.)

### 3.   The Partnership Agreements Expressly Permit Removal When a General Partner Fails to Satisfy its Reporting or Late Fee Obligations

The LLC General Partners dedicate the bulk of their summary judgment motion to arguing that their repeated failure to timely furnish required financial reporting was not a material breach of the Partnership Agreements, and did not injure the Limited Partners.  *See* LLC MSJ 4–6, 9–14.  These arguments, however, are not only factually incorrect,[8] but also *completely irrelevant* to whether the Limited Partners are entitled to remove the LLC General Partners from their positions of control over the Partnership.  That is because the Partnership Agreements all expressly permit removal upon the occurrence of a "repeated failure to furnish reports as required in Section 12.1[,]" *see* Partnership Agreements § 4.5A(iv)(6), or upon "any penalty assessed against . . .  a General Partner for the benefit of the Limited Partners . . . [that] is not paid within thirty (30) days . . . of when due[,]" *id.* § 4.5A(iv)(7), *irrespective of whether those failures are deemed to be material and/or have harmed the Limited Partners.*

---

[8] Contrary to the LLC General Partners' claim, the Limited Partners were injured by the reporting delays, which postponed the preparation and delivery of tax returns to the Limited Partners' investors and exposed the Partnerships to increased risk of adverse action by the Internal Revenue Service.  Dkt. 94-1, Ex. A (Transcript of Deposition of Ryan Trane) at 142:02–147:17.

DEFENDANTS AND COUNTER-PLAINTIFFS'
OPPOSITION TO LLC GENERAL PARTNERS' MSJ
(No. 2:17-cv-01115-RSM) – 11

**Boies Schiller Flexner LLP**
725 South Figueroa Street, 31st Floor
Los Angeles, CA  90017-5524
Phone:  (213) 629-9040
Fax:  (213) 629-9022

Section 4.5A(iv) provides the Limited Partners with a removal right that applies if (a) the General Partner engages in "any material misconduct or failure to exercise reasonable care with respect to any material matter," *or* (b) "upon the occurrence of any" of a number of enumerated grounds—including repeatedly untimely reporting and failure to pay resulting late fees.  *See* Partnership Agreements § 4.5A(iv).  Importantly, while the "material misconduct" category incorporates materiality into its express terms, there is no blanket materiality requirement applicable to the "enumerated grounds" category.  *See id.*  Instead, only certain of the individual enumerated grounds for removal incorporate a materiality requirement.  *See id.* § 4.5A(iv)(1) (permitting removal where the "General Partner shall have violated any *material* provisions of this Agreement….") (emphasis added).  This conclusively establishes that individual enumerated grounds for removal that *do not* reference materiality—including repeatedly untimely reporting and failure to pay resulting late fees under Sections 4.5A(iv)(6) and (7)—do not require a showing of materiality.

By completely ignoring the plain language of Sections 4.5A(iv)(6) and (7), the LLC General Partners seemingly suggest that the Court should omit those provisions from the Partnership Agreements, but to do so would be improper.  *See Timeline, Inc. v. Proclarity Corp.*, No. 05-CV-1013-JLR, 2007 WL 1574069, at *5 (W.D. Wash. May 29, 2007) ("Under Washington law, a court must strive to give effect to all provisions in a contract and to give meaning to every term."); *Bogomolov v. Lake Villas Condo. Ass'n of Apt. Owners*, 131 Wn. App. 353, 361, 127 P.3d 762 (2006) ("When interpreting a document, the preferred interpretation gives meaning to all provisions and does not render some superfluous or meaningless.").  Indeed, reading these provisions out of the Partnership Agreements—or alternatively reading nonexistent materiality and damage requirements into the provisions—would be particularly inappropriate given Mr. Park's own assertion that "[t]he parties to the Project Partnerships were sophisticated, experienced and represented by competent counsel[.]"  Park Decl., ¶ 39; *see Wagner v. Wagner*, 95 Wn.2d 94, 101, 621 P.2d 1279 (Wash. 1980) ("Courts can neither disregard contract language

1    which the parties have employed nor revise the contract under a theory of construing it.  An

2    interpretation of a writing which gives effect to all of its provisions is favored over one which

3    renders some of the language meaningless or ineffective.  *This should be especially true when*

4    *the writing is the product of a long period of negotiation with both parties having been*

5    *represented by competent counsel*.") (citations omitted, emphasis added).

6           In claiming that the Limited Partners must establish a "<u>material</u> breach and the existence

7    of <u>actual damages</u>," the LLC General Partners also improperly rely on a case that articulates the

8    elements for establishing a breach of contract.  *See* LLC MSJ at 9 (emphases in original) (citing

9    *St. John Med. Ctr. v. DSHS*, 110 Wn. App. 51, 64, 38 P.3d 383 (2002)).  The Limited Partners,

10   however, *have not asserted any claims for breach of contract*.  Instead the Limited Partners are

11   seeking a judicial declaration that they are contractually entitled to remove the LLC General

12   Partners from their roles as General Partners of the Partnerships based, *inter alia*, on their

13   repeated failure to provide required financial reports to the Limited Partners and their failure to

14   pay late fees incurred as a result of their tardy reporting.  Neither of these grounds for removal

15   requires the Limited Partners to establish either materiality or injury.

16          Although removal may seem a harsh consequence for a General Partner's repeatedly

17   untimely reporting or failure to pay late fees, the parties, including Mr. Park, drafted the

18   Partnership Agreements with the understanding that the Limited Partners—who invested

19   millions of dollars to develop the Projects—depend on the threat of removal to ensure that the

20   General Partners will act in their best interests and conscientiously manage the Projects.  (*See*

21   Trane Decl., ¶ 7.)  The removal provisions permit the Limited Partners to make such substantial

22   investments—to "trust in another" when "[o]ne's guard is down"—with confidence that the

23   General Partners will either adhere to the terms of the Partnership Agreements, or can be

24   replaced by the Limited Partners with someone who will.  *See Van Noy*, 142 Wn.2d at 798.

25          In sum, the Court should give effect to the unambiguous language of the Partnership

26   Agreements, which reflects the mutual intent of the parties to permit removal of the General

DEFENDANTS AND COUNTER-PLAINTIFFS'
OPPOSITION TO LLC GENERAL PARTNERS' MSJ
(No. 2:17-cv-01115-RSM) – 13

**Boies Schiller Flexner LLP**
725 South Figueroa Street, 31st Floor
Los Angeles, CA  90017-5524
Phone:  (213) 629-9040
Fax:  (213) 629-9022

Partners based on the repeated failure to provide timely reporting and the failure to pay resulting late fees.  *See Mayer v. Pierce County Med. Bureau*, 80 Wn. App. 416, 420, 909 P.2d 1323 (1995) ("In construing a written contract, the basic principles require that (1) the intent of the parties controls; (2) the court ascertains the intent from reading the contract as a whole; and (3) a court will not read an ambiguity into a contract that is otherwise clear and unambiguous."); *Taylor-Edwards Warehouse & Transfer Co., of Spokane, Inc. v. Burlington N., Inc.*, 715 F.2d 1330, 1334 (9th Cir. 1983) ("The controlling intent of the parties must be ascertained from reading the contract as a whole, and where the language used is unambiguous, no ambiguity will be read into the contract.") (citing *Black Mountain Ranch v. Black Mountain Dev. Co.*, 29 Wn. App. 212, 215, 627 P.2d 1006 (1981)).

### 4. The Parties' Course of Dealing Does Not Excuse the LLC General Partners' Failures to Comply with the Partnership Agreements

The LLC General Partners also argue that the "parties' course of dealing with respect to these reports" excuses their failure to provide them within the time required under the Partnership Agreements.  *See* LLC MSJ at 12.  Notably, the LLC General Partners cite no legal basis for this argument.  That is because the parties' course of dealing *cannot* supersede the plain language of the Partnership Agreements.  *See Badgett v. Sec. State Bank*, 116 Wn.2d 563, 572, 807 P.2d 356 (1991) ("[A] course of dealing does not override express terms in a contract or add additional obligations.  Rather, it is a tool for interpreting the provisions of a contract."); *Smith v. Skone & Connors Produce, Inc.*, 107 Wn. App. 199, 208, 26 P.3d 981 (2001) (same); *Seattle-First Nat. Bank v. Westwood Lumber, Inc.*, 65 Wn. App. 811, 819, 829 P.2d 1152 (1992) ("If an agreement and an applicable course of dealing are inconsistent with one another, . . . , then the express terms control.").  This is especially true where, as here, the contract cannot be amended without "prior written consent or approval" of the Invested Limited Partner.  *See* Partnership Agreements § 13.9 ("This Agreement may be amended by the General Partners *with the Consent of the Investor Limited Partner* or in the manner provided in Section 4.5 [subject to limitations

DEFENDANTS AND COUNTER-PLAINTIFFS'
OPPOSITION TO LLC GENERAL PARTNERS' MSJ
(No. 2:17-cv-01115-RSM) – 14

**Boies Schiller Flexner LLP**
725 South Figueroa Street, 31st Floor
Los Angeles, CA  90017-5524
Phone:  (213) 629-9040
Fax:  (213) 629-9022

on the ability to amend not relevant here]") (emphasis added); *id.* § 4.5A(i) ("[T]he Investor

Limited Partner shall have the right . . . to amend this Agreement, subject to the provisions of

Section 13.9 [and limitations on the ability to amend not relevant here]"); *id.* § 1 (defining

"Consent of the Investor Limited Partner(s) as "the prior written consent or approval of the

Investor Limited Partner [or a majority interest thereof]").

The General Partner reporting requirements set forth in Sections 12.1B(i) through

12.1B(v) of the Partnership Agreements are unambiguous and do not permit delay.  Moreover, as

described above, the Limited Partners consistently sought past-due reports, treated such reports

as late, and explicitly refrained from sending demand letters to encourage Mr. Park to provide

the required reports.  That the Limited Partners did not previously seek to remove the LLC

General Partners based on similar conduct does not excuse the General Partners' failures to meet

their contractual obligations.  *See* 13 Williston on Contracts § 39:35 (4th ed.) ("[F]orbearance to

assert or insist on a right does not, by itself, constitute a waiver.  A party's reluctance to

terminate a contract on a breach and its attempts to encourage the breaching party to adhere to its

obligations under the contract should not ordinarily lead to a waiver of the innocent party's

rights.") (citations omitted).  Similarly, the General Partners' obligation to pay late fees for their

failure to provide timely reports does not disappear merely because the General Partners have

refused to satisfy it.

### 5.    The Removal Provision Is Not an Unenforceable Penalty

The LLC General Partners are correct that, "[i]n Washington, a provision for liquidated

damages will be upheld unless it is a penalty or otherwise unlawful."  *Wallace Real Estate Inv.,*

*Inc. v. Groves*, 124 Wn.2d 881, 886, 881 P.2d 1010 (1994).  The removal provisions in the

Partnership Agreements, however, are not liquidated damages provisions, let alone penalties.

"[A] liquidated damages provision is a sum of money agreed upon in advance that is a

reasonable forecast of just compensation for the harm caused by breach."  *Minnick v. Clearwire*

*U.S. LLC*, 174 Wn.2d 443, 449, 275 P.3d 1127 (2012).  An unenforceable penalty—in effect, an

improper liquidated damages provision—is a sum certain provided by a contract that is imposed as a punishment for breach. *See Buchanan v. Kettner*, 97 Wn. App. 370, 373, 984 P.2d 1047 (1999), *as amended* (Dec. 29, 1999) ("[A] penalty is a sum inserted in a contract, not as the measure of compensation for its breach, but rather as a punishment for default. . . . It is the payment of a stipulated sum on breach of contract, irrespective of the damage sustained.") (quoting *Management, Inc. v. Schassberger*, 39 Wn.2d 321, 326, 235 P.2d 293 (1951)); *Wallace Real Estate Inv., Inc. v. Groves*, 72 Wn. App. 759, 766, 868 P.2d 149 (1994) (same), *aff'd*, 124 Wn.2d 881, 881 P.2d 1010 (1994). Because the removal of a General Partner does not entail the General Partner's loss of a stipulated sum, the removal language cannot be construed as either a liquidated damages provision or a penalty. Indeed, far from *losing* a sum of money, the General Partners, upon removal, will either be compensated for the fair market value of their interests or will continue to be entitled to distributions under the Partnership Agreements. *See* Partnership Agreements §§ 4.5, 8.5, 9.4; *see also* discussion *infra* Section II.C.

Moreover, even if the removal language could be considered a liquidated damages clause, the removal of the General Partners would not be an unenforceable penalty. Washington courts consider the sophistication of the parties to be "of particular significance" in determining the reasonableness of a liquidated damages provision. *Wallace Real Estate*, 124 Wn.2d at 896. A party's "expertise supports the enforceability of the liquidated damages provisions and also highlights the inequity of allowing him to now challenge the provisions as penalties[.]" *Id.* at 897; *see also Red Lion Hotels Franchising, Inc. v. First Capital Real Estate Investments, LLC*, 2:17-CV-145-RMP, 2018 WL 4259241, at *5 (E.D. Wash. Sept. 6, 2018) (concluding that a liquidated damages provision was enforceable, and not a penalty, because the defendants, "as parties who specialize" in the real estate projects at issue, "knew of the risks associated . . . and agreed to the liquidated damages provision") (quotation marks omitted).

Here, Mr. Park is "a CPA and tax attorney with more than thirty (30) years of experience in the practice of law, public accounting, and financial, tax, and development consulting." Park

DEFENDANTS AND COUNTER-PLAINTIFFS'
OPPOSITION TO LLC GENERAL PARTNERS' MSJ
(No. 2:17-cv-01115-RSM) – 16

**Boies Schiller Flexner LLP**
725 South Figueroa Street, 31st Floor
Los Angeles, CA  90017-5524
Phone:  (213) 629-9040
Fax:  (213) 629-9022

Decl., ¶ 7.  In addition, Mr. Park has "more than twenty (20) years of experience in the hands-on

development, financing, construction, and syndication of affordable rental housing. . . ." *Id.*

With this highly sophisticated and experienced background, Mr. Park "negotiated and

participated in the drafting of each of th[e] seven limited partnership agreements," and was "the

sole drafter and negotiator" on behalf of all participants other than the Limited Partners.  *Id.*, ¶ 9.

Mr. Park specifically negotiated for the inclusion of SHAG's Section 42 ROFR.  *Id.*, ¶ 18; *see*

*Red Lion Hotels*, 2018 WL 4259241, at *5 (recognizing that a party's negotiation of other terms

in a contract and the receipt of concessions from a counterparty is evidence of the party's

expertise and sophistication).  Given Mr. Park's sophistication and hands-on role in drafting and

negotiating the Partnership Agreements, it would be inequitable to treat the Limited Partners'

removal rights as a penalty simply because Mr. Park does not favor the application of those

provisions to his own misconduct.  *See Wallace Real Estate*, 124 Wn.2d at 896.

> **6.    The Late Fees Do Not Negate the Limited Partners' Removal Rights**

The LLC General Partners appear to argue in their summary judgment motion that

removal is not a proper remedy for their repeated failure to timely furnish the required reports

because Section 12.1I provides for a late fee of $100 per day for such delays.  *See* LLC MSJ at

14.  As a threshold matter, it is ironic that the LLC General Partners now seek to rely on the late

fee provision to avoid removal, after they have ignored the Limited Partners' demand to pay

those fees for more than two years.  *See supra* Section II.B.2.b.  In any event, the existence of the

late fee provision does not mean that Section 4.5A(iv)(6)—which expressly permits removal

based upon the General Partner's repeated failure to timely furnish the required reports—may be

read out of the Partnership Agreements.  As articulated above, the Court must give effect to all

provisions in the Partnership Agreements, and it would be improper to read Section 4.5A(iv)(6)

out of the agreements.  *See Timeline*, 2007 WL 1574069, at *5.

Sections 4.5A(iv)(6) and 12.1I are not mutually exclusive.  *See* Partnership Agreements

§ 13.7C ("The rights and remedies of any of the parties hereunder shall not be mutually

DEFENDANTS AND COUNTER-PLAINTIFFS'
OPPOSITION TO LLC GENERAL PARTNERS' MSJ
(No. 2:17-cv-01115-RSM) – 17

**Boies Schiller Flexner LLP**
725 South Figueroa Street, 31st Floor
Los Angeles, CA  90017-5524
Phone:  (213) 629-9040
Fax:  (213) 629-9022

exclusive, and the exercise of one or more of the provisions hereof shall not preclude the exercise of any other provisions hereof").  Rather, these provisions work in concert, along with Section 4.5(iv)(7), which permits removal for failure to pay the fees assessed pursuant to Section 12.1I.  By permitting removal upon the General Partners' *repeated* failure to furnish the reports as required *or* their failure to timely pay the attendant late fees, the Partnership Agreements expressly contemplate that the $100 daily late fee is an insufficient remedy where, as here, a General Partner consistently fails to satisfy its reporting obligations and further fails to remedy those delays by paying the required fees.  *See id.* §§ 4.5A(iv)(6), (7).

### C.   Removal Will Not Result in a "Windfall" to the Limited Partners

Finally, the Limited Partners are not attempting to remove the LLC General Partners "as a pretext to seek a multi-million-dollar windfall," as the LLC General Partners claim, *see* LLC MSJ at 15, but instead to ensure that the Projects are properly managed in accordance with the Partnership Agreements and the General Partners' fiduciary duties to the Limited Partners.  (*See* Trane Decl., ¶ 8.)  The LLC General Partners ignore the critical fact that, upon removal, they will *either be compensated for the fair market value of their interests or will continue to be entitled to distributions under the Partnership Agreements.*  Section 4.5B of the Partnership Agreements provides that the "Interest of any General Partner removed pursuant to this Section 4.5 shall be valued and sold pursuant to section 8.4."  *See* Partnership Agreements § 4.5B.  Section 8.4, in turn, specifies that if a successor General Partner is designated, the successor General Partner may acquire the predecessor General Partner's Interest by paying the predecessor General Partner for the fair market value of its interest.  *Id.* § 8.4A.  If a successor General Partner is not designated, or if that successor General Partner does not wish to purchase the interest of the predecessor General Partner, then the predecessor General Partner is deemed to be a Special Class Limited Partner, and is entitled to the rights of an assignee of the Limited Partnership Interest, as provided by Section 9.4.  *Id.* § 8.4B.  Under Section 9.4B, an assignee that is not a Substitute Limited Partner (as would be the case here) is entitled to the same share of profits,

**Boies Schiller Flexner LLP**
725 South Figueroa Street, 31st Floor
Los Angeles, CA  90017-5524
Phone:  (213) 629-9040
Fax:  (213) 629-9022

losses, and distributions to which the assigning Limited Partner would have been entitled absent such assignment. *Id.* § 9.4B.

Based on the above, it is simply not the case that the Limited Partners would "acquire the General Partners' respective economic interests in the projects," or that the LLC General Partners would "suffer massive forfeitures" upon their removal as General Partners of the Partnerships. *See* LLC MSJ at 2–3. Moreover, nothing in the Partnership Agreements entitles the LLC General Partners to the economic benefits of SHAG's Section 42 ROFR. Only SHAG—as the nonprofit lessee and operator of the Projects—is entitled to such benefits, and only where there are bona fide third-party offers that the Limited Partners are willing to accept. In truth, it is the LLC General Partners who are seeking to compel "massive forfeitures" in this case, by orchestrating SHAG's improper efforts to force the Limited Partners out of the Partnerships at below-market prices so that the LLC General Partners can share in the resulting economic windfall pursuant to the GIA.

## III.   CONCLUSION

The Limited Partners are entitled to remove the LLC General Partners from their positions as General Partners of the Partnerships for three independently sufficient reasons: (1) the LLC General Partners breached their fiduciary duties to the Limited Partners by coordinating with SHAG to kick the Limited Partners out of the Partnerships at severely below-market prices based on an invalid invocation of SHAG's Section 42 ROFR, benefitting the LLC General Partners at the Limited Partners' expense; (2) the General Partners failed to furnish financial reports to the Limited Partners as required by the Partnership Agreements; and (3) the General Partners failed to pay required late fees to the Limited Partners as required by the Partnership Agreements. For these reasons, the Limited Partners respectfully request that the Court deny the LLC General Partners' summary judgment motion, enter summary judgment in the Limited Partners' favor, and declare as a matter of law that the LLC General Partners may be removed from their roles as General Partners of the Partnerships.

**Boies Schiller Flexner LLP**
725 South Figueroa Street, 31st Floor
Los Angeles, CA  90017-5524
Phone:  (213) 629-9040
Fax:  (213) 629-9022

1

RESPECTFULLY SUBMITTED this 14th day of December, 2018.

2

**Boies Schiller Flexner LLP**

3

By:  /s/ Eric S. Pettit

4

Christopher G. Caldwell, admitted *pro hac vice*
Eric S. Pettit, admitted *pro hac vice*

5

725 S Figueroa Street, 31st Floor
Los Angeles, CA 90017

6

Telephone:  213 629 9040
Facsimile:  213 629 9022

7

Email:  ccaldwell@bsfllp.com
        epettit@bsfllp.com

8

**Perkins Coie LLP**

9

By:  /s/ Steven D. Merriman

10

David J. Burman, WSBA #10611
Steven D. Merriman, WSBA #44035

11

1201 Third Avenue, Suite 4900

12

Seattle, WA  98101-3099
Telephone:  206.359.8000

13

Facsimile:  206.359.9000
Email:  DBurman@perkinscoie.com

14

        SMerriman@perkinscoie.com

15

Attorneys for the Limited Partners

16

17

18

19

20

21

22

23

24

25

26

DEFENDANTS AND COUNTER-PLAINTIFFS'
OPPOSITION TO LLC GENERAL PARTNERS' MSJ
(No. 2:17-cv-01115-RSM) – 20

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**CERTIFICATE OF SERVICE**

On December 14, 2018, I caused a copy of DEFENDANTS AND COUNTER-
PLAINTIFFS' OPPOSITION TO THE LLC GENERAL PARTNERS' MOTION FOR
SUMMARY JUDGMENT to be electronically filed via the Court's Electronic Case Filing
System, which will notify all attorneys of record of the filing.

By:   /s/ Sonia L. Mejia
          Sonia L. Mejia

**Boies Schiller Flexner LLP**
725 South Figueroa Street, 31st Floor
Los Angeles, CA  90017-5524
Phone:  (213) 629-9040
Fax:  (213) 629-9022