THE HONORABLE RICARDO S. MARTINEZ

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF KING

| | |
|---|---|
| SENIOR HOUSING ASSISTANCE GROUP,<br><br>            Plaintiff/Counter-Defendant,<br><br>v.<br><br>AMTAX HOLDINGS 260, LLC, et al.<br><br>            Defendants/Counter-Plaintiffs. | No. 2:17-cv-01115-RSM<br><br>**DECLARATION OF JAKE EWART IN SUPPORT OF SENIOR HOUSING ASSISTANCE GROUP'S AND SENIOR HOUSING ASSISTANCE CORPORATION'S RESPONSE TO AMTAX HOLDINGS 260, LLC'S MOTION FOR SUMMARY JUDGMENT** |
| AMTAX HOLDINGS 260, LLC, et al.,<br><br>            Third-Party Plaintiffs,<br><br>v.<br><br>SENIOR HOUSING ASSISTANCE CORPORATION, et al.<br><br>            Third-Party Defendants. | |

Pursuant to 28 U.S.C. § 1746, the undersigned hereby declares that:

1. I am an attorney with the firm of Hillis Clark Martin & Peterson P.S., which represents Plaintiff Senior Housing Assistance Group and Third-Party Defendant Senior

---

*Declaration of Jake Ewart*
*(2:17-cv-01115-RSM)- 1*

**HILLIS CLARK MARTIN & PETERSON P.S.**
999 Third Avenue, Suite 4600
Seattle, WA 98104
Tel: (206) 623-1745

1 | Housing Assistance Corporation in this action. I have personal knowledge of the matters set forth in this declaration and am competent to testify in this matter.

2. Attached as **Exhibit A** are true and correct copies of deposition excerpts of the Deposition of Stephen Smith taken on July 18, 2018.

3. Attached as **Exhibit B** are true and correct copies of deposition excerpts of the Deposition of David Von Tilius taken on October 10, 2018.

I hereby declare, under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct.

DATED this 14th day of December 2018, at Seattle, Washington.

s/Jake Ewart
JAKE EWART

ND: 21822.003 4826-8072-5378v3

*Declaration of Jake Ewart*
*(2:17-cv-01115-RSM)- 2*

HILLIS CLARK MARTIN & PETERSON P.S.
999 Third Avenue, Suite 4600
Seattle, WA 98104
Tel: (206) 623-1745

**CERTIFICATE OF SERVICE**

I hereby certify that on the 14th day of December, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification to all counsel of record.

DATED this 14th day of December 2018, at Seattle, Washington.

By <u>*s/ Jake Ewart*</u>
Jake Ewart, WSBA #38655
Hillis Clark Martin & Peterson P.S.
999 Third Avenue, Suite 4600
Seattle, Washington 98104
Telephone: (206) 623-1745
Facsimile: (206) 623-7789
Email: jake.ewart@hcmp.com

*Declaration of Jake Ewart*
*(2:17-cv-01115-RSM)- 3*

HILLIS CLARK MARTIN & PETERSON P.S.
999 Third Avenue, Suite 4600
Seattle, WA 98104
Tel: (206) 623-1745

# EXHIBIT A

Stephen Smith                                           July 18, 2018

Page 1

UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

---

| | |
|---|---|
| SENIOR HOUSING ASSISTANCE GROUP,<br>    Plaintiff/<br>    Counter-Defendant,<br>vs.<br>AMTAX HOLDINGS 260, LLC, et al.,<br>    Defendants/Counter-<br>    Plaintiffs. | No.<br>2:17-cv-01115-RSM |
| AMTAX HOLDINGS 260, LLC, et al.,<br>    Third-Party Plaintiffs<br>vs.<br>SENIOR HOUSING ASSISTANCE CORPORATION, et al.,<br>    Third-Party Defendants. | |

---

Videotaped

Deposition Upon Oral Examination Of

STEPHEN SMITH

---

July 18, 2018

1201 Third Avenue, Suite 4900, Seattle, Washington

REPORTED BY: PEGGY FRITSCHY HAMILTON, RPR, CSR, CLR, 29906/No. 2704

```
                1    dinner?
                2        A.   Or we go to a baseball game or a Seahawks
                3    game, a Mariners or Seahawks game.  As far as dinner,
                4    a few times a year.
11:24:57        5        Q.   Okay.  And I mean, would you consider Bryan a
                6    friend of yours?
                7        A.   Yes.
                8        Q.   Okay.  And a business partner?
                9        A.   Yes.
11:25:04       10        Q.   Okay.  Do your families ever interact?  Do
               11    you ever --
               12        A.   Yes.  We had dinner with our wives one time,
               13    the four of us.
               14        Q.   Okay.  Do you recall approximately when that
11:25:17       15    was?
               16        A.   A couple -- a year or two ago, yeah.
               17        Q.   Okay.  And was there a special occasion for
               18    that, or was it just sort of an idea that it would be
               19    nice to all have dinner together?
11:25:39       20        A.   Just an idea that it would be nice.
               21        Q.   I'm going to hand you another exhibit, No. 9.
               22             (Exhibit-9 marked.)
               23        Q.   So Mr. Smith, the court reporter has handed
               24    you what's been marked as Exhibit-9.  Do you recognize
11:26:20       25    this document?  Take your time to take a look at it.
```

```
11:26:44   1       A.   I can't say that I recognize it, but
           2  obviously I signed it.
           3       Q.   Well, that was going to be my next question.
           4       A.   Yeah.
11:26:44   5       Q.   So if you turn to the -- let's see.  If you
           6  look at those numbers that I mentioned before, those
           7  Bates numbers in the bottom corner.  If you look at
           8  the one that ends in 547, is that your signature on
           9  that page?
11:27:02  10       A.   Yes.
          11       Q.   Okay.  And it's dated December 18th, 2014?
          12       A.   Yes.
          13       Q.   Okay.  And if you go back to the first
          14  page of this document, it appears to be a real estate
11:27:15  15  purchase and sale agreement between Meridian Court
          16  Apartments Limited Partnership and
          17  SSRE Development, LLC.  Do you see that right in the
          18  preamble?
          19       A.   I do.
11:27:28  20       Q.   Okay.  And so do you understand that this was
          21  an offer by SSRE to purchase the Meridian Court
          22  Apartments from the limited partnership?
          23       A.   Yes.
          24       Q.   Okay.  When did you first become aware of the
11:27:45  25  existence of the Meridian Court Apartments?
```

Page 60

1    you'll have an offer -- a purchase and sale agreement
2    that includes an offer, that if accepted, will become
3    binding?
4        A.   I'm sorry.  Could you repeat that?
11:38:55  5    Q.   Sure.  Well, let me back up.  Let's stick
6    with the date.  Is it typically your practice to put
7    an expiration date on offers that you make to purchase
8    real estate?
9        A.   Yes.
11:39:10 10    Q.   Okay.  And usually how long of a period do
11   you sort of let the offer stay open before it is
12   withdrawn?
13       A.   Two to four weeks.
14       Q.   Okay.  And you can't think of any reason,
11:39:33 15   other than the relationship to December 18th, which
16   is, I guess, 13 days before December 31st, 2014, you
17   can't think of any other reason why December 31st,
18   2014, was selected as the date the offer would expire?
19       A.   That's correct.
11:39:49 20    Q.   And did you -- now, going back to what I was
21   inarticulately trying to get to before.
22       A.   Um-hum.
23       Q.   Was it your understanding that if the seller
24   signed this agreement, that you would have a binding
11:40:07 25   purchase and sale agreement that you would be

```
11:40:27
11:40:45
11:40:59
11:41:09
11:41:19
```

1      contractually bound by?
2          A.    Yes.
3          Q.    Okay.  And in your business, where you are
4      interested in purchasing a piece of real property, is
5      it typical for you to do it in this manner, to send
6      the seller a real estate purchase and sale agreement,
7      that if they sign it, then it's a consummated deal?
8      Is that normally how you do things?
9          A.    Isn't that obvious?  I mean, of course.
10         Q.    Well, I mean, have you ever heard of the term
11     "letter of intent"?
12         A.    Oh, I see.  Right, of course, yes.  Yes, I
13     have heard of letter of intent, and yes, it was -- yes
14     to your first question.  It was my understanding that
15     we would have a legally binding contract if the seller
16     signed.  Is that what you asked me?
17         Q.    Well, my question was, in your general
18     practice, putting this aside --
19         A.    Okay.
20         Q.    -- in your general practice, when you are
21     interested in buying a property, do you -- is the
22     first thing that you send to the seller a purchase and
23     sale agreement, where if they sign it, it's a deal, or
24     do you kind of --
25         A.    Yes.  I don't like letters of intent because

|  |  |  |  |
|---|---|---|---|
|  | 1 | Q. | That's your assistant? |
|  | 2 | A. | Yes. |
|  | 3 | Q. | Okay.  And does she still work with you? |
|  | 4 | A. | Yes. |
| 12:00:48 | 5 | Q. | How long has she been with you? |
|  | 6 | A. | About eight years. |
|  | 7 | Q. | Oh.  Great.  Before we get to the emails, there's an attachment.  You see at the top there that shows an attachment, and Diane's email says, "Steve and Bryan, attached is the signed purchase offer."  So I'd like to look at that attachment first, which is the third page of the exhibit, Bates number ending in 714. |
|  | 14 |  | This appears to be a purchase and sale agreement, dated as of December 23rd, 2015, between Auburn North Associates Limited Partnership and SSRE Development.  Do you see that? |
|  | 18 | A. | Yes. |
|  | 19 | Q. | Okay.  And if you look to page 14 of this agreement, which is Bates number ending in 727, I'd just like you to confirm again that that's your signature there. |
|  | 23 | A. | Yes. |
|  | 24 | Q. | And the signature date on that is |
| 12:01:58 | 25 |  | December 29th, 2015? |

Page 75

|            |    |                                                              |
|------------|----|--------------------------------------------------------------|
|            | 1  | makes a counteroffer to this agreement, provided that        |
|            | 2  | such mutual acceptance or counteroffers delivered by         |
|            | 3  | seller to buyer on or before 5 p.m. on January 8th,          |
|            | 4  | 2016."  Do you see that?                                     |
| 12:11:43   | 5  |      A.   Yes.                                               |
|            | 6  |      Q.   So again, similar to Meridian Court, your          |
|            | 7  | understanding was that if Auburn North Limited               |
|            | 8  | Partnership signed this, then you would have a binding       |
|            | 9  | deal to purchase the property?                               |
| 12:11:59   | 10 |      A.   Yes.                                               |
|            | 11 |      Q.   And do you recall whether you made a               |
|            | 12 | determination prior to submitting this offer that you        |
|            | 13 | had the capacity to perform the obligations set forth        |
|            | 14 | in this offer?                                               |
| 12:12:32   | 15 |      A.   Well, that would have been step two after          |
|            | 16 | mutual acceptance, is putting all of the partners            |
|            | 17 | together to buy it.                                          |
|            | 18 |      Q.   I'm not sure I understand what you mean.           |
|            | 19 |      A.   I'm sorry.  What was your question?                |
| 12:12:49   | 20 |      Q.   Well, my question is, did you have                 |
|            | 21 | $21 million to buy this property?                            |
|            | 22 |      A.   No.                                                |
|            | 23 |      Q.   Okay.  And so what was the process that you        |
|            | 24 | were describing just now as step two?                        |
| 12:13:04   | 25 |      A.   Getting partners and putting together a            |

Page 100

1                    C E R T I F I C A T E

2    STATE OF WASHINGTON   )
                            ) ss.
3    COUNTY OF KING         )

4              I, the undersigned Registered

5    Professional Reporter and Washington Certified Court

6    Reporter, hereby certify that the foregoing deposition

7    upon oral examination of STEPHEN SMITH was taken

8    before me on July 18, 2018 and transcribed under my

9    direction;

10             That the witness was duly sworn by me

11   pursuant to RCW 5.28.010 to testify truthfully; that

12   the transcript of the deposition is a full, true, and

13   correct transcript to the best of my ability; that I

14   am neither attorney for, nor a relative or employee

15   of, any of the parties to the action or any attorney

16   or counsel employed by the parties hereto, nor

17   financially interested in its outcome.

18             IN WITNESS WHEREOF, I have hereunto set

19   my hand and seal this date: July 23, 2018.

20

21   \S\ PEGGY FRITSCHY HAMILTON, RPR, CSR, CLR

22        Court Reporter in and for the State of

23   Washington, residing at Seattle.  License expires

24   07-02-19.

25

# EXHIBIT B

Case 2:17-cv-01115-RSM   Document 100   Filed 12/14/18   Page 14 of 17
Case 2:17-cv-01115-RSM   Document 94-1   Filed 11/29/18   Page 15 of 16

David Von Tilius                                          October 10, 2018

Page 1

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

---

SENIOR HOUSING ASSISTANCE GROUP,     )
    Plaintiff-Counter-               )
    Defendant,                       )   NO.
  vs.                                )
AMTAX HOLDINGS 260, LLC, et al.,     )   2:17-cv-01115 RSM
    Defendants/Counter-              )
    Plaintiffs.                      )
-------------------------------------)
AMTAX HOLDINGS 260, LLC, et al.,     )
    Third-Party Plaintiffs,          )
  vs.                                )
SENIOR HOUSING ASSISTANCE            )
CORPORATION, et al.                  )
    Third-Party Defendants.          )

---

DEPOSITION UPON ORAL EXAMINATION

OF

DAVID VON TILIUS

---

9:05 a.m.

October 10, 2018

701 Fifth Avenue, Suite 3300

Seattle, Washington

REPORTED BY: Lauren G. Harty, RPR, CCR #2674

Page 66

1  forth, are any of them specifically addressing Section
2  42?
3     A.  You'll have to give me a minute to --
4     Q.  Please take --
5     A.  -- look through this.
6     Q.  Take whatever time you need.
7     A.  Thank you.
8         I do not believe that any of the authorities
9  referenced in the portion of the report you just
10 referred to specifically relate to Section 42 as it
11 relates to the impact of a below-market rate option.
12    Q.  Okay.
13        Are you familiar with a Massachusetts case
14 called Homeowners Equity?
15    A.  I am.
16    Q.  Okay.
17        And does that, at least to some degree, deal
18 with the option issue that is within this -- under
19 this heading?
20    A.  I think that it does.
21    Q.  Is there -- do you refer at all in your
22 report to the Homeowners Equity case?
23    A.  I do not believe that I do, no.
24    Q.  Any particular reason you did not?
25    A.  I don't know if there's a particular reason.

Page 67

1  I don't specifically agree with the ruling, not that
2  it's my determination to make.
3     Q.  So you -- you think Homeowners Equity was
4  wrongly decided?
5         MR. PETTIT:  Objection; lacks foundation,
6  outside the scope of his designation.
7     A.  I don't agree with it.
8     Q.  (By Mr. Walters)  Would you agree that
9  Homeowners Equity does specifically address Section
10 42?
11    A.  I would.  I also think that case
12 specifically does say that there is a difference
13 between a ROFR and an option and concludes that a ROFR
14 does require an offer in order to be triggered.
15    Q.  Why do you disagree with the Homeowners
16 Equity decision?
17    A.  I think -- for all the reasons that I've
18 laid out in here, I think that there is substantial
19 history to the contrary.
20    Q.  Now, in the Homeowners Equity case is it
21 correct to say that your employer was directly
22 involved?
23    A.  I think that is a correct statement, yes.
24    Q.  Okay.
25        And in what way was it involved?

Page 68

1     A.  It was representing the limited partner in
2  that case as well.
3     Q.  And were the -- was it one or more than one
4  limited partner in that case, as you understand it?
5     A.  I believe it was one limited partner and one
6  special limited partner.
7     Q.  And was that -- and were they AMTAX
8  entities?
9     A.  They were not.
10    Q.  Okay.
11        What -- does -- was AMTAX -- were any of the
12 parties AMTAX entities?
13    A.  They were not.
14    Q.  But they were entities that Alden Torch
15 would the correct term be represents?
16    A.  They were funds managed by Alden Torch.
17    Q.  Have you had any personal involvement in the
18 litigation that led up to the Homeowners Equity
19 decision?
20    A.  I did not.
21    Q.  Is it your understanding that the -- that
22 the decision was a decision by the highest court in
23 the state of Massachusetts?
24    A.  That is my understanding.
25    Q.  Could you please re -- switch for a second

Page 69

1  to Exhibit 181, please.
2     A.  Sure.  Where specifically?
3     Q.  Page 8 of Mr. Krabbenschmidt's report,
4  please.  Just tell me when you have that in front of
5  you.
6     A.  I've got it.
7         MR. PETTIT:  Page 8 you said Denny?
8         MR. WALTERS:  8.
9         MR. PETTIT:  Thank you.
10    Q.  (By Mr. Walters)  Under the heading "Global
11 Indemnity Agreement," the second paragraph, where it
12 starts, "As discussed above...," do you see where I'm
13 referring?
14    A.  I do.
15    Q.  And specifically I want to direct your
16 attention to where about two-thirds of the way down
17 Mr. Krabbenschmidt refers to the carve-out provided by
18 IRC Section 42(i)(7).  Do you see that?
19    A.  I do.
20    Q.  Okay.
21        First of all, let me have you read that
22 entire paragraph -- take whatever time you need -- and
23 tell me if you agree with what Mr. Krabbenschmidt says
24 here or if you have any disagreement with him.
25        MR. WALTERS:  So we can go off the record.

David Von Tilius                                              October 10, 2018

                                                                     Page 155
 1                            S I G N A T U R E
 2
 3         I declare under penalty of perjury under the
 4   laws of the State of Washington that I have read my
 5   within deposition, and the same is true and accurate,
 6   save and except for changes and/or corrections, if
 7   any, as indicated by me on the CHANGE SHEET flyleaf
 8   page hereof.
 9         Signed in __Denver__, ~~Washington~~ (Colorado), this
10   __12th__ day of __November__, 2018.
11
12
13   _____
14         DAVID VON TILIUS
15         Taken:  October 10, 2018
16
17
18
19
20
21
22
23
24   Re:  SHAG v. AMTAX, et al.
     Cause No.:  2:17-cv-01115 RSM
25   Lauren G. Harty, RPR, CCR #2674

David Von Tilius                                              October 10, 2018

```
                                                              Page 157
 1              SEATTLE DEPOSITION REPORTERS, LLC
 2              600 University Street, Suite 320
 3                 Seattle, Washington 98101
                        206.622.6661
 4
 5                    C H A N G E   S H E E T
 6   PLEASE MAKE ALL CHANGES OR CORRECTIONS ON THIS SHEET,
     SHOWING PAGE, LINE AND REASON.
 7
 8   PAGE    LINE    CORRECTION AND REASON
 9    13      17     Delete "and" - typo
10    13      21     Change "could" to "would" - typo
11    22      20     Change "Resnick" to "Reznick" - typo
12    38      24     Change "and act and" to "enacted" - typo
13    41     14-15   Change "with disregard to any of the" to
                     "are disregarded entities for" - typo
14    43      17     Change "seceding" to "succeeding" - typo
15    44      12     Change "seceding" to "succeeding" - typo
16    48      19     Change "is" to "as" - typo
17    56      10     Change "Hunter" to "Hunt" - typo
18    78      11     Change "ex" to "exit" - typo
19    90      11     Change "PNC" to "PNCC" - typo
20   103      15     Change "remain" to "retain" - typo
21   151      20     Change "PNC" to "PNCC" - typo
22                   _____
23                   DAVID VON TILIUS
                     Taken:  October 10, 2018
24
25   Re:  SHAG v. AMTAX, et al.
```