The Honorable Ricardo S. Martinez

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
### AT SEATTLE

| | |
|---|---|
| SENIOR HOUSING ASSISTANCE GROUP ,      ) | CASE NO. 2:17-CV-01115 RSM |
|        Plaintiff/Counter-Defendant  ) | |
|        ) | |
|      v.        ) | RESPONSE OF LLC GENERAL PARTNERS TO AMTAX MOTION FOR SUMMARY JUDGMENT |
| AMTAX HOLDINGS 260, LLC, an Ohio limited liability company; PROTECH HOLDINGS W, LLC, an Ohio limited liability company; AMTAX HOLDINGS 259, LLC, an Ohio limited liability company; AMTAX HOLDINGS 258, LLC, an Ohio limited liability company; AMTAX HOLDINGS 257, LLC, an Ohio limited liability company; AMTAX HOLDINGS 164, LLC, an Ohio limited liability company; PROTECH 2002-A, LLC, an Ohio limited liability company; AMTAX HOLDINGS 109, LLC, an Ohio limited liability company; and PROTECH 2001-B, LLC, an Ohio limited liability company ,        ) | **NOTE ON MOTION CALENDAR: DECEMBER 21, 2018** <br> **ORAL ARGUMENT REQUESTED** |
|      Defendants/Counter-Plaintiffs. ) | |
| AMTAX HOLDINGS 260, LLC, et al. ,      ) | |
|        Third-Party Plaintiffs,      ) | |
|      v.        ) | |
| SENIOR HOUSING ASSISTANCE CORPORATION; LYNNWOOD RETIREMENT LIVING, LLC; STEEL LAKE ENTERPRISES, LLC; WOODLANDS ASSOCIATES, LLC; and LAKEWOOD MEADOWS ENTERPRISES, LLC;        ) | |
|      Third-Party Defendants. ) | |

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

# I.     INTRODUCTION

Counter-Defendants LLC General Partners (Lynnwood Retirement Living LLC; Steel Lake Enterprises, LLC; Woodlands Associates, LLC; and Lakewood Meadows Enterprises, LLC) submit this Response in opposition to AMTAX's Motion for Summary Judgment.  This Response is based on the materials previously submitted by the parties, as well as the Second Declaration of Bryan M. Park, submitted herewith.  The LLC General Partners join in the Response submitted by Plaintiff SHAG.

The LLC General Partners submit this Response to address AMTAX's contentions that they have conspired with SHAG to breach their fiduciary duties, and to improperly divest AMTAX of its interests in the seven LIHTC projects in violation of the Partnership Agreements.  *See, e.g.*, Dkt. 26 (AMTAX Counterclaims at 27).  AMTAX's contentions are without merit, and its motion for summary judgment should therefore be denied.  The LLC General Partners should not be required to forfeit their economic interests in the projects so that AMTAX can reap a huge windfall.

# II.     ARGUMENT

A.     The only meaningful compensation SHAG is to receive for its 15+ years of work is its entitlement to exercise its Special ROFRs.

At page 1 of its Motion for Summary Judgment, AMTAX contends that SHAG receives "substantial fees and other benefits" in exchange for its work to develop and operate the seven LIHTC projects. Dkt. 89 at 1. AMTAX is wrong about SHAG.  SHAG's Special ROFRs are the only significant compensation to which SHAG is entitled under the partnership agreement.  Second Park Decl. at ¶4-6.  This reality for SHAG is important because it reflects the intent of the parties in drafting the Project Partnership Agreements for SHAG to indeed receive a "substantial benefit" from its participation, but for that substantial benefit to be in the form of a unilateral right to exercise its Special ROFRs.

The only benefit SHAG has received to date as a result of its work on the projects has been the fees it has received as the operator of the seven projects of approximately 1% of the actual gross revenue from operations.  These fees have, in effect, only reimbursed SHAG for a portion

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

1    of the out-of-pocket expenses, including staff salaries, that it has incurred in performing its

2    responsibilities as the operator of all seven of the projects. *Id.* If SHAG were to be denied its right

3    to exercise its Special ROFRs, it would <u>not</u> share in any proceeds from a Partnership's sale of a

4    project, or in any "benefits" <u>at all</u> from the projects, in any meaningful way. *Id.* at ¶ 6. SHAG

5    would not meaningfully benefit from a sale of a project unless it were the purchaser itself, by

6    exercising one of its Special ROFRs. *Id.*

7         This meager contract compensation to SHAG during the 15-year compliance period was

8    <u>by design</u>. *Id.* at ¶ 7. As the parties specifically addressed in their negotiations in 2001 and 2002,

9    the parties' mutual intent was always for SHAG's primary compensation for its participation in

10   the projects to come from its Special ROFR rights to eventually purchase the project properties for

11   the below-market price specified in Section 7.4L. *E.g.*, Dkt. 93 (First Park Decl.) Ex. A at 7.

12        When the partnership agreements were being negotiated in 2001 and 2002, SHAG's role

13   was key to the projects, given the obvious importance the parties placed on SHAG's involvement

14   due to its marketing draw, its reputation in the Pacific Northwest, and the real estate tax exemptions

15   it would be able to supply. Second Park Decl. at ¶8; Dkt. 88, Woolford Decl., Exs. E-F at § 2.3

16   (one of the two purposes of each project was to enter into contracts with SHAG that would result

17   in favorable tax treatment). Accordingly, the parties specifically inserted Section 7.4L to give

18   SHAG a meaningful right to purchase the projects at the end of the 15-year compliance period if

19   SHAG satisfied the conditions of Section 7.4L. *Id.*

20   B.   <u>SHAG's Special ROFR was never intended to be either a common-law right of first refusal</u>

21        <u>or a common-law option.</u>

22        1.   <u>SHAG's "Special ROFR" is a negotiated contract provision, specific to the parties'</u>
             <u>unique circumstances and independent of any common law definition.</u>

23        At pages 2 and 13-16 of its motion, AMTAX argues that it was the intent of the parties for

24   SHAG's Special ROFR in Section 7.4L to be interpreted as if it were a common law right of first

25   refusal. Dkt. 89 at 13-16. The language of the Project Partnership Agreements, and the parties'

26   negotiations in 2001 and 2002, establish that the parties had no such intent.

27

Mr. Park and AMTAX's representatives at Paramount collaborated on drafting the partnership agreements, including Section 7.4L. Second Park Decl. at ¶ 10. The representatives of the parties who negotiated the Partnership Agreements were all sophisticated and familiar with LIHTC projects, familiar with the language of Code Section 42(i)(7), and familiar with Mr. Park's earlier statements and letter (Exhibit A to Mr. Park's First Declaration) to Paramount and his revisions to Paramount's Investment Proposal (Exhibit B to Mr. Park's First Declaration) to the effect that the Partnership Agreements would need to include a provision under which SHAG would eventually be entitled to purchase the project properties at a below-market price. *Id*. at ¶ 11. Accordingly, the parties defined the term "Special ROFR" in Paragraph 7.4L very simply as SHAG's right to purchase each project for a price that would be the sum of the Code Section 42(i)(7)(B) statutory minimum price, plus the dollar amounts specified in Section 6.2B(ii), if, after the completion of the 15-year compliance period, SHAG could meet the two or four conditions (depending on whether SHAC is involved) to exercise its purchase right. Dkt.88, Woolford Decl., Exs. E-F § 7.4L. No further definition was included, or needed, in the Partnership Agreement.

SHAG's Special ROFR was made exercisable only *after* AMTAX expected tax benefits would already have been realized by AMTAX. *Id*. The agreed arrangement of benefits was thus balanced, giving the significant tax benefits to the investor, the bulk of the fees and cash flow to the developer, and a meaningful back-end conditional purchase right to SHAG, which was primarily interested in having long-term control over the affordable housing units in order to serve its mission and the communities in which it operates.

There is nothing in Code Section 42(i)(7) to prevent the parties from making any agreement they wished to make regarding SHAG's exercise of its Special ROFR. By its terms, Code Section 42(i)(7) is silent on the mechanism for triggering a Section 42(i)(7) ROFR, is silent regarding any specific terms to be contained in the grant of a Section 42(i)(7) ROFR, and is silent on how the parties may define the purchase rights that are granted in a Special ROFR. Nothing in Code Section 42(i)(7) mandates a third-party offer, or consent from anyone, or a willingness by the

RESPONSE OF LLC GENERAL PARTNERS
TO AMTAX MOTION FOR SUMMARY JUDGMENT- 4
#1215427 v1 / 72811-001

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

1   Project Partnership or the Investor Limited Partner to sell, before an eligible purchaser like SHAG

2   would be able to exercise its Section 42(i)(7) ROFR.

3       Code Section 42(i)(7) states only that the existence of a right of first refusal will not

4   jeopardize a party's tax status. It does not state the converse, *i.e.*, that a failure to follow any

5   particular procedure *would* jeopardize a party's tax status. Here, the contracting parties were free

6   to interpret Code Section 42(i)(7), and to accept any potential risks of non-compliance with Code

7   Section 42(i)(7) as they saw fit, as would be the case with any tax-driven real estate transaction.

8       As reflected in the sample provided as **Exhibit M** to Mr. Park's Second Declaration, during

9   the parties' negotiations in 2001 and 2002, Mr. Park provided detailed financial projections to

10   Paramount pertaining to the AMTAX Investor Limited Partners. *Id*. at ¶ 14. These projections all

11   reflected the parties' mutually-expressed understanding, expectation and intent that the financial

12   returns to AMTAX would not include proceeds from a market rate third-party sale, and that

13   AMTAX's returns would *cease* following the expected exercise of SHAG's Special ROFRs. *Id*.

14       AMTAX contends in its motion that Section 42 does not permit the use of a common law

15   option, and that therefore the parties must have intended for SHAG's Special ROFR to be

16   interpreted as a common law right of first refusal, such that SHAG would have only "the right to

17   have the first choice to buy something on the same terms as offered to someone else," or the "right

18   to meet the terms of a third party's higher offer," or "the opportunity to buy the subject property

19   on the same terms contained in a bona fide offer from a third party acceptable to the owner." Dkt

20   89 at 1-2, 14.   But SHAG's Special ROFR is not a common-law right of first refusal.  The terms

21   and conditions of Section 7.4L do not conform to either the typical elements of a common law

22   right of first refusal, or to the typical elements of a common law option.

23       The terms of Section 7.4L are not a common law right of first refusal because SHAG's

24   purchase right is not tied in any way to a third-party offer, and because its terms do not conform

25   to any of the definitions of a common law right first refusal offered by AMTAX in its motion.

26   Dkt. 89 at 14.  The terms of Section 7.4L do not constitute a common law option because SHAG's

27   purchase rights were subject to at least 15 years of uncertainty about whether SHAG and SHAC

RESPONSE OF LLC GENERAL PARTNERS
TO AMTAX MOTION FOR SUMMARY JUDGMENT- 5
#1215427 v1 / 72811-001

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

would be able to satisfy the conditions to exercise SHAG's Special ROFRs.  For example, SHAG would need to continue to own and operate its subsidiary, SHAC, and would need to continue as the Lessee and Operator for each project.  SHAG faced the potential under Section 24 of the parties' Operating Use Lease Agreements that SHAG's partners could seek to remove SHAG as the lessee and/or operator of the seven projects, such as for failure to carry out its duties to the Project Partnerships during the compliance period. Second Park Decl. at Ex. Q.

As a result, SHAG had to <u>earn</u> its right to purchase the projects over the course of 15 years, rather than being guaranteed its purchase right from the beginning as would be the case with a typical common law option.  Section 7.4L is thus most appropriately viewed as a hybrid arrangement, with contract terms that the parties fashioned and agreed upon to fit their unique circumstances, such that it was only at the point when the projects had reached the end of the 15-year compliance period that the parties could determine whether SHAG's Special ROFR entitled SHAG to purchase the project properties.

Section 7.4L does not require either a third-party offer or an intent by the partnership to accept such an offer.  By referencing Code Section 42(i)(7) and its statutory minimum purchase price formula, Section 7.4L specifically provides that the calculation of SHAG's purchase price is to have no connection at all to the existence or terms of a third-party offer.  The express terms of Section 7.4L are thus directly contrary to AMTAX's argument that the parties intended for SHAG's Special ROFR to be interpreted as a common law right of first refusal, with SHAG having a right to purchase the property only by matching the price and other terms offered by a third party.  Accordingly, the General Partners have not breached any duty to AMTAX by working with SHAG to exercise its Special ROFRs in compliance with the partnership agreements.

2.   <u>AMTAX gave its consent to sell in 2002.</u>

AMTAX has argued at pages 13 - 15 of its motion that SHAG can only exercise its Special ROFR for a particular project if AMTAX first provides its consent to the sale, after a third party has made a bona fide purchase offer during the two-year period (years 16 and 17) in which SHAG can exercise its Special ROFRs.  Dkt. 89 at 13-15.  This argument is based entirely on AMTAX's

RESPONSE OF LLC GENERAL PARTNERS
TO AMTAX MOTION FOR SUMMARY JUDGMENT- 6
#1215427 v1 / 72811-001

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

1   contention that the parties intended for SHAG's Special ROFR to be a common law right of first

2   refusal. *Id.*  In substance, AMTAX is arguing that the parties intended for SHAG's Special ROFR

3   in Section 7.4L to be meaningless, unenforceable, and unusable.  The Court cannot interpret

4   Section 7.4L in a manner that would render it meaningless.  *E.g., Ibrahim v. AIU Ins. Co.*, 177 Wn.

5   App. 504, 515, 312 P.3d 998 (2013).

6        Given the Special ROFR's short exercise window, it would have been virtually impossible

7   for SHAG to exercise its Special ROFR if its exercise required both a third-party offer and

8   AMTAX's consent to sell.  Second Park Decl. at ¶ 22.  AMTAX would have every incentive *not*

9   to give its consent during the Special ROFR's two-year lifespan if it meant the difference between

10  a below-market sale to SHAG and a sale at fair market value with the proceeds accruing to the

11  benefit of AMTAX instead of SHAG.  Under those circumstances, the Special ROFR would have

12  no practical value to SHAG at all.  If the parties had intended *not* to give SHAG a meaningful

13  opportunity to buy the project after the end of the compliance period, they would simply have

14  omitted the Special ROFR provision from the Partnership Agreement in the first place.  Instead,

15  they specifically negotiated to *add* this right in all seven of the agreements.

16       Neither Section 7.4L nor any other provision in the Project Partnership Agreements

17  contains any mention of a requirement for any other party's consent to be given in order for SHAG

18  to be entitled to exercise its Special ROFRs.  Instead, Section 7.4L was written to give SHAG a

19  meaningful opportunity to dictate a purchase of the project for two years after the close of the

20  compliance period, and it was written into the Partnership Agreements to incorporate AMTAX's

21  consent <u>in advance</u> to the eventual sale of each Project to SHAG if and when SHAG satisfied the

22  conditions of Section 7.4L and elected to exercise its Special ROFRs some 15 to 17 years later.

23       A requirement of consent at the end of the compliance period from the Partnership or the

24  Investor Limited Partner to sell the project properties to SHAG would be at odds with the very

25  nature of the Special ROFR.  The value of AMTAX giving its consent up front was that it could

26  not indulge any "seller's remorse" 15 years later, once the ROFR could finally be exercised.  It is

27  only at the <u>beginning</u> of a LIHTC project that the nonprofit's ability to bring its services and

RESPONSE OF LLC GENERAL PARTNERS
TO AMTAX MOTION FOR SUMMARY JUDGMENT- 7
#1215427 v1 / 72811-001

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

1  property tax exclusion to the table will have value to the partnership and to the limited partner

2  going forward, and will provide the necessary incentive for the limited partner to agree -- as

3  AMTAX did here in Sections 7.4L and 4.5A(iii) -- that the nonprofit will have the unilateral right

4  to exercise its ROFR 15 years later.

5         If it could, a rational investor limited partner would always block the exercise of a below-

6  market purchase right.  Therefore, no investor limited partner in its right mind would ever consent

7  at the *end* of a LIHTC project to the exercise and consummation of a below-market ROFR where,

8  as here, the fair market value of the project has grown to significantly exceed the existing

9  indebtedness secured by the Project.  That is why AMTAX's consent to SHAG having the

10 unilateral right to eventually exercise its Special ROFRs took place when Paramount signed the

11 Partnership Agreements at the <u>beginning</u> of the projects, when AMTAX still had a big incentive

12 to consent. By the time the 15-year compliance period was over, those incentives to provide

13 consent had long since disappeared.

14        3.    <u>Sections 4.5A(iii) and ¶ 7.1B(viii) are contrary to AMTAX's argument.</u>

15        At page 20 of its motion, AMTAX admits that, if there is no requirement for AMTAX's

16 consent to a third-party offer, then Section 4.5(iii) of the Partnership Agreements provides that

17 AMTAX <u>cannot</u> block SHAG's exercise of its Special ROFRs:

18              The parenthetical in Section 4.5A(iii) confirms that there are only
19              two potential sales that the Limited Partners [*i.e.*, AMTAX] **do not
                have an absolute right to block:** . . . (2) **a sale to SHAG pursuant
20              to the valid exercise of its ROFR**, once this right has been triggered
                by the Partnership's (and Limited Partners') willingness to accept a
21              bona fide third-party offer.

22 Dkt. 89 at 20.  As discussed above, there is no consent "trigger" requirement in Section 7.4L of

23 the Partnership Agreements, and Section 4.5A(iii) confirms that it was the parties' intent for SHAG

24 to be entitled to exercise its Special ROFRs, unilaterally, with no ability by AMTAX to prevent

25 SHAG's exercise. AMTAX nevertheless argues that the inclusion of Section 7.1B(viii) in the

26 Partnership Agreements somehow negates the plain language of Sections 7.4L and 4.5A(iii):

27

RESPONSE OF LLC GENERAL PARTNERS
TO AMTAX MOTION FOR SUMMARY JUDGMENT- 8
#1215427 v1 / 72811-001

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

1

2

3

4

> If the parties had instead intended to allow the General Partner to consent unilaterally to a third-party sale in order to trigger SHAG's ROFR against the Limited Partners' objection, they could and would have included language in **Section 7.1B(viii)** that limited the categorical prohibition on the General Partner's unilateral sale of the Project.

5   Dkt. 89 at 20. Section 7.1B(viii) does not support AMTAX's argument.   Section 7.1B(viii)

6   provides in relevant part as follows:

7   Rights, Powers and Duties of the General Partners

8   Section 7.1   Restrictions on Authority

9   ***

10   B.   The General Partner shall not have any authority to do any of the following acts without the Consent of the Investor Limited

11   Partner and any Requisite Approvals:

12   ***

13   (viii)  to increase or refinance any Mortgage or to sell or convey

14   the Property, . . .

15   Dkt.88, Woolford Decl., Ex. E-F § 7.1.  This language only speaks to a restriction on the power of

16   a General Partner to unilaterally mortgage or sell a project.  It does nothing to prevent SHAG from

17   unilaterally exercising one of its Special ROFRs to force the Partnership *as a whole* to sell a project

18   to SHAG if SHAG satisfies the conditions of Section 7.4L.  SHAG's Special ROFR is not

19   conditioned on gaining the consent or cooperation of the General Partner, or of any other project

20   participant. In the context of the language of Sections 7.4L and 4.5A(iii) specifying that no party

21   has the right to block SHAG from exercising its Special ROFR, the language of Section 7.1B(viii)

22   is simply irrelevant to SHAG's Special ROFRs.

23   C.   The Global Indemnity Agreement does not impact SHAG's Special ROFR.

24   AMTAX argues at pages 6-7 and 22-23 of its motion that the Global Indemnity Agreement

25   ("GIA"), attached as Exhibit J to the First Declaration of Bryan Park, precludes SHAG from

26   exercising its Special ROFRs because it "transferred economic ownership interests arising out of

27   SHAG's ROFR from a nonprofit entity to for-profit entities," such that the projects would be

RESPONSE OF LLC GENERAL PARTNERS
TO AMTAX MOTION FOR SUMMARY JUDGMENT- 9
#1215427 v1 / 72811-001

"owned jointly" by SHAG and a PNCC affiliate, contrary to Code Section 42(i)(7).  Dkt. 89 at 6-7, 22.  AMTAX's argument is contrary to the language of the Project Partnership Agreements, the language of the GIA, and the language of Code Section 42(i)(7).

Section 7.4L of each Project Partnership Agreement expressly provides that, upon the exercise of its Special ROFR, SHAG will be entitled to "purchase the Project," which is defined in Article I of each Agreement as "the Land and the Improvements," *i.e.*, the same "property" that is referenced in Code Section 42(i)(7).  Dkt.88, Woolford Decl., Exs. E-F. In exercising its Special ROFRs, SHAG will thus become the sole fee simple owner of each Project.  *Id.*; Second Park Decl. at ¶ 25.  However, its 100% fee simple ownership of each property will be subject to the rights of PNCC and its affiliates that are referenced in paragraph 3 of the GIA, *i.e.*, the continuation of their rights to distributions of Cash Flow and Capital Proceeds as set forth in Sections 6.2A and 6.2B of each of the seven Project Partnership Agreements. *Id.* It is this anti-forfeiture provision that AMTAX has mischaracterized as creating "joint ownership" of the project properties with a PNCC affiliate.  Dkt. 89 at 7.

There would be no "joint ownership" of any project property.  The Section 6.2 rights that would continue to exist under SHAG's fee simple ownership would be the same Section 6.2 rights that have been in place for each of the Project Partnerships' fee simple ownership interests in the same project properties throughout the 15-year compliance period, continuing to this day.  Second Park Decl. at ¶ 25-27.  Upon the exercise of its Special ROFRs and its purchase of the project properties, SHAG would be the fee simple owner of each Project, and would be free to do whatever it wants with the seven project properties, such as continuing operations as they are now, re-syndicating the properties to new investors, or selling the properties at fair market value to a for-profit purchaser (and then having the proceeds available to use to pursue its mission to promote affordable senior housing), or some combination thereof.  *Id.*

Accordingly, upon exercising its Special ROFRs, SHAG will "purchase the property" for each project in accordance with Code Section 42(i)(7), and will receive 100% of the benefit of its exercise of its Special ROFRs.  AMTAX's contention to the contrary is based entirely on its

RESPONSE OF LLC GENERAL PARTNERS
TO AMTAX MOTION FOR SUMMARY JUDGMENT- 10
#1215427 v1 / 72811-001

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

1    mischaracterization of a comment made by Mr. Park in a 2013 email to Mr. Woolford (SHAG's

2    executive director), and has no basis in reality.  *Id.* at ¶ 28.

3         The Global Indemnity Agreement is in no way inconsistent with the LIHTC program. Code

4    Section 42(i)(7) does not place any restrictions on what a qualified nonprofit organization like

5    SHAG may do with respect to its direct or indirect interest in LIHTC Projects, either before or

6    after it acquires the Special ROFR, or before or after it acquires a LIHTC project property by

7    exercising its Special ROFR. The GIA simply ensures that the existing Section 6.2A contractual

8    Cash Flow sharing arrangement and the existing Section 6.2B contractual Capital Proceeds sharing

9    arrangement will continue in the event that SHAG exercises its Special ROFRs, and that PNCC

10   and its affiliates will not forfeit any of their existing economic interests in the Projects.  *Id.* The

11   fact that the LLC General Partners were not willing to risk forfeiture of their economic interests in

12   the applicable LIHTC Projects does not constitute, or somehow create, an impermissible transfer

13   from SHAG to PNCC. Nothing in Section 7.4L of the Project Partnership Agreements or in Code

14   Section 42(i)(7) requires such a forfeiture.

15        AMTAX knew the LLC General Partners had made agreements to retain their economic

16   interests in the projects after a Special ROFR exercise, because the substance of the GIA is also

17   contained in the LLC General Partners' operating agreements, which were provided to AMTAX

18   in connection with negotiating the limited partnership agreements.  *Id.* at 35.  AMTAX has no

19   basis to complain about this now.  *Id.*

20        The protections afforded to SHAG by the GIA have allowed SHAG to enter into 21 LIHTC

21   projects essentially risk-free, including the seven LIHTC Projects at issue in this case. *Id*. at ¶ 36.

22   In turn, that has allowed SHAG to fulfill its continuing mission to be the preeminent provider of

23   affordable senior housing in the State of Washington. *Id*.  The indemnity under the GIA was

24   designed in part to help protect SHAG's tax-exempt status by negating any implication that a

25   private benefit had been derived by the for-profit participants from SHAG's role as Operator of

26   the seven LIHTC projects, or from its role as General Partner in any Project Partnership. *Id.* at ¶37.

27   The GIA is thus entirely consistent with the Congressional intent behind Code Section 42.

RESPONSE OF LLC GENERAL PARTNERS
TO AMTAX MOTION FOR SUMMARY JUDGMENT- 11
#1215427 v1 / 72811-001

D.      The General Partners did not breach their fiduciary duties to AMTAX.

At pages 23-24 of its motion, AMTAX argues that it is entitled to remove the General Partners because they breached their fiduciary duties when they "abused their positions of authority and control in order to kick the Limited Partner out of the Partnership." Dkt. 89 at 23-24.  AMTAX concedes that, to establish its claim, it must prove that it has suffered "resulting injury" from the actions by the General Partners about which it complains.  *Id*. at 23.  AMTAX has offered no evidence, or even a theory, as to how it was allegedly injured. *Id.*

As Mr. Park explained in his First Declaration, and as he explained to AMTAX and Alden Torch in the letter dated July 29, 2016 (**Exhibit P** to Mr. Park's Second Decl. at 7), the General Partners have exercised restraint and have not allowed a sale to SHAG of any of the Project properties to take place, pending the outcome of this litigation. Dkt. 93, p. 8.  In short, AMTAX has not been "kicked out" of any of the projects, has suffered no injury, and therefore has no basis for its claim to remove the General Partners.

## III.      CONCLUSION

For the reasons set forth above, AMTAX's Motion for Summary Judgment should be denied, and the Motions for Summary Judgment by the LLC General Partners and by SHAG should be granted.

DATED this 14th day of December 2018.

 _/s/ Dennis H. Walters_____
Dennis H. Walters, WSBA #9444
Joshua M. Howard, WSBA #52189
Karr Tuttle Campbell
701 5th Ave., Suite 3300
Seattle, WA  98104
Telephone: (206) 223-1313
Fax: (206) 682-7100
E-mail:  dwalters@karrtuttle.com
             jhoward@karrtuttle.com
*Attorneys for Third-Party Defendants, Steel Lake Enterprises, LLC, Lakewood, Meadows Enterprises, LLC, Lynnwood Retirement Living, LLC, and Woodlands Associates, LLC*

RESPONSE OF LLC GENERAL PARTNERS
TO AMTAX MOTION FOR SUMMARY JUDGMENT- 12
#1215427 v1 / 72811-001

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

## CERTIFICATE OF SERVICE

I, Sandy Watkins, affirm and state that I am employed by Karr Tuttle Campbell in King County, in the State of Washington.  I am over the age of 18 and not a party to the within action. My business address is:  701 Fifth Ave., Suite 3300, Seattle, WA  98104.  On this day, I caused the foregoing RESPONSE OF LLC GENERAL PARTNERS TO AMTAX MOTION FOR SUMMARY JUDGMENT to be served on the parties listed below in the manner indicated.

David J. Burman
Steven D. Merriman
Perkins Coie
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
dburman@perkinscoie.com
smerriman@perkinscoie.com
*Attorneys for Defendants/Counter-Plaintiffs*

☐ Via U.S. Mail
☐ Via Hand Delivery
☒ Via Electronic Mail
☐ Via Overnight Mail
☐ CM/ECF via court's website

Christopher G. Caldwell
Noah Perez-Silverman
Eric Pettit
Boies Schiller & Flexner
725 South Figueroa Street
31st Floor
Los Angeles, CA 90017
ccaldwell@bsfllp.com
nperez-silverman@bsfllp.com
epettit@bsfllp.com
*Attorneys for Defendants/Counter-Plaintiffs*

☐ Via U.S. Mail
☐ Via Hand Delivery
☒ Via Electronic Mail
☐ Via Overnight Mail
☐ CM/ECF via court's website

Jessica Kerr
Jake Ewart
Hillis Clark Martin & Peterson
999 Third Avenue, Suite 4600
Seattle, WA 98104
Jessica.kerr@hcmp.com
Jake.ewart@hcmp.com
*Attorneys for Plaintiffs/Third-Party Defendants*

☐ Via U.S. Mail
☐ Via Hand Delivery
☒ Via Electronic Mail
☐ Via Overnight Mail
☐ CM/ECF via court's website

I declare under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct, to the best of my knowledge.  Executed on this 14th day of December 2018, at Seattle, Washington.

*/s/ Sandy Watkins*
Sandy Watkins
Assistant to Dennis H. Walters

RESPONSE OF LLC GENERAL PARTNERS
TO AMTAX MOTION FOR SUMMARY JUDGMENT- 13
#1215427 v1 / 72811-001

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100