THE HONORABLE RICARDO S. MARTINEZ

1
2
3
4
5
6
7  UNITED STATES DISTRICT COURT
8  WESTERN DISTRICT OF WASHINGTON
   AT SEATTLE

9

| | |
|---|---|
| SENIOR HOUSING ASSISTANCE GROUP, | No. 2:17-cv-01115-RSM |
| Plaintiff/Counter-Defendant, | **SENIOR HOUSING ASSISTANCE GROUP'S AND SENIOR HOUSING ASSISTANCE CORPORATION'S REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| AMTAX HOLDINGS 260, LLC, et al. | |
| Defendants/Counter-Plaintiffs. | **NOTED ON MOTION CALENDAR: DECEMBER 21, 2018** |
| | **ORAL ARGUMENT REQUESTED** |
| AMTAX HOLDINGS 260, LLC, et al., | |
| Third-Party Plaintiffs, | |
| v. | |
| SENIOR HOUSING ASSISTANCE CORPORATION, et al. | |
| Third-Party Defendants. | |

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

*SENIOR HOUSING ASSISTANCE GROUP'S AND SENIOR HOUSING ASSISTANCE CORPORATION'S REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT  (2:17-cv-01115-RSM)*

HILLIS CLARK MARTIN & PETERSON P.S.
999 Third Avenue,  Suite 4600
Seattle, Washington   98104
Tel: (206) 623-1745 Fax: (206) 623-7789

## I.   INTRODUCTION

AMTAX does not offer a reasonable interpretation of SHAG's Special ROFR. AMTAX argues it is a common law right of first refusal, even though it has pre-determined purchase terms that would never require SHAG to meet the terms of a third-party offer. AMTAX also urges the Court to ignore the plain language of the parties' contracts, which, unlike a subsequent contract between the parties, do not condition exercise of SHAG's Special ROFR on a bona fide third-party offer or partnership intent to sell (with AMTAX's consent). AMTAX thus asks the Court to re-write Section 7.4L to ensure the Special ROFR cannot be exercised unless (1) within a short two-year window after the end of the 15-year compliance period (2) a third-party makes an unsolicited and unconditional offer to purchase the project (3) despite having been made aware of SHAG's Special ROFR rights, and (4) AMTAX has consented to the third-party sale, during that two-year window, *knowing* its consent will allow SHAG to then buy the project at a significantly lower price than the project would fetch after SHAG's two-year window expires. Those conditions will never exist. AMTAX's interpretation of the Special ROFR is inconsistent with the terms of the parties' contracts, and unreasonable as a matter of law. The Court should reject it and enter summary judgment for SHAG.

## II.   ARGUMENT

### A.   SHAG'S SPECIAL ROFR IS NOT A COMMON LAW RIGHT OF FIRST REFUSAL

AMTAX continues to insist that SHAG's Special ROFR, described in Section 7.4L, is a common law right of first refusal. Dkt. 104 at 7-13.[1] It is not. As every case cited by AMTAX confirms, a common law right of first refusal is characterized by the right to match *the terms* offered by a third party. *E.g.*, *Nw. Television Club, Inc. v. Gross Seattle, Inc.*, 96 Wash.2d 973, 979-80 (1981); *Robroy Land Co. v. Prather*, 95 Wash.2d 66, 68-70 (1980); *Bennett Veneer Factors Inc. v. Brewer*, 73 Wash.2d 849, 853-54 (1968); *Matson v. Emory*, 36 Wash. App. 681,

---

[1] Where SHAG cites to a document's docket number, the page number citations are to the ECF page numbers, not the page numbers created by the filing party at the bottom of each page of the document.

*SENIOR HOUSING ASSISTANCE GROUP'S AND SENIOR HOUSING ASSISTANCE CORPORATION'S REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT  (2:17-cv-01115-RSM) - 1*

HILLIS CLARK MARTIN & PETERSON P.S.
999 Third Avenue,  Suite 4600
Seattle, Washington   98104
Tel: (206) 623-1745 Fax: (206) 623-7789

683 (1984). The Special ROFR described in Section 7.4L features *pre-determined* sale terms. If a

unilaterally-exercisable right of first refusal is "oxymoronic," as AMTAX argues, Dkt. 104 at 5,

then so is a right of first refusal that does not require the holder to match third-party terms.[2]

SHAG's Special ROFR is a distinctive right negotiated by the parties for purposes of

these agreements. Under Washington law, parties are free to negotiate such purchase rights, and

the effect of any such right is governed by the substance of the parties' contract. For example,

where a farm tenant was given a "1st right of refusal" with a "30 day notice" requirement to

buy farm land, the Washington Court of Appeals held the tenant, who had previously declined

an opportunity to buy the farm, was not automatically entitled to respond to a subsequent third-

party offer for the property:

> [T]he plaintiff argues that there must be an offer from a third party prior to the time the owner may offer the property to a holder of the right of first refusal. We disagree. *If plaintiff desired the right to purchase on the same terms and conditions as set forth in a bona fide offer by a prospective purchaser, words to that effect should have been used.* The use of the term 'first right of refusal' does not carry with it a widely accepted legal interpretation requiring submission of a bona fide offer from a third person which must first be submitted to the lessee and upon which he has 30 days to accept or reject. *The term has become a short-hand definition of various contract rights which are more particularly enunciated in the body of the agreement.*

*Dalton v. Balum*, 13 Wash. App. 160, 162-63 (1975) (emphasis added). *Kelly v. Ammex*

employed similar reasoning, where the court interpreted the terms of a right titled "right of first

refusal" and held it to be, in substance and effect, a "right of first offer." *Kelly v. Ammex Tax &*

*Duty Free Shops W., Inc.*, 162 Wash. App. 825, 832-33 (2011). *Accord Overton v. Bengel*, 139

S.W.3d 754, 757 (Tex. App. 2004) (holding that a right called a "First Right of Refusal" was

---

[2] The *Robroy* decision does *not* show that a pre-determined price is a normal feature of a common law right of first refusal. *See* Dkt. 104 at 12. The quote cited by AMTAX describes a preemptive right akin to a common law right of first offer, not a common law right of first refusal. *Robroy*, 95 Wash.2d at 70; *accord Kelly v. Ammex Tax & Duty Free Shops W., Inc.*, 162 Wash. App. 825, 831 (2011). And AMTAX improperly cites the unpublished decision in *Rubin v. Moys*, 97 Wash. App. 1020, *7 (1999). Dkt. 104 at 12. Washington does not permit citation to this unpublished decision. General Rule 14.1(a). *Rubin* has no precedential or persuasive value under Washington law. *Id.* In any event, whether the property owner in that case was interested in selling, or needed to be under the terms of the parties' agreement, was not an issue.

*SENIOR HOUSING ASSISTANCE GROUP'S AND SENIOR HOUSING ASSISTANCE CORPORATION'S REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT  (2:17-cv-01115-RSM) - 2*

HILLIS CLARK MARTIN & PETERSON P.S.
999 Third Avenue,  Suite 4600
Seattle, Washington  98104
Tel: (206) 623-1745 Fax: (206) 623-7789

1    actually an option). Here, the contract rights in Section 7.4L are defined by Section 7.4L's

2    express terms, and those express terms show the parties did not grant SHAG a common law

3    right of first refusal.[3]

4           **B.**    **SHAG's Special ROFR Must be Enforced According to Its Terms**

5          SHAG's Special ROFR must, under the principles described above, be enforced

6    according to the express terms negotiated by the parties. AMTAX tacitly acknowledges that the

7    parties were free to negotiate their own distinctive terms when it claims the parties "modified"

8    a common law right of first refusal in drafting Section 7.4L. Dkt. 104 (AMTAX Opp'n) at 11-

9    12. But AMTAX also continues to argue that the negotiated right carefully described in Section

10   7.4L contains additional *unwritten* conditions, such as a third-party offer and owner intent to

11   sell (with AMTAX's consent). *See id.* AMTAX is wrong.

12         Indeed, we know the parties did *not* intend to require owner intent to sell (with

13   AMTAX's consent) because, in Section 4.5A(iii), they expressly excluded SHAG's Special

14   ROFR from AMTAX's power to consent.[4] *E.g.*, Dkt. 88 (First Woolford Decl.) Ex. F at §

15   4.5A(iii) (giving AMTAX the right to consent to any sale "other than" a sale pursuant to

16   Section 7.4J or "the Special ROFR described in Section 7.4L"). AMTAX claims this exclusion

17   means only that AMTAX cannot block a Special ROFR exercise after AMTAX has already

18   approved a third-party sale, Dkt. 104 (AMTAX Opp'n) at 18-19, but that interpretation would

19   render Section 4.5A(iii)'s exclusion meaningless. Section 4.5A(iii) confirms that AMTAX does

20   not have the right to consent to two types of sales (the General Partner option and the Special

---

21

22   [3] The Special ROFR's express terms, making it exercisable "Notwithstanding" the rights in Sections 7.4J and 7.4K, also give it priority over the rights in Sections 7.4J and 7.4K. *See, e.g., Brusco Tug & Barge, Inc. v. St. Paul Fire & Marine Ins. Co.*, 897 F. Supp. 2d 1048, 1054-55 (W.D. Wash. 2012) (explaining the effect of the term "notwithstanding" in prioritizing contract rights). Therefore, contrary to AMTAX's contention, SHAG's Special ROFR exercise in Meridian Court trumps the General Partner's option exercise. *See* Dkt. 104 at 26-27.

24   [4] AMTAX claims SHAG could "muster no evidence" in support this argument "other than" Mr. Park's statements. Dkt. 104 at 18 n.9. But evidence of the drafter's intent is admissible, *Miller v. Kenny*, 180 Wash. App. 772, 792 (2014), and here it is corroborated by written evidence, *e.g.*, Dkt. 93 Exs. C-G. Moreover, AMTAX supplies *no* evidence of its contrary interpretation. In any event, this evidence aside, only SHAG's interpretation of Section 4.5A(iii) gives Section 4.5A(iii) effect and is reasonable as a matter of law.

*SENIOR HOUSING ASSISTANCE GROUP'S AND SENIOR HOUSING ASSISTANCE CORPORATION'S REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT  (2:17-cv-01115-RSM) - 3*

**HILLIS CLARK MARTIN & PETERSON P.S.**
999 Third Avenue,  Suite 4600
Seattle, Washington  98104
Tel: (206) 623-1745 Fax: (206) 623-7789

ROFR), but AMTAX argues that for one of those two types of sales AMTAX would retain the right to do *indirectly* what Section 4.5A(iii) says it cannot do *directly*: block SHAG's Special ROFR exercise. This is neither a logical nor permissible interpretation of Section 4.5A(iii). *See Ibrahim v. AIU Ins. Co.*, 177 Wash. App. 504, 515 (2013) (courts should give "meaning to all provisions" and not "render some superfluous or meaningless").

AMTAX also argues that another provision, Section 7.1B(viii) (which says the General Partner cannot sell the property except with Investor Limited Partner consent to the terms), does not exclude the General Partner's option or the Special ROFR, and that if the parties had intended to permit the unilateral exercise of the Special ROFR, they could have and would have excluded the Special ROFR from Section 7.1B(viii) like they did with Section 4.5A(iii). Dkt. 104 at 19. This is also wrong. First, unlike Section 4.5A(iii), Section 7.1B(viii) excludes *neither* the General Partner's option under Section 7.4J *nor* SHAG's Special ROFR under Section 7.4L. AMTAX does *not* contend this absence subjects the General Partner's option to AMTAX's prior approval. Second, where two provisions conflict, the Court must give effect to the more specific provision. *E.g.*, *Foote v. Viking Ins. Co. of Wis.*, 57 Wash. App. 831, 834-35 (1990). Section 4.5A(iii) plainly and specifically excludes SHAG's Special ROFR from AMTAX's consent, and that exclusion must be given effect.

Finally, we know the parties did not intend to include unwritten conditions in Section 7.4L because, when the parties decided to include additional conditions, they did so explicitly. Dkt. 88 (First Woolford Decl.) ¶ 26, Ex. N. The parties' Right of First Refusal Agreement for Ballinger Court expressly requires "a bona fide offer" that the "Partnership intends to accept." *Id.* Ex. N at ¶ 1. Those conditions do not exist in Section 7.4L. AMTAX claims this Ballinger counterexample shows that "the parties shared the ordinary understanding of a 'Right of First Refusal,'" and claims—without any evidence—that "the parties simply chose to make explicit in the later-executed Ballinger Court agreement the requirements that are otherwise implied by

*SENIOR HOUSING ASSISTANCE GROUP'S AND SENIOR HOUSING ASSISTANCE CORPORATION'S REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT  (2:17-cv-01115-RSM) - 4*

**HILLIS CLARK MARTIN & PETERSON P.S.**
999 Third Avenue,  Suite 4600
Seattle, Washington   98104
Tel: (206) 623-1745 Fax: (206) 623-7789

the use of the term 'Right of First Refusal'" in Section 7.4L. Dkt. 104 at 12. But the Ballinger purchase right is *markedly different* from the Special ROFR granted in Section 7.4L. The right in Ballinger is not limited to a short two-year exercise window, *see* Dkt. 88 Ex. N, so AMATX is not able simply to wait out that exercise period before approving a market rate sale. The right in Ballinger Court therefore is *not* simply a restated version of the Special ROFR in Section 7.4L. It is a different right entirely, and it is different because the parties drafted it that way using language not found in Section 7.4L. *See*, *e.g.*, *Markel Am. Ins. Co. v. Dagmar's Marina, L.L.C.*, 139 Wash. App. 469, 480 (2007) (different language used by the parties has a different meaning). In interpreting Section 7.4L, the Court must enforce only the terms the parties actually and expressly included there.

### C.    THE PARTIES' CONTRACT CONTROLS

AMTAX argues that Congress considered calling the right described in 26 U.S.C. § 42(i)(7)(A) an "option," but elected instead to use "right of 1st refusal" out of concern that a below-market option (which any rational holder would eventually exercise) would make its holder the "true owner of the property for tax purposes." Dkt. 104 at 8-10. AMTAX also contends the parties intended to draft partnership agreements that comply with Section 42's statutory requirements, and that the Court must therefore construe SHAG's Special ROFR to be a common law right of first refusal that cannot be exercised without AMTAX's consent. *Id.* at 15-16. These arguments do not change the meaning of SHAG's Special ROFR.

First, even if Congress was concerned about the potential tax consequences of an "option" so readily exercisable as to immediately make its holder the "true owner" of the project as of the option's *grant* date, that type of readily-exercisable right is not provided in Section 7.4L. *See* Dkt. 104 at 16 n.7 (arguing that only the Special ROFR's *grant* date, not its exercise date, is relevant for these tax purposes). SHAG's Special ROFR right was contingent on a number of conditions being met at least 15 years after the projects commenced. *See*, *e.g.*,

*SENIOR HOUSING ASSISTANCE GROUP'S AND SENIOR HOUSING ASSISTANCE CORPORATION'S REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT  (2:17-cv-01115-RSM) - 5*

HILLIS CLARK MARTIN & PETERSON P.S.
999 Third Avenue,  Suite 4600
Seattle, Washington  98104
Tel: (206) 623-1745 Fax: (206) 623-7789

Dkt. 88 Exs. E-F § 7.4L. Those conditions were tied to the beneficial role the parties expected

SHAG to play in the projects (for example, operating the projects and supplying favorable tax

treatment for the partnerships' benefit). *See id.* SHAG therefore had to *earn* its right to exercise

its Special ROFR, and SHAG's right to exercise it would not have been apparent for at least 15

years. SHAG thus did not have an essentially condition-less below-market "option" of the type

AMTAX argues caused Congress concern. *Cf. Bennett*, 73 Wash.2d at 853 (an option "is a

complete, valid and binding agreement by the terms of which a collateral offer is kept open for

a specified period of time").

Second, AMTAX provides no evidence that the partnerships at issue are in any tax

jeopardy. AMTAX points to contract provisions suggesting the parties wanted to ensure the

partnerships would reliably receive the LIHTC tax credits, Dkt. 104 at 15-16, but those credits

have now all been claimed and the 15-year compliance period has passed for each project. Even

assuming the parties intended every aspect of their contracts to comply with Section 42, there is

no reason to believe the parties have failed to do that.

Third, no matter what hypothetical tax consequences might exist, the parties' contract

governs the outcome of this dispute. The only court to have considered AMTAX's legislative

history argument recognized that principle, and interpreted the contract in that case in a manner

consistent with Congress's overall intent to facilitate the inexpensive transfer of LIHTC

properties to nonprofits, and in a manner that did not require the court to assume "the parties

had negotiated an agreement that could bar the nonprofit . . . from ever purchasing the property

at a favorable price." *Homeowner's Rehab, Inc. v. Related Corp. V SLP, L.P.*, 479 Mass. 741,

759-61 (2018). The Court can and should do the same here. Section 42(i)(7)(A) is a safe harbor

that neither prescribes nor prohibits any particular purchase right, so the Court can and should

enforce the right described in Section 7.4L.

*SENIOR HOUSING ASSISTANCE GROUP'S AND SENIOR*
*HOUSING ASSISTANCE CORPORATION'S*
*REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY*
*JUDGMENT  (2:17-cv-01115-RSM) - 6*

HILLIS CLARK MARTIN & PETERSON P.S.
999 Third Avenue,  Suite 4600
Seattle, Washington   98104
Tel: (206) 623-1745 Fax: (206) 623-7789

1
2

### D.   SHAG'S SPECIAL ROFR WOULD BE VALUELESS UNDER AMTAX'S INTERPRETATION

3

AMTAX contends that, even under its interpretation of SHAG's Special ROFR, the

4

Special ROFR still has practical value to SHAG. Dkt. 104 at 23-26. Those arguments ring

5

hollow. First, AMTAX argues that the different Right of First Refusal Agreement in Ballinger

6

shows a right of first refusal does *not* need to be unilaterally exercisable to have value;

7

however, as described above, the right in Ballinger does not have a short two-year exercise

8

window. That short window in Section 7.4L is what would make the Special ROFR nearly

9

impossible to exercise if coupled with unwritten requirements for a bona fide third-party offer

10

and AMTAX consent. The Ballinger right is thus much more valuable than the Special ROFR

11

as interpreted by AMTAX.

12

AMTAX next contends that SHAG might be able to exercise its Special ROFR for a

13

project that has "little residual value"—*i.e.*, where the value is close to or lower than the

14

Section 42 price—because AMTAX might find it reasonable in such a circumstance "to

15

facilitate the transfer of [that] Project" to SHAG. Dkt. 104 at 20-21. But that argument only

16

*proves* that SHAG's Special ROFR is essentially valueless under AMTAX's interpretation. Its

17

value is limited indeed if it can only be exercised when its price *exceeds* fair market value.

18

AMTAX ultimately contends that the Special ROFR has value because it discourages

19

AMTAX from forcing a sale of the project under Section 7.4K (and thereby triggering SHAG's

20

Special ROFR). *Id.* at 25-26. AMTAX argues the resulting stalemate is the value SHAG

21

receives from the Special ROFR's defensive nature. *E.g.*, *id.* at 6; Dkt. 98 (Second Trane Decl.)

22

¶ 9. But, as noted in SHAG's motion, Dkt. 85, this argument is illogical. It suggests that

23

SHAG's Special ROFR exists solely to stop AMTAX from using its right under Section 7.4K,

24

and that neither right was actually intended to be exercised. This interpretation renders both

25

rights impermissibly meaningless. *E.g.*, *Ibrahim*, 177 Wash. App. at 515. Moreover, while,

26

under AMTAX's interpretation, SHAG's Special ROFR right might dissuade AMTAX from

HILLIS CLARK MARTIN & PETERSON P.S.
999 Third Avenue,  Suite 4600
Seattle, Washington  98104
Tel: (206) 623-1745 Fax: (206) 623-7789

1  forcing a sale under Section 7.4K, any eventual sale after SHAG's Special ROFR expires will

2  be at fair market value, thus accomplishing AMTAX's economic purpose whether AMTAX

3  forces that third-party sale or not.

4          The Court should similarly reject AMTAX's claim that the conditions set forth in

5  Section 7.4L describe the requirements merely to *possess* the Special ROFR rather than to

6  *exercise* it. Dkt. 104 at 14-15. This argument is specious. Mere possession, short of exercise, is

7  of no practical value. Moreover, AMTAX's textual interpretation is simply wrong. Under

8  Section 7.4L, if certain conditions are met, SHAG "*shall have* a 'Right of First Refusal' (the

9  'Special ROFR') *to purchase the Project*" at the pre-determined price. Dkt. 88 Exs. E-F § 7.4L

10  (emphasis added). That language parallels the language in the Section 7.4J option ("Subject to

11  [certain conditions] the Managing General Partner *shall have* the option . . . *to purchase* . . . .")

12  *and* the right of first refusal in Ballinger:

13          In the event that the Partnership receives a bona fide offer to purchase the
           Apartment Complex . . . which offer the Partnership intends to accept, SHAG
14          *shall have* a right of first refusal *to purchase the Apartment Complex* (the
           "Refusal Right"), on the terms and conditions set forth in this Agreement.
15

16  *Id.* Ex. N at ¶ 1 (emphasis added). In all cases, the term "shall have"—which follows a list of

17  required conditions—can only reasonably be interpreted to communicate both the existence of

    the right *and* that it is ripe for exercise.
18
            SHAG's straightforward interpretation of the Special ROFR gives it meaningful effect,
19
    and gives effect to the other key contract terms. AMTAX claims SHAG's interpretation renders
20
    the option provisions in the agreements superfluous, but, as described in SHAG's opposition to
21
    AMTAX's motion for summary judgment, Dkt. 99 at 14-15, it does no such thing. The rights
22
    belong to different entities, and, even where they do not, the rights serve different purposes. *See*
23
    *id.* SHAG's interpretation of the Special ROFR is the only reasonable interpretation of that
24
    purchase right. It should be enforced.
25

26

*SENIOR HOUSING ASSISTANCE GROUP'S AND SENIOR
HOUSING ASSISTANCE CORPORATION'S
REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY
JUDGMENT  (2:17-cv-01115-RSM) - 8*

HILLIS CLARK MARTIN & PETERSON P.S.
999 Third Avenue,  Suite 4600
Seattle, Washington   98104
Tel: (206) 623-1745 Fax: (206) 623-7789

**E.    EVIDENCE OF THE PARTIES' INTENT CONFIRMS SHAG'S INTERPRETATION**

AMTAX claims SHAG's extrinsic evidence "provides no support for SHAG's position." Dkt. 104 at 19. This is also wrong.[5] Regardless, the Court need not consider extrinsic evidence to grant SHAG summary judgment. SHAG's reasonable interpretation of the partnership agreements stands based on the language of the contracts alone.

Nevertheless, the evidence of the contracts' negotiation and the parties' intent *confirms* SHAG's interpretation. Washington law permits the consideration of extrinsic evidence in interpreting specific words and terms used, such as "Special ROFR." *See Hearst Commc'ns, Inc. v. Seattle Times Co.*, 154 Wash.2d 493, 503 (2005). Courts may consider a variety of factors, including evidence of (1) the subject matter and objective of the contract, (2) all the circumstances surrounding the making of the contract, (3) the subsequent acts and conduct of the parties, and (4) the reasonableness of respective interpretations urged by the parties. *Id.* The Court's "primary goal is to ascertain the parties' intent at the time they executed the contract," and to distinguish that intent from the "interpretations the parties are advocating at the time of the litigation." *Int'l Marine Underwriters v. ABCD Marine, LLC*, 179 Wash.2d 274, 282 (2013).

Here, undisputed evidence shows Bryan Park requested SHAG's Special ROFR in order to give it SHAG a "meaningful" opportunity to purchase the projects commensurate with the financial opportunities given to the for-profit participants, Dkt. 93 Ex. A at 7, and that

---

[5] AMTAX's unsupported evidentiary objections, Dkt. 104 at 8 n.2, should be denied. First, Mr. Park has personal knowledge relating to the negotiation and drafting of the limited partnership agreements, as well as the parties' intent. *See* Dkt. 93 ¶¶ 8-9. Second, AMTAX cites no legal basis for its objection to Mr. Park's and Mr. Woolford's allegedly "improper legal conclusions." *See* Dkt. 104 at 8 n.2. The challenged statements are within the witnesses' personal knowledge and, even if they include opinions, are admissible under FRE 701. Third, Mr. Rubenzahl's expert testimony does not require personal knowledge. An expert may testify based on "facts or data in the case that the expert has been made aware of." FRE 703. Mr. Rubenzahl properly bases his conclusion on financial projections prepared by the developers and the limited partners, and AMTAX does not claim he has failed to consider any projections. *See* Dkt. 87 ¶¶ 3, 6; FRE 703 (permitting expert testimony "[i]f experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on a subject"). Notably, AMTAX's own purported expert claims to have relied on the same sources. Dkt. 106 ¶ 3. In addition, AMTAX does not object to any of the exhibits submitted by the parties.

*SENIOR HOUSING ASSISTANCE GROUP'S AND SENIOR HOUSING ASSISTANCE CORPORATION'S REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT  (2:17-cv-01115-RSM) - 9*

**HILLIS CLARK MARTIN & PETERSON P.S.**
999 Third Avenue,  Suite 4600
Seattle, Washington  98104
Tel: (206) 623-1745 Fax: (206) 623-7789

Paramount responded by agreeing to language that eventually became Section 7.4L, *id.* Ex. B at 27. Undisputed evidence also shows the parties made an edit to Section 4.5A(iii) that confirmed AMTAX would have no right to block SHAG's Special ROFR. *Id.* Exs. C-G. Undisputed evidence shows AMTAX paid a price for its investment tied *exclusively* to the tax benefits it expected to receive, *id.* Ex. B at 28, and that AMTAX's own financial projections did not make any provision for residual sale proceeds in calculating anticipated rates of return, Dkt. 87 ¶ 3. Finally, undisputed evidence shows AMTAX ultimately realized a portfolio-wide internal rate of return of 14.2 percent per year based almost entirely on tax benefits—a rate of return higher than in any financial projection generated by any party at the outset of the agreements. *Id.* ¶¶ 4-6. All of this *undisputed* evidence provides context that helps explain why the parties would have granted SHAG a unilaterally-exercisable Special ROFR that would not likely result in significant sale proceeds flowing to AMTAX. And this understanding of the negotiating context is bolstered by national data showing that LIHTC investor limited partners have typically exited LIHTC projects after the tax credits have been claimed and the 15-year compliance period has run, usually by selling their interests to nonprofit partners. *See Homeowner's Rehab*, 479 Mass. at 743-44.

AMTAX complains that Mr. Park's letter requesting the Special ROFR shows only his own subjective intent, and that SHAG "offers no evidence of Paramount's response to the letter." Dkt. 104 at 20. But Washington courts are wary only of the "*unexpressed* subjective intent of the parties." *Hearst*, 154 Wash.2d at 503 (emphasis added); *accord City of Union Gap v. Printing Press Props., L.L.C.*, 2 Wash. App. 2d 201, 224 ("We find this testimony unhelpful because Union Gap provides no evidence that it stated this understanding to Printing Press. We do not consider a party's unexpressed subjective intent."). And, here, we know Paramount *did*

*SENIOR HOUSING ASSISTANCE GROUP'S AND SENIOR HOUSING ASSISTANCE CORPORATION'S REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT  (2:17-cv-01115-RSM) - 10*

HILLIS CLARK MARTIN & PETERSON P.S.
999 Third Avenue,  Suite 4600
Seattle, Washington   98104
Tel: (206) 623-1745 Fax: (206) 623-7789

respond to Mr. Park's letter: it included the requested Special ROFR right in the Investment

Agreement signed by Paramount only days later.[6] Dkt. 93 Ex. B at 27.

AMTAX also claims its financial projections are irrelevant to the analysis, and reflect

only a "standard industry practice" of conservative underwriting that does not incorporate

potential sale proceeds. Dkt. 104 at 22-23. But the person AMTAX cites as a source for this

"standard industry practice" says and knows nothing about the parties' specific intent here, and

neither does AMTAX itself. *See id.* AMTAX does not dispute the actual contents of its

financial projections, its actual return on investment, or the fact that the size of its investment

was tied exclusively to its expected tax benefits. All of this evidence suggests a context in

which Paramount would have been willing to forgo distant and speculative sale proceeds by

granting SHAG a unilaterally-exercisable below-market Special ROFR conditioned on

SHAG's fulfilling its expected role in the partnerships through the 15-year compliance period.[7]

## F.   THE GLOBAL INDEMNITY AGREEMENT DOES NOT ALTER THE ANALYSIS

SHAG's Global Indemnity Agreement ("GIA") with PNCC changes nothing about this

analysis. Section 42(i)(7)(A) merely requires that a right granted in accordance with that

section be held by a qualified nonprofit. SHAG, a qualified nonprofit, meets that standard.

AMTAX contends the GIA, which if triggered preserves PNCC's economic interests in

a project after a Special ROFR exercise, makes PNCC a holder of SHAG's Special ROFR. Dkt.

---

[6] AMTAX also complains about Mr. Park's recollection of a conversation he had with Paramount representative Michael Buckley, but AMTAX can provide no evidence to dispute it. *See* Dkt. 104 at 21; Dkt. 86 Ex. A (AMTAX 30(b)(6) witness cannot "speak to the intention" of the parties in including Sections 4.5A(iii) and 7.4L in the agreements). Mr. Buckley was Paramount's Executive Vice President, participated directly in the negotiations, and signed the letter transmitting Paramount's initial Investment Agreement to Bryan Park, which itself was signed by a Paramount employee with a subordinate title. Dkt. 93, Exs. A-B. Regardless, the Court need not rely on Mr. Park's conversations with Mr. Buckley to rule for SHAG on summary judgment.

[7] AMTAX claims that, no matter the parties' intent, AMTAX was still required, under certain tax principles, to expect to share in profits from the sale of a project. Dkt. 104 at 22-23. This cannot be true in the LIHTC context, where Congress expressly endorsed, in Section 42(i)(7), a below market purchase right that would not likely result sale proceeds flowing to the investor limited partner. The partnership agreements provide for the distribution of sale proceeds to the Investor Limited Partner in the event of a non-Special ROFR sale, but it cannot be the case that AMTAX was required to benefit financially from *any* sale of a project.

*SENIOR HOUSING ASSISTANCE GROUP'S AND SENIOR HOUSING ASSISTANCE CORPORATION'S REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT  (2:17-cv-01115-RSM) - 11*

HILLIS CLARK MARTIN & PETERSON P.S.
999 Third Avenue,  Suite 4600
Seattle, Washington   98104
Tel: (206) 623-1745 Fax: (206) 623-7789

104 at 28. This is illogical. As explained in other briefing, PNCC's economic position is neither strengthened nor worsened by the exercise of a Special ROFR. *See* Dkt. 99 at 23-24. Being economically indifferent, PNCC cannot *benefit* from a Special ROFR exercise, and is not the Special ROFR "holder" either directly or indirectly. *See id.*[8]

This is not an issue for trial. The Court can determine whether the GIA causes the Special ROFR to be unexercisable under Section 42 as a matter of law. AMTAX cites no legal authority to support that argument, and none exists. The Washington State Housing Finance Commission has confirmed SHAG's qualified nonprofit status; this is sufficient under Section 42(i)(7)(A).[9] Dkt. 88 Ex. D.

### III.    CONCLUSION

Only one reasonable interpretation of SHAG's Special ROFR exists. It is not a common law right of first refusal, and it is unreasonable to construe it as merely a defensive right never intended by the parties to be exercised. AMTAX's interpretation renders the Special ROFR valueless, and would thwart not only the parties' intent, but the intent of Congress to promote the inexpensive transfer of LIHTC properties to nonprofits. The Court should interpret the Special ROFR according to the express terms the parties negotiated, and those terms do not condition exercise of the Special ROFR on either a bona fide third-party offer or AMTAX's consent to a third-party sale. The Court should issue a declaration to that effect, and grant SHAG's Motion for Summary Judgment.

---

[8] AMTAX claims PNCC will jointly own any project after a Special ROFR exercise and will control it. Dkt. 104 at 27. This is not supported by the record. The testimony AMTAX cites explains SHAG would solely own and control any project unless and until it chose to do something else with it, such as put the project into a new partnership. *See* Dkt. 90 Ex. B at 199:1-200:21. This is consistent with the parties' other explanations of the GIA. *See, e.g.*, Dkt. 93 ¶¶ 45-49; Dkt. 103 ¶¶ 25-29.

[9] AMTAX claims the Commission disagreed with SHAG's characterization of the GIA. Dkt. 104 at 27-28. But the passages AMTAX cites relate to whether SHAG gave PNCC anything of value in *signing* the GIA (in other words, whether consideration was exchanged), not, under the terms of the GIA, whether PNCC will financially benefit from a Special ROFR exercise. *See* Dkt. 88 Ex. D at 12-13. Indeed, the Commission took no issue with the interpretation offered by the only parties to the GIA: that, by the GIA's terms, it will only preserve PNCC's economic interest, and will neither enhance it nor diminish it. *Id.*

*SENIOR HOUSING ASSISTANCE GROUP'S AND SENIOR HOUSING ASSISTANCE CORPORATION'S REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT  (2:17-cv-01115-RSM) - 12*

HILLIS CLARK MARTIN & PETERSON P.S.
999 Third Avenue,  Suite 4600
Seattle, Washington   98104
Tel: (206) 623-1745 Fax: (206) 623-7789

1     DATED this 19th day of December, 2018.

2

3                    HILLIS CLARK MARTIN & PETERSON P.S.

4                By   *s/ Jake Ewart*
                        Laurie Lootens Chyz, WSBA #14297

5                    Jake Ewart, WSBA #38655
                    Jessica C. Kerr, WSBA #49866

6                    999 Third Avenue, Suite 4600
                    Seattle, WA  98104

7                    Tel: (206) 623-1745; Fax: (206) 623-7789
                    E-mail:  laurie.chyz@hcmp.com

8                    jake.ewart@hcmp.com
                    jessica.kerr@hcmp.com

9

10                 Attorneys for Senior Housing Assistance Group and
                Senior Housing Assistance Corporation

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

*SENIOR HOUSING ASSISTANCE GROUP'S AND SENIOR
HOUSING ASSISTANCE CORPORATION'S
REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY
JUDGMENT (2:17-cv-01115-RSM) - 13*

HILLIS CLARK MARTIN & PETERSON P.S.
999 Third Avenue,  Suite 4600
Seattle, Washington  98104
Tel: (206) 623-1745 Fax: (206) 623-7789

1

**CERTIFICATE OF SERVICE**

2

   I hereby certify that on the 19th day of December, 2018, I electronically filed the

3

foregoing with the Clerk of the Court using the CM/ECF system which will send notification to

4

all counsel of record.

5

   DATED this 19th day of December 2018, at Seattle, Washington.

6

7                                By____*s/ Jake Ewart*_____
                                    Jake Ewart, WSBA #38655

8                                   Hillis Clark Martin & Peterson P.S.
                                    999 Third Avenue, Suite 4600

9                                   Seattle, Washington  98104
                                    Telephone:  (206) 623-1745

10                                  Facsimile:  (206) 623-7789
                                    Email:  jake.ewart@hcmp.com

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

*SENIOR HOUSING ASSISTANCE GROUP'S AND SENIOR
HOUSING ASSISTANCE CORPORATION'S
REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY
JUDGMENT  (2:17-cv-01115-RSM) - 14*

HILLIS CLARK MARTIN & PETERSON P.S.
999 Third Avenue,  Suite 4600
Seattle, Washington   98104
Tel: (206) 623-1745 Fax: (206) 623-7789