1

2

3

4

5

6

7

8

The Honorable Ricardo S. Martinez

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9  SENIOR HOUSING ASSISTANCE GROUP,  )  CASE NO. 2:17-CV-01115 RSM
                                     )
10                      Plaintiff,   )
                                     )
11           v.                      )  REPLY OF LLC GENERAL
                                     )  PARTNERS IN SUPPORT OF
12  AMTAX HOLDINGS 260, LLC, ET AL., )  SUMMARY JUDGMENT
                                     )  MOTION
13                                   )
                     Defendants.     )
14                                   )
    _____)
15  AMTAX HOLDINGS 260, LLC, ET AL., )  **NOTE ON MOTION
                                     )  CALENDAR: DECEMBER 21,**
16                Counter-Plaintiffs,)  **2018**
                                     )
17           v.                      )
                                     )  **ORAL ARGUMENT
18  SENIOR HOUSING ASSISTANCE        )  REQUESTED**
    CORPORATION, ET AL.,             )
19                                   )
                 Counter-Defendants. )
20                                   )
    _____)

21              I.    **INTRODUCTION**

22       The LLC General Partners submit this Reply in further support of their pending summary

23  judgment motion to dismiss AMTAX's claims against them, and to respond to the opposition

24  arguments that AMTAX has made in its Response brief (Dkt. 96) to the effect that the General

25  Partners should be removed.  AMTAX has offered three theories for why it contends that the

26  General Partners' motion should be denied, *i.e.*, (1) its allegation that the General Partners' entry

27  into their "Global Indemnity Agreement" with SHAG was a breach of their fiduciary duties to

REPLY OF LLC GENERAL PARTNERS
IN SUPPORT OF SUMMARY JUDGMENT MOTION - 1
Case No. 2:17-CV-01115 RSM
#1216801 v1 / 72811-001

1   AMTAX, (2) its allegation that the LLC General Partners breached their fiduciary duties by

2   engaging in a "secret and improper scheme" to allow SHAG to exercise its Special ROFR purchase

3   rights, and (3) its allegation that the LLC General Partners failed "to furnish required reports and

4   pay late fees." Dkt. 96 at 1-2. As explained in the LLC General Partners' motion (Dkt. 92), and

5   as now illustrated in AMTAX's Response, there is no basis in the evidence to prove any of

6   AMTAX's three theories. The LLC General Partners' Motion for Summary Judgment should

7   therefore be granted and the claims against them should be dismissed.

8          The six General Partners have invested more than 15 years of effort and money to form

9   and develop the seven LIHTC projects, and have done all of the work necessary to operate the

10  projects for the entire 15-17 year expected lifespans of the Partnerships. The General Partners

11  have operated all of the projects very successfully, having provided all of the expected tax benefits

12  to AMTAX, and having achieved a financial return to AMTAX significantly above all projections.

13  Nevertheless, now that the compliance periods for the projects are over, now that the tax benefits

14  have all been taken, and now that the mutually expected time has come for AMTAX's departure,

15  AMTAX seeks to turn the Partnership Agreements on their head and remove all six General

16  Partners -- for doing nothing more than acting in good faith to enforce the terms of the Partnership

17  Agreements regarding SHAG's exercise of its Special ROFRs, and acting in good faith to do what

18  they could to push the Partnerships' third-party accountants and auditors to meet the Partnership's

19  annual financial reporting due dates. AMTAX has made no showing of a legitimate basis in the

20  evidence to remove the General Partners.

21                    **II.     ADDITIONAL ARGUMENT**

22  A.     There is no basis for removal because the LLC General Partners did not breach their
23         fiduciary duties to AMTAX.

24         1.     The Global Indemnity Agreement does not support AMTAX's claim of breach of
                  fiduciary duty.

25         AMTAX first contends, in a total of four sentences, that the LLC General Partners breached

26  their fiduciary duties to AMTAX by entering into a "Global Indemnity Agreement" ("GIA") with

27  SHAG. Dkt. 96 at 5. AMTAX does not offer any discussion of the terms or substance of the GIA

REPLY OF LLC GENERAL PARTNERS
IN SUPPORT OF SUMMARY JUDGMENT MOTION - 2
Case No. 2:17-CV-01115 RSM
#1216801 v1 / 72811-001

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

1    at all.  *Id.*  Instead, AMTAX bases its GIA-related theory entirely on its mischaracterization of one

2    2013 email in which Mr. Park described to Mr. Woolford (of SHAG) the gist of the economic

3    interests that PNCC and its affiliates have had in the seven LIHTC projects since the very

4    beginning of the projects, and how those interests (estimated at the time by Mr. Park to be 90% of

5    the then-current net cash flows from the projects) would not change upon SHAG's exercise of its

6    Special ROFRs and purchase of the projects.  *Id.*; First Park Dec. at ¶ 16 (Dkt. 93 at 6); Second

7    Park Decl. at ¶ 28 (Dkt. 103 at 11); Dkt. 90-1, Ex. U.  Contrary to AMTAX's argument that the

8    GIA would somehow lead to "joint ownership" of the project properties as between SHAG and

9    PNCC or its affiliates, the evidence is uncontradicted that the GIA has done nothing to change, or

10   to potentially change, PNCC's economic interests in any of the projects.  *Id*. The GIA has only

11   served to <u>preserve</u> unchanged PNCC's pre-existing economic interests in LIHTC projects,

12   (including the seven at issue here), in which SHAG participated, in the event that SHAG were to

13   be granted Section 42 ROFRs, and then, 15 or more years later, if SHAG were to exercise its

14   ROFRs and purchase project properties.  *Id*.

15          The GIA is a gigantic red herring.  One of the key facts that AMTAX disingenuously fails

16   to mention in the context of its argument is that the GIA was entered into on July 12, 2001, some

17   five months <u>before</u> the earliest of the seven Partnership Agreements, which was entered into with

18   AMTAX on December 1, 2001.  Dkt. 96 at 5; Second Park Decl. at ¶ 10 (Dkt. 103 at 4).  AMTAX

19   offers no explanation for how the General Partners, by entering into the GIA well before the

20   earliest Partnership Agreement had even come into existence, could somehow have breached a

21   partnership fiduciary duty to AMTAX when AMTAX had not yet become a partner.  *Id.*  That fact

22   alone is dispositive of AMTAX's GIA theory.

23          The language of the GIA is clear: if it is triggered, then PNCC and its affiliates would only

24   "maintain" their economic interests after SHAG's exercise of its ROFRs.  Dkt. 93, First Park Decl.

25   Ex. J. Accordingly, (1) regardless of the GIA,  the economic interests of PNCC and its affiliates in

26   the projects would remain <u>exactly the same</u> before and after SHAG's exercise its Special ROFRs,

27   (2) regardless of the GIA, in purchasing the project properties, SHAG would become the 100%

REPLY OF LLC GENERAL PARTNERS
IN SUPPORT OF SUMMARY JUDGMENT MOTION - 3
Case No. 2:17-CV-01115 RSM
#1216801 v1 / 72811-001

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

1  fee simple owner, and there would be no "joint ownership," and (3) the GIA only has significance

2  as between PNCC and its affiliates and SHAG, and therefore has no impact at all on AMTAX or

3  on any of the partnerships. *Id*.; First Park Declaration at ¶¶ 44-49 (Dkt. 93 at 17-19), Second Park

4  Declaration at ¶¶ 25-29 and ¶¶ 32-37 (Dkt. 103 at 10-15). Therefore, there is no basis whatsoever

5  for AMTAX's conclusory allegation that the LLC General Partners have been "improperly

6  attempting to enrich themselves at the expense of the Limited Partners." *Id*.

7      The GIA was in no way a "secret" agreement.  First Park Decl. at ¶ 44 (Dkt. 93 at 17);

8  Second Park Decl. at ¶¶ 34-35 (Dkt. 103 at 14). The substance of the GIA provision at issue here

9  was contained in earlier agreements, copies of which were provided to AMTAX as part of

10  AMTAX's due diligence in connection with its entry into the Partnership Agreements. *Id*. In the

11  course of discovery, AMTAX even produced a copy of this due diligence document that it had in

12  its business records.  Because the GIA does not concern or affect the partnership, the General

13  Partners have had no reason or duty to disclose the GIA to AMTAX in any event.  First Park Decl.

14  at ¶¶ 47-49 (Dkt. 93 at 18-19); *Bishop of Victoria Corp. Sole v. Corp. Bus. Park, L.L.C.*, 138 Wn.

15  App. 443, 458-59, 158 P.3d 1183, 1191 (2007) (partner has duty to disclose to other partners only

16  "material facts that relate to partnership affairs.")

17      AMTAX has offered the same GIA theory as a basis to deny SHAG's Motion for Summary

18  Judgment.  Dkt. 104 at 23-24.  If SHAG's motion is granted, then as a matter of law there would

19  be no basis for AMTAX's first theory.

20      2.    <u>The General Partners' cooperation with SHAG's exercise of its Special ROFRs does not support AMTAX's claim of breach of fiduciary duty.</u>

21

22      AMTAX's second breach of fiduciary duty theory is that the LLC General Partners "conspired" with SHAG and SHAC "to force the Limited Partners' out of the Partnerships against

23  their will and at below-market prices, in contravention of the Partnership Agreements and Section

24  42."  Dkt. 96 at 6.  This second theory goes to the merits of SHAG's Motion for Summary

25  Judgment, which the LLC General Partners have supported for the reasons set forth in their

26  Summary Judgment Motion and in their Response brief (Dkt. 92 at 6-8; Dkt. 102 at 9-12).  If

27

REPLY OF LLC GENERAL PARTNERS
IN SUPPORT OF SUMMARY JUDGMENT MOTION - 4
Case No. 2:17-CV-01115 RSM
#1216801 v1 / 72811-001

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

1    SHAG's motion is granted, then as a matter of law there would be no basis for AMTAX's second

2    theory.

3         As explained in their summary judgment motion, the General Partners have been

4    cooperating with SHAG's efforts to exercise its Special ROFRs, which under the Project

5    Partnership Agreements SHAG is entitled to do for all the reasons set forth in SHAG's and the

6    LLC General Partner's briefing.  Dkt. 85 at 4-24; Dkt. 92 at 6-8; Dkt. 99 at 1-24; Dkt. 102 at 2-12.

7    The General Partners have been obligated under Section 7.4A(viii) of the Partnership Agreements

8    to use their "best efforts" as may be necessary "to enforce all contracts entered into for the benefit

9    of the Partnership," which has required the General Partners to take the necessary steps to enforce

10   the terms of the Partnership Agreement itself, including Section 7.4L.  Dkt. 88, Woolford Decl. at

11   Exs. E-F, §7.4L.  As agents of the Partnerships, the General Partners only have an obligation to

12   carry out a reasonable interpretation of the Partnership Agreements. Restatement 3d of Agency,

13   Section 8.01, comment b ("The agent's duty to the principal [here, the partnership as a whole]

14   obliges the agent to act in accordance with a reasonable interpretation of the principal's

15   manifestation.").  SHAG's and the General Partners' interpretation of Section 7.4L has been

16   reasonable.  Dkt. 92 at 6-8; Dkt. 102 at 3-4.

17   B.    There is no basis for removal because AMTAX's allegations of late financial reports and
          unpaid fees are legally insufficient.
18
          AMTAX contends that the General Partners failed during 2016 and 2017 to timely provide
19
     certain financial fees, but this contention is not sufficient to remove the General Partners.  In their
20
     Motion for Summary Judgment, the LLC General Partners explained that the evidence is
21
     uncontradicted that AMTAX has suffered no damage or injury in connection with the allegedly
22
     late reports, and that, under Washington law, the alleged breaches of the Partnership Agreement
23
     with respect to the allegedly late financial reports and unpaid fees did not meet the Washington
24
     test for materiality (*i.e.*, that the alleged breach is one that "substantially defeats a primary function
25
     of the contract.").  Dkt. 92 at 9; 224 *Westlake v. Engstrom Props.*, 169 Wn. App. 700, 724, 281
26
     P.3d 693 (2012).
27

REPLY OF LLC GENERAL PARTNERS
IN SUPPORT OF SUMMARY JUDGMENT MOTION - 5
Case No. 2:17-CV-01115 RSM
#1216801 v1 / 72811-001

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

> [M]ateriality is a term of art in contract analysis, and identifies a breach so significant it excuses the other party's performance and justifies rescission of the contract. As stated in the *Washington Pattern Jury Instructions: Civil*, a material breach is one 'serious enough to justify the other party in abandoning the contract … one that substantially defeats the purpose of the contract.'

*Park Ave. Condo. Owners Ass'n v. Buchan Devs., LLC*, 117 Wn. App. 369, 383, 71 P.3d 692, 75 P.3d 974 (2003) (footnote omitted), quoting 6A Washington Practice: Washington Pattern Jury Instructions: Civil 302.03, at 127 (1997).

In its Response (Opposition) brief, AMTAX offers no evidence of actual injury, and does not dispute that it cannot meet the test for a materiality breach under Washington law.  Dkt. 96 at 9-11.  Instead, AMTAX argues that it should be entitled to remove the General Partners even if it cannot show any injury, and even if the alleged breach was not material.  Dkt. 96 at 13. Under Washington law, AMTAX's failure to present evidence of actual injury, and its failure to present evidence of a material breach, are dispositive of AMTAX's third theory for two reasons:

    1.    <u>AMTAX's claim is for an alleged breach of contract, and therefore is subject to Washington contract law requiring proof of a material breach and actual damages.</u>

AMTAX does not dispute that, if its claim is in substance a claim for breach of contract, then it must offer the requisite proof of both a material breach and actual injury.  *Id*. AMTAX argues only that it does not need to establish that the allegedly late reports and unpaid fees constitute a material breach of the Partnership Agreements, or that they caused actual injury, because it has "not asserted any claims for breach of contract," and therefore is entitled to removal of the General Partners "irrespective of whether those failures are deemed to be material and/or have harmed the Limited Partners."  *Id*. at 11.  AMTAX goes on to argue that it is not subject to Washington contract law that would require a showing of a material breach and actual damages. *Id.* at 13.  AMTAX's argument is contradicted both in its own Response brief and in its pleadings.

AMTAX specifically contends in its Response that its third theory is based on the General Partners' failure "to satisfy [their] reporting or late fee obligations" as set forth in Section 4.5A(iv) of the Partnership Agreements, and further contends that it is based on the General Partners' failure "to comply with the Partnership Agreements."  Dkt. 96 at 13-14.  Similarly, in its pleadings,

REPLY OF LLC GENERAL PARTNERS
IN SUPPORT OF SUMMARY JUDGMENT MOTION - 6
Case No. 2:17-CV-01115 RSM
#1216801 v1 / 72811-001

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

1   AMTAX has based its late report and unpaid fee claim on its allegation that the General Partners

2   failed to act "as required in Section 12.1 of the applicable partnership agreements."  Dkt. 26 at 28.

3   Given AMTAX's own characterization of its "late reports" claim, the nature of its claim can only

4   be that of a claim for breach of contract.  Basing its claim on a "failure to satisfy" contractual

5   obligations, and on a "failure to comply" with a contract, is just a different way to say that AMTAX

6   is asserting a claim for <u>breach of contract</u>.  By referring to its breach of contract claim by choosing

7   not to use the word "breach," AMTAX has engaged in a transparent semantic exercise in an

8   attempt to avoid the legal requirement to prove the basic elements of its breach of contract claim.

9   Under settled Washington law, AMTAX must present substantial evidence of both (1) a material

10   breach of the Partnership Agreements, and (2) resulting actual injury, in order to withstand

11   summary judgment on its third theory, and it has not done so.  *St. John Med. Ctr. V. DSHS*, 110

12   Wn. App. 51, 64, 38 P3d 383 (2002); *224 Westlake v. Engstrom*, 69 Wn. App. 700, 724, 281 P.3d

13   693 (2012).

14        The court must consider the harm arising from the alleged breach to determine whether the

15   alleged misconduct of an agent of the partnership is sufficiently serious to be a cause for removal.

16   Restat 2d of Agency, § 409 (2d) (2010). The only harm AMTAX has even alleged has been a *risk*

17   of a potential audit.  Dkt. 96 at 11.  Speculation about potential harm does not satisfy the

18   requirement of actual harm. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409, 133 S. Ct. 1138,

19   1147, 185 L.Ed.2d 264, 276 (2013) ("'threatened injury must be certainly impending to constitute

20   injury in fact;' . . . '[a]llegations of possible future injury' are not sufficient); *accord, Davidson v.*

21   *Kimberly-Clark Corp.*, 873 F. 3d 1103, 1113 (9th Cir. 2017).

22        2.        <u>AMTAX cannot avoid the Partnership Agreements' requirement of materiality</u>.

23        AMTAX also seeks to avoid having to satisfy the requirements of materiality and actual

24   injury by offering a very narrow reading of Section 4.5A(iv)(6) and (7) of the Partnership

25   Agreements, to the effect that the parties intended not to have any requirement of materiality for

26   the breach of any obligation set forth in a subsection that does not expressly include the word

27   "material" in it.  Dkt. 96 at 11-12.  The relevant language of Section 4.5 is as follows:

REPLY OF LLC GENERAL PARTNERS
IN SUPPORT OF SUMMARY JUDGMENT MOTION - 7
Case No. 2:17-CV-01115 RSM
#1216801 v1 / 72811-001

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

Section 4.5    Certain Rights of Investor Limited Partner

A.    Subject to the provisions hereinafter set forth in this Section 4.5, and to the Regulation, in addition to the other rights provided for in this Agreement, the Investor Limited Partners shall have the right:

\*\*\*

(iv) to remove any or all of the General Partners and elect one or more new General Partners in the event of any **material** misconduct or failure to exercise any reasonable care with respect to any **material** matter in the discharge of its stated duties and written obligations as a General Partner, the effect of which could have a **material adverse affect** on the Partners or the Partnership, unless cured within a reasonable time, but in no event more than sixty (60) days, or upon the occurrence of any of the following:

\*\*\*

(6)    repeated failure to furnish reports as required in Section 12.1; or

(7)    any penalty assessed against the Partnership or a General Partner for the benefit of the Limited Partners, or any amount otherwise due the Limited Partners from a General Partner or the Partnership, is not paid within thirty (30) days or any operating deficits are not funded and paid by the Managing General Partner within the earlier or thirty (30) days of when due or when necessary for the continuation of the Project without delay; or

Dkt. 88 Woolford Decl., Exs. E-F at §4.5A.  There are two problems with AMTAX's argument that the language of Section 4.5A(iv) requires the removal of the General Partners:

First, subsections (6) and (7) are both subordinate to Section 4.5A(iv), which states <u>three times</u> that the parties intended a requirement of materiality for the application of the remedy of removal.  *Id.* It would make no sense for the parties to intend generally to require a breach to be material before removal could be imposed, but then to also intend for the "harsh" remedy (as AMTAX characterizes it; Dkt. 96 at 13) of removal to apply even for a trivial breach, like those alleged here, if the parties did not repeat the word "material" yet again in a subordinate clause. Washington law does not allow for contracts to be interpreted to achieve such an absurd result. *See Eurick v. Pemco Ins. Co.*, 108 Wn. 2d 338, 341 (Wash. 1987).

REPLY OF LLC GENERAL PARTNERS
IN SUPPORT OF SUMMARY JUDGMENT MOTION - 8
Case No. 2:17-CV-01115 RSM
#1216801 v1 / 72811-001

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

1    Second, subsection 4.5A(iv)(6) requires a "repeated failure to furnish reports as required

2    in Section 12.1." There is no evidence that a "failure to furnish reports" ever occurred. See Dkt.

3    96 at 9-11. It is not disputed that all of the reports in question were in fact furnished to AMTAX,

4    albeit after the due dates because of the inability of third-party accountants and auditors to timely

5    finish and deliver some of their reports to the General Partners for forwarding to AMTAX. *Id.*

6    AMTAX has sought to create an issue of fact regarding the course of dealing between the

7    parties with respect to its routine acceptance of the late delivery of the financial reports at issue

8    over the decade before the two years (2016 and 2017) at issue. Dkt. 96 at 14-15. Even if the

9    details of the parties' course of dealing before 2016 are in dispute, however, they would not create

10   a material issue of fact with respect to whether AMTAX has met the fundamental requirement to

11   present substantial evidence of a material breach and of injury in fact.

12   C.    Removal would constitute an unenforceable penalty and forfeiture for the General Partners,
           and a windfall for AMTAX.
13
14   Finally, AMTAX has argued that removal would not constitute an impermissible penalty,

15   and that removal would not result in a windfall for AMTAX. Dkt. 96 at 15-19. AMTAX is wrong

16   on both points.

17        1.    Removal would constitute an impermissible penalty.

18   AMTAX contends that removal would not constitute an impermissible penalty because a

19   penalty can only be in the form of an "improper liquidated damages provision," *i.e.*, a "sum

20   certain" provided by a contract "as a punishment for breach." Dkt. 96 at 15-16. Under Washington

21   law, however, a contract remedy other than strict money damages <u>can</u> be an unenforceable penalty.

22   *See, e.g., Intercommunity-Mercy Wash. II Ltd. Pshp. v. Wallace*, 1996 Wash. App. LEXIS 372, at

23   *6 (Wash. Ct. App. 1996) (finding that a contract remedy providing for the retroactive application

24   of an interest rate provision was an unenforceable penalty). While most cases analyzing the issue

25   of contract penalties have done so in liquidated damages contexts, there is nothing in the holdings

26   limiting them to only such contexts.

27

REPLY OF LLC GENERAL PARTNERS
IN SUPPORT OF SUMMARY JUDGMENT MOTION - 9
Case No. 2:17-CV-01115 RSM
#1216801 v1 / 72811-001

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

1    The holdings in the Washington cases addressing penalties have been purposefully broad.

2    For example, *Wallace Real Estate., Inv., Inc. v. Groves*, 124 Wn. 2d 881, 893 (Wash. 1994), while

3    ruling on the unenforceability of a liquidated damages provision, relied on the more general

4    proposition that "*a provision in a contract* that bears no reasonable relation to actual damages will

5    be construed as a penalty." This is consistent with the Restatement (2d) of Contracts, which states

6    that

7        [P]arties to a contract are not free to provide a penalty for its breach.
         The central objective behind the system of contract remedies is
8        compensatory, not punitive. Punishment of a promisor . . . has no
         justification on either economic or other ground and a term
9        providing such a penalty is unenforceable on grounds of public
         policy.
10

11   Restatement (2d) of Contracts, § 356. Thus, any provision that has the effect of being punitive

12   rather than compensatory is unenforceable, whether characterized as a liquidated damages clause

13   or not.

14       2.      Removal would result in forfeiture for the General Partners and a windfall for
                 AMTAX.
15

16   AMTAX has argued that it would not receive a windfall, and that the General Partners

17   would not suffer a forfeiture, if AMTAX were to be successful in removing the General Partners

18   because, under Sections 4.5B and 8.4 of the Partnership Agreements, the General Partners would

19   be either "compensated for the fair market value of their interests or will continue to be entitled to

20   distributions under the Partnership Agreements." Dkt. 96 at 18-19. While it is helpful for AMTAX

21   to acknowledge the existence of these provisions of the Partnership Agreements (which it did not

22   do in its pleadings (Dkt. 26 at 28) or in its summary judgment motion (Dkt. 89 at 23-24)), Sections

23   4.5B and 8.4 of the Partnership Agreements would not prevent a windfall to AMTAX, or a

24   forfeiture by the General Partners, if the General Partners were to be removed.

25       At the outset, Sections 4.5B and 8.4 would not eliminate the estimated $28 million windfall

26   to AMTAX if it were able to block SHAG's exercise of its Special ROFRs, and AMTAX does not

27   contend otherwise. Dkt. 92 at 20; Dkt. 96 at 18-19. As to AMTAX's argument that there would

REPLY OF LLC GENERAL PARTNERS
IN SUPPORT OF SUMMARY JUDGMENT MOTION - 10
Case No. 2:17-CV-01115 RSM
#1216801 v1 / 72811-001

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

1   be fair market value compensation or entitlement to distributions for the General Partners,

2   AMTAX glosses over the very significant limitations on the potential for a buyout or continued

3   distributions. Section 8.4 provides that the General Partners would <u>not</u> be guaranteed to receive a

4   fair-market-value buyout (or any buyout <u>at all</u>), and that the General Partners could expect a

5   continuation of only a small portion of the distributions that they would otherwise be entitled to

6   receive in their current positions.  Dkt. 88, Woolford Decl, Exs. E-F, §8.4.  Section 8.4 would be

7   very disadvantageous to a removed General Partner for several reasons:

8          First, under Sections 8.3 and 8.4A, the successor General Partner would normally be

9   selected by the remaining General Partners. *Id*.  Here, however, if all General Partners were to be

10  removed, then AMTAX would be entitled (but not required) to select a successor General Partner

11  pursuant to Sections 8.3B and 8.5.  *Id*.

12         Second, under Section 8.4A, the successor General Partner (if any) would only have the

13  <u>option</u>, not the obligation, to purchase the removed General Partners' interests in the Projects at

14  fair market value as determined, if necessary, by binding arbitration.  *Id*. AMTAX could easily

15  direct its designee not to buy out the removed General Partners.

16         Third, under Section 8.4B, if there is no successor General Partner, or the successor does

17  not elect to purchase the removed General Partners' interests, then the removed General Partners

18  would become "Special Class Limited Partners," and would only have the very limited rights of

19  an "assignee of a Limited Partnership Interest" under Section 9.4, *i.e.*, they would have no voting

20  or consent rights whatsoever.  They would be entitled to continue to share in "profits, losses and

21  distributions," but only to the extent to which they "would have been entitled to do so if no such

22  assignment had been made."  They would thus lose 100% of the Partnership Management Fees

23  and Incentive Supervisory Fees under the sixth and eighth subparagraphs of Section 6.2A(ii) that

24  they (through the Managing General Partner) have been earning to run the projects, which have

25  made up most of the distributions they have been receiving, estimated to have been up to 90% of

26  all distributions of cash flow from operations. *Id*. at Section 6.2; Second Park Decl. at ¶ 28 (Dkt.

27

REPLY OF LLC GENERAL PARTNERS
IN SUPPORT OF SUMMARY JUDGMENT MOTION - 11
Case No. 2:17-CV-01115 RSM
#1216801 v1 / 72811-001

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

1   103 at 11).  This would be the bulk of the continuing windfall to AMTAX unless and until the

2   projects were sold.

3   The largest potential windfall to AMTAX, however, would come from a sale of the

4   projects.  Under Section 6.2B(ii), the distributions of Capital Proceeds under the eighth subsection

5   and the Incentive Supervisory Fees under the eleventh subparagraph would be forfeited by the

6   General Partners if removed (by virtue of no longer being the "Managing General Partner"), and

7   would constitute a major windfall to AMTAX in addition to the $28 million windfall it would

8   receive if it were to be permitted to block SHAG's exercise of its Special ROFRs.  Dkt. 93 at 21,

9   ¶ 57.

10   The upshot of removal for the General Partners would be that they would lose all of the

11   distributions they are now receiving in connection with their ongoing management of the seven

12   projects, they would lose all control over the projects, they would have a very illiquid and uncertain

13   financial stake in each project, and they would be entirely at the mercy of AMTAX and any

14   successor General Partners AMTAX might appoint.  Any successor General Partner would be

15   entirely unfamiliar with the projects, which would put at risk the continued financial viability and

16   market value of the projects, not to mention the impact there would be on the residents of the seven

17   senior housing projects and the likely opposition from the project's mortgage lenders.

18   In short, even with AMTAX's acknowledgement of Sections 4.5B and 8.4, the removal of

19   the General Partners would still result in a huge forfeiture by the General Partners and a huge

20   windfall to AMTAX, completely disproportionate to the conduct alleged.

21   ### III.    CONCLUSION

22   For the additional reasons set forth above, the LLC General Partners renew their request

23   that their motion for summary judgment be granted, and that AMTAX's claims against them be

24   dismissed.

25

26

27

REPLY OF LLC GENERAL PARTNERS
IN SUPPORT OF SUMMARY JUDGMENT MOTION - 12
Case No. 2:17-CV-01115 RSM
#1216801 v1 / 72811-001

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

1   DATED this 19th day of December 2018.

2
                                        _/s/ Dennis H. Walters_____
3                                       Dennis H. Walters, WSBA #9444
                                        Joshua M. Howard, WSBA #52189
4                                       Karr Tuttle Campbell
                                        701 5th Ave., Suite 3300
5                                       Seattle, WA 98104
                                        Telephone: (206) 223-1313
6                                       Fax: (206) 682-7100
                                        E-mail: dwalters@karrtuttle.com
7                                               jhoward@karrtuttle.com

8                                       *Attorneys for Third-Party Defendants, Steel Lake
                                        Enterprises, LLC, Lakewood, Meadows Enterprises,*
9                                       *LLC, Lynnwood Retirement Living, LLC, and*
                                        *Woodlands Associates, LLC*
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

REPLY OF LLC GENERAL PARTNERS
IN SUPPORT OF SUMMARY JUDGMENT MOTION - 13
Case No. 2:17-CV-01115 RSM
#1216801 v1 / 72811-001

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

<u>CERTIFICATE OF SERVICE</u>

I, Julie Nesbitt, affirm and state that I am employed by Karr Tuttle Campbell in King County, in the State of Washington.  I am over the age of 18 and not a party to the within action. My business address is:  701 Fifth Ave., Suite 3300, Seattle, WA  98104.  On this day, I caused the foregoing REPLY OF LLC GENERAL PARTNERS IN SUPPORT OF SUMMARY JUDGMENT MOTION to be served on the parties listed below in the manner indicated.

| | | |
|---|---|---|
| David J. Burman<br>Steven D. Merriman<br>Perkins Coie<br>1201 Third Avenue, Suite 4900<br>Seattle, WA 98101-3099<br>dburman@perkinscoie.com<br>smerriman@perkinscoie.com<br>*Attorneys for Defendants/Counter-Plaintiffs* | ☐<br>☐<br>☐<br>☐<br>☒ | Via U.S. Mail<br>Via Hand Delivery<br>Via Electronic Mail<br>Via Overnight Mail<br>CM/ECF via court's website |
| Christopher G. Caldwell<br>Noah Perez-Silverman<br>Eric Pettit<br>Boies Schiller & Flexner<br>725 South Figueroa Street<br>31st Floor<br>Los Angeles, CA 90017<br>ccaldwell@bsfllp.com<br>nperez-silverman@bsfllp.com<br>epettit@bsfllp.com<br>*Attorneys for Defendants/Counter-Plaintiffs* | ☐<br>☐<br>☐<br>☐<br>☒ | Via U.S. Mail<br>Via Hand Delivery<br>Via Electronic Mail<br>Via Overnight Mail<br>CM/ECF via court's website |
| Jessica Kerr<br>Jake Ewart<br>Hillis Clark Martin & Peterson<br>999 Third Avenue, Suite 4600<br>Seattle, WA 98104<br>Jessica.kerr@hcmp.com<br>Jake.ewart@hcmp.com<br>*Attorneys for Plaintiffs/Third-Party Defendants* | ☐<br>☐<br>☐<br>☐<br>☒ | Via U.S. Mail<br>Via Hand Delivery<br>Via Electronic Mail<br>Via Overnight Mail<br>CM/ECF via court's website |

I declare under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct, to the best of my knowledge.  Executed on this 19th day of December, 2018, at Seattle, Washington.

*/s/ Julie Nesbitt*
Julie Nesbitt
Assistant to Dennis H. Walters

REPLY OF LLC GENERAL PARTNERS
IN SUPPORT OF SUMMARY JUDGMENT MOTION - 14
Case No. 2:17-CV-01115 RSM
#1216801 v1 / 72811-001

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100