THE HONORABLE RICARDO S. MARTINEZ

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SENIOR HOUSING ASSISTANCE GROUP,<br><br>　　　　　　　Plaintiff,<br><br>　v.<br><br>AMTAX HOLDINGS 260, LLC, et al.,<br><br>　　　　　　　Defendants.<br><br>AMTAX HOLDINGS 260, LLC, et al.,<br><br>　　　　　　　Counter-Plaintiffs,<br><br>　v.<br><br>SENIOR HOUSING ASSISTANCE GROUP, et al.,<br><br>　　　　　　　Counter-Defendants. | No. 2:17-cv-01115-RSM<br><br>**REPLY IN SUPPORT OF DEFENDANTS AND COUNTER-PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**<br><br>**NOTE ON MOTION CALENDAR:**<br>December 21, 2018<br><br>ORAL ARGUMENT REQUESTED |

REPLY ISO LIMITED PARTNERS' MSJ
(No. 2:17-cv-01115-RSM) – i

**Boies Schiller Flexner LLP**
725 South Figueroa Street, 31st Floor
Los Angeles, CA  90017-5524
Phone:  (213) 629-9040
Fax:  (213) 629-9022

**TABLE OF CONENTS**

I. INTRODUCTION ...........................................................................................................1

II. COUNTER-DEFENDANTS' ARGUMENTS LACK MERIT AND DO NOT EXCUSE THEIR MISCONDUCT ...................................................................................2

    A. The Court Cannot Ignore the Ordinary Meaning of "Right of First Refusal"..................................................................................................................2

    B. SHAG's ROFR Has Value as a Defensive Right, and SHAG Benefits from Its Involvement in the Projects Even if It Never Purchases Them ..........................4

    C. Counter-Defendants Misrepresent and Ignore the Circumstances in which SHAG's ROFR Could Be Triggered and Exercised..................................................5

    D. SHAG's Effort to Distinguish Its ROFR from the Option in Section 7.4J of the Partnership Agreements Cannot Withstand Scrutiny ....................................6

    E. The Limited Partners Never Agreed that SHAG Could Exercise Its Purchase Right Unilaterally ......................................................................................7

    F. The Parenthetical in Section 4.5A(iii) of the Partnership Agreements Does Not Convert SHAG's ROFR Into an Option ..........................................................8

    G. Exercise of the Meridian Court Option Does Not Trigger SHAG's ROFR ............9

    H. The GIA Frustrates the Purpose of SHAG's Section 42 ROFR And Justifies Removal of the General Partners from Their Positions of Authority.................................................................................................................10

III. CONCLUSION............................................................................................................12

REPLY ISO LIMITED PARTNERS' MSJ
(No. 2:17-cv-01115-RSM) – ii

Boies Schiller Flexner LLP
725 South Figueroa Street, 31st Floor
Los Angeles, CA  90017-5524
Phone:  (213) 629-9040
Fax:  (213) 629-9022

## I.     INTRODUCTION

Plaintiff and Counter-Defendant Senior Housing Assistance Group ("SHAG") describes itself as a nonprofit organization focused on providing affordable senior housing, including by operating the seven low-income housing tax credit ("LIHTC") affordable housing projects (the "Projects") owned by the seven partnerships at issue in this action (the "Partnerships").  In furtherance of SHAG's mission, the Partnerships' limited partners (the "Limited Partners") and general partners (the "General Partners") agreed to grant SHAG a "Right of First Refusal" (the "ROFR") that would permit SHAG to purchase the Projects for a minimum price set by Section 42 of the Internal Revenue Code ("Section 42"), and thereby continue operating the Projects as affordable housing, in the event that the Partnerships tried to sell the Projects after they ceased earning LIHTC.  Apparently not content simply to continue operating the Projects as affordable housing, however, SHAG seeks by this action to cash in on the residual value of the Projects, and to funnel those proceeds to the for-profit General Partners through a secret side deal that allows the General Partners to receive as much as ninety percent of the economic windfall that would result from SHAG's purchase of the Projects at Section 42 prices.

As explained in the Limited Partners' summary judgment motion, SHAG may not use its defensive ROFR *offensively* to force the Limited Partners out of the Partnerships against their will and at drastically below-market prices.  The arguments that SHAG and the General Partners (collectively, "Counter-Defendants") offer in their opposition briefs to justify their actions lack merit, and do not excuse the General Partners' gross breaches of their fiduciary duties.  The Limited Partners accordingly are entitled to summary judgment confirming that (1) SHAG's ROFR has not been triggered with respect to any Project; (2) SHAG cannot exercise its ROFR in the absence of a bona fide third-party offer that the Partnership is willing to accept with the consent of the Limited Partners; (3) SHAG cannot exercise its ROFR while the Global Indemnity Agreement (the "GIA") remains in effect; and (4) the Limited Partners may remove the General Partners pursuant to Sections 4.5A(iv)(1) and (2) of the Partnership Agreements.

REPLY ISO LIMITED PARTNERS' MSJ
(No. 2:17-cv-01115-RSM) – 1

**Boies Schiller Flexner LLP**
725 South Figueroa Street, 31st Floor
Los Angeles, CA  90017-5524
Phone:  (213) 629-9040
Fax:  (213) 629-9022

## II. COUNTER-DEFENDANTS' ARGUMENTS LACK MERIT AND DO NOT EXCUSE THEIR MISCONDUCT

In two opposition briefs collectively comprising more than thirty-five pages, Counter-Defendants offer an array of purported justifications for SHAG's improper efforts—with the assistance of the other Counter-Defendants—to exercise its ROFR unilaterally. None of Counter-Defendants' arguments have merit.

### A. The Court Cannot Ignore the Ordinary Meaning of "Right of First Refusal"

*First*, Counter-Defendants improperly seek to strip the term "Right of First Refusal" of its ordinary meaning, and to render it utterly devoid of *any* independent meaning. Dkt. 102 ("LLC GP Opp.") at 5 ("The terms and conditions of Section 7.4L . . . do not conform to any of the definitions of a common law right of first refusal offered by AMTAX in its motion"); Dkt. 99 ("SHAG Opp.") at 12 ("The parties pre-determined the purchase terms under the Special ROFR and included them in Section 7.4L, so it is not possible simply to import the dictionary definition of a 'right of first refusal.'"). Counter-Defendants' disregard for the ordinary meaning of a well-established term that they themselves incorporated into the applicable partnership agreements (the "Partnership Agreements") must be rejected for the following reasons:

- Under Washington law, using a term like "Right of First Refusal" or "ROFR" implies requirements for exercise that need not be expressly set out in the contract. *See Bennett Veneer Factors Inc. v. Brewer*, 73 Wn.2d 849, 856, 441 P.2d 128 (1968) (holding that the requirements for exercise of a ROFR are "implied from the use of the term 'first refusal'" "irrespective of whether it is specifically provided for in the agreement"). Because Section 7.4.L grants SHAG a "Right of First Refusal" and is silent regarding the requirements for its exercise, the ordinary requirement of a third-party offer that the owner is willing to accept is implied from the use of the term.[1]

- A ROFR requires a third-party offer and a willingness to sell even where, as here, the exercise price is independent from the amount of the third-party offer. *See* 136 Cong. Rec. 30528 (Oct. 18, 1990 Senate Report) (recognizing that a ROFR at a minimum price set by Section 42 can only be exercised "should the owner decide to sell"); *Rubin v.*

---

[1] As explained in the Limited Partners' opposition to SHAG's summary judgment motion, Counter-Defendants improperly conflate the requirements for *having* SHAG's Section 42 ROFR—which are expressly spelled out in Section 7.4L—with the requirements for triggering and exercising the ROFR—which are implied in Section 7.4L based on its use of the term "Right of First Refusal." *See* Dkt. 104 ("Opp. to SHAG MSJ") at 10–11.

REPLY ISO LIMITED PARTNERS' MSJ
(No. 2:17-cv-01115-RSM) – 2

**Boies Schiller Flexner LLP**
725 South Figueroa Street, 31st Floor
Los Angeles, CA 90017-5524
Phone: (213) 629-9040
Fax: (213) 629-9022

*Moys*, 97 Wn. App. 1020, *7 (1999) (upholding "a right of first refusal to purchase [property] for a set price *in the event it would be sold*") (emphasis added).

- The Partnership Agreements contain both an "option" and a Section 42 "Right of First Refusal," and Congress distinguished between these two rights when crafting the Section 42(i)(7) safe harbor based specifically on the fact that an option can be unilaterally exercised and a ROFR cannot. *See* Tracy A. Kaye, *Sheltering Social Policy in the Tax Code: The Low-Income Housing Credit*, 38 Villanova L. Rev. 871, 893 (1993).[2] Indeed, last year Senators Maria Cantwell and Orrin Hatch introduced legislation that would amend Section 42(i)(7) to replace "a right of 1st refusal" with "an option." S.B. 548, 115th Cong. (1st Sess. 2017). That Congress would need to amend Section 42 to expand its application to include options demonstrates that Section 42 does not currently permit the grant of below-market purchase rights that are exercisable at the holder's discretion.

Undeterred by the foregoing, SHAG urges the Court to look past the parties' use of the term "Right of First Refusal" and focus instead on the nature of the right granted (SHAG Opp. at 12–13), but neither case on which SHAG relies supports the conclusion that the ROFR in Section 7.4L is anything other than a ROFR. In *Overton v. Bengel*, the Texas Court of Appeals affirmed the trial court's interpretation of contract terms as providing a unilateral purchase right even though the agreement was inaccurately labeled a "First Right of Refusal." 139 S.W. 3d 754, 757 (Tex. App. 2004). The Partnership Agreements at issue here, by contrast, contain no language to suggest that SHAG's ROFR can be exercised unilaterally, and the fact that the agreements include both an option and a distinct ROFR confirms that the parties knew the difference between these two types of purchase rights.

And in *Kelly v. Ammex Tax & Duty Free Shops W., Inc.*, the court resolved an ambiguity where the parties had referred inconsistently to the right in question as both "right of first refusal" and "right of first offer." 162 Wn. App. 825, 832–33, 256 P.3d 1255 (2011). Here, far from being an imprecise characterization of a different substantive purchase right, the parties used the term "Right of First Refusal" intentionally in order to invoke the Section 42(i)(7) safe harbor. *See* Dkt. 90-1, Exs. Y–Z; Dkt. 90-2, Exs. AA–DD; Dkt. 91-1, Ex. EE (collectively, the

---

[2] In its opposition brief, SHAG refers dismissively to this "law review article," SHAG Opp. at 14–15, but fails to mention that its author was Tax Legislative Assistant to Senator John Danforth from 1987 to 1991, the very period in which Senator Danforth co-chaired a task force that was integral in formulating the safe harbor provision that ultimately became Section 42(i)(7). *See* Kaye, *supra*, at 871 n.a.

REPLY ISO LIMITED PARTNERS' MSJ
(No. 2:17-cv-01115-RSM) – 3

**Boies Schiller Flexner LLP**
725 South Figueroa Street, 31st Floor
Los Angeles, CA 90017-5524
Phone: (213) 629-9040
Fax: (213) 629-9022

"Partnership Agreements") § 7.4L (incorporating the definition of "qualified nonprofit organization" in Section 42(h)(5)(C) and the minimum purchase price in Section 42(i)(7)(B)); Dkt. 105-1, Ex. QQQ (Transcript of Second Deposition of Bryan Park) at 38:20–40:02 (acknowledging that the grant of an option, as opposed to a ROFR, would undermine "whether the deal was within the safe harbor of Section 42(i)(7)"). The Court should not override that intent by pretending that Section 7.4L of the Partnership Agreements grants something other than a ROFR, especially where, as here, the parties were sophisticated, understood the difference between options and ROFR, and, if they had wanted, easily could have granted SHAG an option.

### B.  SHAG's ROFR Has Value as a Defensive Right, and SHAG Benefits from Its Involvement in the Projects Even if It Never Purchases Them

*Second*, contrary to Counter-Defendants' claim, that the Limited Partners have a say in whether SHAG's ROFR is triggered does *not* mean that the ROFR has no value to SHAG, or that SHAG does not derive meaningful benefits from its participation in the Projects. As explained in the Limited Partners' opposition to SHAG's summary judgment motion, the ROFR is a *defensive* right that prevents the Partnerships from selling valuable Projects out from under SHAG's operating use leases, because doing so would trigger SHAG's below-market ROFR. Opp. to SHAG MSJ at 21. Because SHAG's mission as a nonprofit is to provide affordable housing to seniors, and because the ROFR allows SHAG to further that mission by continuing to operate the Projects pursuant to operating use leases with the Partnerships, Counter-Defendants cannot credibly argue that the ROFR as properly interpreted has no value to SHAG.[3]

Moreover, the claim that "[t]he only meaningful compensation SHAG is to receive for its 15+ years of work is entitlement to exercise its Special ROFRs," LLC GP Opp. at 2, fundamentally misconceives SHAG's role as a nonprofit. To be eligible for a Section 42 ROFR,

---

[3] Of course, if the ROFR has no value, then the Limited Partners' forced sale rights under Section 7.4K must be equally valueless, since, under Counter-Defendants' formulation, those forced sale rights also would never be exercised (for fear of triggering the ROFR). The reality, however, is that SHAG's ROFR and the Limited Partners' forced sale rights both have value, and are intended to work together to encourage both parties to cooperate and negotiate a mutually agreeable disposition at the end of a Project's compliance period.

REPLY ISO LIMITED PARTNERS' MSJ
(No. 2:17-cv-01115-RSM) – 4

**Boies Schiller Flexner LLP**
725 South Figueroa Street, 31st Floor
Los Angeles, CA  90017-5524
Phone:  (213) 629-9040
Fax:  (213) 629-9022

SHAG must be a tax-exempt nonprofit organization with "the fostering of low-income housing" as one of its exempt purposes. *See* 26 U.S.C. §§ 42(h)(5)(C), 42(i)(7)(A). SHAG thus does not exist to be compensated, but rather to promote affordable housing for seniors, which it has been able to accomplish through its operating use leases. The Limited Partners' refusal to consent to a below-market sale does not prevent SHAG from continuing to serve in that role, and to suggest that SHAG receives no benefit from this arrangement ignores its core mission.[4]

### C. Counter-Defendants Misrepresent and Ignore the Circumstances in which SHAG's ROFR Could Be Triggered and Exercised

*Third*, in claiming that its ROFR would be "impossible to exercise" if it required the Limited Partners to consent to a third-party offer, SHAG mischaracterizes the Limited Partners' position as requiring (a) receipt of an "unsolicited third-party offer," and (b) a "binding agreement" with the third-party. SHAG Opp. at 19. In fact, the Limited Partners have not argued that the ROFR can only be exercised upon receipt of an *unsolicited* third-party offer—to the contrary, if the Partnership decides to sell or the Investor Limited Partner exercises its forced sale right under Section 7.4K, then solicitation of third-party offers would be appropriate. Nor have the Limited Partners argued that a *binding agreement* is required. Instead, the offer must only be bona fide and enforceable, as opposed to a sham tendered solely to trigger SHAG's ROFR, or a mere letter of intent. *See, e.g.*, Dkt. 89 ("LP MSJ") at 21–22.

SHAG also ignores reasons why the Limited Partners might decide to trigger SHAG's ROFR—either by consent to a third-party offer or exercise of their Section 7.4K forced sale

---

[4] The contention that "[t]he only benefit SHAG has received to date as a result of its work on the [P]rojects has been the fees it has received as the operator of the seven projects of approximately 1% of the actual gross revenue from operations" is also deeply misleading, and ironic in light of its source. *See* LLC GP Opp. at 2. In reality, SHAG is entitled under the operating use leases to receive anywhere from 4–7% of gross revenues generated by the Projects, but has entered into independent "Property Management Agreements" in which it agreed to assign nearly all of those operating revenues to for-profit affiliates of Bryan Park, who consequently receive *several times* as much compensation as SHAG in connection with the operation of the Projects. *See, e.g.*, Dkt. 103-1, Ex. Q, § 5.1 (excerpt of Operating Lease Use Agreement providing that SHAG retains seven percent of rents and other revenues actually received by SHAG from the operation of the Project); Dkt. 90-1, Ex. T, § D.8 (Property Management Agreement providing that SHAG shall pay PNCC "each month for its property management services hereunder an amount equal to six percent (6%) of the monthly gross receipts from the operation of the Buildings by [SHAG]").

REPLY ISO LIMITED PARTNERS' MSJ
(No. 2:17-cv-01115-RSM) – 5

**Boies Schiller Flexner LLP**
725 South Figueroa Street, 31st Floor
Los Angeles, CA 90017-5524
Phone: (213) 629-9040
Fax: (213) 629-9022

rights—including to foster their relationship with their nonprofit partner, because it no longer makes sense to be involved in a partnership with limited residual value, or because fair market value may be close to the Section 42 price such that it is in both parties' interest to facilitate transfer of the Project under the ROFR instead of incurring the expenses associated with a sale of the Project. *See* Dkt. 98 ("Trane Decl."), ¶ 9. It is irrelevant that it is not in the Limited Partners' interest to trigger SHAG's ROFR where, as here, the properties have appreciated significantly. The "[C]ourt's primary goal is to ascertain the parties' intent at the time they executed the contract," *Int'l Marine Underwriters v. ABCD Marine, LLC*, 179 Wn.2d 274, 282, 313 P.3d 395 (2013) (citation omitted), and at that time, the parties could not predict whether any of the Projects would have substantial residual value at the end of the compliance period.

## D. SHAG's Effort to Distinguish Its ROFR from the Option in Section 7.4J of the Partnership Agreements Cannot Withstand Scrutiny

*Fourth*, the Court should reject Counter-Defendants' attempt to distinguish the option in Section 7.4J of the Partnership Agreements from the ROFR in Section 7.4L based on what, if any, conditions must be met to hold each right. In attempting to rebut the fact that their reading of the ROFR as unilaterally exercisable would make it indistinguishable from an option, Counter-Defendants argue that "options in Section 7.4J are essentially condition-less," while "SHAG's Special ROFR, on the other hand, has conditions," SHAG Opp. at 13–14, namely, that "SHAG would need to continue to own and operate its subsidiary, SHAC, and would need to continue as the Lessee and Operator for each [P]roject." LLC GP Opp. at 6; *see id.* at 5–6 ("The terms of [the Section 42 ROFR] in Section 7.4L do not constitute a common law option because SHAG's purchase rights were subject to at least 15 years of uncertainty about whether SHAG and SHAC would be able to satisfy the conditions to exercise SHAG's Special ROFRs.").

This purported distinction, however, does not make sense. Just like the ROFR, the option in Section 7.4J of the Partnership Agreements cannot be exercised for at least fifteen years from the time of its grant. *See* Partnership Agreements § 7.4J. And just as "SHAG faced the potential

REPLY ISO LIMITED PARTNERS' MSJ
(No. 2:17-cv-01115-RSM) – 6

**Boies Schiller Flexner LLP**
725 South Figueroa Street, 31st Floor
Los Angeles, CA 90017-5524
Phone: (213) 629-9040
Fax: (213) 629-9022

under Section 24 of the parties' Operating Use Lease Agreements that SHAG's partners could seek to remove SHAG as the lessee and/or operator of the seven projects," LLC GP Opp. at 6, thereby divesting SHAG of its ROFR, so too do the General Partners face the potential of removal pursuant to Section 4.5A(iii) of the Partnership Agreements, thereby divesting the General Partners of their option under Section 7.4J. *See* Partnership Agreements §§ 4.5A(iii) (identifying grounds for Limited Partners to remove Counter-Defendants as General Partners in the Partnerships), 7.4J (providing that "the *Managing General Partner* shall have the option. . . .") (emphasis added). Thus, as noted above, the key distinction between the option in Section 7.4J and the ROFR in Section 7.4L is not whether the rights are *conditional*, but instead whether the rights are *unilateral*.

### E. The Limited Partners Never Agreed that SHAG Could Exercise Its Purchase Right Unilaterally

*Fifth*, contrary to Counter-Defendants' contentions, *see* SHAG Opp. at 1; LLC GP Opp. at 6, the Limited Partners' willingness to include a Section 42 ROFR in the Partnership Agreements does *not* constitute prior consent to its unilateral exercise more than a decade later. As explained above and in the Limited Partners' Opposition to SHAG's summary judgment motion, Opp. to SHAG MSJ at 3–4, an option and a ROFR are two distinct rights, and are distinguishable precisely because the former can be exercised unilaterally, while the latter is a defensive right that can be exercised "only if the seller decide to sell." *Bennett*, 73 Wn.2d at 854. If the parties had intended to consent at the time the Partnership Agreements were formed to SHAG's having a unilateral purchase right in the future, then they would have given SHAG an option, not a ROFR. But they did not provide such prior consent, because they knew that to do so would take the SHAG's right outside of the safe harbor provision with which the ROFR was intended to comply, and the Limited Partners' investment in the Projects was contingent on strict compliance with Section 42. *See* Opp. to SHAG MSJ at 11–12.

REPLY ISO LIMITED PARTNERS' MSJ
(No. 2:17-cv-01115-RSM) – 7

**Boies Schiller Flexner LLP**
725 South Figueroa Street, 31st Floor
Los Angeles, CA 90017-5524
Phone: (213) 629-9040
Fax: (213) 629-9022

Counter-Defendants also rely heavily on Bryan Park's claim that a former Paramount Executive Vice President, Michael Buckley, told Mr. Park at the time of the formation of the Partnerships more than fifteen years ago that the Limited Partners agreed that SHAG could exercise its ROFR unilaterally at the end of the compliance period. *See, e.g.*, Dkt. 93 (First Declaration of Bryan Park), ¶ 21 ("Mr. Buckley agreed that SHAG's ROFR would be the primary consideration given to SHAG for its participation in the project, and that the Special ROFR would be exercisable by SHAG (if all express conditions were met) without requiring the consent of any party."). Although it took some time,[5] the Limited Partners were able to track down Mr. Buckley, who has confirmed in a sworn declaration that he does not recall ever having such a conversation with Mr. Park, that he doubts that the conversation Mr. Park describes would have occurred, and that, if it had occurred, he would expect there to be some written memorialization of any such agreement. *See* Declaration of Michael Buckley, ¶¶ 3–4. These statements by Mr. Buckley—who has not had any affiliation with the Limited Partners for more than a decade, and has absolutely no stake in this dispute—undercut Counter-Defendants' claim that the Limited Partners provided prior consent.

### F. The Parenthetical in Section 4.5A(iii) of the Partnership Agreements Does Not Convert SHAG's ROFR Into an Option

*Sixth*, SHAG relies on a facially implausible reading of Section 4.5A(iii) to claim that the parenthetical preventing the Limited Partners from blocking a sale "pursuant to . . . the Special ROFR described in Section 7.4L" makes the ROFR unilaterally exercisable. SHAG Opp. at 18 (quoting Section 4.5A(iii)). While the parenthetical in Section 4.5A(iii) clarifies that the Limited Partners' consent is not required for a sale to a General Partner pursuant to an exercise of the option or for a sale to SHAG pursuant to the exercise of its ROFR, the remainder of Section 4.5A(iii)—along with Section 7.1B(viii), which prevents the General Partners from selling the

---

[5] The Limited Partners originally intended to submit Mr. Buckley's declaration with their summary judgment oppositions, but could not obtain an executed declaration from Mr. Buckley until December 19, 2018.

REPLY ISO LIMITED PARTNERS' MSJ
(No. 2:17-cv-01115-RSM) – 8

**Boies Schiller Flexner LLP**
725 South Figueroa Street, 31st Floor
Los Angeles, CA  90017-5524
Phone:  (213) 629-9040
Fax:  (213) 629-9022

Projects without the Limited Partners' consent—confirms that the Limited Partners' consent *is* required for any *third-party sale*. Because the ROFR is not triggered unless the Partnership intends to sell to a third-party, and because the Limited Partners' consent is required for that intent to manifest, the Limited Partners control whether SHAG's ROFR is triggered. Once the ROFR is triggered, however, Section 4.5A(iii) prevents the Limited Partners from blocking SHAG's exercise of its ROFR to purchase the Project.[6]

### G. Exercise of the Meridian Court Option Does Not Trigger SHAG's ROFR

*Seventh*, SHAG's claim that the Meridian Court General Partner's exercise of its option triggered SHAG's ROFR is similarly without merit. SHAG argues that the ROFR "has priority over the option" because Section 7.4L grants the ROFR "[n]otwithstanding" the General Partner's option in Section 7.4J or the Investor Limited Partner's forced sale right in Section 7.4K. SHAG Opp. at 22. SHAG further contends that, as a result, its Section 42 ROFR "must be able to trump the option," and that the General Partner's exercise of its option to purchase the Meridian Court Project accordingly must trigger SHAG's ROFR with respect to that Project. *Id.*

SHAG's position is based on a misunderstanding of the relationship between the option and the ROFR. Because the exercise of the option in Section 7.4J contemplates the purchase by the General Partner of the Investor Limited Partner's interests in the Partnership, the exercise of the option neither trumps nor triggers SHAG's ROFR, and the word "notwithstanding" simply confirms that SHAG's ROFR is unaffected by the existence or exercise of the option. Thus, if a General Partner were to exercise its option pursuant to Section 7.4J, SHAG would retain its

---

[6] SHAG's attempt to dismiss the import of Section 7.1 is also unavailing. SHAG notes that Section 7.1B(viii)'s restriction on the General Partner's ability to sell without Investor Limited Partner consent "excludes *neither* the General Partner's option under Section 7.4J *nor* SHAG's Special ROFR under Section 7.4L," and claims that, as a result, the absence of a carve-out for the ROFR is irrelevant. SHAG Opp. at 19 (emphasis in original). SHAG, however, ignores that—unlike SHAG's ROFR in Section 7.4L—the General Partner's option under Section 7.4J, if exercised, does not result in a sale of the *Project*, but rather in a purchase by the General Partner of the *Limited Partners' interests in the Partnership*. Thus, while it would make sense to carve a sale pursuant to the ROFR out of the categorical prohibition on a unilateral sale of the *Project* in Section 7.1B(viii) if that was what the parties intended, a reference to the option in Section 7.4J would be out of place.

REPLY ISO LIMITED PARTNERS' MSJ
(No. 2:17-cv-01115-RSM) – 9

**Boies Schiller Flexner LLP**
725 South Figueroa Street, 31st Floor
Los Angeles, CA  90017-5524
Phone:  (213) 629-9040
Fax:  (213) 629-9022

ROFR, but its ROFR would not be triggered unless and until the General Partner decided to accept a third-party offer to purchase the Project.

That the exercise of the option in Section 7.4L does not trigger SHAG's ROFR is confirmed by comparing the option to the forced sale right in Section 7.4K. The last sentence of Section 7.4K of the Meridian Court Partnership Agreement expressly provides that, "[i]n the event that the Investor Limited Partner exercises the [forced sale right], [SHAG] shall have a Right of First Refusal to purchase the Project in accordance with the provisions of Paragraph 7.4L hereof." Dkt. 90-1, Ex. Y (Meridian Court Partnership Agreement) § 7.4K. The parties thus affirmatively identified in the Partnership Agreements when the exercise of a purchase or sale right could result in the trigger of SHAG's ROFR, and declined to incorporate such a provision into the language of Section 7.4J governing the General Partner's option.

### H. The GIA Frustrates the Purpose of SHAG's Section 42 ROFR And Justifies Removal of the General Partners from Their Positions of Authority

*Finally*, Counter-Defendants argue that the GIA does not affect its ability to exercise its ROFR because: (a) the LLC General Partners and other for-profit entities controlled by Bryan Park—including Pacific Northern Construction Company ("PNCC")—are "economically indifferent" to whether SHAG exercises its ROFR, (b) SHAG would own 100 percent of the property after a successful exercise of its ROFR, and (c) the Washington State Housing Finance Commission (the "WSHFC") determined that SHAG is a qualified nonprofit. *See* SHAG Opp. at 22–23. Counter-Defendants, however: (i) downplay the clear tangible benefits that will accrue to the LLC General Partners and to Mr. Park personally upon the replacement of numerous independent partners holding material consent rights with a single entity—SHAG— that relies on Mr. Park and follows his recommendations; (ii) contradict the clear terms of the GIA, which specifically provides that PNCC "will maintain the same direct or indirect *ownership* percentage in each of the Facilities as they enjoyed immediately before . . . the exercise of the ROFR," Dkt. 90-1, Ex. U (Global Indemnity Agreement) at 2 (emphasis added)); and (iii) overstate and

REPLY ISO LIMITED PARTNERS' MSJ
(No. 2:17-cv-01115-RSM) – 10

**Boies Schiller Flexner LLP**
725 South Figueroa Street, 31st Floor
Los Angeles, CA 90017-5524
Phone: (213) 629-9040
Fax: (213) 629-9022

misconstrue the significance of the WSHFC's determination, which did not address whether the GIA frustrates the purpose of SHAG's Section 42 ROFR. *See* Opp. to SHAG MSJ at 23–24.

In any event, none of these arguments addresses the primary problem with the GIA—that after the exercise of SHAG's ROFR, a for-profit entity would control the Projects and receive the vast majority of the benefits from operating the Projects. As explained in the Limited Partners' summary judgment motion, *see* LP MSJ at 18, Congress created the Section 42 ROFR to make it easier for qualified nonprofits to purchase LIHTC projects that had ceased generating tax credits. Congress preferred nonprofit control of low-income properties out of concern that for-profit entities would convert such properties to more profitable uses at the end of the compliance period. *See* Kaye, *supra*, at 884–86. Although the exercise of SHAG's ROFR may not affect the benefits PNCC and its affiliates receive because of the GIA, *see* SHAG Opp. at 22, that fact has no bearing on whether it is proper for SHAG to receive benefits intended exclusively for nonprofits and other eligible participants while Mr. Park's for-profit entities continue to control and economically benefit from the Projects. As demonstrated by the legislative history, such a result—in which SHAG would be little more than a straw owner—would subvert the intent of Congress.

Counter-Defendants play down the importance of the GIA, but without that agreement the General Partners would not receive *any* continuing benefits from the Projects upon the exercise of SHAG's ROFR. The GIA thus substantially reallocates the economic benefits that flow from the Projects. Indeed, the WSHFC found that "PNCC's preserved economic interests [under the GIA] appear to be worth tens of millions of dollars." Dkt. 88-1 ("Woolford Decl."), Ex. D at 12.

Because it is improperly seeking through the attempted exercise of its ROFR to force the Partnerships to sell their sole assets—the Projects—at drastically below-market prices, SHAG's interests are adverse to the interests of the Partnerships, and the General Partners' facilitation of SHAG's interests violates the General Partners' fiduciary duty of loyalty to the Partnerships and

REPLY ISO LIMITED PARTNERS' MSJ
(No. 2:17-cv-01115-RSM) – 11

**Boies Schiller Flexner LLP**
725 South Figueroa Street, 31st Floor
Los Angeles, CA 90017-5524
Phone: (213) 629-9040
Fax: (213) 629-9022

their Limited Partners. *See* RCW 25.10.441 (recognizing that a general partner has a fiduciary duty not to act "on behalf of a party having an interest adverse to the limited partnership"). Moreover, the General Partners' decision to promote SHAG's interests at the expense of the Partnerships and their Limited Partners is even more egregious given that the GIA ensures that, unlike the Limited Partners, the General Partners will avoid any negative economic impact from a sale of the Projects to SHAG at substantially below-market prices. The Court accordingly should find not only that SHAG cannot exercise its ROFR while the GIA remains in effect, but also that the Limited Partners may remove the General Partners pursuant to Sections 4.5A(iv)(1) and (2) of the Partnership Agreements based on their breaches of fiduciary duties.

## III. CONCLUSION

Make no mistake: this case is *not* about efforts by SHAG to promote its nonprofit mission to provide quality affordable housing for seniors. Indeed, regardless of how the Court rules, SHAG will continue to operate the Projects as low-income housing, and any effort by the Limited Partners to force the Partnerships to sell the Projects out from under SHAG's operating use leases will trigger SHAG's below-market ROFR, which will remain in effect for the entire two-year period in which the Limited Partners have the ability to compel a sale. Rather, this case is about efforts by the General Partners to use their control over the Partnerships in a way that improperly seeks to divest the Limited Partners of their greater than 99% ownership interests in the Partnerships in order to line the General Partners' own pockets through the GIA they tried to hide from their fiduciaries. For the reasons explained in the Limited Partners' moving papers and further addressed above, SHAG's efforts to exercise its ROFR unilaterally are improper, and the decision by the General Partners to orchestrate SHAG's improper exercise after having coopted from SHAG the vast majority of the resulting economic benefits constituted a gross breach of the General Partners' fiduciary duties to the Limited Partners, justifying their removal from positions of authority over the Partnerships. The Limited Partners therefore respectfully request that the Court grant their Motion for Summary Judgment.

REPLY ISO LIMITED PARTNERS' MSJ
(No. 2:17-cv-01115-RSM) – 12

**Boies Schiller Flexner LLP**
725 South Figueroa Street, 31st Floor
Los Angeles, CA 90017-5524
Phone: (213) 629-9040
Fax: (213) 629-9022

RESPECTFULLY SUBMITTED this 19th day of December, 2018.

**Boies Schiller Flexner LLP**

By: /s/ Eric S. Pettit
Christopher G. Caldwell, admitted *pro hac vice*
Eric S. Pettit, admitted *pro hac vice*
725 S Figueroa Street, 31st Floor
Los Angeles, CA 90017
Telephone:  213 629 9040
Facsimile:  213 629 9022
Email:  ccaldwell@bsfllp.com
         epettit@bsfllp.com

**Perkins Coie LLP**

By: /s/ Steven D. Merriman
David J. Burman, WSBA #10611
Steven D. Merriman, WSBA #44035
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Telephone:  206.359.8000
Facsimile:  206.359.9000
Email:  DBurman@perkinscoie.com
         SMerriman@perkinscoie.com

Attorneys for the Limited Partners

REPLY ISO LIMITED PARTNERS' MSJ
(No. 2:17-cv-01115-RSM) – 13

**Boies Schiller Flexner LLP**
725 South Figueroa Street, 31st Floor
Los Angeles, CA  90017-5524
Phone:  (213) 629-9040
Fax:  (213) 629-9022

## CERTIFICATE OF SERVICE

On December 19, 2018, I caused a copy of the REPLY IN SUPPORT OF DEFENDANTS AND COUNTER-PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT to be electronically filed via the Court's Electronic Case Filing System, which will notify all attorneys of record of the filing.

By:   /s/ Sonia L. Mejia
      Sonia L. Mejia

CERTIFICATE OF SERVICE
(No. 2:17-cv-01115-RSM) – 1

**Boies Schiller Flexner LLP**
725 South Figueroa Street, 31st Floor
Los Angeles, CA  90017-5524
Phone:  (213) 629-9040
Fax:  (213) 629-9022