THE HONORABLE RICARDO S. MARTINEZ

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SENIOR HOUSING ASSISTANCE GROUP,<br><br>            Plaintiff,<br><br>    v.<br><br>AMTAX HOLDINGS 260, LLC, et al.,<br><br>            Defendants. | No. 2:17-cv-01115-RSM<br><br>**DEFENDANTS AND COUNTER-PLAINTIFFS' RESPONSE TO BRIEF OF *AMICI CURIAE* LEADINGAGE & NATIONAL HOUSING LAW PROJECT** |
| AMTAX HOLDINGS 260, LLC, et al.,<br><br>            Counter-Plaintiffs,<br><br>    v.<br><br>SENIOR HOUSING ASSISTANCE GROUP, et al.,<br><br>            Counter-Defendants. | |

DEFENDANTS AND COUNTER-PLAINTIFFS'
RESPONSE TO BRIEF OF *AMICI CURIAE*
(No. 2:17-cv-01115-RSM) – 1

**Boies Schiller Flexner LLP**
725 South Figueroa Street, 31st Floor
Los Angeles, CA  90017-5524
Phone:  (213) 629-9040
Fax:  (213) 629-9022

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION .................................................................................................................1

II. *AMICI CURIAE*'S POLICY ARGUMENTS ARE MISGUIDED ......................................3

    A. While There is a Critical Shortage of Affordable Housing, the Issues Before this Court Have Not Contributed to It ...........................................................3

    B. Ruling Against the Limited Partners Could Chill Private Investment in an Environment Where LIHTC's Attractiveness is Already Diminished ....................5

III. EVEN IF *AMICI CURIAE*'S POLICY ARGUMENTS WERE WELL TAKEN, THEY DO NOT COUNSEL IN FAVOR OF A RULING FOR SHAG HERE .................6

    A. *Amici Curiae* Misstate the Impact of the Court's Ruling on the Availability of Affordable Housing and Continuing Nonprofit Involvement in the Projects .....................................................................................6

    B. Ruling in Favor of SHAG Will Not Result in Nonprofit Ownership of the Projects Because SHAG Has Contracted to Immediately Transfer Ownership to For-Profit Entities ...............................................................................8

IV. THIS CASE IS NOT AN APPROPRIATE VEHICLE TO CHANGE HOUSING POLICY .................................................................................................................................9

    A. An Interpretation of Section 42(i)(7) That Ignores Congress's Deliberate Use of the Term "ROFR" Would Conflict with Congressional Policy and Applicable Tax Law Principles ..................................................................................9

    B. Any Policy Change Should Be Made Prospectively Through Currently Pending Legislation and Not in the Context of this Case .......................................10

V. CONCLUSION ...................................................................................................................12

DEFENDANTS AND COUNTER-PLAINTIFFS'
RESPONSE TO BRIEF OF *AMICI CURIAE*
(No. 2:17-cv-01115-RSM) – i

Boies Schiller Flexner LLP
725 South Figueroa Street, 31st Floor
Los Angeles, CA  90017-5524
Phone:  (213) 629-9040
Fax:  (213) 629-9022

## **TABLE OF AUTHORITIES**

**Cases**                                                                                                 **Page(s)**

*Center for Biological Diversity v. Matis*,
    868 F.3d 803 (9th Cir. 2017) .................................................................................................10

*Homeowner's Rehab, Inc. v. Related Corp. V SLP, L.P.*,
    479 Mass. 741, 99 N.E.3d 744 (2018) ..........................................................................2, 4, 9, 10

*Japan Whaling Ass'n v. Am. Cetacean Soc.*,
    478 U.S. 221 (1986) ...............................................................................................................10

**Statutes**

26 U.S.C. § 42(i)(7)(A) ....................................................................................................................9

26 U.S.C. § 42(h)(6)(B), (D) ...........................................................................................................6

Affordable Housing Credit Improvement Act of 2017 ..................................................................11

**Other Authorities**

Corianne P. Scally, et al., *The Low-Income Housing Tax Credit: Past
    Achievements, Future Challenges*, Urban Institute (July 2018) ..........................................4, 5

Washington State Housing Finance Commission, 9% LIHTC Allocation List for
    2018, http://www.wshfc.org/mhcf/9percent/2018list.pdf ........................................................8

Washington State Housing Finance Commission, 9% LIHTC Allocation List for
    2019, http://www.wshfc.org/mhcf/9percent/2019list.pdf ........................................................8

Mark P. Keightley, *An Introduction to the Low-Income Housing Tax Credit*,
    Congressional Research Service Report (March 28, 2018) .................................................5, 8

Maya Brennan & Solomon Greene, *Why Isn't There Enough Affordable Housing
    for the Families Who Need It Most?* (March 28, 2018) ....................................................4, 5, 6

Michael Novogradac, *Cantwell, Hatch Introduce Comprehensive Affordable
    Housing Bill* (July 14, 2016, 12:00 a.m.) ..............................................................................11

Tracy A. Kaye, *Sheltering Social Policy in the Tax Code: The Low-Income
    Housing Credit* ........................................................................................................................9

DEFENDANTS AND COUNTER-PLAINTIFFS'
RESPONSE TO BRIEF OF *AMICI CURIAE*
(No. 2:17-cv-01115-RSM) – ii

**Boies Schiller Flexner LLP**
725 South Figueroa Street, 31st Floor
Los Angeles, CA  90017-5524
Phone:  (213) 629-9040
Fax:  (213) 629-9022

## I. INTRODUCTION

*Amici Curiae* LeadingAge and the National Housing Law Project ("*Amici Curiae*") devote the bulk of their brief to a description of the scope of the affordable housing crisis in the United States. On this issue, there is no disagreement between *Amici Curiae* and Defendants/Counter-Plaintiffs (collectively, the "Limited Partners"). There is a severe shortage of affordable housing that is caused by a variety of factors, the most important of which is simply that the cost of housing in virtually every jurisdiction has put housing outside the reach of many American families. The Section 42 Low-Income Housing Tax Credit ("LIHTC") program exists to help alleviate that shortage and is a hugely successful program that has resulted in the construction of more affordable housing than any other government-sponsored program. Alden Torch Financial, which manages one of the largest portfolios of LIHTC housing in the United States, including the interests of the Limited Partners in the seven affordable housing properties at issue (the "Projects"), is a key player in the affordable housing industry, and is committed to effectively managing affordable housing investments in order to entice more private investors to commit funds for the construction of affordable housing. Like *Amici Curiae*, Alden Torch Financial believes that there is an affordable housing crisis and wants to be part of the solution.

Where Alden Torch Financial and the Limited Partners part ways from *Amici Curiae* is what impact, if any, a ruling in this case will have on the availability of affordable housing. *Amici Curiae* suggest that, because there is a shortage of affordable housing, then *ipso facto,* the Court must rule in favor of nonprofit entity SHAG in order to help alleviate that shortage. That conclusory leap is wholly unfounded and, in fact, a ruling in SHAG's favor here will *exacerbate* rather than alleviate the affordable housing crisis in this country. As a threshold matter, regardless of whether this Court rules in favor of SHAG or the Limited Partners on the pending cross-motions for summary judgment, the seven Projects will continue to be operated as affordable housing because of regulatory agreements that were conditions of the original tax credit funding. Because of those agreements, regardless of the outcome of this case and

DEFENDANTS AND COUNTER-PLAINTIFFS'
RESPONSE TO BRIEF OF *AMICI CURIAE*
(No. 2:17-cv-01115-RSM) – 1

**Boies Schiller Flexner LLP**
725 South Figueroa Street, 31st Floor
Los Angeles, CA  90017-5524
Phone:  (213) 629-9040
Fax:  (213) 629-9022

regardless of who owns the Projects, they will continue to be operated as affordable housing for the foreseeable future—at least an additional 15 years beyond the end of the initial 15-year Compliance Period for each project.  The Limited Partners are not seeking to upset the *status quo* as it exists with respect to the ownership or operation of any of the Projects.  SHAG and the Bryan Park-affiliates are the parties asking the Court to bless a self-triggered ROFR that would change the ownership of the Projects.

Far more important, however, is that a ruling in favor of SHAG that allows SHAG to self-trigger the ROFR—thereby stripping the phrase "right of first refusal" of its well-established meaning—would have a negative impact on the availability of affordable housing nationally.  The primary constraints that keep the Section 42 LIHTC program from being more successful are the federal government's limit on the number of LIHTC credits awarded each year and the willingness of investors to purchase whatever credits are available.  In order for the LIHTC program to function efficiently and effectively, private investors must be willing to commit their dollars and must be willing to pay prices for the credits that yield amounts sufficient to build the needed housing.  Investors are willing to do so, however, only if there can be certainty that they will get the benefits associated with their investments—tax credits and a share in cash flows and appreciation from projects.  If these settled expectations are upset by developers or nonprofits who refuse to honor their obligations, private investors will be less willing to invest in Section 42 tax credits, and the already-inadequate supply of affordable housing will be further diminished.  This possibility is particularly acute in the current environment, where tax credits have become less valuable because of the recent reduction in the corporate tax rate, and where the LIHTC market has been unsettled by the Massachusetts decision in the *Homeowner's Rehab* case.  While the *Homeowner's Rehab* court took pains to state that it was limiting its decision to the peculiar language of the agreements there, the court also acknowledged that its decision could result in the loss of tax credits for the projects at issue.  *See Homeowner's Rehab, Inc. v. Related Corp. V SLP, L.P.*, 479 Mass. 741, 762 n.15, 99

DEFENDANTS AND COUNTER-PLAINTIFFS'
RESPONSE TO BRIEF OF *AMICI CURIAE*
(No. 2:17-cv-01115-RSM) – 2

**Boies Schiller Flexner LLP**
725 South Figueroa Street, 31st Floor
Los Angeles, CA  90017-5524
Phone:  (213) 629-9040
Fax:  (213) 629-9022

N.E.3d 744 (2018) ("Our task here is to interpret the agreements before us, not to opine on the risk of unintended tax implications.").

Accordingly, while the Limited Partners and *Amici Curiae* agree that there is an affordable housing crisis in this country, the solution proposed by *Amici Curiae* would not help alleviate that crisis and would instead simply make matters worse. When it comes to policy decisions regarding the LIHTC program, Congress has spoken, and the parties entered into the Partnership Agreements against the backdrop of Congress's policy determinations. A rewriting of the tax policies to allow nonprofit developers to hold options (rather than ROFRs) should be made only by Congress after it carefully considers the impact of this change on the future construction of affordable housing and, even then, should apply only to new LIHTC deals, not to agreements that were entered into more than 15 years ago in reliance on then-existing policy. This is particularly true given that Congress itself is already considering a prospective policy change through legislation that would replace the existing safe harbor for below-market ROFRs with a safe harbor for below-market options in any *new* LIHTC transactions.

None of the *Amici Curiae*'s arguments support SHAG's erroneous interpretation of the ROFR. The Court accordingly should grant the Limited Partners' Motion for Summary Judgment, and deny SHAG's Motion for Summary Judgment.[1]

## II. *AMICI CURIAE*'S POLICY ARGUMENTS ARE MISGUIDED

### A. *While There is a Critical Shortage of Affordable Housing, the Issues Before this Court Have Not Contributed to It*

*Amici Curiae* devote almost ten pages of their brief to describing the nation's affordable housing crisis and the LIHTC program's critical significance in helping to solve it. (*Amicus* Br. at 3-11.) On these points, the Limited Partners and *Amici Curiae* are aligned. As *Amici Curiae* acknowledge (*Amicus* Br. at 3-7), the affordable housing crisis stems not from the continued

---

[1] *Amici Curiae* filed a proposed brief, but have not filed the brief following the Court's order granting leave for them to do so. Dkt. 124. This Response addresses *Amici Curiae*'s proposed brief (Dkt. 109-2).

DEFENDANTS AND COUNTER-PLAINTIFFS'
RESPONSE TO BRIEF OF *AMICI CURIAE*
(No. 2:17-cv-01115-RSM) – 3

**Boies Schiller Flexner LLP**
725 South Figueroa Street, 31st Floor
Los Angeles, CA  90017-5524
Phone:  (213) 629-9040
Fax:  (213) 629-9022

ownership of LIHTC projects by investors, but rather from a combination of market challenges and a dearth of public policies that effectively address those challenges. *See, e.g.*, Maya Brennan & Solomon Greene, *Why Isn't There Enough Affordable Housing for the Families Who Need It Most?*, U.S. Partnership on Mobility from Poverty, Urban Institute (Feb. 2018), *available at* https://www.mobilitypartnership.org/publications/why-isn%E2%80%99t-there-enough-affordable-housing-families-who-need-it-most. Without adequate government-provided affordable housing, providing housing for low-income families falls to the private sector, but private developers need sufficient revenue to cover their costs. *Id*.  Because low-income families cannot afford market-rate rents, it is usually economically unfeasible for private developers to build new affordable housing without government support. *Id.* at 2.

Recognizing this economic reality, the federal government has implemented policies to intervene in the market through regulatory reforms and public subsidies, such as the LIHTC, a supply-side public subsidy aimed at reducing capital costs to entice private developers to build affordable housing. *Id*. at 2-3.  An essential tool in addressing the current affordable housing crisis, LIHTC is the single most important source of funding for preserving and expanding the supply of affordable rental housing in the United States. *See, e.g.*, Corianne P. Scally, *et al.*, *The Low-Income Housing Tax Credit: Past Achievements, Future Challenges*, Urban Institute, at V (July 2018), *available at* https://www.urban.org/sites/default/files/publication/98761/lihtc_past_achievements_future_challenges_finalized_0.pdf; *see also Homeowner's Rehab*, 479 Mass. at 743 (recognizing the LIHTC program as "the most important source of financing for affordable housing . . . across the nation").

Far from being a *cause* of the housing crisis, private investors like the Limited Partners are essential to the country's primary means of *responding* to the crisis.  As a tax incentive program, LIHTC depends on *both* private financial investor and nonprofit partners to build affordable housing. As SHAG's expert, Joel Rubenzahl explained, "the only way the [LIHTC] program works . . . [is] to have outside investors," such as large banks or institutional investors,

DEFENDANTS AND COUNTER-PLAINTIFFS'
RESPONSE TO BRIEF OF *AMICI CURIAE*
(No. 2:17-cv-01115-RSM) – 4

**Boies Schiller Flexner LLP**
725 South Figueroa Street, 31st Floor
Los Angeles, CA  90017-5524
Phone:  (213) 629-9040
Fax:  (213) 629-9022

furnish the capital necessary for LIHTC projects.  (Declaration of Eric S. Pettit (Pettit Decl.), Ex. G (Deposition of Joel Rubenzahl ("Rubenzahl Tr.")) at 26:1–10.)

### B. *Ruling Against the Limited Partners Could Chill Private Investment in an Environment Where LIHTC's Attractiveness is Already Diminished*

Given that private investors are integral to the LIHTC program, it is critical that investment in LIHTC projects remains attractive. A ruling that a ROFR under Section 42(i)(7) can be unilaterally exercised without a third-party offer and without the consent of the project's owners would rewrite contracts, disrupt the settled expectations of private investors in LIHTC projects, and interfere with the requirements of the tax code and the ability to obtain a tax opinion, making it harder to secure financing for LIHTC projects in the future.

This would be a particularly concerning outcome given that recent changes to the tax code already have reduced the LIHTC program's attractiveness to private investors. The federal tax reforms passed in 2017 reduced the value of the tax credits because Congress substantially reduced corporate tax liability, thereby cutting the price investors are willing to pay for LIHTCs. *See, e.g.*, Brennan at 5; *see also* Mark P. Keightley, *An Introduction to the Low-Income Housing Tax Credit*, Congressional Research Service Report, at 5 (March 28, 2018), *available at* https://fas.org/sgp/crs/misc/RS22389.pdf ("[I]t is not yet clear what, if any, impact [the 2017 tax revision may have] on the affordable housing supply in the long run as the result of these recent changes to the federal tax code. *Reduced demand for LIHTCs could require developers to secure alternative sources of financing. If such financing is prohibitively costly, there could be a reduction of capital from the private sector flowing into affordable housing construction*.") (emphasis added). These changes to corporate income taxes have lessened the financial incentive for corporations to seek LIHTCs. *See* Scally at V.  Thus, although Congressional legislation in 2018 included a 12.5 percent increase in LIHTC allocations over the next four years, it is unclear whether this will do anything to make the tax credits more attractive to institutional investors that purchase LIHTC and have benefited from the corporate tax cuts. *Id.*  What is clear, however, is

DEFENDANTS AND COUNTER-PLAINTIFFS'
RESPONSE TO BRIEF OF *AMICI CURIAE*
(No. 2:17-cv-01115-RSM) – 5

**Boies Schiller Flexner LLP**
725 South Figueroa Street, 31st Floor
Los Angeles, CA  90017-5524
Phone:  (213) 629-9040
Fax:  (213) 629-9022

that "[i]f LIHTC investments falter, developers will not build affordable rental housing and existing units will be lost." *Id.* In short, ensuring that LIHTC remain attractive to private financial investors is critical to the success of the single-most important source of new affordable housing in this country.

## III. EVEN IF *AMICI CURIAE*'S POLICY ARGUMENTS WERE WELL TAKEN, THEY DO NOT COUNSEL IN FAVOR OF A RULING FOR SHAG HERE

Not only are *Amici Curiae*'s policy arguments misguided, but they are not implicated by this case. As set forth below, a ruling in favor of the Limited Partners would maintain the *status quo* of the Projects as affordable housing with nonprofit involvement, while a ruling in SHAG's favor would allow a nonprofit to take advantage of Section 42(i)(7) to transfer ownership of the Projects to *for*-profit entities at the below-market price Congress intended to be available only to true nonprofits.

### A.     Amici Curiae *Misstate the Impact of the Court's Ruling on the Availability of Affordable Housing and Continuing Nonprofit Involvement in the Projects*

*Amicus Curiae* urge this Court to conclude that SHAG's ROFR can be exercised unilaterally without a triggering third-party offer and without the Limited Partners' consent as a means of "maintain[ing the] long-term affordability" of LIHTC projects and keeping the nonprofit involved. (*Amicus* Br. at 1.) What *Amici Curiae* ignore, however, is that a ruling that does not permit SHAG to self-trigger its ROFR will not have any impact on the ownership, management, and use of the Projects. Rather, a ruling for the Limited Partners will simply maintain the *status quo*.

*First*, the Projects will remain affordable housing even if the Limited Partners are not forced to sell pursuant to SHAG's unilateral exercise of its ROFR. The agreements governing the Projects here include regulatory agreements, as mandated by Congress for LIHTC projects, which ensure that the Projects will remain affordable housing units for at least another 15 years after the end of the compliance period, no matter who owns them. *See* 26 U.S.C. § 42(h)(6)(B),

DEFENDANTS AND COUNTER-PLAINTIFFS'
RESPONSE TO BRIEF OF *AMICI CURIAE*
(No. 2:17-cv-01115-RSM) – 6

**Boies Schiller Flexner LLP**
725 South Figueroa Street, 31st Floor
Los Angeles, CA  90017-5524
Phone:  (213) 629-9040
Fax:  (213) 629-9022

(D) (mandating that taxpayers benefiting from LIHTC enter agreements with housing agencies committing to provide low-income housing for an extended period of no less than 30 years). (*See also* Pettit Decl., Ex. A (Alderwood Court Associates LP's February 2004 Regulatory Agreement) at Ex. B at 1 (confirming a 30-year Project Compliance Period); Ex. B (Auburn North Associates LP's 2003 Regulatory Agreement) at 1–2 (stating that the Regulatory Agreement will be in force for 30 years following the date on which at least 10% of units were occupied); Ex. C (Capitol Way Associates LP's 1999 Regulatory Agreement) at Ex. B at 1 (confirming a 30-year Project Compliance Period); Ex. D (Meridian Court Apartments LP's 1997 Amended Regulatory Agreement) at 2 (confirming a 30-year Project Compliance Period); Ex. E (Racine Street Associates LP's 2000 Regulatory Agreement) at Ex. B at 32 (confirming a 30-year Project Compliance Period); Ex. F (Woodlands Apartments (2001) LP's March 2003 Regulatory Agreement) at Ex. B at 1 (confirming a 30-year Project Compliance Period).) Nonprofit ownership thus is not necessary to the maintenance of the Projects as affordable housing.

*Second*, SHAG will continue to be involved in the Projects even if it cannot exercise the ROFR to purchase them. In declining to sell their interests in the Projects in response to SHAG's self-triggered ROFR, the Limited Partners seek to keep the Projects operating as they have since their inception. If the Limited Partners prevail in their interpretation of the ROFR, nothing about the Projects' ownership, management, or operation would change, and SHAG's involvement would continue just as it has for the last fifteen years. In fact, the Limited Partners have no ability whatsoever to force a sale of the Projects or any interests in the Projects without triggering the ROFR. By contrast, only if SHAG prevails and is able to self-trigger its ROFR will ownership change—first to SHAG, and then immediately to a *for-profit* entity, as set forth more fully below.

DEFENDANTS AND COUNTER-PLAINTIFFS'
RESPONSE TO BRIEF OF *AMICI CURIAE*
(No. 2:17-cv-01115-RSM) – 7

**Boies Schiller Flexner LLP**
725 South Figueroa Street, 31st Floor
Los Angeles, CA  90017-5524
Phone:  (213) 629-9040
Fax:  (213) 629-9022

### B. Ruling in Favor of SHAG Will Not Result in Nonprofit Ownership of the Projects Because SHAG Has Contracted to Immediately Transfer Ownership to For-Profit Entities

Finally, even assuming that *Amici Curiae*'s policy arguments were correct—which they are not—they do not support a ruling in SHAG's favor in this case because, unlike a legitimate nonprofit, SHAG is a straw entity that Bryan Park is using to take benefits intended by Congress only to be available to a true nonprofit and transfer those economic benefits to his own for-profit entities.

SHAG and Senior Housing Assistance Corporation ("SHAC") entered into a "Global Indemnity Agreement" ("GIA") with Pacific Northern Construction Company, Inc. ("PNCC") (a for-profit entity whose president and majority shareholder is Bryan Park) and a number of its for-profit affiliates, including Counter-Defendant Steel Lake Enterprises. (Dkt. 90-1, Ex. U)  Mr. Park himself has confirmed that, under the GIA, any LIHTC properties for which SHAG exercised its Section 42 ROFR would be jointly owned by SHAG and a PNCC affiliate, with Mr. Park's for-profit entity receiving around *ninety percent* of the economic benefit of such ownership. (Dkt. 90-1, Ex. B at 200:10–21; Dkt. 90-1, Ex. J.)

As the GIA immediately transfers virtually all of the economic benefits of the Projects from the nonprofit to a for-profit entity upon exercise of the ROFR, *Amici Curiae*'s policy arguments about the importance of transferring ownership to nonprofits have no application in this case.  Indeed, allowing SHAG to exercise its Section 42 ROFR under these circumstances—thereby transferring ownership of the Projects to an entity *ineligible* under Section 42(i)(7)—would directly contravene Congress's purpose in creating a safe harbor to facilitate the transfer of affordable housing assets to qualified nonprofits, and would allow for-profit entities to take advantage of nonprofit entities and public benefits.

The GIA that SHAG entered into is particularly troubling in the context of a program that necessarily makes a finite number of tax credits available for affordable housing. The federal

DEFENDANTS AND COUNTER-PLAINTIFFS' RESPONSE TO BRIEF OF *AMICI CURIAE* (No. 2:17-cv-01115-RSM) – 8

**Boies Schiller Flexner LLP**
725 South Figueroa Street, 31st Floor
Los Angeles, CA  90017-5524
Phone:  (213) 629-9040
Fax:  (213) 629-9022

government allocates to the states a limited number of LIHTCs, which the states in turn allocate to specific projects.  *See* Keightley at 2.  In each of the last two years, Washington State distributed $19,995,506 worth of tax credits.  *See* Washington State Housing Finance Commission, 9% LIHTC Allocation List for 2018, *available at* http://www.wshfc.org/mhcf/9percent/2018list. pdf; Washington State Housing Finance Commission, 9% LIHTC Allocation List for 2019, *available at* http://www.wshfc.org/mhcf/9percent/2019list.pdf. Given the limited number of credits and the priority that policy-makers have placed on nonprofit involvement, it is concerning that an entity that has contracted away ninety percent of the Projects' ownership to a for-profit entity seeks to take advantage of the limited ROFR right intended to be available to legitimate nonprofits.

## IV. THIS CASE IS NOT AN APPROPRIATE VEHICLE TO CHANGE HOUSING POLICY

Congress has identified as a policy goal the transfer of LIHTC projects to nonprofits, and has identified the mechanism for facilitating that transfer by creating a safe harbor for below-market ROFRs only.  *Amici Curiae* urge this Court to rewrite and expand what Congress intended.  The Limited Partners respectfully submit that any such policy shift should not be undertaken by the Court, as opposed to Congress, nor should any change apply retroactively to a LIHTC transaction that was entered into more than 15 years ago—particularly when Congress itself already is considering a prospective legislative policy change.

### A. *An Interpretation of Section 42(i)(7) That Ignores Congress's Deliberate Use of the Term "ROFR" Would Conflict with Congressional Policy and Applicable Tax Law Principles*

As set forth more fully in the Limited Partners' Motion for Summary Judgment (Mot. at 4-5), Congress initially considered permitting the nonprofit organization to have an option to purchase such properties at below-market prices, but later recognized that, under the "economic substance" doctrine, a unilateral option to purchase the property for less than fair market value

DEFENDANTS AND COUNTER-PLAINTIFFS'
RESPONSE TO BRIEF OF *AMICI CURIAE*
(No. 2:17-cv-01115-RSM) – 9

**Boies Schiller Flexner LLP**
725 South Figueroa Street, 31st Floor
Los Angeles, CA  90017-5524
Phone:  (213) 629-9040
Fax:  (213) 629-9022

would jeopardize the status of the LIHTC partnership as the true owner of the property for tax purposes, and thereby endanger the ability of the investor limited partner to claim the tax credits. *See* Tracy A. Kaye, *Sheltering Social Policy in the Tax Code: The Low-Income Housing Credit*, 38 Villanova L. Rev. 871, 893 (1993). Congress accordingly rejected the concept of a below-market option, and instead enacted Section 42(i)(7)(A), which creates a safe harbor only for below-market rights of first refusal. 26 U.S.C. § 42(i)(7)(A); *see also Homeowner's Rehab*, 479 Mass. at 757 ("In enacting § 42(i)(7), Congress relied on the common-law distinction between an option to purchase, which can be unilaterally exercised, and a right of first refusal, which cannot. Congress specifically chose to allow one but not the other, recognizing that a right of first refusal—which cannot be exercised until the owner decides to sell—is for that very reason a less serious curtailment on ownership rights."). In light of this legislative history, an interpretation of the ROFR that effectively converts it to an option by making it self-triggering without the consent of the Limited Partners would run contrary to Congressional intent.

### B. Any Policy Change Should Be Made Prospectively Through Currently Pending Legislation and Not in the Context of this Case

In urging this Court to interpret the ROFR as the functional equivalent of an option notwithstanding contrary Congressional intent, *Amici Curiae* ask this Court not only to effect policy change, but to do so retroactively, upsetting the expectations of the parties when they entered into the Partnerships more than 15 years ago.

Federal courts, however, generally do not decide questions concerning "policy choices and value determinations constitutionally committed for resolution to the halls of Congress or the confines of the Executive Branch." *Center for Biological Diversity v. Matis*, 868 F.3d 803, 821 (9th Cir. 2017) (quoting *Japan Whaling Ass'n v. Am. Cetacean Soc.*, 478 U.S. 221, 230 (1986)). It is therefore unsurprising that when the Massachusetts Supreme Judicial Court interpreted a Section 42 ROFR in a LIHTC limited partnership agreement, that court made it explicitly clear that its decision concerned only the parties and contracts in question. *See Homeowner's Rehab*,

DEFENDANTS AND COUNTER-PLAINTIFFS'
RESPONSE TO BRIEF OF *AMICI CURIAE*
(No. 2:17-cv-01115-RSM) – 10

**Boies Schiller Flexner LLP**
725 South Figueroa Street, 31st Floor
Los Angeles, CA  90017-5524
Phone:  (213) 629-9040
Fax:  (213) 629-9022

479 Mass. at 761 ("[W]e emphasize that we are only interpreting the language of the agreements that the parties executed here. We are not declaring that every partnership participating in the LIHTC program must permit a right of first refusal that can be exercised under these circumstances.").

Deference to Congress is especially warranted here, where (1) Congress already has made a policy determination as to what sort of purchase right would be covered by the safe harbor—a below-market ROFR—and the parties to LIHTC projects, including the Projects, invoked the safe harbor with this in mind (*see* Section IV.A, *supra*); and (2) Congress has already taken it upon itself to consider proposed legislation that would result in the policy change for which *Amici Curiae* are advocating.

During the first session of the 115th Congress, Senator Maria Cantwell of Washington State introduced the Affordable Housing Credit Improvement Act of 2017 ("Cantwell-Hatch"), which, among other things, would amend Section 42(i)(7) to replace "a right of 1st refusal" with "an option" as applied prospectively to "agreements entered into or amended after the date of the enactment of this Act." S.B. 548, 115th Cong. (1st Sess. 2017). Importantly, the amendment has not been characterized as a clarification of existing law, but rather as an expansion of existing law. Section 303 of the bill is described as a "[m]odification of rights," and "strik[es] 'a right of 1st refusal' and insert[s] 'an option.'" *Id*.; *see also* Michael Novogradac, *Cantwell, Hatch Introduce Comprehensive Affordable Housing Bill* (July 14, 2016, 12:00 a.m.) https://www.novoco.com/notes-from-novogradac/cantwell-hatch-introduce-comprehensive-affordable-housing-bill (discussing the substantially similar 2016 Cantwell-Hatch bill and noting that it would "[r]eplace the [ROFR] . . . with a purchase option to facilitate the ability of nonprofits to maintain LIHTC properties beyond Year 15."). Cantwell-Hatch's proposed changes confirm that Congress had in mind the difference between a ROFR and an option when it passed Section 42, and thus the use of the term "right of 1st refusal" was deliberate.

DEFENDANTS AND COUNTER-PLAINTIFFS'
RESPONSE TO BRIEF OF *AMICI CURIAE*
(No. 2:17-cv-01115-RSM) – 11

**Boies Schiller Flexner LLP**
725 South Figueroa Street, 31st Floor
Los Angeles, CA  90017-5524
Phone:  (213) 629-9040
Fax:  (213) 629-9022

Regardless of whether the Section 42 safe harbor ultimately is modified to permit nonprofit organizations to be granted a below-market option to purchase a LIHTC-funded project as a result of Cantwell-Hatch, the matter is one for Congress to resolve and for parties to decide whether to invoke in any *new* LIHTC transaction. This Court, however, should interpret the agreements at issue here consistent with their language and with the Congressional policy enunciated at the time of the enactment of the existing statute.

## V. CONCLUSION

For all of the foregoing reasons, the Limited Partners respectfully submit that the brief of *Amici Curiae* should not have an impact on this Court's ruling on the pending motions, and the Court should grant the Limited Partners' Motion for Summary Judgment and deny SHAG's Motion for Summary Judgment.

RESPECTFULLY SUBMITTED this 24th day of January 24, 2019.

**Boies Schiller Flexner LLP**

By: /s/ Eric S. Pettit
Christopher G. Caldwell, admitted *pro hac vice*
Eric S. Pettit, admitted *pro hac vice*
725 S Figueroa Street, 31st Floor
Los Angeles, CA 90017
Telephone: 213 629 9040
Facsimile: 213 629 9022
Email: ccaldwell@bsfllp.com
epettit@bsfllp.com

**Perkins Coie LLP**

By: /s/ Steven D. Merriman
David J. Burman, WSBA #10611
Steven D. Merriman, WSBA #44035
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone: 206.359.8000
Facsimile: 206.359.9000
Email: DBurman@perkinscoie.com
SMerriman@perkinscoie.com

Attorneys for the Limited Partners

DEFENDANTS AND COUNTER-PLAINTIFFS'
RESPONSE TO BRIEF OF *AMICI CURIAE*
(No. 2:17-cv-01115-RSM) – 12

Boies Schiller Flexner LLP
725 South Figueroa Street, 31st Floor
Los Angeles, CA 90017-5524
Phone: (213) 629-9040
Fax: (213) 629-9022

### CERTIFICATE OF SERVICE

On January 24, 2019, I caused a copy of the foregoing document to be electronically filed via the Court's Electronic Case Filing System, which will notify all attorneys of record of the filing.

By:     /s/ Wendy M. Carpenter
Wendy M. Carpenter

CERTIFICATE OF SERVICE
(No. 2:17-cv-01115-RSM) – 1

**Boies Schiller Flexner LLP**
725 South Figueroa Street, 31st Floor
Los Angeles, CA  90017-5524
Phone:  (213) 629-9040
Fax:  (213) 629-9022