THE HONORABLE RICARDO S. MARTINEZ

1
2
3
4
5
6
7

8          UNITED STATES DISTRICT COURT
           WESTERN DISTRICT OF WASHINGTON
9                      AT SEATTLE

10  SENIOR HOUSING ASSISTANCE          No. 2:17-cv-01115-RSM
    GROUP,
11                                     **[PROPOSED] PLAINTIFF SENIOR
                                       HOUSING ASSISTANCE GROUP'S**
12              Plaintiff,             **FINDINGS OF FACT AND**
                                       **CONCLUSIONS OF LAW**
13        v.

14  AMTAX HOLDINGS 260, LLC, et al.,

15              Defendants.

16

17  AMTAX HOLDINGS 260, LLC, et al.,

18              Counter-Plaintiffs,

19        v.

20  SENIOR HOUSING ASSISTANCE
    GROUP, et al.,
21
                Counter-Defendants.
22

23

24                 **I.    INTRODUCTION**

25        This matter was tried to the Court on March 4-7, 2019.  Plaintiff was represented by

26  attorneys Laurie Lootens Chyz, Jake Ewart, and Jessica Kerr.  Defendants were represented

27  by attorneys Christopher Caldwell, Eric Pettit, Miguel Gradilla, and Mallory Gitt Webster.

28  The Court heard testimony from the following witnesses:  Jay Woolford (live), Bryan Park

*Plaintiff Senior Housing Assistance Group's*
*Findings of Fact and Conclusions of Law*
*(No. 2:17-cv-01115-RSM) - 1*

**HILLIS CLARK MARTIN & PETERSON P.S.**
999 Third Avenue, Suite 4600
Seattle, Washington  98104
Tel: (206) 623-1745 Fax: (206) 623-7789

(live), and Stephen Smith (by deposition) for plaintiff; and Ryan Trane (live) for defendants. The Court considered exhibits admitted into evidence and the stipulation filed at Dkt. 77. The Court has previously granted summary judgment in part on certain issues. Dkt. 142.

This case is now before the Court on plaintiff's action for a declaratory judgment confirming, under the language of the relevant contracts and Washington law, that its contractual special rights of first refusal to purchase the senior housing apartment projects at issue were properly triggered and effectively exercised. Having heard the testimony of the witnesses, considered the exhibits admitted at trial, and heard the arguments of counsel, the Court enters judgment in favor of plaintiff.

## II.      CREDIBILITY OF THE WITNESSES

"In an action tried on the facts without a jury . . . the court must find the facts specially and state its conclusions of law separately." Fed. R. Civ. P. 52(a). The trial court is empowered to judge the credibility of the witnesses. *See Spokane Arcade, Inc. v. City of Spokane*, 75 F.3d 663, 665 (9th Cir. 1996); *Zivkovic v. S. Cal. Edison Co.*, 105 Fed. Appx. 892, 893 at n.1 (9th Cir. 2004) (citing *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 575, 84 L. Ed. 2d 518, 105 S. Ct. 1504 (1985)).

The Court specifically finds that the witnesses Jay Woolford and Bryan Park were credible. Their answers during testimony were complete and appeared honest, and their demeanor on the witness stand leads the Court to conclude that they were truthful.

## III.      FINDINGS OF FACT

The Court incorporates by reference the facts stated in its Order re: Motions for Summary Judgment, Dkt. 142, the admitted facts in the Revised Pretrial Order, Dkt. 160, and the agreed facts in the Stipulation and Order Regarding Third-Party Offers to Purchase, Dkt. 77. The following additional findings of fact are made by the Court and are based upon a preponderance of the evidence presented at trial and the credibility analysis above.

*Plaintiff Senior Housing Assistance Group's*
*Findings of Fact and Conclusions of Law*
*(No. 2:17-cv-01115-RSM) - 2*

HILLIS CLARK MARTIN & PETERSON P.S.
999 Third Avenue, Suite 4600
Seattle, Washington   98104
Tel: (206) 623-1745 Fax: (206) 623-7789

**A.    PARTIES**

1.      Plaintiff Senior Housing Assistance Group ("SHAG") is a Washington nonprofit corporation with its principal place of business in Seattle, Washington.  SHAG is focused on providing affordable housing for seniors.

2.      Defendants AMTAX Holdings 260 LLC; AMTAX Holdings 259, LLC; AMTAX Holdings 261, LLC; and AMTAX Holdings 258, LLC are investor partners in the senior housing projects at issue.  Protech Holdings W, LLC is the special limited partner in those projects.  The Defendants are referred to collectively and individually as "AMTAX."

3.      Senior Housing Assistance Corporation ("SHAC") is SHAG's wholly-owned subsidiary.

4.      Plaintiff and defendants are parties to limited partnership agreements that govern limited partnerships formed to develop and manage the affordable senior housing projects at issue.

**B.    BACKGROUND**

5.      SHAG is a tax-exempt 501(c)(3) nonprofit corporation whose mission is to provide affordable housing exclusively for low- and moderate-income elderly and disabled individuals and households.  SHAG accomplishes its mission by sponsoring or co-sponsoring the development of affordable rental apartment communities for low- and moderate-income seniors in the Puget Sound region and by operating those affordable rental apartment communities.  SHAG has participated in a number of affordable housing project partnerships that have developed affordable rental apartment communities in the Puget Sound region, sometimes in conjunction with its wholly-owned subsidiary, SHAC, and with others.

6.      Each limited partnership at issue in this case (the "Project Partnerships") owns a "qualified low-income housing project" (the "Projects") eligible for federal income tax credits and other tax benefits under the Low Income Housing Tax Credit ("LIHTC") provisions of the Internal Revenue Code, 26 U.S.C. § 42 ("Section 42").

*Plaintiff Senior Housing Assistance Group's*
*Findings of Fact and Conclusions of Law*
*(No. 2:17-cv-01115-RSM) - 3*

**HILLIS CLARK MARTIN & PETERSON P.S.**
999 Third Avenue, Suite 4600
Seattle, Washington  98104
Tel: (206) 623-1745 Fax: (206) 623-7789

7.       Under the LIHTC program, equity investors make capital contributions to project partnerships in exchange for receiving tax credits generated by the projects and project partnerships.  LIHTC projects generate tax credits for equity investors over a 10-year period, and projects are subject to a 15-year compliance period during which they must be maintained as affordable housing in order for the equity investors to avoid recapture of all or a portion of their tax credits.

8.       Defendants AMTAX Holdings 260 LLC; AMTAX Holdings 259, LLC; AMTAX Holdings 261, LLC; and AMTAX Holdings 258, LLC (sometimes referred to as the "Investor Limited Partners") are investor limited partners who provided equity capital contributions in exchange for tax credits and certain other tax benefits, and acquired at least 98.99 percent interests in each of the Project Partnerships.  Protech Holdings W, LLC is an affiliate of the Investor Limited Partners and holds, as Special Limited Partner, a 0.01% interest in each of the Project Partnerships.

9.       The limited partnership agreements for each of the Project Partnerships include a special right of first refusal (the "Special ROFR"), Section 7.4L, that grants to SHAG, as a non-profit corporation and operator of each Project, the right to purchase the Project at a pre-established price based on the statutory minimum purchase price determined under Section 42.  The statutory minimum purchase price determined under Section 42 is designed to make the purchase affordable to the qualified non-profit sponsor.  The Special ROFR for each Project is exercisable during the 24-month period following the close of the 15-year compliance period, after the Investor Limited Partners have claimed the benefit of the tax credits for each Project.

10.       At the time it entered the Project Partnerships, AMTAX agreed to a structure in which SHAG was the holder of each Special ROFR and, in three of the four Project Partnerships at issue at trial, either SHAG or SHAC was also the General Partner authorized

*Plaintiff Senior Housing Assistance Group's
Findings of Fact and Conclusions of Law
(No. 2:17-cv-01115-RSM) - 4*

**HILLIS CLARK MARTIN & PETERSON P.S.**
999 Third Avenue, Suite 4600
Seattle, Washington  98104
Tel: (206) 623-1745 Fax: (206) 623-7789

to exercise all the powers granted to the General Partner under the limited partnership agreements.

11.     Because SHAG's Special ROFR has a pre-established price, there is no benefit to the Project Partnership in seeking to maximize the price offered by a third party to purchase any particular Project unless SHAG's Special ROFR rights have lapsed, or SHAG has declined to exercise its Special ROFR for the Project.

12.     Under the limited partnership agreements at issue, the sale of a Project in connection with an exercise of SHAG's Special ROFR is not subject to prior approval by AMTAX.  The General Partners in the Project Partnerships are authorized, without AMTAX's direct or indirect consent, to sell the Projects to SHAG pursuant to an exercise of SHAG's Special ROFR.

13.     SHAG has exercised its Special ROFR for each Project at issue, and each General Partner in each Project Partnership has consented, and continues to consent, to the sale of each project to SHAG.

## C.     THE PROJECT PARTNERSHIPS

### The Meridian Court Project

14.     The Meridian Court Apartments Project ("Meridian Court") is a 200-unit affordable retirement community located in Federal Way, Washington, serving exclusively low- and moderate-income elderly and disabled persons with household incomes at or below 60% of the area median gross income.  Meridian Court is a Qualified Low-Income Housing Project under Section 42.

15.     The owner of Meridian Court is the Meridian Court Apartments Limited Partnership, a Washington limited partnership.

16.     Steel Lake Enterprises, LLC ("Steel Lake") is the General Partner of the Meridian Court Apartments Limited Partnership.  Bryan Park is authorized to act and speak on behalf of Steel Lake.

*Plaintiff Senior Housing Assistance Group's*
*Findings of Fact and Conclusions of Law*
*(No. 2:17-cv-01115-RSM) - 5*

**HILLIS CLARK MARTIN & PETERSON P.S.**
999 Third Avenue, Suite 4600
Seattle, Washington  98104
Tel: (206) 623-1745 Fax: (206) 623-7789

17.     AMTAX Holdings 260, LLC is the Investor Limited Partner of the Meridian Court Apartments Limited Partnership.

18.     Protech Holdings W, LLC is the Special Limited Partner of the Meridian Court Apartments Limited Partnership.

19.     The Meridian Court Apartments Limited Partnership is governed by the Meridian Court Apartments Limited Partnership Second Amended and Restated Agreement of Limited Partnership dated as of November 12, 2002 (the "Meridian Court Limited Partnership Agreement").

20.     The Meridian Court Limited Partnership Agreement, Section 7.4L, provides as follows:

> Notwithstanding Paragraphs 7.4J and 7.4K above, for a period of twenty-four (24) months following the close of the Compliance Period as determined by the Code, if (i) the Senior Housing Assistance Group (the "Purchaser") is then the Lessee and operator of the Apartment Complex pursuant to the Operating Use Lease, and (ii) the Purchaser is then a qualified nonprofit organization as defined under Section 42(h)(5)(C) of the Code, then the Purchaser shall have a "Right of First Refusal" (the "Special ROFR") to purchase the Project at a purchase price (the "Purchase Price") equal to the sum of (1) the minimum purchase price as determined under Section 42(i)(7)(B) of the Code (the "Statutory Minimum Purchase Price") and (2) the amount of each of the items set forth in Section 6.2B(ii), Paragraphs First through Seventh thereof, to the extent that the amounts of such items are not already reflected in the Statutory Minimum Purchase Price in order to avoid any duplication.

21.     The 15-year compliance period for Meridian Court expired on December 31, 2012.

22.     Sometime on or before December 18, 2014, Bryan Park, on behalf of Steel Lake, contacted Stephen Smith, principal of SSRE Development, LLC ("SSRE"), by telephone to invite SSRE to make an offer to buy Meridian Court.  Mr. Smith and Mr. Park had prior real estate dealings with one another, and Mr. Park understood Mr. Smith to be an experienced and capable real estate investor.

23.     Neither Mr. Park nor SHAG believed a third-party offer was necessary to trigger SHAG's Special ROFRs, but, based on his prior dealings with AMTAX's managers

*Plaintiff Senior Housing Assistance Group's
Findings of Fact and Conclusions of Law
(No. 2:17-cv-01115-RSM) - 6*

HILLIS CLARK MARTIN & PETERSON P.S.
999 Third Avenue, Suite 4600
Seattle, Washington   98104
Tel: (206) 623-1745 Fax: (206) 623-7789

and his understanding of their reputation in the industry, Mr. Park concluded it would be wise to try to obtain a third-party offer as part of a "belt and suspenders" approach in case AMTAX decided to challenge a Special ROFR exercise by SHAG for Meridian Court.

24.     Mr. Park supplied Mr. Smith with financial information and other background on Meridian Court.  Mr. Park told Mr. Smith about the existence of SHAG's Special ROFR and that SHAG might exercise it, but Mr. Park also told Mr. Smith that SSRE might still have an opportunity to buy Meridian Court if SHAG did not exercise, or if SHAG exercised and was itself looking to enter into a subsequent transaction with a new partner.

25.     On December 18, 2014, Mr. Park sent Mr. Smith a draft purchase and sale agreement for Meridian Court.  Later that same day, Mr. Smith, on SSRE's behalf, delivered a signed copy of that Real Estate Purchase and Sale Agreement (the "Meridian PSA") to Steel Lake.  Mr. Smith signed the Meridian PSA and set the offer price.  That price was within the range of values Mr. Park had recently assigned to Meridian Court in connection with a presentation Mr. Park made to SHAG's Board of Directors.  Mr. Smith confirmed that, if the Meridian Court Apartments Limited Partnership had executed the Meridian PSA, SSRE Development would have been contractually bound by the Meridian PSA.  Mr. Smith has not complained about his dealings with Mr. Park or SHAG in connection with Meridian Court.

26.     Steel Lake forwarded the Meridian PSA to the limited partners in the Meridian Court Apartments Limited Partnership on December 29, 2014.

27.     By letter dated December 29, 2014, Steel Lake exercised its option to purchase Meridian Court pursuant to Section 7.4J of the Meridian Court Limited Partnership Agreement.  Steel Lake exercised its option for its own benefit, but was also aware that it might supply a basis for SHAG's Special ROFR exercise under the Meridian Court Limited Partnership Agreement in the event SHAG were to exercise its Special ROFR and AMTAX were to challenge that Special ROFR exercise.  Steel Lake provided notice of its exercise to AMTAX and SHAG and acknowledged that its exercise was subject to SHAG's Special

*Plaintiff Senior Housing Assistance Group's*
*Findings of Fact and Conclusions of Law*
*(No. 2:17-cv-01115-RSM) - 7*

HILLIS CLARK MARTIN & PETERSON P.S.
999 Third Avenue, Suite 4600
Seattle, Washington  98104
Tel: (206) 623-1745 Fax: (206) 623-7789

ROFR.  Steel Lake still agrees its option exercise has been trumped by SHAG's Special ROFR exercise.

28.     AMTAX acknowledges that Steel Lake has effectively exercised its purchase option.

29.     On December 30, 2014, SHAG gave written notice to the Meridian Court Apartments Limited Partnership that SHAG was exercising its Special ROFR under Section 7.4L of the Meridian Court Limited Partnership Agreement.  SHAG's Board of Directors had by that time given SHAG's Executive Director, Jay Woolford, approval to exercise SHAG's Special ROFR for Meridian Court.  That same day, Steel Lake forwarded SHAG's notice to the Investor and Special Limited Partners in that Partnership.  As General Partner, Steel Lake concluded that SHAG's Special ROFR had been properly exercised, and Steel Lake had no objection to the sale of Meridian Court to SHAG pursuant to SHAG's Special ROFR exercise and the terms of Section 7.4L.  Steel Lake concluded that SHAG's Special ROFR exercise had priority over Steel Lake's option exercise.  Steel Lake still has no objection to the sale of Meridian Court to SHAG pursuant to SHAG's Special ROFR exercise and the terms of Section 7.4L.

30.     AMTAX objected to SHAG's Special ROFR exercise, claiming the Special ROFR had not been validly triggered because, among other things, the Project Partnership had not accepted or countered the Meridian PSA before December 31, 2014.  AMTAX also contended that Steel Lake's option exercise did not trigger SHAG's Special ROFR under the language of the Meridian Court Limited Partnership Agreement.

31.     As of December 30, 2014, and continuing to the present, SHAG was the lessee and operator of Meridian Court Apartment Complex pursuant to the Meridian Court operating use lease, and was a qualified non-profit organization as defined under 26 U.S.C. § 42(h)(5)(C).

*Plaintiff Senior Housing Assistance Group's Findings of Fact and Conclusions of Law (No. 2:17-cv-01115-RSM) - 8*

**HILLIS CLARK MARTIN & PETERSON P.S.**
999 Third Avenue, Suite 4600
Seattle, Washington  98104
Tel: (206) 623-1745 Fax: (206) 623-7789

1

**The Auburn Court Project**

2
    32.    The Auburn Court Apartments Project ("Auburn Court") is a 296-unit

3
affordable retirement community located in the City of Auburn, Washington, serving

4
exclusively low- and moderate-income elderly and disabled persons with household incomes

5
at or below 60% of the King County area median gross income.  Auburn Court is a Qualified

6
Low-Income Housing Project under Section 42.

7
    33.    The owner of Auburn Court is Auburn North Associates Limited Partnership, a

8
Washington limited partnership.

9
    34.    SHAG is the General Partner of the Auburn North Associates Limited

10
Partnership.

11
    35.    AMTAX Holdings 259, LLC is the Investor Limited Partner of the Auburn

12
North Associates Limited Partnership.

13
    36.    Protech Holdings W, LLC is the Special Limited Partner of the Auburn North

14
Associates Limited Partnership.

15
    37.    The Auburn North Associates Limited Partnership is governed by the Auburn

16
North Associates Limited Partnership Third Amended and Restated Agreement of Limited

17
Partnership dated as of November 12, 2002 (the "Auburn North Limited Partnership

18
Agreement").

19
    38.    The Auburn North Limited Partnership Agreement, Section 7.4L, provides as

20
follows:

21

22
> Notwithstanding Paragraphs 7.4J and 7.4K above, for a period of twenty-four
> (24) months following the close of the Compliance Period as determined by
> the Code, if (i) the Senior Housing Assistance Group (the "Purchaser") is then
> the Lessee and operator of the Apartment Complex pursuant to the Operating
> Use Lease, and (ii) the Purchaser is then a qualified nonprofit organization as
> defined under Section 42(h)(5)(C) of the Code, then the Purchaser shall have a
> "Right of First Refusal" (the "Special ROFR") to purchase the Project at a
> purchase price (the "Purchase Price") equal to the sum of (1) the minimum
> purchase price as determined under Section 42(i)(7)(B) of the Code (the
> "Statutory Minimum Purchase Price") and (2) the amount of each of the items
> set forth in Section 6.2B(ii), Paragraphs First through Seventh thereof, to the

23

24

25

26

27

28

---

*Plaintiff Senior Housing Assistance Group's*
*Findings of Fact and Conclusions of Law*
*(No. 2:17-cv-01115-RSM) - 9*

**HILLIS CLARK MARTIN & PETERSON P.S.**
999 Third Avenue, Suite 4600
Seattle, Washington   98104
Tel: (206) 623-1745 Fax: (206) 623-7789

extent that the amounts of such items are not already reflected in the Statutory Minimum Purchase Price in order to avoid any duplication.

39.     The 15-year compliance period for Auburn Court expired on December 31, 2013.

40.     As December 31, 2015 approached, SHAG was looking for opportunities to address the objections AMTAX had raised in connection with SHAG's exercise of its Special ROFR for Meridian Court.  On December 10, 2015, Redwood Housing Partners, LLC ("Redwood" or "RHP") independently reached out to Jay Woolford, SHAG's Executive Director, by email with an unsolicited offer to purchase, for $10.25 million, a low-income senior housing project, Lakewood Meadows, that SHAG helped manage in Lakewood, Washington.[1] When it received this offer, SHAG had no prior relationship with or knowledge of Redwood.

41.     After discussing Redwood's offer with SHAG's real estate broker, Mr. Woolford responded.  He stated that the Lakewood Meadows project was still within its compliance period and was not for sale, but he noted that there was a property in Auburn, Washington that had met its fifteen-year compliance period.  Mr. Woolford added, "I can't say what we plan to do, but if you want to consider an LOI, we will look at it."  Nick Boehm of Redwood recognized this property as the "Auburn Court Apartments" and asked if Mr. Woolford would be willing to share financial information with Redwood.  In response, Mr. Woolford sent Mr. Boehm a copy of a draft audit for Auburn Court.

42.     On December 14, 2015, after reviewing the draft audit for Auburn Court, Redwood sent SHAG a letter of intent for Auburn Court (the "Redwood Letter of Intent for Auburn Court") offering to purchase Auburn Court for $21.5 million, all cash, free and clear. Mr. Boehm emphasized Redwood's willingness to "ensure closing in a timely manner."

---

[1] Testimony from Redwood is set forth in the Stipulation and Order Regarding Third-Party Offers to Purchase (Dkt. 77), filed by the parties in lieu of live testimony at trial.

*Plaintiff Senior Housing Assistance Group's*
*Findings of Fact and Conclusions of Law*
*(No. 2:17-cv-01115-RSM) - 10*

**HILLIS CLARK MARTIN & PETERSON P.S.**
999 Third Avenue, Suite 4600
Seattle, Washington  98104
Tel: (206) 623-1745 Fax: (206) 623-7789

Redwood prepared and signed the Redwood Letter of Intent for Auburn Court.  Redwood had

no ulterior motive in making its purchase offer.

43.     Meanwhile, Mr. Park had also telephoned Mr. Smith of SSRE to tell Mr. Smith

that there might be an opportunity to submit an offer to purchase the Auburn Court

Apartments.  Mr. Smith expressed his willingness to consider such an offer.  Over the phone,

and as with Meridian Court, Mr. Park supplied Mr. Smith with financial information and other

background on Auburn Court.  Mr. Park told Mr. Smith about the existence of SHAG's

Special ROFR and that SHAG might exercise it, but Mr. Park also told Mr. Smith that SSRE

might still have an opportunity to buy Auburn Court if SHAG did not exercise, or if SHAG

exercised and was itself looking to enter into a subsequent transaction with a new partner.

Mr. Park then drafted a document titled "Real Estate Purchase and Sale Agreement" in

substantially the same form that Mr. Smith had used for SSRE's Meridian offer.  Mr. Park

shared drafts in both Word and PDF format with Mr. Smith.  After receiving the drafts,

Mr. Smith asked his assistant to sign and submit on his behalf a purchase and sale agreement

to purchase the Auburn Court Apartments for $21 million (the "Auburn Court SSRE PSA").

Mr. Smith set the offer price.  Mr. Smith's assistant sent the signed Auburn Court SSRE PSA

to Mr. Park on December 29, 2015, and Mr. Park then forwarded it on to Mr. Woolford.

Mr. Smith confirmed that he understood that, if the Project Partnership had signed the Auburn

Court SSRE PSA, SSRE would have been contractually bound by the Auburn Court SSRE

PSA.  Mr. Smith has not complained about his dealings with Mr. Park or SHAG in connection

with Auburn Court.

44.     SHAG forwarded the Redwood Letter of Intent for Auburn Court to the limited

partners in the Auburn North Associates Limited Partnership on December 29, 2015.

45.     SHAG forwarded the Auburn Court SSRE PSA to the limited partners in the

Auburn North Associates Limited Partnership on December 30, 2015.

*Plaintiff Senior Housing Assistance Group's*
*Findings of Fact and Conclusions of Law*
*(No. 2:17-cv-01115-RSM) - 11*

**HILLIS CLARK MARTIN & PETERSON P.S.**
999 Third Avenue, Suite 4600
Seattle, Washington  98104
Tel: (206) 623-1745 Fax: (206) 623-7789

46.     On December 30, 2015, SHAG gave written notice to the Auburn North Associates Limited Partnership and that Partnership's Investor and Special Limited Partners stating that SHAG was exercising its Special ROFR under Section 7.4L of the Auburn North Limited Partnership Agreement. As of December 30, 2015, and continuing to the present, SHAG was the lessee and operator of the Auburn Court Apartment Complex pursuant to the Auburn Court operating use lease, and was a qualified non-profit organization defined under 26 U.S.C. § 42(h)(5)(C).  SHAG, as General Partner, was and is willing to sell Auburn Court to SHAG pursuant to SHAG's Special ROFR exercise.

47.     Through its attorney, AMTAX objected to SHAG's Special ROFR exercise for Auburn Court.  AMTAX claimed SHAG had no right to exercise its Special ROFR because (1) "the purchase offers appear to have been shams," and (2) the attempted ROFR exercise was not preceded with a bona fide offer that "the seller [was] willing to accept."

48.     Even after SHAG exercised its Special ROFR, Mr. Woolford and Redwood continued communicating with one another.  Mr. Woolford maintained those communications because he believed Redwood was a serious, credible buyer that might be a valuable future business partner after SHAG and AMTAX were able to resolve their dispute.  Mr. Woolford did not tell Redwood that SHAG held or had exercised a Special ROFR for Auburn Court.  SHAG's dealings with Redwood were motivated both by a legitimate desire by SHAG to make use of its contractual Special ROFR rights, and by a legitimate desire to pursue potential new business partners.  Redwood has not complained about SHAG's behavior.

**The Boardwalk and WoodRose Projects**

49.     The Boardwalk Apartments Project ("Boardwalk") is a 284-unit affordable retirement community located in the City of Olympia, Washington, serving exclusively low- and moderate-income elderly and disabled persons with household incomes at or below 60% of the Thurston County area median gross income.  Boardwalk is a Qualified Low-Income Housing Project under Section 42.

*Plaintiff Senior Housing Assistance Group's Findings of Fact and Conclusions of Law (No. 2:17-cv-01115-RSM) - 12*

HILLIS CLARK MARTIN & PETERSON P.S.
999 Third Avenue, Suite 4600
Seattle, Washington  98104
Tel: (206) 623-1745 Fax: (206) 623-7789

50.     The owner of Boardwalk is Capitol Way Associates Limited Partnership, a Washington limited partnership.

51.     SHAC is the General Partner of the Capitol Way Associates Limited Partnership.

52.     AMTAX Holdings 261, LLC is the Investor Limited Partner of the Capitol Way Associates Limited Partnership.

53.     Protech Holdings W, LLC is the Special Limited Partner of the Capitol Way Associates Limited Partnership.

54.     The Capitol Way Associates Limited Partnership is governed by the Capitol Way Associates Limited Partnership Third Amended and Restated Agreement of Limited Partnership dated as of November 12, 2002 (the "Capitol Way Associates Limited Partnership Agreement").

55.     The Capitol Way Associates Limited Partnership Agreement, Section 7.4L, provides as follows:

> Notwithstanding Paragraphs 7.4J and 7.4K above, for a period of twenty-four (24) months following the close of the Compliance Period as determined by the Code, if (i) the Senior Housing Assistance Group (the "Purchaser") is then the Lessee and operator of the Apartment Complex pursuant to the Operating Use Lease, and (ii) the Purchaser is then a qualified nonprofit organization as defined under Section 42(h)(5)(C) of the Code, then the Purchaser shall have a "Right of First Refusal" (the "Special ROFR") to purchase the Project at a purchase price (the "Purchase Price") equal to the sum of (1) the minimum purchase price as determined under Section 42(i)(7)(B) of the Code (the "Statutory Minimum Purchase Price") and (2) the amount of each of the items set forth in Section 6.2(B)(ii), Paragraphs First through Seventh thereof, to the extent that the amounts of such items are not already reflected in the Statutory Minimum Purchase Price in order to avoid any duplication.

56.     The 15-year compliance period for Boardwalk expired on December 31, 2014.

57.     The WoodRose Apartments Project ("WoodRose") is a 197-unit affordable retirement community located in the City of Bellingham, Washington, serving exclusively low-income elderly persons with household incomes at or below 60% of the Whatcom County

HILLIS CLARK MARTIN & PETERSON P.S.
999 Third Avenue, Suite 4600
Seattle, Washington  98104
Tel: (206) 623-1745 Fax: (206) 623-7789

area median gross income.  WoodRose is a Qualified Low-Income Housing Project under Section 42.

58.    The owner of WoodRose is Racine Street Associates Limited Partnership, a Washington limited partnership.

59.    SHAC is the General Partner of the Racine Street Associates Limited Partnership.

60.    AMTAX Holdings 258, LLC is the Investor Limited Partner of the Racine Street Associates Limited Partnership.

61.    Protech Holdings W, LLC is the Special Limited Partner of the Racine Street Associates Limited Partnership.

62.    The Racine Street Associates Limited Partnership is governed by the Racine Street Associates Limited Partnership Second Amended and Restated Agreement of Limited Partnership dated as of November 12, 2002 (the "Racine Street Associates Limited Partnership Agreement").

63.    The Racine Street Associates Limited Partnership Agreement, Section 7.4L, provides as follows:

> Notwithstanding Paragraphs 7.4J and 7.4K above, for a period of twenty-four (24) months following the close of the Compliance Period as determined by the Code, if (i) the Senior Housing Assistance Group (the "Purchaser") is then the Lessee and operator of the Apartment Complex pursuant to the Operating Use Lease, (ii) the Senior Housing Assistance Corporation is then a qualified corporation with respect to the Purchaser (as defined under Section 42(h)(5)(D)(ii) of the Code) and is a General Partner, and (iii) the Purchaser is then a qualified nonprofit organization as defined under Section 42(h)(5)(C) of the Code, then the Purchaser shall have a "Right of First Refusal" (the "Special ROFR") to purchase the Project at a purchase price (the "Purchase Price") equal to the sum of (1) the minimum purchase price as determined under Section 42(i)(7)(B) of the Code (the "Statutory Minimum Purchase Price") and (2) the amount of each of the items set forth in Section 6.2B(ii), Paragraphs First through Seventh thereof, to the extent that the amounts of such items are not already reflected in the Statutory Minimum Purchase Price in order to avoid any duplication.

64.    The 15-year compliance period for WoodRose expired on December 31, 2015.

*Plaintiff Senior Housing Assistance Group's*
*Findings of Fact and Conclusions of Law*
*(No. 2:17-cv-01115-RSM) - 14*

HILLIS CLARK MARTIN & PETERSON P.S.
999 Third Avenue, Suite 4600
Seattle, Washington   98104
Tel: (206) 623-1745 Fax: (206) 623-7789

65.     In early 2016, Reliant Group Management, LLC ("Reliant") expressed interest in purchasing Lakewood Meadows.  Reliant's Senior Vice President of Acquisitions, Sanjiv Kakar, sent SHAG a letter expressing Reliant's interest in acquiring Lakewood Meadows. Throughout 2016, Mr. Woolford and Mr. Kakar communicated about whether there might be an opportunity for Reliant to buy one or more LIHTC projects in which SHAG was involved. Mr. Woolford and Mr. Kakar met in person for lunch, and Mr. Kakar drove by certain of the Projects.

66.     In October of 2016, Mr. Woolford asked Mr. Kakar what information Reliant would need to evaluate possible offers for Boardwalk and WoodRose.  Mr. Woolford provided Reliant various information at Mr. Kakar's request throughout October of 2016, and Mr. Kakar offered to set up a call to "talk pricing" in early November 2016.  Among other things, Mr. Woolford provided Reliant with financial reports, rent rolls, utility allowance schedules, and regulatory agreements relating to Boardwalk and WoodRose.

67.     On November 5, 2016, Reliant signed and sent Mr. Woolford detailed offering packages to purchase Boardwalk and WoodRose, along with documents describing Reliant's financial resources.  Reliant offered to purchase WoodRose for $15.7 million and Boardwalk for $23.6 million.  Reliant had completed its underwriting before sending its offering packages and noted a history of closing LIHTC acquisitions on time at the original offering price.  Reliant had no ulterior motives in making these offers for WoodRose and Boardwalk.

68.     Mr. Woolford is SHAC's Executive Vice President.  SHAC, as General Partner of the Capitol Way Associates Limited Partnership, forwarded Reliant's Boardwalk offering package to the limited partners in the Capitol Way Associates Limited Partnership on November 17, 2016.  SHAC, as General Partner of the Racine Street Associates Limited Partnership, also forwarded Reliant's WoodRose offering package to the limited partners in the Racine Street Associates Limited Partnership on November 17, 2016.

*Plaintiff Senior Housing Assistance Group's Findings of Fact and Conclusions of Law (No. 2:17-cv-01115-RSM) - 15*

HILLIS CLARK MARTIN & PETERSON P.S.
999 Third Avenue, Suite 4600
Seattle, Washington  98104
Tel: (206) 623-1745 Fax: (206) 623-7789

69.     On November 18, 2016, SHAG gave written notice to the Capitol Way Associates Limited Partnership and that Partnership's Investor and Special Limited Partners that SHAG was exercising its Special ROFR under Section 7.4L of the Capitol Way Associates Limited Partnership Agreement to purchase Boardwalk.  SHAC, as General Partner, was and is willing to sell Boardwalk to SHAG pursuant to SHAG's Special ROFR exercise.

70.     On November 18, 2016, SHAG gave written notice to the Racine Street Associates Limited Partnership and that Partnership's Investor and Special Limited Partners that SHAG was exercising its Special ROFR under Section 7.4L of the Racine Street Associates Limited Partnership Agreement to purchase WoodRose.  SHAC, as General Partner, was and is willing to sell WoodRose to SHAG pursuant to SHAG's Special ROFR exercise.

71.     As of November 18, 2016, and continuing to the present, SHAG was the lessee and operator of the Boardwalk Apartment Complex pursuant to the Boardwalk operating use lease, SHAG was a qualified non-profit organization defined under 26 U.S.C. § 42(h)(5)(C), and SHAC was SHAG's wholly-owned subsidiary.

72.     As of November 18, 2016, and continuing to the present, SHAG was the lessee and operator of the WoodRose Apartment Complex pursuant to the WoodRose operating use lease, SHAG was a qualified non-profit organization defined under 26 U.S.C. § 42(h)(5)(C), and SHAC was SHAG's wholly-owned subsidiary.

73.     AMTAX again objected to SHAG's Special ROFR exercises.  In a letter from its attorney, AMTAX maintained that Reliant's offers were insufficient to trigger SHAG's Special ROFRs because the partnerships had not "formed the requisite intent to sell the projects" or "provided the requisite written consent to accept Reliant's offers."

74.     Even after SHAG exercised its Special ROFRs, Mr. Woolford and Reliant continued communicating with one another.  Mr. Woolford maintained those communications

*Plaintiff Senior Housing Assistance Group's
Findings of Fact and Conclusions of Law
(No. 2:17-cv-01115-RSM) - 16*

HILLIS CLARK MARTIN & PETERSON P.S.
999 Third Avenue, Suite 4600
Seattle, Washington  98104
Tel: (206) 623-1745 Fax: (206) 623-7789

because he believed Reliant was a serious, credible buyer that might be a valuable future business partner after SHAG and AMTAX were able to resolve their dispute.  Mr. Woolford did not tell Reliant that SHAG held or had exercised Special ROFRs for Boardwalk or WoodRose.  SHAG's dealings with Reliant were motivated both by a legitimate desire by SHAG to make use of its contractual Special ROFR rights, and by a legitimate desire to pursue potential new business partners.  Reliant has not complained about SHAG's behavior.

**The Global Indemnity Agreement**

75.    On multiple occasions from early 2015 through June 2016, AMTAX asked SHAG and Bryan Park for a copy of the Global Indemnity Agreement, a contract to which AMTAX was not a party.  Mr. Woolford did not initially give AMTAX a copy of the Global Indemnity Agreement because he did not believe AMTAX was entitled to it, and because he believed AMTAX was requesting it in order to stall discussions about SHAG's Special ROFRs, or to contest the exercises of SHAG's Special ROFRs.  Mr. Park did not give AMTAX a copy of the Global Indemnity Agreement for the same reasons, and because Mr. Park did not believe AMTAX had been responding to reasonable requests Mr. Park had made of AMTAX.  SHAG provided AMTAX a copy of the Global Indemnity Agreement in June 2016.  The dispute over production of the Global Indemnity Agreement was an ordinary dispute between partners.  AMTAX has demonstrated no harm it suffered from not receiving a copy of the Global Indemnity Agreement sooner than it did.

## IV.    CONCLUSIONS OF LAW

1.    The Court has jurisdiction over this matter and the parties.

2.    The Court has authority to issue declaratory relief pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201 and 2202, which permits this Court to declare the rights and other legal relations surrounding questions of actual controversy that exist between the parties.

*Plaintiff Senior Housing Assistance Group's Findings of Fact and Conclusions of Law (No. 2:17-cv-01115-RSM) - 17*

**HILLIS CLARK MARTIN & PETERSON P.S.**
999 Third Avenue, Suite 4600
Seattle, Washington   98104
Tel: (206) 623-1745 Fax: (206) 623-7789

3.      There is an actual controversy between the parties regarding their rights and obligations under the Partnership Agreements, including SHAG's Special ROFRs under Section 7.4L.

4.      Venue is proper in the United States District Court for the Western District of Washington under 28 U.S.C. § 1391 because the Projects at issue in this case are properties located in this District, and because the parties have agreed to venue and personal jurisdiction in this District.

5.      Following the Court's Order re: Motions for Summary Judgment filed on February 19, 2019 (Dkt. 142), the sole issues remaining for trial were: 1) whether the third-party offers were sufficient to trigger SHAG's Special ROFRs under Section 7.4L, and 2) whether SHAG is prevented from exercising its Special ROFRs due to the doctrine of unclean hands.

6.      In connection with the exercise of a right of first refusal, Washington law requires a willingness to sell on the part of the property owner, and Washington law prohibits the imposition of unreasonable restrictions on the exercise of a right of first refusal.  For each Project Partnership at issue, the General Partner, on behalf of the Project Partnership, was and is willing to sell to SHAG pursuant to its Special ROFRs.  As the Court has already concluded, AMTAX does not have the right to consent to a sale in connection with the exercise of SHAG's Special ROFRs.

7.      The Meridian PSA was a bona fide third-party offer, and that offer was sufficient to trigger SHAG's Special ROFR for Meridian Court.  Solicitation of a purchase offer does not prevent such an offer from triggering a right of first refusal, and, under the terms and structure of the Meridian Court Limited Partnership Agreement and Washington law, it was not necessary for the Project Partnership to form an intent to accept the Meridian PSA before SHAG could exercise its Special ROFR.  Under Washington law, and under the

*Plaintiff Senior Housing Assistance Group's*
*Findings of Fact and Conclusions of Law*
*(No. 2:17-cv-01115-RSM) - 18*

HILLIS CLARK MARTIN & PETERSON P.S.
999 Third Avenue, Suite 4600
Seattle, Washington   98104
Tel: (206) 623-1745 Fax: (206) 623-7789

contract at issue, the Meridian PSA meets the requirements for exercise of the Special ROFR for Meridian Court.

8.      The Meridian General Partner's exercise of its option to purchase the Meridian Court Apartment Complex pursuant to Section 7.4J of the Meridian Court Limited Partnership Agreement was also a sufficient and independent basis to trigger SHAG's Special ROFR for Meridian Court under both Washington law and the contract at issue.  Under the terms of the Meridian Court Limited Partnership Agreement, SHAG's Special ROFR exercise has priority over the General Partner's option exercise.

9.      SHAG timely and effectively exercised its Special ROFR under Section 7.4L of the Meridian Court Limited Partnership Agreement.

10.      The Redwood Letter of Intent for Auburn Court was a bona fide third-party offer, and that offer was sufficient to trigger SHAG's Special ROFR for Auburn Court. Under the terms and structure of the Auburn North Limited Partnership Agreement and Washington law it was not necessary for the Project Partnership to form an intent to accept the Redwood Letter of Intent before SHAG could exercise its Special ROFR, nor was it necessary for the Redwood Letter of Intent to be fully negotiated or enforceable.  Under Washington law, and under the contract at issue, the Redwood Letter of Intent for Auburn Court meets the requirements for exercise of the Special ROFR for Auburn Court.

11.      The SSRE PSA for Auburn Court was a bona fide third-party offer, and that offer was sufficient to trigger SHAG's Special ROFR for Auburn Court.  Solicitation of a purchase offer does not prevent the offer from triggering a right of first refusal, and, under the terms and structure of the Auburn North Limited Partnership Agreement and Washington law, it was not necessary for the Project Partnership to form an intent to accept the SSRE PSA for Auburn Court before SHAG could exercise its Special ROFR.  Under Washington law, and under the contract at issue, the SSRE PSA for Auburn Court meets the requirements for exercise of the Special ROFR for Auburn Court.

*Plaintiff Senior Housing Assistance Group's*
*Findings of Fact and Conclusions of Law*
*(No. 2:17-cv-01115-RSM) - 19*

**HILLIS CLARK MARTIN & PETERSON P.S.**
999 Third Avenue, Suite 4600
Seattle, Washington  98104
Tel: (206) 623-1745 Fax: (206) 623-7789

12.     SHAG timely and effectively exercised its Special ROFR under Section 7.4L of the Auburn North Associates Limited Partnership Agreement.

13.     The Reliant Boardwalk offering package was a bona fide third-party offer, and that offer was sufficient to trigger SHAG's Special ROFR for Boardwalk.  Under the terms and structure of the Capitol Way Associates Limited Partnership Agreement and Washington law it was not necessary for the Project Partnership to form an intent to accept the Reliant Boardwalk offering package before SHAG could exercise its Special ROFR, nor was it necessary for the Reliant Boardwalk offering package to have contained all material terms and have been a fully negotiated purchase and sale agreement.  Under Washington law, and under the contract at issue, the Reliant Boardwalk offering package meets the requirements for exercise of the Special ROFR for Boardwalk.

14.     SHAG timely and effectively exercised its Special ROFR under Section 7.4L of the Capitol Way Limited Partnership Agreement.

15.     Reliant's WoodRose offering package was a bona fide third-party offer, and that offer was sufficient to trigger SHAG's Special ROFR for WoodRose.  Under the terms and structure of the Racine Street Associates Limited Partnership Agreement and Washington law it was not necessary for the Project Partnership to form an intent to accept the Reliant WoodRose offering package before SHAG could exercise its Special ROFR, nor was it necessary for the Reliant WoodRose offering package to have contained all material terms and have been a fully negotiated purchase and sale agreement.  Under Washington law, and under the contract at issue, the Reliant WoodRose offering package meets the requirements for exercise of the Special ROFR for WoodRose.

16.     SHAG timely and effectively exercised its Special ROFR under Section 7.4L of the Racine Street Associates Limited Partnership Agreement.

17.     SHAG is not barred from exercising its Special ROFRs due to the doctrine of unclean hands.  The doctrine of unclean hands is not applicable in this case because plaintiff

*Plaintiff Senior Housing Assistance Group's*
*Findings of Fact and Conclusions of Law*
*(No. 2:17-cv-01115-RSM) - 20*

HILLIS CLARK MARTIN & PETERSON P.S.
999 Third Avenue, Suite 4600
Seattle, Washington  98104
Tel: (206) 623-1745 Fax: (206) 623-7789

seeks no equitable relief.  In addition, defendants lack standing because they have not been harmed.

18.     Moreover, the evidence presented at trial does not support an unclean hands defense.  SHAG's dealings with third parties were motivated both by a legitimate desire by SHAG to make use of its contractual Special ROFR rights, and by a legitimate desire to pursue potential new business partners.  None of the third-party offerors in this case has complained about SHAG's behavior.  SHAG's conduct with respect to the third parties does not support a defense of unclean hands.

19.     SHAG's delay in giving AMTAX a copy of the Global Indemnity Agreement also does not support an unclean hands defense.  SHAG gave AMTAX the Global Indemnity Agreement nearly three years ago, and no harm came to AMTAX from any delay in receiving it.  The dispute over production of the Global Indemnity Agreement was an ordinary dispute between partners that does not support an unclean hands defense or justify denying SHAG its right to exercise its Special ROFRs for the projects at issue.  The Court has already ruled on summary judgment that the Global Indemnity Agreement does not prevent SHAG from exercising its Special ROFRs.

20.     At trial, AMTAX seemed to contend that SHAG had violated fiduciary duties it owed to AMTAX in connection with SHAG's exercises of its Special ROFR rights.  On summary judgment, the Court dismissed all of AMTAX's claims related to alleged breaches of fiduciary duties by SHAG and other parties.  In any event, the evidence at trial does not support any claims that SHAG breached fiduciary duties owed to AMTAX, and AMTAX's fiduciary duty arguments provide no support for AMTAX's unclean hands defense.  SHAG was entitled to exercise its contractual Special ROFRs, and was entitled under the contracts and Washington law to take the steps it took to do so.  *E.g.*, RCW 25.10.441(5).  Moreover, actions that AMTAX contends SHAG should have taken to fulfill its fiduciary duties, such as obtaining multiple third-party offers and seeking to maximize any third-party offer price,

*Plaintiff Senior Housing Assistance Group's Findings of Fact and Conclusions of Law (No. 2:17-cv-01115-RSM) - 21*

HILLIS CLARK MARTIN & PETERSON P.S.
999 Third Avenue, Suite 4600
Seattle, Washington  98104
Tel: (206) 623-1745 Fax: (206) 623-7789

would have resulted in no benefit to the Project Partnerships or AMTAX under the facts of this case.

21.     Defendants have not met their burden of proof for their affirmative defenses and the affirmative defenses are hereby dismissed.

22.     Plaintiff's request for declaratory judgment is GRANTED as follows:

A.   SHAG's Special ROFRs for Meridian Court, Auburn Court, Boardwalk and WoodRose were triggered; and

B.   SHAG has properly and effectively exercised its Special ROFRs for Meridian Court, Auburn Court, Boardwalk, and WoodRose.

23.     Defendants/Counter-Plaintiffs/Third Party Plaintiffs' request for declaratory relief on their remaining counterclaim is DENIED and the remaining counterclaim is hereby dismissed with prejudice.

24.     The Clerk shall enter judgment in favor of plaintiff in accordance with these findings and conclusions, with costs awarded to plaintiff.

DATED this ___ day of _____, 2019.

_____
Honorable Ricardo S. Martinez
UNITED STATES DISTRICT COURT JUDGE

Presented by:

HILLIS CLARK MARTIN & PETERSON P.S.

By     *s/Jake Ewart*
       Laurie Lootens Chyz, WSBA #14297
       Jake Ewart, WSBA #38655
       Jessica C. Kerr, WSBA #49866
       999 Third Avenue, Suite 4600
       Seattle, WA  98104
       Tel: (206) 623-1745; Fax: (206) 623-7789
       E-mail:  laurie.chyz@hcmp.com
       jake.ewart@hcmp.com
       jessica.kerr@hcmp.com
Attorneys for Senior Housing Assistance Group and
Senior Housing Assistance Corporation

*Plaintiff Senior Housing Assistance Group's*
*Findings of Fact and Conclusions of Law*
*(No. 2:17-cv-01115-RSM) - 22*

HILLIS CLARK MARTIN & PETERSON P.S.
999 Third Avenue, Suite 4600
Seattle, Washington  98104
Tel: (206) 623-1745 Fax: (206) 623-7789

1

**CERTIFICATE OF SERVICE**

2

I hereby certify that on the 15th day of March, 2019, I electronically filed the

3

foregoing with the Clerk of the Court using the CM/ECF system which will send notification

4

to all counsel of record.

5

6

DATED this 15th day of March, 2019, at Seattle, Washington.

7

By_____*s/ Jake Ewart*_____

8

Jake Ewart, WSBA #38655
Hillis Clark Martin & Peterson P.S.

9

999 Third Avenue, Suite 4600
Seattle, Washington  98104

10

Telephone:  (206) 623-1745
Facsimile:  (206) 623-7789

11

Email: jake.ewart@hcmp.com

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Plaintiff Senior Housing Assistance Group's*
*Findings of Fact and Conclusions of Law*
*(No. 2:17-cv-01115-RSM) - 23*

**HILLIS CLARK MARTIN & PETERSON P.S.**
999 Third Avenue, Suite 4600
Seattle, Washington  98104
Tel: (206) 623-1745 Fax: (206) 623-7789